# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| GRETCHEN S. STUART,,M.D., ET AL, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | FILE NO. 11-CV-804 |
| | ) | |
| JANICE E. HUFF, M.D., ET AL, | ) | |
| | ) | |
| Defendant. | ) | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## DEFENDANTS'BRIEF IN OPPOSITION TO
## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## STATEMENT OF CASE

On July 28, 2011, 2011 Session Law c. 405 (House Bill 854),entitled "An Act to Require a Twenty-four-hour Waiting Period and the Informed Consent of a Pregnant Woman Before an Abortion May Be Performed" (the Act), became law. The Act amends Chapter 90 of the North Carolina General Statutes to add Article II, entitled "A Woman's Right to Know," and to codify the additions as §§ 90-21.80 through 90-21.92. The Act generally advances the State's interest in protecting the health of the woman and the life of the fetus that may become a child by requiring physicians to provide pregnant women with the opportunity to educate themselves about their unborn child before electing an abortion.

Plaintiffs contend that they are entitled to a preliminary injunction because the Act is unconstitutional and violates their rights to freedom of speech under the First Amendment

because the Act compels them to deliver government mandated, noncommercial speech. Plaintiffs also contend that the Act is unconstitutionally vague and violates their Fourteenth Amendment rights to due process because the Act: (1) does not provide them with a reasonable opportunity to know what behaviors are prohibited; and (2) does not provide explicit standards for enforcement and leaves basic policy matters to ad hoc and subjective decision.

## THE STANDARD OF REVIEW

Pursuant to F.R. Civ. P. 65, Plaintiffs have moved for a preliminary injunction to prevent implementation of challenged provisions of the Act. To prevail on that motion, Plaintiffs demonstrate: "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (internal quotation marks omitted); *see Blackwelder*, 550 F.2d at 193-95.

## I. PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR CLAIMS.

### A. PLAINTIFFS ARE NOT LIKELY TO PREVAIL ON THEIR FIRST AMENDMENT CLAIMS.

#### 1. The Act Is Not Subject to Strict Scrutiny Analysis.

Plaintiffs' claim that the Act is "compelled speech" subject to "strict scrutiny" review is inconsistent with United States Supreme Court's decision in *Planned Parenthood v. Casey*, 505 U.S. 833, 112 S.Ct. 2791 (1992). There, the Court held that Pennsylvania could require

-2-

physicians to provide information that is "truthful and not misleading" related to a woman's decision to abort. In reaching that decision, the *Casey* court rejected the plaintiff-physicians' First and Fourteenth Amendment "compelled speech" challenges to the statute and declined to apply a strict scrutiny standard to the statute's informed consent requirements. Instead, the *Casey* court summarily rejected the "compelled speech" argument.

The informed consent law at issue in Casey required that, except in the case of a medical emergency, a physician must inform the woman at least 24 hours before the procedure of the nature of the procedure, the health risks of the abortion and of childbirth, and the "probable gestational age of the unborn child." *Id.* at 881. It further required the physician or a qualified nonphysician to inform the woman of the availability of printed materials published by the state describing the fetus and providing information about medical assistance for childbirth, child support, and adoption agencies. *Id.* Four justices would have upheld these informed consent provisions under the deferential "rational basis" test. *Casey*, 505 U.S. at 981 (Scalia, J., concurring in judgment). The joint opinion of Justices O'Connor, Kennedy and Souter upheld them under an "undue burden" standard:

> What is at stake is the woman's right to make the ultimate decision, not a right to be insulated from all others in doing so. Regulations which do no more than create a structural mechanism by which the State, or the parent or guardian of a minor, may express profound respect for the life of the unborn are permitted, if they are not a substantial obstacle to the woman's exercise of the right to choose. See infra, at ___-___ (addressing Pennsylvania's parental consent requirement). Unless it has that effect on her right of choice, a state measure designed to persuade her to choose childbirth over abortion will

-3-

be upheld if reasonably related to that goal.  Regulations designed to foster the health of a woman seeking an abortion are valid if they do not constitute an undue burden.

*Casey*, 505 U.S. at 877.

