IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GRETCHEN S. STUART, M.D., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:11CV804 |
| | ) | |
| JANICE E. HUFF, M.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

CATHERINE C. EAGLES, District Judge.

Earlier this year, the North Carolina General Assembly passed the "Woman's Right to Know Act" ("the Act"), 2011 N.C. Sess. Laws 405 (to be codified at N.C. Gen. Stat. §§ 90-21.80 through 90-21.92). The Act is slated to become effective on October 26, 2011. The Plaintiffs—several North Carolina physicians and health care providers—brought this action on behalf of themselves and their patients challenging the constitutionality of parts of the Act.

Before the Court is the Plaintiffs' motion asking that a preliminary injunction enjoining the Defendants from enforcing parts of the Act be granted before the effective date of the statute and remain in place until the constitutional challenges are resolved. The Plaintiffs contend the Act is unconstitutional on a number of grounds but limit their arguments at this stage to a First Amendment challenge, a void-for-vagueness challenge, and a substantive due process challenge.[1]

---

[1] In their complaint, the Plaintiffs assert other constitutional claims related to the Act, including claims that the Act is an undue burden on a woman's liberty interests.

In support of their motion, the Plaintiffs submitted four affidavits. (Docs. 10, 11, 12, and 13.) The Defendants submitted no evidence. Each party submitted briefs and the Court heard the arguments of counsel on October 17.

Based on the record before it, the Court finds that the Plaintiffs are likely to succeed on the merits of the First Amendment challenge to N.C. Gen. Stat. § 90-21.85. Given the ruling on the First Amendment issue, the Court finds it unnecessary to address the substantive due process claim and the vagueness claims directed toward that same section. The Plaintiffs have not shown a likelihood of success on the merits as to the remaining vagueness claims.

## THE ACT

The Act by its terms is directed toward the informed consent requirements for a woman seeking an abortion. It has two major components. First, it requires physicians or others listed in the statute (hereinafter "providers") to make certain information available to a woman seeking an abortion at least 24 hours in advance of the procedure. These provisions are set forth in section 90-21.82 and are not challenged in large part. Second, it requires providers to perform an ultrasound at least four hours in advance of the procedure, during which time the provider must make the images produced from the ultrasound visible to the patient and must describe to the patient the images seen on the ultrasound. These requirements are set forth in section 90-21.85 and will be referred to as the "speech-and-display requirements."

## DISCUSSION

**I. PRELIMINARY INJUNCTION STANDARD**

A preliminary injunction is "an extraordinary remedy . . . which is to be applied only in limited circumstances which clearly demand it." *Direx Isr., Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (internal quotation marks omitted). Historically, the purpose

of the preliminary injunction has been "to protect the status quo and to prevent irreparable harm during the pendency of the litigation to preserve the court's ability in the end to render a meaningful judgment on the merits." *Sun Microsystems, Inc. v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 333 F.3d 517, 526 (4th Cir. 2003). Before a preliminary injunction can be granted, the Plaintiffs must establish that: (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tip in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord WV Ass'n of Club Owners and Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009); *Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd.*, No. 1:11cv00113, 2011 U.S. Dist. LEXIS 71943, at *20 (M.D.N.C. July 1, 2011).

The Court will focus its evaluation on whether the Plaintiffs have established a likelihood of success on the merits. If they have, the threatened constitutional violations unquestionably represent irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). Similarly, the threatened constitutional violations would also outweigh whatever burden the injunction would impose because the Defendants are "in no way harmed by the issuance of an injunction that prevents the state from enforcing unconstitutional restrictions." *Legend Night Club v. Miller*, 637 F.3d 291, 302-03 (4th Cir. 2011). "[U]pholding constitutional rights is in the public interest." *Id.*; *accord Tex. Med. Providers Performing Abortion Servs. v. Lakey*, No. A-11-CA-486-SS, 2011 WL 3818879, at *11 (W.D. Tex. Aug. 30, 2011).

