AN ACT TO REQUIRE A TWENTY-FOUR-HOUR WAITING PERIOD AND THE INFORMED CONSENT OF A PREGNANT WOMAN BEFORE AN ABORTION MAY BE PERFORMED.

The General Assembly of North Carolina enacts:

**SECTION 1.** Chapter 90 of the General Statutes is amended by adding the following new Article to read:
"Article 1I.
"Woman's Right to Know Act.
"§ 90-21.80. Short title.
This act may be cited as the 'Woman's Right to Know Act.'
"§ 90-21.81. Definitions.
The following definitions apply in this Article:
(1) Abortion. – The use or prescription of any instrument, medicine, drug, or other substance or device intentionally to terminate the pregnancy of a woman known to be pregnant with an intention other than to do any of the following:
  a. Increase the probability of a live birth.
  b. Preserve the life or health of the child.
  c. Remove a dead, unborn child who died as the result of (i) natural causes in utero, (ii) accidental trauma, or (iii) a criminal assault on the pregnant woman or her unborn child which causes the premature termination of the pregnancy.
(2) Attempt to perform an abortion. – An act, or an omission of a statutorily required act, that, under the circumstances as the actor believes them to be, constitutes a substantial step in a course of conduct planned to culminate in the performance of an abortion in violation of this Article.
(3) Department. – The Department of Health and Human Services.
(4) Display a real-time view of the unborn child. – An ultrasound or any more scientifically advanced means of viewing the unborn child in real time.
(5) Medical emergency. – A condition which, in reasonable medical judgment, so complicates the medical condition of the pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible physical impairment of a major bodily function, not including any psychological or emotional conditions. For purposes of this definition, no condition shall be deemed a medical emergency if based on a claim or diagnosis that the woman will engage in conduct which would result in her death or in substantial and irreversible physical impairment of a major bodily function.
(6) Physician. – An individual licensed to practice medicine in accordance with this Chapter.
(7) Probable gestational age. – What, in the judgment of the physician, will, with reasonable probability, be the gestational age of the unborn child at the time the abortion is planned to be performed.
(8) Qualified professional. – An individual who is a registered nurse, nurse practitioner, or physician assistant licensed in accordance with Article 1 of this Chapter, or a qualified technician acting within the scope of the





Case 1:11-cv-00804-CCE-LPA   Document 57-1   Filed 12/01/11   Page 1 of 7

qualified technician's authority as provided by North Carolina law and under the supervision of a physician.
- (9) Qualified technician. – A registered diagnostic medical sonographer who is certified in obstetrics and gynecology by the American Registry for Diagnostic Medical Sonography (ARDMS) or a nurse midwife or advanced practice nurse practitioner in obstetrics with certification in obstetrical ultrasonography.
- (10) Stable Internet Web site. – A Web site that, to the extent reasonably practicable, is safeguarded from having its content altered other than by the Department.
- (11) Woman. – A female human, whether or not she is an adult.

**"§ 90-21.82. Informed consent to abortion.**

No abortion shall be performed upon a woman in this State without her voluntary and informed consent. Except in the case of a medical emergency, consent to an abortion is voluntary and informed only if all of the following conditions are satisfied:
- (1) At least 24 hours prior to the abortion, a physician or qualified professional has orally informed the woman, by telephone or in person, of all of the following:
    - a. The name of the physician who will perform the abortion.
    - b. The particular medical risks associated with the particular abortion procedure to be employed, including, when medically accurate, the risks of infection, hemorrhage, cervical tear or uterine perforation, danger to subsequent pregnancies, including the ability to carry a child to full term, and any adverse psychological effects associated with the abortion.
    - c. The probable gestational age of the unborn child at the time the abortion is to be performed.
    - d. The medical risks associated with carrying the child to term.
    - e. The display of a real-time view of the unborn child and heart tone monitoring that enable the pregnant woman to view her unborn child or listen to the heartbeat of the unborn child are available to the woman. The physician performing the abortion, qualified technician, or referring physician shall inform the woman that the printed materials and Web site described in G.S. 90-21.83 and G.S. 90-21.84 contain phone numbers and addresses for facilities that offer the services free of charge. If requested by the woman, the physician or qualified professional shall provide to the woman the list as compiled by the Department.
    - f. If the physician who is to perform the abortion has no liability insurance for malpractice in the performance or attempted performance of an abortion, that information shall be communicated.
    - g. The location of the hospital that offers obstetrical or gynecological care located within 30 miles of the location where the abortion is performed or induced and at which the physician performing or inducing the abortion has clinical privileges. If the physician who will perform the abortion has no local hospital admitting privileges, that information shall be communicated.

