# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GRETCHEN S. STUART, M.D., et al., )
)
        Plaintiffs, )
)
v. )      CIVIL ACTION
)
JANICE E. HUFF, M.D., et al., )      Case No. 1:11-cv-00804
)
        Defendants. )

## PLAINTIFFS' BRIEF IN OPPOSITION TO

## PROPOSED DEFENDANT-INTERVENORS'

## MOTION TO INTERVENE

# TABLE OF CONTENTS

Page

STATEMENT OF THE MATTER BEFORE THE COURT ............................................. 1

STATEMENT OF FACTS ............................................................................................. 1

QUESTION PRESENTED .............................................................................................. 4

ARGUMENT ................................................................................................................... 4

I.   THE PROPOSED INTERVENORS DO NOT SATISFY THE CRITERIA
     FOR INTERVENTION AS OF RIGHT ............................................................. 4

     A.   None of the Proposed Intervenors Has an Interest in this Litigation
          That Would Be Impaired if the Plaintiffs Are Successful ........................... 4

          1.   The Proposed Intervenors' Generalized Interest in Upholding
               the Act Is Not a Cognizable Interest or One That Could Be
               Practically Impaired If Plaintiffs Are Successful .............................. 6

          2.   The Medical Professionals' and CPCs' Highly Speculative
               Claimed Interest in Performing Certifications Under the Act
               Does Not Rise to the Level of a Cognizable Interest ........................ 7

          3.   The Proposed Intervenors Claim a Speculative Interest in
               Pursuing Civil Remedies Pursuant to the Act ................................. 10

     B.   The Proposed Intervenors Have Not Met Their Burden of
          Establishing that the State Attorney General's Office Will Not
          Adequately Represent Their Claimed Interests ......................................... 11

          1.   The Identity of Proposed Intervenors' Interests with
               Defendants' Interests Creates a Presumption of Adequate
               Representation That Proposed Intervenors Have Not Rebutted ...... 12

          2.   The Proposed Intervenors Have Similarly Failed to Rebut the
               Presumption That Representation by the State Attorney
               General's Office Is Adequate ......................................................... 13

II.  THE PROPOSED INTERVENORS ALSO DO NOT SATISFY THE
     CRITERIA FOR PERMISSIVE INTERVENTION ............................................ 14

     A.   The Proposed Intervenors Fail to Demonstrate Why They Are
          Entitled To Permissive Intervention ......................................................... 14

     B.   This Court Should Not Use Its Discretion to Allow the Nine
          Proposed Intervenors to Become Parties to This Action Because
          They Will Unduly Delay and Prejudice the Adjudication of the
          Lawsuit ...................................................................................................... 16

**TABLE OF CONTENTS**
(continued)

III.   THE PROPOSED INTERVENORS' MOTION IS UNTIMELY ......................... 18

IV.   THE PROPOSED INTERVENORS ARE BETTER-SUITED TO
       PARTICIPATE IN THIS LITIGATION AS WITNESSES AND/OR
       *AMICUS CURIAE*, AND NOT AS PARTIES ...................................................... 19

CONCLUSION ............................................................................................................. 20

Case 1:11-cv-00804-CCE-LPA   Document 58   Filed 12/02/11   Page 3 of 28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Farm Bureau Fed'n v. U.S. Envtl. Protection Agency,*
  No. 1:11-CV-0067, 2011 U.S. Dist. LEXIS 118233 (M.D. Pa. Oct. 13, 2011) ............. 5

*Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.,*
  772 F.2d 401 (8th Cir. 1985) ........................................................................ 19

*Bradley v. Milliken,*
  828 F. 2d 1186 (6th Cir. 1987) ...................................................................... 20

*Bragg v. Robertson,*
  183 F.R.D. 494 (S.D. W.Va. 1998) ................................................................ 12

*Daggett v. Comm'n on Govt'l Ethics,*
  172 F.3d 104 (1st Cir. 1999) ......................................................................... 13

*Diamond v. Charles,*
  476 U.S. 54 (1986) ............................................................................... 5, 14-15

*Gould v. Alleco, Inc.,*
  883 F.2d 281 (4th Cir. 1989) ........................................................................... 5

*Hodes & Nauser, MDs, P.A. v. Moser,*
  No. 2:11-cv-02365-CM-KMH, 2011 WL 4553061 (D. Kan. Sept. 29, 2011) ....... 10, 14

*Houston Gen. Ins. Co. v. Moore,*
  193 F.3d 838 (4th Cir. 1999) ......................................................................... 18

*JLS, Inc. v. Pub. Serv. Comm'n,*
  Nos. 08-1331, 08-1338, 2009 WL 726011 (4th Cir. Mar. 20, 2009) ........................... 45

*Kane Cnty. v. United States,*
  597 F.3d 1129 (10th Cir. 2010) ........................................................................ 5

*MasterCard Int'l Inc. v. Visa Int'l Service Ass'n, Inc.,*
  471 F.3d 377 (2d Cir. 2006) ........................................................................... 19

*Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n,*
  646 F.2d 117 (4th Cir. 1981) ........................................................................ 4, 8

*Patterson v. Shumate,*
  913 F.2d 463 (4th Cir. 1990) ........................................................................... 4

*Roe v. Casey,*
  464 F. Supp 483 (E.D. Pa. 1978) ................................................................... 20

