IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GRETCHEN S. STUART, M.D., et al., )
)
    Plaintiffs, )
)
v. ) CIVIL ACTION
)
JANICE E. HUFF, M.D., et al., ) Case No. 1:11-cv-00804
)
    Defendants. )

## DECLARATION OF LORRAINE CUMMINGS, M.D., IN OPPOSITION TO PROPOSED DEFENDANT-INTERVENORS' MOTION FOR INTERVENTION

LORRAINE CUMMINGS, M.D., declares and states the following:

1. I am not a party or related to a party in this action. I am over the age of eighteen and am competent to testify. I submit this declaration in opposition to the motion for intervention filed by Asheville Pregnancy Support Services.

2. I am a physician licensed to practice medicine in North Carolina. I am the sole owner of Femcare, Inc., a licensed facility in Asheville, North Carolina. Femcare has been in operation since 1985; I have been the sole owner of it since 1999. At Femcare, we offer gynecological services including medical and surgical abortions, birth control counseling and services, and sexually transmitted infection (STI) testing and treatment. We also provide consultations for tubal ligations, which I perform at another facility in Asheville.

3. I perform all the abortions at Femcare. I perform surgical abortions up to 12 weeks gestational age as measured from the woman's last menstrual period. I also

1

perform pre-abortion ultrasounds – to confirm, locate, and date the pregnancy -- for all patients obtaining abortions at Femcare.

4. I have read the Declaration of Deborah W. Wood of Asheville Pregnancy Support Services ("APSS") in Support of Proposed Defendant-Intervenors' Motion for Intervention. I am submitting this declaration to address statements about Femcare contained in that declaration.

5. Paragraph 9 of the Wood Declaration states: "Given the above-described services [APSS] provides, including limited ultrasound, we commonly serve women who have been referred to us by one of the plaintiffs in this case who do not provide abortion services in our area, as well as by Femcare, the sole abortion provider in Western North Carolina, for the purposes of providing these women with information regarding all of their options, including the information and services described in paragraph 8 above."

6. Femcare is a small facility, with a very small staff. Approximately four years ago, I found that we were receiving so many requests for ultrasounds from women who wanted an ultrasound only for purposes of dating their pregnancies, but were not seeking an abortion or any of the other services that Femcare offers, that providing those ultrasounds was interfering with our availability to provide our other services. Therefore, I decided to stop Femcare's provision of ultrasounds for women seeking that service only for dating their pregnancies. Since then, when Femcare gets a call from someone who wants an ultrasound in order to date the pregnancy, we have told them that we do not provide that service. We have told some of those callers that APSS provides free

2

ultrasounds. In those situations, Femcare also tells the woman that APSS is religiously-based, it has services for women who want to continue their pregnancy, and it does not provide abortions.

7. Occasionally, Femcare has patients who are very conflicted about whether to have an abortion. I will not perform an abortion in those circumstances. I have told some of those women that APSS provides services to women who want to continue their pregnancy and also tell them that APSS is religiously-based and does not provide abortions.

8. Paragraph 10 of the Wood Declaration includes the following statements: "In anticipation of the Act becoming effective on October 26, 2011, APSS has entered into a collaborative agreement with Femcare whereby APSS, as we are qualified to do under the Act, may perform informed consent certifications required under the Act for clients referred to APSS by Femcare for such certification. Therefore, we are vitally interested in all of the provisions of the Act going into full force and effect because such effectiveness promises to significantly increase our referrals from Femcare, as well as from other sources ...."

9. Femcare has not agreed to refer women to APSS for either the information required by Section 90-21.82 (the "24 hour information") of the "Woman's Right to Know Act" (the "Act") or for satisfaction of the requirements in Section 90-21.85 (the "ultrasound requirements") of the Act.

3

10. Moreover, Femcare has not referred any woman to APSS to obtain the 24 hour information or to obtain a pre-abortion ultrasound.

11. I have had discussions with Ms. Wood about APSS providing the 24 hour information to women. Ms. Wood and I are both members of a local group called the Blue Moon Group, which started with the goal of reducing violence in our community over the abortion issue. That group meets monthly and has members with differing views on abortion but some areas of common ground.

12. In a conversation before the start of the Blue Moon Group's meeting in mid-September 2011, Ms. Wood told me that APSS would be able to staff its facility with the qualified professionals who could provide the 24 hour information required by the Act. She asked me if that ability would be helpful to Femcare. I told her that Femcare would be able to meet the requirements of the Act, including the 24 hour information requirements, ourselves. She indicated that if there ever came a time when Femcare could not do so, Femcare could refer patients to APSS for the 24 hour information and asked if I could see a time when that might be helpful. I replied that it was possible that there might be a situation in which Femcare could not meet a patient's need for that information due to unavailability of Femcare staff or the patient's time limitations and if that occurred Femcare might tell a patient that she could go to APSS to get the 24 hour information and required certification.

13. The topic of providing the 24 hour information for women came up again in a conversation I had with Ms. Wood in mid-November. In that conversation, I made it

4

clear to Ms. Wood that it would be a rare event that Femcare could not meet the 24 hour information certification requirement itself and therefore might refer a woman to APSS to receive the 24 hour information.

14. To my knowledge, APSS has never referred a woman to Femcare for abortion services. No patient has ever told me that she was referred to Femcare by APSS. However, I have had patients who came to Femcare for an abortion after having gone to APSS. If in the future a woman goes to APSS, satisfies the requirements of Section 90-21.82 there, and then comes to Femcare for an abortion, I expect that Femcare will accept APSS's certification of compliance with those requirements. However, Femcare does not refer, and is not planning to refer, women to APSS for that purpose.

15. To date, I am aware of only one Femcare abortion patient who had a certification from APSS related to the Act's requirements. I provided the 24 hour information directly to that patient on the phone myself when she called to make her appointment. After I gave her that information, she told me that she had a certification stating that she had received information from APSS and asked if Femcare needed that document. I told her we did not need it because I had provided the information to her.

16. Femcare has not made any agreement with APSS related to the ultrasound requirements in Section 90-21.85. Ms. Wood has not offered to have APSS certify compliance with the ultrasound requirements for women who seek abortions at Femcare. I have never indicated to Ms. Wood that Femcare might refer any woman to APSS to satisfy the ultrasound requirements of Section 90-21.85 or accept a certification by APSS

5

that those ultrasound requirements have been met. I perform ultrasounds for all of the patients on whom I perform an abortion. That has always been my practice at Femcare and I have no intention of changing that practice, whether or not Section 90-21.85 of the Act is in effect. Femcare does not intend and has never intended to rely on or accept certifications of compliance with the ultrasound requirements of the Act from APSS or from any other facility. Also, Femcare does not have and never has had any intention of referring any woman to APSS or any other facility for the ultrasound required by the Act. I am confident that Ms. Wood knows that I would not be comfortable accepting an ultrasound provided at another facility.

17. Last month, Ms. Wood asked to talk to me, and we met on October 18. Ms. Wood told me that APSS was going to take, or be involved in, some legal action in support of the Act, which I understood to relate in some way to the Plaintiffs' lawsuit challenging the Act. She said that she wanted to let me know that Femcare would be mentioned in that legal action because it is the sole provider of abortions in the Asheville area.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of November, 2011

LORRAINE CUMMINGS, M.D.

6