In evaluating whether the statutory requirement that a physician provide a woman with "truthful and not misleading" information prior to performing an abortion imposed an impermissible undue burden on the woman's right to choose, the Court determined that it did not and explicitly overruled prior precedents that would suggest otherwise:

> To the extent *Akron I* and *Thornburgh* find a constitutional violation when the government requires, as it does here, <u>the giving of truthful, nonmisleading information</u> about the nature of the procedure, the attendant health risks and those of childbirth, and the "probable gestational age" of the fetus, those cases go too far, are inconsistent with *Roe's* acknowledgment of an important interest in potential life, and are overruled. . . .

> In short, requiring that the woman be informed of <u>the availability of information relating to fetal development</u> and the assistance available should she decide to carry the pregnancy to full term is <u>a reasonable measure to insure an informed choice</u>, one which might cause the woman <u>to choose childbirth over abortion</u>.  This requirement cannot be considered a substantial obstacle to obtaining an abortion, and, it follows, there is no undue burden. *Casey*, 505 U.S. at 882-83 (emphasis added).

Significantly, the Court in *Casey* expressly considered and rejected a "compelled speech" argument identical to the one advanced here even though the statute at issue in *Casey* required physicians to provide specific information mandated by the State:

> All that is left of petitioners' argument is an asserted First Amendment right of a physician not to provide information about the risks of abortion, and childbirth, in a manner mandated

-4-

by the State. To be sure, the physician's First Amendment rights not to speak are implicated, see *Wooley* v. *Maynard*, 430 U. S. 705 (1977), but only as part of the practice of medicine, subject to reasonable licensing and regulation by the State. Cf. *Whalen* v. *Roe*, 429 U. S. 589, 603 (1977). <u>We see no constitutional infirmity in the requirement that the physician provide the information mandated by the State here</u>.

*Casey*, 505 U.S. at 884 (emphasis added).

Plaintiffs do not contend that the Act's requirements fail the "undue burden" or "truthful and not misleading" tests from the *Casey* joint opinion. Instead, they argue that this Court need not follow *Casey*'s holding because the statute in *Casey* "*did not* require the woman to undergo a medical procedure in order to make an informed decision, *did not* require physicians to obtain information from the patient's body and use that information to convey a state-mandated message, *did not* force physicians to deliver unwanted images and verbal descriptions of their own embryo or fetus and *did not* require physicians to violate tenets of medical ethics." (Pls' Br. at 9-10) Setting aside Plaintiffs' characterizations, none of these issues distinguishes this case in any meaningful way from *Casey*.

Plaintiffs' arguments center on the fact that, under the Act, the physician must provide factual medical information based upon the physician's simultaneous description of an ultrasound performed on the patient. Plaintiffs do not contend that requiring the ultrasound is an "undue burden" on the women's right to an abortion. Clearly, the ultrasound and the physician's simultaneous description of the images it produces fit well within the *Casey* standard for truthful, non-misleading information. In light of the fact that *Casey* holds that

-5-

physicians can be required to provide their patients with truthful, non-misleading speech as part of the informed consent process, Plaintiffs cannot contend that performing or describing ultrasound constitutes "compelled speech" subject to strict scrutiny analysis.

Plaintiffs do not contend that they do not routinely perform ultrasounds prior to performing an abortion or that conducting an ultrasound as described in the Act would require an additional medical procedure. Furthermore, under *Casey* there is nothing problematic about requiring a physician to provide a woman with medically accurate information regarding her medical condition or her unborn child's development derived from the use of a standard medical procedure. Physicians routinely perform procedures to inform their assessment of a particular patient's medical condition. The Act's requirement that physicians perform an ultrasound prior to performing an abort does not implicate Plaintiffs First Amendment rights. This is particularly true since the patient retains the ultimate choice whether to submit to the ultrasound, to go forward with the abortion, to defer that decision or to elect to care the child to term. No physician is forced to use the patient's body without her consent and no "ethical dilemma" exists. Moreover, the First Amendment does not insulate professional codes of ethics from the standards of professional practice adopted by State legislatures. *See, e.g., Gonzales v. Carhart*, 550 U.S. 124, 127, 127 S.Ct. 1610, 1633 (2007) ("[T]he State has a significant role to play in regulating the medical profession.").