II.  **FIRST AMENDMENT**

    A.  **Likelihood of Success on the Merits**

Section 90-21.85 of the Act setting forth the "speech-and-display requirements" first requires that a woman undergo an ultrasound at least four hours before an abortion.[2] The statute also mandates that the physician or qualified technician working with the physician shall display the images produced from the ultrasound "so that the [patient] may view them." N.C. Gen. Stat. § 90-21.85(a)(3). It further requires the providers to give "a simultaneous explanation of what the display is depicting, which shall include the presence, location, and dimensions of the unborn child within the uterus," N.C. Gen. Stat. § 90-21.85(a)(2), and "a medical description of the images, which shall include the dimensions of the embryo or fetus and the presence of external members and internal organs, if present and viewable." N.C. Gen. Stat. § 90-21.85(a)(5).[3] The Plaintiffs contend these speech-and-display requirements violate the First Amendment by compelling unwilling speakers to deliver the state's message discouraging abortion.

The Plaintiffs argue that the compelled speech required by the Act should be viewed under a strict scrutiny standard. The Defendants argue that strict scrutiny is the wrong standard to apply; they contend in the alternative that even applying strict scrutiny, the state has three compelling state interests: protecting the psychological health of the patient, preventing coercive abortions, and expressing its preference for the life of the unborn.

The First Amendment generally includes the right to refuse to engage in speech compelled by the government. *E.g., Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of*

---

[2] By administrative regulation, North Carolina law has required an ultrasound before an abortion for a number of years. 10A N.C. Admin. Code § 14E.0305(d) (2011). The requirement was not statutory, however, and the regulation includes neither the time-delay nor the speech-and-display requirements.

[3] The patient must also sign a "written certification" that these requirements have been met and state whether she "availed herself of the opportunity to view the image." N.C. Gen. Stat. § 90-21.85(a)(5)-(6). Subsection (b) provides that "[n]othing in this section shall be construed to prevent a pregnant woman from averting her eyes from the displayed images or from refusing to hear the simultaneous explanation and medical description." N.C. Gen. Stat. § 90-21.85(b).

4

*Boston, Inc.*, 515 U.S. 557, 573 (1995). "[T]he First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what not to say." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796-797 (1988) (emphasis omitted). Both compelled statements of opinions and compelled statements of fact burden protected speech. *Id.* at 797-98.

The Supreme Court has historically taken a dim view of content-based speech compelled by the government, finding it to violate the First Amendment in the absence of a compelling state interest in a wide variety of circumstances. *E.g., W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (striking down law that compelled students to salute the flag and recite the pledge of allegiance); *Wooley v. Maynard*, 430 U.S. 705, 713, 715 (1977) (holding that a New Hampshire law could not mandate that citizens "use their private property as a 'mobile billboard' for the State's ideological message"). "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech," and laws which mandate speech are generally considered content-based regulations of speech. *Riley*, 487 U.S. at 795.

"[C]ontent-based regulations of speech are presumptively invalid." *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 188 (2007). Even when the state has a compelling interest, "any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest." *Pleasant Grove City v. Summum*, 555 U.S. 460, 129 S. Ct. 1125, 1132 (2009); *see, e.g.*, *United States v. Playboy Entm't Grp., Inc.* 529 U.S. 803, 813 (2000).

It is undisputed that the Act compels content-based speech by providers; it requires providers to orally and visually convey specified material[4] about the fetus to their patients. The message is compelled regardless of a patient's individual circumstances or condition and regardless of the provider's medical opinion. The message is required even when the provider does not want to deliver the message and even when the patients affirmatively do not wish to see it or hear it. It is further undisputed that this implicates the First Amendment rights of providers such as the Plaintiffs.[5] *See Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 884 (1992) (plurality opinion) (*citing Wooley v. Maynard*, 430 U.S. 705 (1977) (applying strict scrutiny to compelled ideological speech)). Thus, strict scrutiny would ordinarily apply.

The Defendants contend that the compelled speech here should instead be evaluated under an undue burden standard, relying on the Supreme Court's decision in *Casey*. *Casey* concerned a Pennsylvania law that required, among other things, that providers give a woman seeking an abortion certain written materials concerning her decision. In ruling on a claim that the provision violated the liberty interests of women protected by *Roe v. Wade*, 410 U.S. 113

---

[4] There may be a question over whether the material the statute requires to be spoken and shown is factual and informative concerning medical issues or whether it is ideological or judgmental speech concerning philosophical, spiritual, or moral issues. The Defendants seemed to agree at oral argument that one purpose of the speech-and-display requirements was to persuade women not to have abortions by presenting "compelling" visual and personal information. The undisputed evidence establishes that the information is not generally medically necessary. *See infra* note 7. To the extent this issue is important to the ultimate resolution of the case, it is left for another day. *See Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 234-35 (1977) ("[A]t the heart of the First Amendment is the notion that an individual should be free to believe as he will, and that in a free society one's beliefs should be shaped by his mind and his conscience rather than coerced by the State."); *Wooley*, 430 U.S. at 717 ("[W]here the State's interest is to disseminate an ideology, no matter how acceptable to some, such interest cannot outweigh an individual's First Amendment right to avoid becoming the courier for such message.").