  If the physician or qualified professional does not know the information required in sub-subdivisions a., f., or g. of this subdivision, the woman shall be advised that this information will be directly available from the physician who is to perform the abortion. However, the fact that the physician or qualified professional does not know the information required in sub-subdivisions a., f., or g. shall not restart the 24-hour period. The information required by this subdivision shall be provided in English and in each language that is the primary language of at least two percent (2%) of the State's population. The information may be provided orally either by telephone or in person, in which case the required information may be based on facts supplied by the woman to the physician and whatever other relevant information is reasonably available. The information required by this

Case 1:11-cv-00804-CCE-LPA   Document 57-1   Filed 12/01/11   Page 2 of 7

subdivision may not be provided by a tape recording but shall be provided during a consultation in which the physician is able to ask questions of the patient and the patient is able to ask questions of the physician. If, in the medical judgment of the physician, a physical examination, tests, or the availability of other information to the physician subsequently indicates a revision of the information previously supplied to the patient, then that revised information may be communicated to the patient at any time before the performance of the abortion. Nothing in this section may be construed to preclude provision of required information in a language understood by the patient through a translator.
 (2) The physician or qualified professional has informed the woman, either by telephone or in person, of each of the following at least 24 hours before the abortion:
  a. That medical assistance benefits may be available for prenatal care, childbirth, and neonatal care.
  b. That public assistance programs under Chapter 108A of the General Statutes may or may not be available as benefits under federal and State assistance programs.
  c. That the father is liable to assist in the support of the child, even if the father has offered to pay for the abortion.
  d. That the woman has other alternatives to abortion, including keeping the baby or placing the baby for adoption.
  e. That the woman has the right to review the printed materials described in G.S. 90-21.83, that these materials are available on a State-sponsored Web site, and the address of the State-sponsored Web site. The physician or a qualified professional shall orally inform the woman that the materials have been provided by the Department and that they describe the unborn child and list agencies that offer alternatives to abortion. If the woman chooses to view the materials other than on the Web site, the materials shall either be given to her at least 24 hours before the abortion or be mailed to her at least 72 hours before the abortion by certified mail, restricted delivery to addressee.
  f. That the woman is free to withhold or withdraw her consent to the abortion at any time before or during the abortion without affecting her right to future care or treatment and without the loss of any State or federally funded benefits to which she might otherwise be entitled.
The information required by this subdivision shall be provided in English and in each language that is the primary language of at least two percent (2%) of the State's population. The information required by this subdivision may be provided by a tape recording if provision is made to record or otherwise register specifically whether the woman does or does not choose to have the printed materials given or mailed to her. Nothing in this subdivision shall be construed to prohibit the physician or qualified professional from e-mailing a Web site link to the materials described in this subdivision or G.S. 90-21.83.
 (3) The woman certifies in writing, before the abortion, that the information described in subdivisions (1) and (2) of this section has been furnished her and that she has been informed of her opportunity to review the information referred to in sub-subdivision (2)e. of this section. The original of this certification shall be maintained in the woman's medical records, and a copy shall be given to her.
 (4) Before the performance of the abortion, the physician who will perform the abortion or the qualified technician must receive a copy of the written certification required by subdivision (3) of this section.

"**§ 90-21.83. Printed information required.**
 (a) Within 90 days after this Article becomes effective, the Department shall publish in English and in each language that is the primary language of at least two percent (2%) of the State's population and shall cause to be available on the State Web site established under

Case 1:11-cv-00804-CCE-LPA Document 57-1 Filed 12/01/11 Page 3 of 7

G.S. 90-21.84, the following printed materials in a manner that ensures that the information is comprehensible to a person of ordinary intelligence:
> (1) Geographically indexed materials designed to inform a woman of public and private agencies and services available to assist her through pregnancy, upon childbirth, and while the child is dependent, including adoption agencies. The information shall include a comprehensive list of the agencies available, a description of the services they offer, including which agencies offer, at no cost to the woman, imaging that enables the woman to view the unborn child or heart tone monitoring that enables the woman to listen to the heartbeat of the unborn child, and a description of the manner, including telephone numbers, in which they might be contacted. In the alternative, in the discretion of the Department, the printed materials may contain a toll-free, 24-hour-a-day telephone number that may be called to obtain, orally or by tape recorded message tailored to the zip code entered by the caller, a list of these agencies in the locality of the caller and of the services they offer.
> (2) Materials designed to inform the woman of the probable anatomical and physiological characteristics of the unborn child at two-week gestational increments from the time a woman can be known to be pregnant until full term, including pictures or drawings representing the development of the unborn child at two-week gestational increments. The pictures shall contain the dimensions of the unborn child, information about brain and heart functions, the presence of external members and internal organs, and be realistic and appropriate for the stage of pregnancy depicted. The materials shall be objective, nonjudgmental, and designed to convey only accurate scientific information about the unborn child at the various gestational ages. The material shall contain objective information describing the methods of abortion procedures employed, the medical risks associated with each procedure, the possible adverse psychological effects of abortion, as well as the medical risks associated with carrying an unborn child to term.