*Rutherford Cnty. v. Bond Safeguard Ins. Co.,*
  1:2009-cv-00292, 2009 U.S. Dist. LEXIS 127842 (W.D.N.C. Dec. 3, 2009) ............ 4-5

-iii-

*Sierra Club v. South Carolina*,
945 F.2d 776 (4th Cir. 1991)........................................................................ 6, 8

*United States Postal Serv. v. Brennan*,
579 F.2d 188 (2d Cir. 1978)............................................................................ 12

*United States v. Hooker Chems. & Plastics Corp.*,
749 F.2d 968 (2d Cir. 1984)............................................................................ 13

*United States v. Ritchie Special Credit Invs.*,
620 F.3d 824 (8th Cir. 2010)........................................................................... 18

*Wade v. Goldschmidt*,
673 F.2d 182 (7th Cir. 1982)........................................................................... 13

**Statutes**

Woman's Right To Know Act, 2011 N.C. Sess. Laws 405....................................... passim


**Rules**

10 A N.C. Admin. Code 14E.0305(d)................................................................... 8

Fed. R. Civ. P. 24 ................................................................................... passim

**Other Authorities**

6 *Moore's Federal Practice*, § 23.03 (Matthew Bender 3d ed. 2011)........................ 13, 14

*New abortion law causing confusion*, WTVD-TV (Sept. 30, 2011),
http://abclocal.go.com/wtvd/story?section=news/local&id=8374474............................ 1

*Raw Video: Interview with Rep. Skip Stam*,
http://abclocal.go.com/wtvd/video?id=8373240.......................................................... 18

Case 1:11-cv-00804-CCE-LPA   Document 58   Filed 12/02/11   Page 5 of 28

## STATEMENT OF THE MATTER BEFORE THE COURT

This suit challenges the constitutionality of certain parts of the North Carolina Woman's Right To Know Act ("the Act"), 2011 N.C. Sess. Laws 405 (codified at N.C. Gen. Stat. §§ 90-21-80 – 90.21.92), which regulates the provision of abortions. The regulation of abortion is obviously a hotly disputed issue about which many people hold strong personal opinions. Nine of those people—three physicians who do not provide abortions, four women who claim to have had abortions many years ago, and two entities that seek to encourage pregnant women to continue their pregnancies rather than have abortions—now move to join this suit as Defendant-Intervenors. The motion should be denied. When parsed, the Proposed Intervenors' asserted interests in this litigation consist only of a generalized interest in the Act's enforcement and several speculative interests that they incorrectly believe entitle them to intervention. Their assertions are based on a fundamental misunderstanding of the Act's requirements, the Plaintiffs' claims, and this Court's ruling. And there is no reason whatsoever to allow intervention here, where the North Carolina Attorney General, representing the state officials with enforcement authority under the Act, is actively defending the Act's constitutionality.

## STATEMENT OF FACTS

On September 29, 2011, Plaintiffs filed a well-publicized and widely-reported[1] complaint and motion for a temporary restraining order and preliminary injunction (Compl., ECF No. 1; Mot. TRO & PI, ECF No. 8.) The complaint challenges a few

---

[1] *See, e.g., New abortion law causing confusion*, WTVD-TV (Sept. 30, 2011), http://abclocal.go.com/wtvd/story?section=news/local&id=8374474.

provisions of the Act. Section 90-21.85—the "Display and Real-time View Requirement"—is challenged on the grounds it violates the U.S. Constitution in six ways. (Compl. ¶¶ 3, 63-74, 76, 79-80, First to Sixth Claims for Relief; *see also* Am. Compl.). Section 90-21.90—which appears to require that a physician or other medical professional must read specified state-prepared materials to some women before they can obtain an abortion—was challenged on the grounds that it is unconstitutionally vague; additional constitutional claims are raised in the Amended Complaint (Compl. ¶ 81, First Claim for Relief; Am. Compl. ¶¶ 4, 82-86, First & Seventh to Tenth Claims for Relief). Plaintiffs also claim that some portions of the requirements in § 90-21.82 (the "24 hour information" requirements) violate due process due to vagueness. (Compl. ¶¶ 2, 39, 77-78, Claims for Relief; *see also* Am. Compl.) Nowhere in the Complaint, or Amended Complaint, do the Plaintiffs assert that they are challenging the Act's requirement for the provision of information about medical risks associated with abortion, and nowhere do they allege that the Act requires the provision of untruthful or misleading information.

Defendants opposed Plaintiffs' motion for preliminary injunctive relief on October 12 (Opp. Mot. TRO; ECF No. 29), and a hearing lasting almost three hours was held before this Court on October 17. (Transcript, ECF No. 43.) After receiving Plaintiffs' proposed orders and Defendants' responses, the Court on October 25 issued its ruling and order on the motion. (Mem. Opinion, ECF No. 39; Prelim. Injunc., ECF No. 40.) The Opinion granted Plaintiffs motion for preliminary injunction in part, holding that Plaintiffs had a high likelihood of success on the merits in their challenge to § 90-21.85.