While Plaintiffs may characterize requirement that they describe the images from the ultrasound to the patient as a "message," Plaintiffs cannot contend that any of the information

the physician must convey is untrue or misleading. In fact, all the Act requires is that the physician or qualified professional provide a "medical description" of what is "present and viewable." Nor can Plaintiffs dispute that the information is factual in nature. The physician may chose how to convey the information that is "present and viewable" and is free to convey other information relevant to the woman's health. Thus, the Act doe not require Plaintiffs to take an ideological stance or express any judgment regarding the facts. Consequently, the "message" in this case is no more ideological than the "message" which the Court upheld in *Casey*.

Plaintiffs' additional argument that the patient does not request and does not want to hear the information is not persuasive. Plaintiffs cite no authority for the proposition that what a patient requests and wants to hear defines the contours of what information the State may require or the physician must provide to ensure the patient's informed consent. In addressing this issue in *Casey*, the Court said:

> What is at stake is the woman's right to make the ultimate decision, not a right to be insulated from all others in doing so. Regulations which do no more than create a structural mechanism by which the State, or the parent or guardian of a minor, may express profound respect for the life of the unborn are permitted, if they are not a substantial obstacle to the woman's exercise of the right to choose.

*Casey* at 877. Plaintiffs do not claim in this motion that the information which they are required to provide to a woman is a substantial obstacle to her exercise of the right to choose. Furthermore, the Act specifically provides that the patient may refuse to view the real time

-7-

display and may refuse to listen to the medical description of the images. N.C. Gen. Stat. § 90-21.85(b).  Therefore, the fact that a particular patient may not want to be exposed to this true, nonmisleading information is not grounds for finding the Act to be unconstitutional.

In short, this Court should review Plaintiffs' motion in accordance with the Supreme Court's controlling precedent in *Casey*.   *Casey* allows States to compel doctors to deliver truthful, nonmisleading information about an unborn child to patients seeking abortions in order to facilitate the patient's informed choice and advance the State's interest in childbirth. *See Casey*, 505 U.S. at 884 ("[A] requirement that a doctor give a woman certain information as part of obtaining her consent to an abortion is, for constitutional purposes, no different from a requirement that a doctor give certain specific information about any medical procedure.");  *Casey* 505 U.S. at 883 ("As we have made clear, . . .we permit a State to further its legitimate goal of protecting the life of the unborn by enacting legislation aimed at ensuring  a decision that is mature and informed, even when in so doing the State expresses a preference for childbirth over abortion."); *Gonzales*, 550 U.S. at 159-60 ("The State has an interest in ensuring so grave a choice is well informed. It is self-evident that a mother who comes to regret her choice to abort must struggle with grief more anguished and sorrow more profound when she learns, only after the event, what she once did not know.") The Act requires nothing more than the provision of truthful, nonmisleading information and, therefore, should not be enjoined.

Case 1:11-cv-00804-CCE-LPA   Document 29   Filed 10/12/11   Page 8 of 22

Post-*Casey*, several courts have properly interpreted the decision to allow a state to require physicians to deliver truthful, non-misleading messages in the abortion context. In *Planned Parenthood of Minnesota, North Dakota and South Dakota v. Rounds*, 530 F.3d 724 (8th Cir. 2008), the Court of Appeals for the Eighth Circuit reversed a decision granting an injunction and determined that Planned Parenthood did not show a likelihood of success on the merits of its "compelled speech" argument. In that case, the Court of Appeals considered a South Dakota statute that required physicians: (1) to provide an informational packet with information related to abortion about depression and psychological distress and increased risk of suicide ideation, among other things and (2) to provide verbal information 24 hours in advance of the abortion in person or by phone concerning (a) medical assistance benefits for prenatal care, childbirth and neonatal care; (b) child support obligations; and (c) contact information for a pregnancy help center reasonably proximate to the abortion facility.