[5] The evidence before the Court establishes without dispute or contradiction that the Plaintiffs would not communicate the message required by the speech-and-display requirement in the absence of the statute or patient request. (*See* Doc. 10 ¶¶ 15-16 (Lylerly Decl.); Doc. 11 ¶ 18 (Stuart Decl.); Doc. 12 ¶ 17 (Dingfelder Decl.).)

(1973), the Court held that a state could require physicians to provide patients with information that is "truthful and non-misleading" and related to a woman's decision to have an abortion. In determining which regulations may be permitted, the Court adopted the undue burden standard.

> What is at stake is the woman's right to make the ultimate decision, not a right to be insulated from all others in doing so. Regulations which do no more than create a structural mechanism by which the State, or the parent or guardian of a minor, may express profound respect for the life of the unborn are permitted, if they are not a substantial obstacle to the woman's exercise of the right to choose. Unless it has that effect on her right of choice, a state measure designed to persuade her to choose childbirth over abortion will be upheld if reasonably related to that goal. Regulations designed to foster the health of a woman seeking an abortion are valid if they do not constitute an undue burden.

*Casey*, 505 U.S. at 877-78 (plurality opinion) (citation omitted). The Defendants argue that the North Carolina statute does not create an undue burden on a woman's right to get an abortion, and as such the compelled speech mandated by the Act is permitted.

The Court in *Casey* did not, however, combine the due process/liberty interest analysis with the First Amendment analysis. Rather, the Supreme Court applied the undue burden standard only in evaluating the Pennsylvania statute's limits on a woman's liberty interest under the Due Process Clause. *Id.* at 874 (plurality opinion).

The Supreme Court's brief discussion of the First Amendment challenges to the Pennsylvania statute was undertaken separately and without substantial detail. *See id.* It seems unlikely that the Supreme Court decided by implication that long-established First Amendment law was irrelevant when speech about abortion is at issue,[6] and this Court declines to so find. *See Lakey*, 2011 WL 3818879, at *27.

---

[6] In any event, the speech in *Casey* that the speech-and-display provision here most resembles is the requirement that the physician "inform the woman of the availability of printed materials published by the State describing the fetus." 505 U.S. at 881 (plurality opinion). What the state can say itself is very different from what the state can compel individuals to say. *Cf. Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828, 833 (1995) (stating that

7

In the alternative, the Defendants contend that the speech at issue is "professional" or "commercial" and thus "the Act's regulation of physicians' speech is not subject to strict scrutiny." (Doc. 29 at 11.) The Defendants do not clearly state what a non-strict-scrutiny standard would be or explain how it would apply here.

Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980). When regulated speech is purely commercial, it is often entitled to less protection under the First Amendment, though the degree of that protection is not always easy to discern. *See, e.g. Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S. Ct. 1324, 1339 (2010) (distinguishing intermediate scrutiny and rational basis); *see also Sorrell v. IMS Health Inc.,* 131 S. Ct. 2653, 2664 (2011) (discussing when "heightened scrutiny" applies). Just what "professional speech" means and the degree of protection it receives is even less clear; the phrase has been used by Supreme Court justices only in passing. *E.g.*, *Garcetti v. Ceballos*, 547 U.S. 410, 446-47 (2006) (Breyer, J., dissenting); *Edenfield v. Fane*, 507 U.S. 761, 779 (1993) (O'Connor, J., dissenting); *Lowe v. SEC*, 472 U.S. 181, 232 (1985) (White, J., concurring); *Riley*, 487 U.S. at 795 ("It is not clear that a professional's speech is necessarily commercial whenever it relates to that person's financial motivation for speaking."); *see generally* Daniel Halberstam, Commercial Speech, Professional Speech, and the Constitutional Status of Social Institutions, 147 U. Pa. L. Rev. 771, 834-49 (1999).

---

when the government speaks for itself, it "may make content-based choices" but that "in the realm of private speech or expression, government regulation may not favor one speaker over another"). Requiring a private speaker to deliver the state's message also has the potential to mislead the patient as to the source of the message, which has been disapproved in other contexts. *See id.* at 833.