(b) The materials referred to in subsection (a) of this section shall be printed in a typeface large enough to be clearly legible. The Web site provided for in G.S. 90-21.84 shall be maintained at a minimum resolution of 70 DPI (dots per inch). All pictures appearing on the Web site shall be a minimum of 200x300 pixels. All letters on the Web site shall be a minimum of 12-point font. All information and pictures shall be accessible with an industry-standard browser requiring no additional plug-ins.

(c) The materials required under this section shall be available at no cost from the Department upon request and in appropriate numbers to any physician, person, health facility, hospital, or qualified professional.

"**§ 90-21.84. Internet Web site.**
The Department shall develop and maintain a stable Internet Web site to provide the information described under G.S. 90-21.83. No information regarding who accesses the Web site shall be collected or maintained. The Department shall monitor the Web site on a regular basis to prevent and correct tampering.

"**§ 90-21.85. Display of real-time view requirement.**
(a) Notwithstanding G.S. 14-45.1, except in the case of a medical emergency, in order for the woman to make an informed decision, at least four hours before a woman having any part of an abortion performed or induced, and before the administration of any anesthesia or medication in preparation for the abortion on the woman, the physician who is to perform the abortion, or qualified technician working in conjunction with the physician, shall do each of the following:
> (1) Perform an obstetric real-time view of the unborn child on the pregnant woman.
> (2) Provide a simultaneous explanation of what the display is depicting, which shall include the presence, location, and dimensions of the unborn child within the uterus and the number of unborn children depicted. The individual performing the display shall offer the pregnant woman the opportunity to hear the fetal heart tone. The image and auscultation of fetal heart tone shall be of a quality consistent with the standard medical practice in the

Case 1:11-cv-00804-CCE-LPA   Document 57-1   Filed 12/01/11   Page 4 of 7

community. If the image indicates that fetal demise has occurred, a woman shall be informed of that fact.
(3) Display the images so that the pregnant woman may view them.
(4) Provide a medical description of the images, which shall include the dimensions of the embryo or fetus and the presence of external members and internal organs, if present and viewable.
(5) Obtain a written certification from the woman, before the abortion, that the requirements of this section have been complied with, which shall indicate whether or not she availed herself of the opportunity to view the image.
(6) Retain a copy of the written certification prescribed by subdivision (a)(5) of this section. The certification shall be placed in the medical file of the woman and shall be kept by the abortion provider for a period of not less than seven years. If the woman is a minor, then the certification shall be placed in the medical file of the minor and kept for at least seven years or for five years after the minor reaches the age of majority, whichever is greater.

If the woman has had an obstetric display of a real-time image of the unborn child within 72 hours before the abortion is to be performed, the certification of the physician or qualified technician who performed the procedure in compliance with this subsection shall be included in the patient's records and the requirements under this subsection shall be deemed to have been met.

(b) Nothing in this section shall be construed to prevent a pregnant woman from averting her eyes from the displayed images or from refusing to hear the simultaneous explanation and medical description.

(c) In the event the person upon whom the abortion is to be performed is an unemancipated minor, as defined in G.S. 90-21.6(1), the information described in subdivisions (a)(2) and (a)(4) of this section shall be furnished and offered respectively to a person required to give parental consent under G.S. 90-21.7(a) and the unemancipated minor. The person required to give consent in accordance with G.S. 90-21.7(a), as appropriate, shall make the certification required by subdivision (a)(5) of this section. In the event the person upon whom the abortion is to be performed has been adjudicated mentally incompetent by a court of competent jurisdiction, the information shall be furnished and offered respectively to her spouse or a legal guardian if she is married or, if she is not married, to one parent or a legal guardian and the woman. The spouse, legal guardian, or parent, as appropriate, shall make the certification required by subdivision (a)(5) of this section. In the case of an abortion performed pursuant to a court order under G.S. 90-21.8(e) and (f), the information described in subdivisions (a)(2) and (a)(4) of this section shall be provided to the minor, and the certification required by subdivision (a)(5) of this section shall be made by the minor.

"§ 90-21.86. Procedure in case of medical emergency.

When a medical emergency compels the performance of an abortion, the physician shall inform the woman, before the abortion if possible, of the medical indications supporting the physician's judgment that an abortion is necessary to avert her death or that a 24-hour delay will create a serious risk of substantial and irreversible impairment of a major bodily function, not including psychological or emotional conditions. As soon as feasible, the physician shall document in writing the medical indications upon which the physician relied and shall cause the original of the writing to be maintained in the woman's medical records and a copy given to her.

"§ 90-21.87. Informed consent for a minor.

If the woman upon whom an abortion is to be performed is an unemancipated minor, the voluntary and informed written consent required under G.S. 90-21.82 shall be obtained from the minor and from the adult individual who gives consent pursuant to G.S. 90-21.7(a).