2

The Court also issued a scheduling order calendaring a hearing and conference for December 5. (Scheduling Order, ECF No. 41.) Defendants answered and moved to dismiss the complaint on November 9 and filed a revised Answer on November 29. (Mot. to Dismiss and Answer, ECF No. 50; Answer, ECF No. 56)

On November 8, the nine Proposed Intervenors filed the instant motion to intervene. (Mot. Interv., ECF No. 44.) The Proposed Intervenors consist, by their own description, of three groups: (1) the "Medical Professionals"—Drs. John M. Thorp, Jr., Gregory J. Brannon, and Martin J. McCaffrey; (2) the "Post-Abortive Women"— Chimere Collins, Dallene Hallenbeck, Tracie Johnson, and Lanita Wilks; and (3) the "Pregnancy Medical Centers"—Asheville Pregnancy Support Services ("APSS") and the Pregnancy Resource Center of Charlotte ("PRCC"). (Mot. Interv. 1-2, ECF No. 44.) The Medical Professionals are two obstetrician/gynecologists and one neonatologist, none of whom asserts that he provides abortions. (Thorp Decl.; Brannon Decl. ¶¶ 4, 17; McCaffrey Decl.) Brannon and McCaffrey allege that they provide some patients or clients with information about risks of abortion. (Brannon Decl. ¶¶ 4, 15-17; McCaffrey Decl. ¶ 16.) Each of the "Post-Abortive Women" asserts that she previously had an abortion (Hallenbeck Decl. ¶ 3 (alleging abortion in 1993); Johnson Decl. ¶ 3 (same in 1995); Wilks Decl. ¶¶ 11-12 (same in 1999); Collins Decl. ¶¶ 3, 13 (same in 2003)), but none asserts that she is pregnant or that she would contemplate an abortion in the future. The two "Pregnancy Medical Centers" or "crisis pregnancy centers" ("CPCs") do not provide or refer patients for abortions. (*See* Forsythe Decl. ¶ 4; Wood Decl. ¶ 4.)

3

## QUESTION PRESENTED

Whether third parties with general and highly speculative "interests" in a state statute whose constitutionality is being defended by the State's Attorney General should be granted defendant-intervenor status, either as of right, pursuant to Fed. R. Civ. P. 24(a)(2), or permissively, pursuant to Fed. R. Civ. P. 24(b)(1)(B).

## ARGUMENT

### I.   THE PROPOSED INTERVENORS DO NOT SATISFY THE CRITERIA FOR INTERVENTION AS OF RIGHT.

The Proposed Intervenors fail to meet the criteria for intervention as of right. "To intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), the moving party must show that (1) it has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties." *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir. 1981). Failure to meet any one of these criteria must result in denial of the motion to intervene. In this case, the Proposed Intervenors fail to satisfy all three.

#### A.   None of the Proposed Intervenors Has a Cognizable Interest in this Litigation That Would Be Impaired if the Plaintiffs Are Successful.

To intervene as of right, the Proposed Intervenors must have a "cognizable," *Patterson v. Shumate*, 913 F.2d 463, 463 (4th Cir. 1990), and "significantly protectable" interest in the subject matter of the case, *JLS, Inc. v. Pub. Serv.*, Nos. 08-1331, 08-1338, 2009 WL 726011, at *3 (4th Cir. Mar. 20, 2009); *see also Rutherford Cnty. v. Bond*

4

*Safeguard Ins. Co.*, No. 1:2009-cv-00292, 2009 U.S. Dist. LEXIS 127842 (W.D.N.C.

Dec. 3, 2009) ("Where the intervenor stands 'to gain or lose by the ***direct*** legal operation

of the district court's judgment,' the intervenor's interest in the subject matter of the

litigation is significantly protectable." (quoting *Teague v. Bakker*, 931 F.2d 259, 261 (4th

Cir. 1991) (emphasis added))).

A generalized interest in the enforcement of the Act does not satisfy this standard.

*See Kane Cnty. v. United States*, 597 F.3d 1129, 1136 (10th Cir. 2010). For instance, in

*Gould v. Alleco, Inc.*, the Fourth Circuit held that even the interest of a shareholder in the

company involved in the litigation was not a cognizable legal interest for purposes of

intervention. 883 F.2d 281, 285 (4th Cir. 1989) ("In a sense, every company's

stockholders, bondholders, directors and employees have a stake in the outcome of any

litigation involving the company, but this alone is insufficient to imbue them with the

degree of 'interest' required for Rule 24(a) intervention."). Simply believing that the

statute should be enforced does not rise to the level of a protectable interest. *See*

*Diamond v. Charles*, 476 U.S. 54, 66 (1986) (O'Connor, J. concurring) (noting that

"[proposed intervenor's] 'desire that the Illinois Abortion Law as written be obeyed,'" is

not significantly protectable). "[A] mere general interest in the subject matter of the

litigation is not enough to constitute a protectable interest under Rule 24(a)." *Am. Farm*

*Bureau Fede'n v. United States Envtl. Protection Agency*, No. 1:11-CV-0067, 2011 U.S.

Dist. LEXIS 118233, at *15 (M.D. Pa. Oct. 13, 2011).

Nor is the "cognizable" and "significantly protectable" injury standard satisfied by

the assertion of a mere "speculative future interest." *Sierra Club v. South Carolina*, 945 F.2d 776, 779 n.8 (4th Cir. 1991). Indeed, the Fourth Circuit has explicitly used "anti-abortion groups who seek to intervene in suits challenging the constitutionality of statutes regulating abortion" as exemplars of those ***not*** entitled to intervene, because they would seek "to intervene merely as a lobbyist or because of a ***speculative future interest***." *Id.* (emphasis added).

That analysis applies directly here. Rather than presenting any "cognizable" or "significantly protectable" interest, the Proposed Intervenors assert only a general interest in upholding the Act, and purely speculative interests insufficient to support intervention.