Applying *Casey* and *Gonzales*, the Court of Appeals held that the district court abused its discretion in determining a likelihood of success for plaintiff on the merits of the plaintiff's compelled speech claim:

> *Casey* and *Gonzales* establish that, while the State cannot compel an individual simply to speak the State's ideological message, it can use its regulatory authority to require a physician to provide truthful, non-misleading information relevant to a patient's decision to have an abortion, even if that information might also encourage the patient to choose childbirth over abortion. Therefore, Planned Parenthood cannot succeed on the merits of its claim that § 7(1)(b) violates a physician's right not to speak unless it can show that the disclosure is either

Case 1:11-cv-00804-CCE-LPA   Document 29   Filed 10/12/11   Page 9 of 22

untruthful, misleading or not relevant to the patient's decision to
have an abortion.

530 F.3d at 734-35.

Subsequently, at the summary judgment stage, the Court determined that the statute's provision requiring doctors to advise a woman seeking an abortion that "she has an existing relationship" with an unborn human being that "enjoys protection under the United States Constitution and under the laws of South Dakota" was not facially unconstitutional. *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds,* Nos. 09–3231, 09–3233, 09–3362, --- F.3d ----, 2011 WL 3862585, at *3-4 (8th Cir. Sept. 2, 2011). By contrast, it determined that a provision requiring doctors to describe "all known medical risks" of abortion, including an "increased risk of suicide ideation and suicide," was unconstitutional. *Id.* at *6-9. In the Court's opinion, the difference was that the former provision was truthful, non-misleading and relevant to the decision while, given the lack of evidence supporting an increased suicide risk, the latter provision compelled untruthful and misleading speech.

Similarly, in *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. of Health*, No. 1:11–cv–630–TWP–TAB, 2011 WL 2532921 (S.D. Ind. June 24, 2011), the district court determined pursuant to *Casey* that plaintiff failed to demonstrate a reasonable likelihood of success on the merits of a claim that state-mandated informed consent statement of "human physical life begins when a human ovum is fertilized by a human sperm," was compelled speech in violation of the First Amendment. *Id.* at * 21-22. By contrast, the court held that plaintiff did show a reasonable likelihood of success on its

-10-

claim that "objective scientific information shows that a fetus can feel pain at or before twenty weeks of postfertilization age" was compelled speech in violation of the First Amendment. *Id.* at *23-25. Again, the key difference was that the former statement was truthful and the latter was misleading and not based on accepted scientific evidence.

In short, under *Casey* States can require physicians to provide patients with truthful, nonmisleading information relevant to the woman's decision to have an abortion, provided that information does not constitute a substantial obstacle to the decision to have an abortion. Plaintiffs have not justified their argument that the Act is subject to strict scrutiny test in this context. Because important and legitimate governmental objectives justify the Act's informed consent requirement, including the State's interests in protecting the life of the fetus and making sure a grave medical choice is well informed, Plaintiffs are unlikely to prevail on their claim that the Act's informed consent requirements are unconstitutional.

2. **The Speech at Issue is Professional and/or Commercial Speech That May Be Regulated By The State.**

Separate and apart from the abortion context and the *Casey* decision, strict scrutiny would not be the appropriate standard to apply to the "compelled speech" in this case, because the speech is "professional speech." As such, the State has the authority to regulate it as part of its regulation of the medical profession, and the Act's regulation of physicians' speech is not subject to strict scrutiny. *See, e.g., Tepeyac v. Montgomery County,* 779 F.Supp.2d 456, 465-66 (D.Md. 2011) (suggesting that a lesser degree of scrutiny may be applicable to a broad category of professional speech, including but not limited to medical

-11-

speech)*; Wollschlaeger v. Farmer,* No. 11–22026–Civ., --- F.Supp.2d ----, 2011 WL 4080053, at *8 (S.D. Fla. Sept. 14, 2011) (same).

### 2. The Act Passes Strict Scrutiny Analysis.

#### a. The act promotes compelling state interests.

If the Act is subject to strict scrutiny test, there are at least two distinct compelling State interests that justify the truthful, non-misleading information that the Act requires of the physician or his/her technician to provide to the patient prior to securing her informed consent.