8

The Defendants' contention that this speech is "commercial" and thus subject to a lower degree of scrutiny is not persuasive. Where the speech at issue blends commercial with non-commercial elements, strict scrutiny ordinarily applies. *Riley*, 487 U.S. at 796 (holding that where commercial speech and fully protected speech are "inextricably intertwined, . . . we apply our test for fully protected expression"). To the extent there is some commercial or professional speech involved here, it is intertwined with non-commercial speech and thus entitled to the full protection of the First Amendment. *See Lakey*, 2011 WL 3818879, at *24.

It is unlikely that a rational basis standard would be found to apply here, given the Supreme Court's deeply entrenched precedent that "[t]he law is not free to interfere with speech for no better reason than promoting an approved message or discouraging a disfavored one, however enlightened either purpose may strike the government." *Hurley*, 515 U.S. at 579. As the Court stated in *Hurley*, outside the context of commercial speech, the government "may not compel affirmance of a belief with which the speaker disagrees." *Id.* at 573.

It is possible that the Supreme Court would apply some intermediate standard to compelled speech in the ordinary informed-consent context, given the historical interest the state has in regulating certain aspects of medical care. *See Whalen v. Roe*, 429 U.S. 589, 603 n.30 (1977). That is not, however, this case. The Act goes well beyond requiring disclosure of those items traditionally a part of the informed consent process, which include in this context the nature and risks of the procedure and the gestational age of the fetus. *See generally Acuna v. Turkish*, 930 A.2d 416, 427-28 (N.J. 2007). The Act also goes well beyond the provision approved in *Casey*, which only required providers to "make available" state-generated written materials which contained a viewpoint. *Casey*, 505 U.S. at 884 (plurality opinion). In this case,

9

the state compels the provider to physically speak and show the state's non-medical message to patients unwilling to hear or see.[7]  Other courts have applied strict scrutiny in similar circumstances.  *See, e.g., Lakey*, 2011 WL 3818879, at *24; *Planned Parenthood Minn., N.D., S.D. v. Daugaard*, No. CIV. 11-4071-KES, 2011 U.S. Dist. LEXIS 70800, at *57, 62-63 (D.S.D. June 30, 2011).

The Court finds that the speech-and-display requirements of the Act are subject to strict scrutiny under traditional and longstanding First Amendment principles.  Thus, the Defendants must establish that the compelled speech required of the providers furthers a compelling state interest and that the requirements are narrowly tailored to achieve that interest.  The Defendants have not established either element.

The Defendants first assert that the state has an interest in protecting abortion patients from psychological and emotional distress and that this interest justifies the speech-and-display requirements.  (Doc. 29 at 12.)  Even if this is a compelling interest,[8] there is no evidence in the record supporting the state's claim that the speech-and-display requirements further this interest.  Indeed, the undisputed evidence offered by the Plaintiffs establishes that these provisions are likely to harm the psychological health of the very group the state purports to protect.  (Doc. 10 ¶ 18 (Lylerly Decl.); Doc. 11 ¶ 19 (Stuart Decl.); Doc. 12 ¶¶ 23-24 (Dingfelder Decl.).)

The Defendants next put forth the state's interest in preventing women from being coerced into having abortions.  (Doc. 29 at 13.)  Assuming without deciding that this is a

---

[7] The uncontradicted evidence establishes that there is no medical purpose for requiring the speaking or showing of this material to an unwilling listener. (Doc. 10 ¶¶ 7-16 (Lylerly Decl.); Doc. 11 ¶¶ 17-20 (Stuart Decl.); Doc. 12 ¶ 17 (Dingfelder Decl.).)  The statute does not allow providers any discretion, requiring compliance regardless of a patient's medical or individual situation.

[8] *Cf. Riley*, 487 U.S. at 804 ("[I]t is safer to assume that the people are smart enough to get the information they need than to assume that the government is wise or impartial enough to make the judgment for them.") (Scalia, J., concurring).

compelling interest, the Defendants have not articulated how the speech-and-display requirements address the stated concern in reducing compelled abortions, and none is immediately apparent.

At oral argument, the Defendants added the state's interest in promoting life and discouraging abortion as a compelling interest justifying the compelled speech. This interest might well be present after viability, *Roe*, 410 U.S. at 163, but nowhere does *Casey* characterize the state's interest in potential life as "compelling" during the entire term of a woman's pregnancy. *See Lakey*, 2011 WL 3818879, at *26.