"§ 90-21.88. Civil remedies.

(a) Any person upon whom an abortion has been performed and any father of an unborn child that was the subject of an abortion may maintain an action for damages against the person who performed the abortion in knowing or reckless violation of this Article. Any person upon whom an abortion has been attempted may maintain an action for damages against the person who performed the abortion in willful violation of this Article.

(b) Injunctive relief against any person who has willfully violated this Article may be sought by and granted to (i) the woman upon whom an abortion was performed or attempted to be performed in violation of this Article, (ii) any person who is the spouse, parent, sibling, or

Case 1:11-cv-00804-CCE-LPA   Document 57-1   Filed 12/01/11   Page 5 of 7

guardian of, or a current or former licensed health care provider of, the woman upon whom an abortion has been performed or attempted to be performed in violation of this Article, or (iii) the Attorney General. The injunction shall prevent the abortion provider from performing or inducing further abortions in this State in violation of this Article.

(c) If judgment is rendered in favor of the plaintiff in any action authorized under this section, the court shall also tax as part of the costs reasonable attorneys' fees in favor of the plaintiff against the defendant. If judgment is rendered in favor of the defendant and the court finds that the plaintiff's suit was frivolous or brought in bad faith, then the court shall tax as part of the costs reasonable attorneys' fees in favor of the defendant against the plaintiff.

"**§ 90-21.89. Protection of privacy in court proceedings.**

In every proceeding or action brought under this Article, the court shall rule whether the anonymity of any woman upon whom an abortion has been performed or attempted shall be preserved from public disclosure if she does not give her consent to the disclosure. The court, upon motion or sua sponte, shall make the ruling and, upon determining that her anonymity should be preserved, shall issue orders to the parties, witnesses, and counsel and shall direct the sealing of the record and exclusion of individuals from courtrooms or hearing rooms to the extent necessary to safeguard her identity from public disclosure. Each order issued pursuant to this section shall be accompanied by specific written findings explaining (i) why the anonymity of the woman should be preserved from public disclosure, (ii) why the order is essential to that end, (iii) how the order is narrowly tailored to serve that interest, and (iv) why no reasonable less restrictive alternative exists. In the absence of written consent of the woman upon whom an abortion has been performed or attempted, anyone who brings an action under G.S. 90-21.88 (a) or (b) shall do so under a pseudonym. This section may not be construed to conceal the identity of the plaintiff or of witnesses from the defendant.

"**§ 90-21.90. Assurance of informed consent.**

(a) All information required to be provided under G.S. 90-21.82 to a woman considering abortion shall be presented to the woman individually and, except for information that may be provided by telephone, in the physical presence of the woman and in a language the woman understands to ensure that the woman has adequate opportunity to ask questions and to ensure the woman is not the victim of a coerced abortion.

(b) Should a woman be unable to read the materials provided to the woman pursuant to this section, a physician or qualified professional shall read the materials to the woman in a language the woman understands before the abortion.

"**§ 90-21.91. Assurance that consent is freely given.**

If a physician acting pursuant to this Article has reason to believe that a woman is being coerced into having an abortion, the physician or qualified professional shall inform the woman that services are available for the woman and shall provide the woman with private access to a telephone and information about, but not limited to, each of the following services:

(1) Rape crisis centers.
(2) Shelters for victims of domestic violence.
(3) Restraining orders.
(4) Pregnancy care centers.

"**§ 90-21.92. Severability.**

If any one or more provision, section, subsection, sentence, clause, phrase, or word of this Article or the application thereof to any person or circumstance is found to be unconstitutional, the same is hereby declared to be severable, and the balance of this Article shall remain effective, notwithstanding such unconstitutionality. The General Assembly hereby declares that it would have passed this Article, and each provision, section, subsection, sentence, clause, phrase, or word thereof, irrespective of the fact that any one or more provision, section, subsection, sentence, clause, phrase, or word be declared unconstitutional."

**SECTION 2.** The Department of Health and Human Services shall use funds appropriated to it in implementing this act.

Case 1:11-cv-00804-CCE-LPA   Document 57-1   Filed 12/01/11   Page 6 of 7

**SECTION 3.** This act becomes effective 90 days after it becomes law and applies to claims for relief arising on or after October 1, 2011.

In the General Assembly read three times and ratified this the 16th day of June, 2011.

        s/ Walter H. Dalton
           President of the Senate

        s/ Thom Tillis
           Speaker of the House of Representatives

        VETO   Beverly E. Perdue
           Governor

Became law notwithstanding the objections of the Governor, 12:07 p.m. this 28th day of July, 2011.

        s/ Sarah Clapp
           Senate Principal Clerk

Case 1:11-cv-00804-CCE-LPA   Document 57-1   Filed 12/01/11   Page 7 of 7