       **1.**     **The Proposed Intervenors' Generalized Interest in Upholding the Act Is Not a Cognizable Interest or One That Could Be Practically Impaired If Plaintiffs Are Successful.**

The Proposed Intervenors' principal assertion of interest in this lawsuit is not a cognizable interest sufficient to support intervention. Rather, it is precisely the type of generalized interest in the subject of the litigation, *see* Mot. Interv. 1-2, ¶¶ 2, 4, that courts have consistently rejected as grounds for intervention.

For all the voluminous materials submitted in support of the Proposed Intervenors' motion, the vast majority of their assertions boil down to nothing more than a generalized interest in the Act being upheld. For instance, the Medical Professionals profess an interest in "assuring that all the provisions of the Act . . . are fully implemented to best protect the medical health of North Carolina women" (Memo. in Support of Mot. to Intervene ("Intervs' Mem.") at 1, ECF No. 45), and, at length, discuss informed consent

6

and "medical risk" (Thorpe Decl. ¶¶ 13-37; McCaffery Decl. ¶¶ 5-23; Brannon Decl. ¶¶ 6-13, 19-25). Similarly, the CPCs assert that insufficient information had been provided to women seeking abortions, and that this Act would remedy that situation. (Wood Decl. ¶ 13; Forsythe Decl. ¶ 16.) And the Post-Abortive Women contend that they have an interest in the Act because of their own experiences with abortions which were not subject to the Act. (Collins Decl. ¶¶ 3-27; Hallenbeck Decl. ¶¶ 3-12, 22-29; Johnson Decl. ¶¶ 3-22; Wilks Decl. ¶¶ 4-25, 31-35). But if such "interests" were sufficient to justify intervention, any concerned citizen could become a party to a lawsuit challenging a statute they felt was needed and should be enforced, and any physician whose patients include women could join this suit. These generalized assertions are not legally cognizable interests specific to the Proposed Intervenors, and they therefore do not meet the interest threshold of Rule 24(a)(2).

> **2.** **The Medical Professionals' and CPCs' Highly Speculative Claimed Interest in Performing Certifications Under the Act Does Not Rise to the Level of a Cognizable Interest.**

The Medical Professionals and CPCs also claim an interest in performing certifications under §§ 90-21.82 and 90-21.85 of the Act. (*See* Mot. Interv. 3, ¶ 2.) But this interest requires speculation about future events unsupported by logic or evidence and is insufficient to satisfy Rule 24(a)(2). Moreover, the Proposed Intervenors' arguments related to § 90-21.82 are irrelevant to any of Plaintiffs' claims.

Plaintiffs are challenging § 90-21.82 based only on the vagueness of several sections, not based on the specific information required. If the Plaintiffs are successful, §

90-21.82 would remain in effect with a more precise construction. Thus, any conceivable interest that the Medical Professionals and CPCs could have in providing certifications of compliance with § 90-21.82 will not be impaired (or even impacted) by this lawsuit. And in the absence of any showing of impairment, intervention is not appropriate. *See Newport News Shipbuilding & Drydock Co.*, 646 F.2d at 120.

As to § 90-21.85, the CPCs claim that they have an interest entitling them to intervene because the Act could provide them with increased opportunities to provide ultrasound certifications to women.[2] But that suggestion is, at best, a poorly reasoned speculative future interest. *See Sierra Club*, 945 F.2d at 779 n.8 (discounting speculative interests). APSS and PRCC do not establish that any woman seeking an abortion would come to them to satisfy the requirements of § 90-21.85 rather than having the ultrasound performed where the woman is seeking her abortion. After all, there is already a legal requirement that an ultrasound be performed before a woman can have an abortion at a certified facility. 10A N.C. Admin. Code 14E.0305(d).

In an effort to get outside of the realm of speculation, the CPCs supply false—or, at best, misleading—statements about possible referrals from Femcare and Planned Parenthood Health Systems ("PPHS"). Femcare's owner attests that it does not have a referral agreement with APSS; it has not referred, and does not have plans to refer, any women to APSS; the only conceivable referrals which it might make to APSS would

---

[2] The Medical Professionals do not assert that they would seek to certify ultrasounds pursuant to § 90-21.85 or would see an increased number of women because of the Act.

pertain to the 24 hour information; and it has not and would not refer women to APSS for the ultrasound required by the Act or rely on a certification of the ultrasound requirements from APSS. (Cummings Decl. ¶¶ 9-10, 11-16.) PPHS has not made referrals to PRCC, APSS, or any other crisis pregnancy center for any service, nor does PPHS have plans to do so under the Act. (Naff-Mlo Decl. ¶¶ 10-11.) Thus, any interest the CPCs claim based on referrals from Femcare or PPHS is entitled to no credence.

Even if some women were to seek ultrasounds from someone other than their abortion provider, there is no evidence to suggest that they would visit APSS or PRCC as opposed to their own doctor or another facility in North Carolina. If such an interest were sufficient to intervene in this litigation, every doctor, clinic, and organization that provides ultrasounds would have a cognizable legal interest in this lawsuit because they might see one or more women due to the Act.