The first such interest is in protecting a large segment of the State's citizens from very real and serious future psychological and emotional injuries. If a pregnant woman undergoes an abortion and, prior to performing the abortion, no one offers her the opportunity to see and hear the heart beat of the fetus growing within her body and, subsequent to the abortion, the woman sees an image and/or hears the heart beat of a human fetus, the effect on her psychological and emotional health could significant. In fact, in *Casey* Justices O'Connor, Kennedy and Suiter warned of "the risk that a woman may elect an abortion, only to discover later, with devastating psychological consequences, that her decision was not fully informed." *Casey*, 505 U.S. at 882 (1992) (Opinion of O'Connor, Kennedy and Suiter, JJ.). Plainly, the State has a compelling interest in protecting its citizens from such injury and psychological damage.

-12-

Another, perhaps even more, compelling interest of the State is in protecting its female citizens from being pressured or even compelled into undergoing an abortion that the pregnant female does not herself want. Those courts that have ruled against the constitutionality of one or more aspects of compelled speech statutes dealing with informed consent to abortion have recognized that the state does have a compelling interest in protecting a woman from being forced against her will to have an abortion and in informing a woman of truthful, relevant and non-misleading information about abortion, alternatives to abortion and pregnancy assistance. *See, e.g.*, *Planned Parenthood of Minn., N.D. and S.D. v. Daugaard*, No. 11-4071, 2011 WL 2582731, at *5 (D.S.D  June 30, 2011) ("There is a compelling state interest in protecting a woman from being forced against her will to have an abortion and in informing a woman of truthful, relevant, and non-misleading information about abortion, alternatives to abortion, and pregnancy assistance.").

Indeed, even the court in *Texas Medical Providers Performing Abortion Services v. Lakey*, No. A-11-CA-486, 2011 WL 3818879 (W.D. Tex. Aug. 30, 2011), acknowledged this fact when it said that:

> The government has a compelling interest in ensuring [that] patients are accurately informed about the nature of medical procedures they are considering, the health risks attendant to those procedures, and the risks and benefits of any alternatives.

*See also Varandani v. Bowen*, 824 F.2d 307, 311 (4th Cir. 1987) (the United States Government has "a compelling interest in assuring safe health care for the public."), *cert. denied*, 484 U.S. 1052 (1988).

-13-

**B.    THE ACT IS NARROWLY DRAWN TO ACHIEVE THE STATE'S COMPELLING INTERESTS.**

The information that the Act requires the pregnant woman's physician or technician to make available to her prior to performing an abortion on her is entirely factual, non-misleading and medically accurate. It is the type of information that, if the pregnant woman avails herself of it, will inform her not only about abortion in general and in the abstract, but about the facts and circumstances of her own contemplated abortion.  The Act also provides women so armed with information regarding alternatives to abortion, pregnancy assistance, the health risks of abortion and child birth and many other matters that are directly relevant to her decision whether to undergo an abortion.

This information is designed to achieve by the most logical, direct and effective means the State's compelling interest in protecting its pregnant female citizens from future experiences which the *Casey* Court recognized could have "devastating psychological consequences."*Casey*, 505 U.S. at 882.  The Act ensures that a woman will not undergo an uninformed abortion and expose herself to the risk that she will subsequently suffer psychological and emotional injury, potentially permanent, from  seeing a sonogram or hear the heart beat of a human fetus. The Act achieves this important purpose by making a sonogram of the woman's own fetus available to her, if she wishes to see it, as well as the heartbeat of her own fetus, if she wishes to hear it.  Thus, the means selected by the Act to achieve the State's compelling interest are direct, logical and narrowly tailored to each individual case.

-14-

Correspondingly, if the woman is being coerced into having an abortion, the Act presents her  with the opportunity to arm herself with real-time visual and auditory information about her own pregnancy and the particular fetus living within her.  If the woman elects to avail herself of the opportunity, this information will contribute to her understanding of her condition and will to make her own decision whether to terminate her pregnancy. Put another way, looking at and listening to this information prior to the four hour "cooling of" period, provides the pregnant woman with new and important information which will influence her understanding of her condition, her options and  the best interest of herself and her unborn child.  If she has been pressured or coerced into seeking an abortion, this period of sober reflection will provide her with the opportunity to seek help and learn of alternatives.  If she has not been so coerced and if she concludes, after careful consideration, that terminating her pregnancy is what is best for her, the information made available to her will do no more than inform that decision.

Accordingly, Act's provisions concerning "compelled speech" are narrowly drawn to achieve the State's compelling interests.