In any event, even if the state has a compelling interest, the state has provided no evidence that alternatives more in proportion to the resulting burdens placed on speech would not suffice. These alternatives might include making the information at issue available to the patient in written form, as in *Casey*, 505 U.S. at 884 (plurality opinion); *see also Riley*, 487 U.S. at 800 (noting that state publication of information "would communicate the desired information to the public without burdening a speaker with unwanted speech"), or possibly offering to provide the verbal or visual information to the patient but respecting the patient's rejection of hearing or seeing the information.[9]

The speech-and-display requirements in section 90-21.85 thus do not survive strict scrutiny. The Court concludes that the Plaintiffs are likely to prevail on their First Amendment claim as to the compelled speech required by section 90-21.85.

---

[9] At oral argument, the Defendants suggested that this is in fact what the Act allows because women can turn their heads or use some sort of technological device if they do not wish to see or hear the compelled message. It is not clear that this is so as to the "compelled listening." The statute requires the woman to certify in writing that the speech-and-display requirements have been met. N.C. Gen. Stat. § 90-21.85(a)(5). It is hard to understand how she could do this if she "refuse[s] to hear." Assuming this is possible, it results in compelling an unwilling speaker to deliver visual and spoken messages to a listener who is not listening or looking. The Defendants have not shown how this requirement is reasonably tailored to meet the state's interests.

11

### B. Relief

The Plaintiffs have established a likelihood of success on their First Amendment claims challenging the Act's speech-and-display requirements. Having demonstrated that the Act likely poses a direct threat to their fundamental constitutional rights, the Plaintiffs also have established that they would be irreparably harmed, *see Elrod*, 427 U.S. at 373, and that the balance of equities tips in their favor. *See Winter*, 555 U.S. at 20. Furthermore, it is in the public interest for statutes that likely violate fundamental constitutional rights to be enjoined from being enforced. *Legend Night Club*, 637 F.3d at 302-303. Thus, section 90-21.85 must be enjoined in its entirety, pending final resolution of the Plaintiffs' claims or further order of this Court.[10]

## III. VAGUENESS

The Plaintiffs argue that various provisions of the Act are impermissibly vague and thus violate their due process rights. (Doc. 9 at 14.) "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). As the Supreme Court noted in 1972:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

---

[10] At oral argument, the Defendants asked for an additional opportunity to present evidence if the Court granted the motion for preliminary injunction. Even though the Defendants did not state what kind of evidence they want to present nor did they explain why they were unable to present any evidence before the October 17 hearing, the Court recognizes that the motion was set for hearing on short notice soon after it was filed. A separate Scheduling Order is entered concomitantly herewith giving the Defendants this opportunity and allowing the parties to address in more detail some of the more nuanced legal questions presented by this case.

*Id.* at 108-109 (footnotes omitted).

While the Supreme Court has clearly articulated the standard for vagueness, it has also warned that "[t]hese standards should not . . . be mechanically applied." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Because "we can never expect mathematical certainty from our language," *Grayned*, 408 U.S. at 110, "a regulation is not void for vagueness unless it is so unclear with regard to what conduct is prohibited that it may trap the innocent by not providing fair warning, or is so standardless that it enables arbitrary and discriminatory enforcement." *Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health*, 317 F.3d 357, 366 (4th Cir. 2002) (internal quotation marks omitted). In the medical context, a statute regulating abortion is not unconstitutionally vague when it "provides doctors of ordinary intelligence a reasonable opportunity to know what is prohibited." *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) (internal quotation marks omitted).

### A. Penalty Provisions

The Plaintiffs first argue that section 90-21.85(a) of the Act references the North Carolina criminal law concerning abortion and thus potentially imposes criminal liability. They contend that this causes vagueness problems because the language is unclear as to what penalties can be imposed for violations of the Act and because the potential for criminal punishments means a higher standard of clarity is required of the other provisions of the Act.

Section 90-21.85 of the Act contains the speech-and-display requirements discussed at some length *supra*. The section begins with a reference to North Carolina criminal law with the phrase "[n]otwithstanding G.S. 14-45.1." N.C. Gen. Stat. § 90-21.85(a). N.C. Gen. Stat. § 14-45.1 is the section of the criminal code that defines the circumstances under which abortions are legal.