Finally, the Medical Professionals inexplicably assert that they need to intervene because this suit puts them at risk of being "forced" to make untrue statements in relation to §§ 90-21.81 and 90-21.85 and that they would be subject to liability for making true statements if the Act is found unconstitutional. (Thorp Decl. ¶¶ 38-41; Brannon Decl. ¶¶ 27-29; McCaffrey Decl. ¶¶ 27-30.)[3] That is wrong. Whether or not any section of the

---

[3] For example, Dr. Thorp asserts that "If . . . the Act [were] declared unconstitutional because the law required non-truthful and misleading facts or mere ideology, . . . it would amount to an affirmation that all of the counseling [he has] provided was false or misleading and could thereby subject [him] to the following adverse outcomes: civil liability; possible disciplinary action by the state medical regulatory authority which could include suspension or revocation of [his] medical license." (Thorp Decl. ¶ 40.)

9

Act is found unconstitutional, the Medical Professionals will remain free to perform ultrasounds, describe the ultrasounds, and tell their patients whatever information they believe is proper regardless of the Act's enforcement status. Similarly, the CPCs will not be restricted in what information or experiences they provide as a result of Plaintiffs' challenges or this Court's rulings. In short, if Plaintiffs prevail in this lawsuit, no one—not any Proposed Intervenor, and not anyone else—will be forced as a result to do or say anything or be forbidden from doing or saying anything that they can do or say now.

### 3. The Proposed Intervenors Claim a Speculative Interest in Pursuing Civil Remedies Pursuant to the Act.

The Proposed Intervenors also claim an interest in pursuing, at some unspecified point in the future, civil remedies made available by the Act in § 90-21.88. *See* Mot. Interv. 4, ¶¶ 3, 5-6. That interest, too, is purely hypothetical and speculative. Proposed Intervenors identify nothing to suggest that they will in fact have cause to bring suit under the Act. Thus, any such lawsuit would be "too remote and speculative to justify intervention as of right." *Hodes & Nauser, MDs, P.A. v. Moser*, No. 2:11-cv-02365-CM-KMH, 2011 WL 4553061, at *2 (D. Kan. Sept. 29, 2011) (finding assertions of interests of pro-life physicians too remote and speculative to support intervention).

Practically, for the Medical Professionals to have a civil remedy under § 90-21.88, they would have to see a future patient who had previously received an abortion while the Act was in force and learn that the person who performed that patient's abortion willfully

violated the Act.[4] *See* § 90-21.88(b). For any of the Post-Abortive Women to have a cause of action under the Act, she would need to become pregnant again, decide to seek an abortion, and her abortion provider would then need to knowingly, recklessly, or willfully violate some requirement of the Act.[5] These hypothetical scenarios do not create cognizable interests.

The fact that a statute provides civil remedies for certain groups *if* the Act is violated in the future does not invite every person who could conceive of a scenario in which she might have a future claim to become party to a constitutional challenge to that statute. The asserted interests are too attenuated to give rise to a cognizable legal interest.

**B.    The Proposed Intervenors Have Not Met Their Burden of Establishing that the State Attorney General's Office Will Not Adequately Represent Their Claimed Interests.**

In addition, the Proposed Intervenors have not met their burden of establishing inadequate representation as required by Rule 24(a)(2). Representation is presumed adequate both when there is an identity of interests between the proposed intervenor and an existing party and when an existing party is a government agency. The Proposed Intervenors have not rebutted either presumption here.

---

[4] The CPCs are not "licensed health care providers" and do not come within any of the other categories listed in § 90-21.88 and so would not be able to pursue a civil remedy under that Section even if all the other predicates for such a claim came to pass.

[5] Based on the statements that each of these women make about their abortion experiences and their present views about abortion, it is utterly implausible to believe that these *particular* women would seek to terminate a pregnancy if they became pregnant in the future. And the Act does not provide a remedy for women who obtained abortions prior to when the Act went into effect. *See* Act § 90-21.88.

11

1. **The Identity of Proposed Intervenors' Interests with Defendants' Interests Creates a Presumption of Adequate Representation That Proposed Intervenors Have Not Rebutted.**

"[W]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which *the petitioner must demonstrate adversity of interest, collusion, or nonfeasance.*" *Bragg v. Robertson*, 183 F.R.D. 494, 496 (S.D. W.Va. 1998); *see also U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (affirming denial of intervention to postal union, finding representation by Postal Service adequate where both held same ultimate objective to uphold the constitutionality of a statute and regulatory scheme). Here, the Proposed Intervenors have not asserted, much less demonstrated, that the government Defendants are guilty of collusion or nonfeasance. In fact, the government Defendants have vigorously addressed the legal issues before the court, filing a 20-page opposition to the Plaintiffs' preliminary injunction, strenuously arguing against issuance of any injunction and opposing Plaintiffs' proposed orders.

The Proposed Intervenors have also failed to show an "adversity of interest[s]" with the Defendants. The Proposed Intervenors and the Defendants have the same ultimate objective: defending the Act against Plaintiffs' constitutional challenge, and assuring its ongoing validity and enforcement. Although the Proposed Intervenors baldly refer to the "potential[] diverge[nce]" of their interests from those of the government Defendants (Mot. Interv. at 5), they point only to differences in litigation strategy and

12

access to evidence, *id.*, neither of which establishes that their interests are adverse.[6] The

Proposed Intervenors have thus failed to rebut the presumption of adequate

representation. Intervention is improper.

### 2. The Proposed Intervenors Have Similarly Failed to Rebut the Presumption That Representation by the State Attorney General's Office Is Adequate.