## II.    THE ACT IS NOT UNCONSTITUTIONALLY VAGUE.

The Act is not unconstitutionally vague.  The statute defines obligations with sufficient definiteness that  the physicians and health care providers can understand what conduct is required and does not encourage arbitrary and discriminatory enforcement. *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) (A statute regulating abortion is not unconstitutionally vague when it "provides doctors 'of ordinary intelligence a reasonable opportunity to know what is prohibited.'" quoting

-15-

*Grayned v. City of Rockford*, 408 U.S. 104 at 108 (1972). The Act plainly defines what information must be provided to the patient in order to secure informed consent. At this stage of the proceeding – when there is no evidence of enforcement whatsoever– the Act is sufficiently to defeat speculative claims that it will be arbitrarily or discriminatorily enforced to inhibit constitutionally protected conduct. *Gonzales v. Carhart,* 550 U.S. at 150 (2007) (statute proscribing abortions by intact dilation and evacuation procedure not unconstitutionally vague). The Act does not impose a criminal penalty. N.C. Gen. Stat. § 90-21.85. Therefore, the Act is not subject to the more exacting standards for clarity applicable to criminal statutes. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 498-499 (1982) ("The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.")

Plaintiffs do not contend that the Act does not plainly state the procedures they must follow to secure a patient's informed consent prior to performing or attempting to perform an abortion. Rather, Plaintiffs complain that the Act does not clearly state when other health care professionals may perform some or all of the procedures required to secure an informed consent for an abortion. The Act is unconstitutionally vague only if it fails to "provide doctors 'of ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Gonzales v. Carhart*, 550 U.S. at 149, quoting *Grayned v. City of Rockford*, 408 U.S. 104 at 108 (1972). The mere fact that the Act does not consistently describe some options for complying with the statutory procedures does not mean that the Act is unconstitutionally vague.

-16-

The Plaintiffs focus on inconsequential complaints about imperfections in legislative. Minor imprecisions or inconsistencies in the statutory language do not expose Plaintiffs to unpredictable liability. The Act imposes liability only on those persons who knowingly, recklessly or willfully violate the statute. N.C. Gen. Stat. § 90-21.88. In some cases, the Act does not consistently or precisely describe all Plaintiffs' options for complying with the statutorily required procedures. Plaintiffs claim that the language in N.C. Gen. Stat. § 90-21.85(a) makes it "seem[]" that violations of the Act "may carry criminal penalties." But the Act does not impose any criminal penalties for violation. The Act specifically provides only for civil penalties. N.C. Gen. Stat. § 90-21.88. The fact that Plaintiffs' civil liability is limited to knowing, reckless or willful violations saves them from exposure to unconstitutional risks. The Constitution allows greater tolerance for imprecision in those cases. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. at 498-99.

## III. THE ACT IS RATIONALLY RELATED TO A LEGITIMATE GOVERNMENT INTEREST.

Plaintiffs allege that the Act violates their rights to substantive due process because – at least with respect to those women who avert their eyes from the real-time display or decline to hear what the physician or qualified technician is describing to them – the obligation to provide the real time display and describe the images furthers no legitimate State interest. Unless the law burdens a fundamental right – an argument the Plaintiffs do not advance in here – substantive due process merely requires that the law be "rationally related to a legitimate governmental interest." *Lyng v. Int'l Union*, 485 U.S. 360, 370 (1988); *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487-88 (1955). Furthermore, "[a] statute is presumed constitutional and the burden is on the one

-17-

attacking the legislative arrangement to negative every conceivable basis which might support it."
*Heller v. Doe*, 509 U.S. 312, 320 (1993) (citations and quotation marks omitted).

The State has a legitimate interest "from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child." *Planned Parenthood v. Casey*, 505 U.S. 833, 846 (1992). The Act is obviously intended to assure that women who decide to have abortions have the opportunity to become fully informed of the condition of their unborn child before the abortion is performed. The State may require women who desire an abortion to wait at least 24 hours after receiving information deemed necessary to informed consent before the procedure. *Id.* at 885. The State's interests are not restricted to the woman's health. The State may favor childbirth over abortion, even if those measures do not further a health interest. *Id.* at 886. Therefore, the State has a legitimate interest in promoting experiences that could rationally increase the chances that a woman would voluntarily chose not to abort her unborn child.