13

First, it does not appear that section 90-21.85(a) has the potential to expose providers to criminal penalties for violating the speech-and-display requirements. While the provision does begin with the phrase "[n]otwithstanding G.S. 14-45.1," that passing reference does not mean abortions provided without compliance are crimes; it would rather seem to mean just the opposite. This reading is made more likely by the Act's express provisions for civil remedies, N.C. Gen. Stat. § 90-21.88, and complete absence of any specific criminal penalties. The Plaintiffs are thus not likely to succeed on the merits of their claim that this section is vague as to penalty.

The Plaintiffs also argue that the Act imposes "quasi-criminal" sanctions on physicians in violation of the Act and thus a high degree of clarity and certainty is required for its terms. Quasi-criminal penalties are those sanctions which impose "significant civil and administrative penalties, including fines and license revocation." *Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 422 (5th Cir. 2001). Certainly the Act does create wide-ranging civil remedies for violation of the law, N.C. Gen. Stat. § 90-21.89, and physicians are also subject to a number of harsh consequences as to their medical licenses if they perform abortions in violation of North Carolina law. N.C. Gen. Stat § 90-14(a)(2). The Plaintiffs are entitled to a statute that sets forth their obligations clearly, but the Act is not void merely because it has some ambiguities.

### B. Informed Consent Materials

Section 90-21.82 sets forth the information required to be conveyed to the woman at least 24 hours before an abortion. In two places, the section allows for either "a physician or qualified professional" to provide the information to the patient, N.C. Gen. Stat. § 90-21.82(1)-(2), and uses this phrase in another place as well. N.C. Gen. Stat. § 90-21.82(1)(e). Elsewhere in section

14

90-21.82(1), however, after listing the items the physician or qualified professional must provide, the Act states:

> The information required by this subdivision may not be provided by a tape recording but shall be provided during a consultation in which the physician is able to ask questions of the patient and the patient is able to ask questions of the physician.

N.C. Gen. Stat. § 90-21.82(1).

The Plaintiffs contend that this is internally inconsistent, making it impossible for providers to know which information can legally be provided by a qualified professional and which information must be provided by a physician.

While not a model of clarity, the statute requires that a physician or qualified professional provide the listed information and that there be a consultation with a physician so that questions can be asked and answered. This is not unduly confusing or vague and thus the Plaintiffs are unlikely to succeed in their challenge to section 90-21.82.

### C. Interplay between Section 90-21.82(2)(e) and Section 90-21.90(b)

Section 90-21.82(2)(e) gives the patient the right to review printed materials provided by the state. It does not require that the patient read the materials or even look at the materials. Section 90-21.90(b) provides that "[s]hould a woman be unable to read the materials provided to the woman pursuant to this section, a physician or qualified professional shall read the materials to the woman in a language the woman understands before the abortion." The Plaintiffs argue that the section creates a situation where a woman who speaks the language in which the materials are printed will have the option to read—or not read—the information whereas a woman who does not speak the language will have the information read to her regardless of her desires.

15

The Act does create a somewhat peculiar situation. It is not, however, unclear. As the Defendants argued to the Court at the hearing on this motion, the Act means what it says: if the patient cannot read the materials provided, then the physician or qualified provider must read them to her. There may be other constitutional problems with this provision, but it is not vague.

### D. "Advanced Practice Nurse Practitioner in Obstetrics"

The Plaintiffs contend that section 90-21.85(a) is unconstitutionally vague because it fails to set forth clearly who may perform the required ultrasound. (Doc. 9 at 14–15.) Under section 90-21.85(a)(1), the ultrasound must be performed by "the physician who is to perform the abortion, or qualified technician working in conjunction with the physician." N.C. Gen. Stat. § 90-21.85(a). The Act defines a "qualified technician," in turn, as "[a] registered diagnostic medical sonographer who is certified in obstetrics and gynecology . . . or a nurse midwife or advanced practice nurse practitioner in obstetrics with certification in obstetrical ultrasonography." N.C. Gen. Stat. § 90-21.81(9). The Plaintiffs presented evidence that "there is no licensing for an 'advanced practice nurse practitioner'" in North Carolina and no commonly understood meaning of a "nurse practitioner *in obstetrics*." (Doc. 9 at 14.) The Defendants offered no evidence to the contrary, and offered no explanation for this term in their brief. The Court need not address this argument because it has already enjoined proposed section 90-21.85(a) in its entirety on First Amendment grounds.