The Proposed Intervenors' burden to show inadequacy of representation is

especially formidable here, because there is a presumption that the government

adequately represents the interests of its citizens, which can only be rebutted with a

"strong showing" that the representation is inadequate. *United States v. Hooker Chems.*

*& Plastics Corp.*, 749 F.2d 968, 987 (2d Cir. 1984). "Acting in a type of representative

capacity is a basic governmental function, and the business of government could hardly

be conducted if, in matters of litigation, individual citizens could usually or always

intervene and assert individual points of view." 6 *Moore's Federal Practice*, §

23.03[4][a][iv][A] (Matthew Bender 3d Ed. 2011); *see also, e.g., Daggett v. Comm'n on*

*Govt'l Ethics*, 172 F.3d 104, 111 (1st Cir. 1999) (government is presumed to represent

citizens adequately when it is defending a statute against attack); *Wade v. Goldschmidt*,

673 F.2d 182, 186 n.7 (7th Cir. 1982) (presumption of adequacy if applicant and

governmental party seek same ultimate objective). In this case, the Proposed Intervenors

---

[6] They also refer to "additional" interests they have: "[e]nsuring that a pregnant woman understands the potential risks and harms to the child so that she can make the decision for the child" and "preserving the 'civil remedies' granted in § 90-21.88." (Intervs' Mem. at 17.) Those are, in fact, the Defendants' interests as well, as demonstrated by their defense of the Act's constitutionality.

13

have failed to make a strong showing to rebut the presumption that the State Attorney General's Office will adequately defend against the claims in this case.

The Proposed Intervenors take issue with the government Defendants' "cho[ice] not to present any evidence prior to the October 17 hearing." (Intervs' Mem. 18; Mot. Interv. 5, ¶ 7.) But such litigation choices do not establish inadequate representation. *See* 6 *Moore's Federal Practice*, § 23.03[4][a][iii] (Matthew Bender 3d Ed. 2011) (citing *Chiglo v. City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997) (prospective intervenor "cannot not rebut presumption of representation by merely disagreeing with the litigation strategy")); *see also, e.g., Hodes & Nauser, MDs, P.A.*, 2011 WL 4553061, at *3 (distinguishing "mere[] disagreement with defendants' litigation strategy [from] . . . a genuine concern about inadequate representation"). And indeed, that choice is fully within the realm of reasonable legal strategy, since the disputes in this case have to this point been principally legal, not factual. The government Defendants adequately represent Proposed Intervenors' interests, and the motion to intervene should be denied.

## II.   THE PROPOSED INTERVENORS ALSO DO NOT SATISFY THE CRITERIA FOR PERMISSIVE INTERVENTION.

### A.   The Proposed Intervenors Fail to Demonstrate Why They Are Entitled to Permissive Intervention.

In order to be entitled to permissive intervention, the applicant must have a "claim or defense" that has "a question of law or fact in common" with "the main action." Fed. R. Civ. P. 24(b)(1)(B). And that claim or defense must be based upon a sufficient interest in the litigation. *See Diamond*, 476 U.S. at 77 (O'Connor, J., concurring) (noting that

14

permissive intervention "plainly . . . require[s] an interest sufficient to support a legal claim or defense which is 'founded upon [that] interest.'" (quoting *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 459 (1940))). Thus, to justify permissive intervention, the Proposed Intervenors must demonstrate an "actual, present interest that would permit [them] to sue or be sued . . . in an action sharing common questions of law or fact with those at issue in the litigation." *Id.*

Here, none of the Proposed Intervenors have an "actual, present interest" that "shar[es] common questions of law or fact" with those at issue in this suit. Indeed, the Proposed Intervenors themselves acknowledge that their "Answer . . . does not raise any new claims or defenses." (Intervs' Mem. at 13.) They do not assert any counter- or cross-claims and their only defenses—failure to state a claim on which relief can be granted, standing, and ripeness (Intervs' Prop'd Answer ¶ 11, ECF No. 46)—are in no way specific to them and would not entitle them to sue or be sued in this action. If such defenses were sufficient, it is hard to envision a proposed intervenor who could not show that his defense "shares with the main action a common question of law or fact."

In this situation, the Court should use its discretion to deny permissive intervention. As another court recently noted in denying permissive intervention, "defenses [that] are not unique" to the proposed intervenor "can be adequately represented by defendants," and allowing intervention "to assert [defenses such as lack of subject matter jurisdiction, Eleventh Amendment immunity, and lack of standing] would allow numerous third-parties to seek intervention on the same bases." *Hodes & Nauser,*

*MDs, P.A.*, 2011 WL 4553061, at *3.

**B.** **This Court Should Not Use Its Discretion to Allow the Nine Proposed Intervenors to Become Parties to This Action Because They Will Unduly Delay and Prejudice the Adjudication of the Lawsuit.**

In addition, this Court should exercise its discretion to deny intervention because allowing any of the nine Proposed Intervenors into the case "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). Adding additional parties after a preliminary injunction has been issued, defendants have filed an answer, and the Court will have held a discussion of "scheduling and other logistical matters" (Scheduling Order, ECF No. 41), would substantially delay the litigation. For example, one source of delay would be a likely attempt by the Proposed Intervenors to revisit the preliminary injunction order if they are allowed to intervene (*see* Mot. at 7), which Plaintiffs would of course vigorously oppose. If their submissions in support of such a motion were comparable to those filed in support of their intervention motion, Plaintiffs' opposition would necessarily include not only fact and expert testimony, but also motions to strike factual inaccuracies, improper opinion testimony, irrelevant matters, hearsay statements, and other statements which would be inadmissible as evidence for purposes of ruling on claims and defenses in this lawsuit.[7] Thus, allowing them to intervene is likely to delay reaching the permanent injunction stage of this case.