The Act is also related to the State's interest in the woman's health. Plaintiffs' claim that the procedures serve no purpose other than to shame and humiliate women seeking abortions – especially if they elect not to look at the images or listen to the description. However, the Plaintiffs ignore the State's long term interest in potentially devastating impact that an woman may suffer from if she comes to regret an uninformed abortion. *Casey 505* U.S. at 882.

Given that interest in the woman's long term psychological health, the State could rationally determine that a woman who has resisted the powerful urge to see her unborn child on a real time display and, having had the opportunity to contemplate the loss of that unique opportunity for at least four hours, still chooses an abortion, is less likely to ever regret making that choice. In fact, the State could rationally determine that, if despite what Plaintiffs claim is a shameful and

-18-

humiliating experience, the woman resists the efforts to get her to change her mind and elects to go through with the abortion, then she is less likely to ever regret making that choice. There is no constitutional principle that requires the State to favor a policy that promotes the woman's short term comfort over her long term peace of mind.

Consequently, the Act is rationally related to furthering the State's interests in both the woman's long term psychological well-being and the State's interest in favoring childbirth over abortions. Therefore, the Act does not violate substantive due process.

## IV. A PRELIMINARY INJUNCTION WILL CAUSE IRREPARABLE INJURY TO THE STATE'S INTEREST IN WOMEN'S HEALTH AND THE LIFE OF THE UNBORN.

The State has repeatedly asserted that it has a compelling interest in protecting a pregnant woman's health and a legitimate interests in promoting the life of unborn children. A woman's decision to elect an abortion is necessarily time limited. An injunction which substantially impairs the State's efforts to require Plaintiffs to provide the truthful, nonmisleading information specified in the Act will predictably result in women having to make a choice about whether to submit to an abortion without the opportunity to be provided with important information that is necessary to fully inform their decision, women who have come unwillingly to an abortion clinic going through with unwanted abortions and interfere in the State's efforts to promote women's health and the life of the unborn.

The Supreme Court has noted:

> '[The] award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff,' and that 'where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the

-19-

public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff.'

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-313 (1982) (quoting *Yakus v. United States*, 321 U.S. 414, 440 (1944) (footnote omitted)).   While Plaintiffs assert that they may suffer injury unless enforcement of the Act is enjoined, any civil penalties that may result for actions authorized by the Act are subject to correction if the Act is ultimately found to be unconstitutional.   However, in the interim, large numbers of women will have to make the decision to abort their unborn children without the opportunity to acquire the information that the Act requires Plaintiffs to provide.

Under these circumstances, the public interest outweighs the Plaintiffs and the Court should decline to grant the injunction.

## CONCLUSION

Plaintiffs have failed to demonstrate that they are likely to prevail on the merits of their claims. Moreover, the public interest in protecting women's health and promoting life outweigh any temporary injury Plaintiffs might suffer from enforcement of the Act. Therefore, the Court should deny the Plaintiffs' motion for a preliminary injunction.

This the 12 th day of October 2011.

ROY COOPER
Attorney General

/s/ Thomas J. Ziko
Thomas J. Ziko
Senior Deputy Attorney General
State Bar No.
E-mail:  tziko@ncdoj.gov

-20-

I. Faison Hicks
Special Deputy Attorney General
State Bar. No. 10672
E-mail: fhicks@ncdoj.gov

Stephanie Brennan
Special Deputy Attorney General
State Bar No. 35955
E-mail: sbrennan@ncdoj.gov

N.C. Department of Justice
114 W. Edenton Street
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6900
Fax: (919) 716-6763

*Attorney for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on this day, 12 October, 2011, I electronically filed the forgoing

**DEFENDANTS BRIEF IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** with the Clerk of the Court

using the CM/ECF system which will send notification of such filing to the following:

ROY COOPER
Attorney General

/s/ Thomas J. Ziko
Thomas J. Ziko
Senior Deputy Attorney General
State Bar No. 8577
E-mail: tziko@ncdoj.gov

N.C. Department of Justice
114 W. Edenton Street
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6900
Fax: (919) 716-6763

*Attorney for Defendant*