The Act also authorizes "qualified technicians" to perform requirements in provisions other than the enjoined section 90-21.85(a). N.C. Gen. Stat. §§ 90-21.82(1)(e), 90-21.82(4). The Plaintiffs limit their unconstitutional-vagueness argument to the performance of the ultrasound under section 90-21.85(a)(1). (Doc. 9 at 15.) Thus, the Court declines to reach the question of the constitutionality of sections 90-21.82(1)(e) and 90-21.82(4) of the Act. *See Lyng v. Nw.*

*Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

### E. Fetal Heart Tone

As part of the speech-and-display requirements, the provider must "offer the pregnant woman the opportunity to hear the fetal heart tone" and, if she accepts, make the "auscultation of fetal heart tone . . . of a quality consistent with the standard medical practice in the community." N.C. Gen. Stat. § 90-21.85(a)(2). As the Court has already found that the speech-and-display requirements, of which this section is a part, must be enjoined on First Amendment grounds, it is unnecessary to reach this issue at this time.

### F. Conclusion

The Court concludes that the Plaintiffs have not shown a likelihood of success on the merits of their void-for-vagueness claims as to the potential penalties mandated under the Act, the informed consent materials, or the interplay between sections 90-21.82(2)(e) and 90-21.90(b). Because the Plaintiffs fail to establish a likelihood of success on the merits, the Court will not consider the remaining *Winter* factors and their motion for a preliminary injunction on these issues will be denied. As to the definition of "advanced practice nurse practitioner in obstetrics" and the quality of the fetal heart tone, the Court will not evaluate those issues because the relevant section in the Act as to those claims has already been enjoined.

## IV. SUBSTANTIVE DUE PROCESS

The Plaintiffs contend the Act's speech-and-display requirements in section 90-21.85 violate substantive due process. Due process requires that all laws at minimum be "rationally related to a legitimate governmental objective." *Multimedia Publ'g Co. of S.C., Inc. v.*

17

*Greenville-Spartanburg Airport Dist.*, 991 F.2d 154, 159 (4th Cir. 1993). Indeed, "the touchstone of due process is protection of the individual against arbitrary action of government." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (internal brackets omitted). As the Court has found that the speech-and-display requirements must be enjoined on First Amendment grounds, it is unnecessary to reach this issue at this time.

## V.    SEVERABILITY

Section 90-21.92 of the Act contains a severability clause. The clause reads:

> If any one or more provision, section, subsection, sentence, clause, phrase, or word of this Article or the application thereof to any person or circumstance is found to be unconstitutional, the same is hereby declared to be severable, and the balance of this Article shall remain effective, notwithstanding such unconstitutionality. The General Assembly hereby declares that it would have passed this Article, and each provision, section, subsection, sentence, clause, phrase, or word thereof, irrespective of the fact that any one or more provision, section, subsection, sentence, clause, phrase, or word be declared unconstitutional.

N.C. Gen. Stat. § 90-21.92. This severability clause constitutes clear legislative intent to preserve as much of the Act as possible in the instance of specific provisions being found unconstitutional.

The Plaintiffs do not ask that the entire Act be enjoined, but only seek an injunction as to specific sections of the Act. The Court has found only the speech-and-display requirements of section 90-21.85 to raise constitutional concerns. The parties agreed at oral argument that the requirements of this section rise and fall together.

In light of the severability clause, the Court will not enjoin the enforcement of the entire Act but will enjoin only the enforcement of section 90-21.85. With enforcement of that section enjoined, the remainder of the Act can take effect as scheduled.

18

## CONCLUSION

The Plaintiffs have established a likelihood of success on the merits that N.C. Gen. Stat. § 90-21.85 violates their First Amendment rights and otherwise have met the requirements for a preliminary injunction. Therefore, a preliminary injunction enjoining enforcement of this provision is appropriate pending further hearing.

**IT IS ORDERED** that the Plaintiffs' Motion for a Preliminary Injunction (Doc. 8) is **GRANTED IN PART** and **DENIED IN PART**, as set forth in this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Defendants and their agents and successors in office are hereby **ENJOINED** from enforcing—by civil action, criminal proceeding, administrative action or proceeding, or any other way—the Act's section entitled "Display of real-time view requirement" (to be codified as N.C. Gen. Stat. § 90-21.85) in its entirety, as more specifically set forth in the Preliminary Injunction issued concomitantly herewith.

This the 25th day of October, 2011.

_____
UNITED STATES DISTRICT JUDGE