---

[7] For purposes of the intervention motion, the Proposed Intervenors' assertions are offered with reference to the issue of whether they are entitled to intervenor status and therefore their admissibility for other purposes is not currently at issue. Plaintiffs assert their right to challenge the statements in these declarations if they are later submitted or considered for other purposes, such as a motion to vacate the preliminary injunction.

Allowing the Proposed Intervenors into the litigation as parties will also unduly complicate the litigation. It is clear from their moving papers that the Proposed Intervenors flatly misconstrue their rights under the statute and this Court's ruling. They claim that as a result of the Plaintiffs' actions and this Court's recent order, they will no longer be able to provide information about abortion that they deem accurate and necessary.[8] The Court, however, did not "preliminarily determine" any disclosures mandated by the Act to be "inaccurate" speech. (*Compare* Thorp Decl. ¶ 40, Brannon Decl. ¶ 28, McCaffrey Decl. ¶ 28, *with* Opinion, ECF No. 39.) Moreover, Plaintiffs are not seeking to prevent anyone from making any statements to their patients or clients that they choose to make; rather, as noted, Plaintiffs are merely trying to prevent the State from *mandating* that Plaintiffs convey the State's message via the requirements in § 90-21.85. The Proposed Intervenors misapprehend the basic requirements of the Act, Plaintiffs' claims, and the Court's ruling, signaling that they would confuse and complicate the litigation as parties.[9]

In sum, even if the prerequisites for permissive intervention were otherwise met,

---

[8] *See, e.g.*, Thorp Decl. ¶ 40 ("Because the order and decision already entered in this case affirm that the plaintiffs have a fair chance of success since the disclosures are preliminarily determined to be inaccurate or ideological compelled speech, as a matter of fact, I am already exposed to all of the sanctions and liabilities enumerated above, and will continue to be exposed.")

[9] They also appear to mistakenly believe that the Plaintiffs are making a substantive constitutional challenge to the Act's requirement that information about abortion risks be provided, as they seek to join the case so that they can present extensive facts and opinions regarding the information they think should be provided under § 90-21.82. (*See* Thorp Decl. ¶¶ 34-41; Brannon Decl. ¶¶ 22-25, 28; McCaffrey Decl. ¶¶ 5-30.)

17

this Court should exercise its discretion to deny intervention and thus avoid needless and confusing proceedings, particularly when the North Carolina Attorney General is fully capable of defending the Act.

## III.    THE PROPOSED INTERVENORS' MOTION IS UNTIMELY.

Motions to intervene, either by right or permissively, must be timely made. Fed. R. Civ. P. 24(a) and (b). The determination of timeliness is committed to the sound discretion of the district court, *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999), and the circumstances here support exercising that discretion to deny intervention. The Proposed Intervenors say very little about the timeliness of their motion other than that it was filed "less than 45 days" after the Complaint. (Mot. Interv. at 1.) But timeliness requires a consideration of a number of factors, including not only how far the litigation has progressed, but also the movant's prior knowledge of the pending action and the reason for the delay in seeking intervention. *See United States v. Ritchie Special Credit Invs.*, 620 F.3d 824, 832 (8th Cir. 2010). Consideration of these factors in the instant case demonstrates that the motion is untimely and should be denied.

At least some of the Proposed Intervenors knew of this suit in time to file for intervention before substantial progress was made in the case, yet failed to do so. The filing of this suit was widely reported, and by at least October 10, 2011, Paul Stam—who knew of the lawsuit as of at least September 30 and attended the October 17 hearing— was in contact with the Proposed Intervenors' attorney Samuel Casey about this suit.[10]

---

[10]*See Raw Video: Interview with Rep. Skip Stam*,  http://abclocal.go.com/wtvd/

18

Dr. John Thorp knew of the suit within a week of its filing. (Stuart Decl. ¶ 5.) APSS informed Dr. Cummings in mid-October that it planned to become involved in the case. (Cummings Decl. ¶ 17.) And yet, the Proposed Intervenors waited until after the Court had ruled on the preliminary injunction to file their motion.

Courts have held that waiting to intervene until after the grant of a preliminary injunction, or even until the eve of a preliminary injunction hearing, supports denial of intervention. *See Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985) (denying motion to intervene filed 12 days after commencement of action where hearing had been held and temporary restraining order issued); *MasterCard Int'l. Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390-91 (2d Cir. 2006) (denying motion to intervene filed on "the eve of the preliminary injuncti[ve] hearing").

Here, this delay is especially egregious because the Proposed Intervenors seek to enter the case specifically to attack the issuance of the preliminary injunction. (Mot. Intervene 7.) Such tactics will prejudice the Plaintiffs by creating duplicative motion practice and delaying final adjudication of this case. As Proposed Intervenors inexplicably waited to file their motion until after substantial portions of the litigation had proceeded, their motion is untimely.

## IV. THE PROPOSED INTERVENORS ARE BETTER-SUITED TO PARTICIPATE IN THIS LITIGATION AS WITNESSES AND/OR AMICUS CURIAE, AND NOT AS PARTIES.

None of this is to say that Proposed Intervenors cannot participate at all in this

---

video?id=8373240 (media interview in which Stam mentions his contact with Casey).

lawsuit. They repeatedly claim that their stories and personal perspectives will be helpful to this court. *See, e.g.*, Mot. 5-6, ¶¶ 7-9; Mot. 6 ("Movants possess and are bringing to the [C]ourt the very evidence that actually contradicts the factual allegations and expert medical opinions which this Court deemed 'uncontradicted' by Defendants . . . ."). Although Plaintiffs vigorously dispute both the content and relevance of such "evidence," Proposed Intervenors do not need party status to "bring[] to the [C]ourt" evidence relevant to this case. For example, to the extent Proposed Intervenors possess relevant evidence or expertise, they can serve as witnesses for the Defendants. Moreover, they may appear in this litigation as *amici curiae*. Indeed, where proposed intervenors have asserted no unique claims or defenses, but claim to possess helpful information and views, courts deny intervention and instead allow the third parties to appear in the litigation as amicus curiae. *See, e.g., Bradley v. Milliken*, 828 F. 2d 1186, 1194 (6th Cir. 1987) (proposed intervenors invited to appear as amicus curiae); *Roe v. Casey*, 464 F. Supp 483, 487 (E.D. Pa. 1978) (denying motion for intervention but allowing an amicus brief), *aff'd*, 623 F.2d 829 (3d Cir. 1980). That approach here would allow Proposed Intervenors to provide the Court with their views, but would not allow them to hijack this litigation by asserting the full rights of parties.

## CONCLUSION

For all of the reasons set forth above, the motion for intervention should be denied in its entirety, as to each of the Proposed Defendant-Intervenors.

Dated: December 2, 2011

20

Respectfully submitted,

s/ Katherine Lewis Parker

Katherine Lewis Parker
NC Bar #36263
Legal Director
American Civil Liberties Union
of North Carolina Legal Foundation
P.O. Box 28004
Raleigh, NC 27611
(919) 834-3466
(866) 511-1344 Fax
kparker@acluofnc.org

COUNSEL FOR ALL PLAINTIFFS


Andrew D. Beck*
Staff Attorney
American Civil Liberties Union
Foundation
125 Broad Street
New York, NY 10004
(212) 284-7318
(212) 549-2651 Fax
abeck@aclu.org

COUNSEL FOR JAMES R.
DINGFELDER, M.D., SERINA FLOYD,
M.D., TAKEY CRIST, M.D., & TAKEY
CRIST, M.D., P.A., d/b/a CRIST CLINIC
FOR WOMEN

Bebe J. Anderson*
Senior Counsel
Center for Reproductive Rights
120 Wall Street, 14th Floor
New York, NY 10005
(917) 637-3687
(917) 637-3666 Fax
banderson@reprorights.org

COUNSEL FOR GRETCHEN S.
STUART, M.D., DAVID A. GRIMES,
M.D., AMY BRYANT, M.D., DECKER &
WATSON d/b/a PIEDMONT CAROLINA
MEDICAL CLINIC, & A WOMAN'S
CHOICE OF RALEIGH, INC.

Helene T. Krasnoff*
Planned Parenthood Fed. of America
1110 Vermont Avenue NW, Suite 300
Washington, DC 20005
(202) 973-4800
(202) 296-3480 Fax
helene.krasnoff@ppfa.org

COUNSEL FOR PLANNED
PARENTHOOD OF CENTRAL NORTH
CAROLINA & PLANNED
PARENTHOOD HEALTH SYSTEMS,
INC.

*By special appearance

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of December, 2011, I electronically filed the foregoing PLAINTIFFS' BRIEF IN OPPOSITION TO PROPOSED DEFENDANT-INTERVENORS' MOTION TO INTERVENE, along with the DECLARATIONS OF GRETCHEN S. STUART, LORRAINE CUMMINGS, and SARA NAFF0-MLO IN OPPOSITION TO PROPOSED DEFENDANT-INTERVENORS' MOTION FOR INTERVENTION, with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel for all

Defendants:

**Thomas J. Ziko**
tziko@ncdoj.gov
Senior Deputy Attorney General
**I. Faison Hicks**
fhicks@ncdoj.gov
Special Deputy Attorney General
**Stephanie A. Brennan**
sbrennan@ncdoj.gov
Assistant Attorney General
North Carolina Department of Justice
114 Edenton Street
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-6400

Proposed Defendants:

**William Eric Medlin**
eric.medlin@robertsonmedlin.com
Robertson Medlin & Bloss, PLLC
127 N. Greene St., Third Floor
Greensboro, NC 27401
Telephone (336) 378-9881

**Samuel B. Casey**
sbcasey@lawoflifeproject.org
Jubilee Campaign – Law of Life Project
FRC Building, Suite 521
801 G St., N.W.
Washington, DC 20001

22

Telephone:  (202) 586-5652

**Steven H. Aden**
saden@telladf.org
Alliance Defense Fund
801 G St. N.W., Suite 509
Washington, DC 20001
Telephone (202) 393-8690

*/s/ Katherine Lewis Parker*
Katherine Lewis Parker
NC Bar No. 36263
Legal Director, American Civil Liberties Union
of North Carolina Legal Foundation
Post Office Box 28004
Raleigh, North Carolina 27611
(919) 834-3466
(866) 511-1344 Fax
acluncklp@nc.rr.com

23