# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DR. GRETCHEN S. STUART, M.D.; *et al.,* | )<br>)<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | )<br>) Civil Action No. 1:11-cv-804-CCE<br>)<br>) |
| JANICE E. HUFF, M.D.; *et al*., | ) |
| Defendants. | )<br>) |

**PROPOSED DEFENDANT-INTERVENORS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR INTERVENTION**

W. Eric Medlin
N.C. State Bar No. 29687
ROBERTSON, MEDLIN & BLOSS, PLCC
127 North Green Street, *3rd Floor*
Greensboro, NC 27401
336-378-9881
Fax: 336-378-9886
eric.medlin@robertsonmedlin.com

Steven H. Aden*
D.C. Bar No. 993261
ALLIANCE DEFENSE FUND
801 G. Street, N.W., *Suite 509*
Washington, D.C. 20001
202-393-8690
Fax: 202-347-3622
saden@telladf.org

Samuel B. Casey*
Cal. Bar. No, 76022
JUBILEE CAMPAIGN-
LAW OF LIFE PROJECT
801 G. Street, N.W., *Suite 521*
Washington, D.C. 20001
202-586-5652
Fax: 703-349-7323
sbcasey@lawoflifeproject.org

*Attorneys for Proposed Defendant-
Intervenors*

**Notices of Special Appearance*
*(Documents 47 and 48) filed*

# TABLE OF CONTENTS

                                                                                                  **Page**

**TABLE OF AUTHORITIES**………………………………………………………………ii

**INTRODUCTION**……………………………………………………………...………..1

**ARGUMENT**………………………………………………………………………….2

    I.  **Plaintiffs Misstate and Minimize Their Own Claims**………………………...….2

    II.  **Plaintiffs Ignore or Misstate the Law and Facts Supporting Intervention**………………………………………………………..……….4

    III. **Contrary to Plaintiffs' Unsupported Contention, This Motion is Timely and Will Not Unduly Prejudice the Interests of the Other Parties, or Delay the Adjudication of this Case**…………………….………………..……6

    IV. **The Interests of The Movants Are Not Aligned With Those Of The Defendants And The Defendants Cannot And Are Not Adequately Protecting The Movants' Interests**……………………………………………………8

**CONCLUSION**……………………………..……………………………………….10

# TABLE OF AUTHORITIES

**Pages (s)**
**CASES**

*Houston Gen. Ins. Co. v. Moore*,
    193, F3d. 838 (4th Cir 1999)……………...……………………………...…..3, 6

*Keith v. Dailey*,
    764 F.2d 1265 (7th Cir 1985)……………………………………......……….4

*Local 1829 v. Island Creek Coal Co.*,
    157 F.R.D. 380 (N.D.W.Va.1994)………………………………………….…..8

*Rutherford Cnty v. Bond Safeguard Ins. Co.*
    No.1:2009-cv-00292, 2009 U. S. Dist. LEXIS 127842 (W.D.N.C., Dec. 3, 2009)……….3

*United States v. Exxonmobil Corp.*,
    264 F.R.D. 242 (N.D.W.Va. 2010)…………………………………………...6-8

*United States v. Ritchie Special Credit Invs.*,
    620 F.3d 824 (8th Cir. 2010)……………………………………...………...7, 8

**STATUTES**

WOMAN'S RIGHT TO KNOW ACT, 2011 N.C. Sess. Laws 405……………………………….3

**RULES**

Fed. R. Civ. P. 24………………………………………………………………………….1-3

**FILINGS AND ORDERS**

Declaration of Dr. Cummings (Document 60)……………………………………..…..1, 5

Declaration of Gregory Brannon (Document 45-3)……………………………………….6

Declaration of John Thorp (Document 45-1)……………………………………………...6

Declaration of Martin McCaffrey (Document 45-2)……………………………………...6

Declaration of Sara Naff-Mlo (Document 61)……………………………………………1

Declarations and Memorandum of Law in Support of Motion to Intervene (Document 45)……..1

Memorandum Opinion & Order, Oct. 25, 2011 (Document 39)…………………………………….9

Motion to Intervene (Document 44)……………………………………………………………1, 9

Movants' Answer (Document 46)……………………………………………………………...1

Plaintiffs' Amended Complaint (Document 57)……………………………………….…..1-3

Plaintiffs' Opposition to Motion to Intervene (Document 58)…………………….……...1-7, 9

Plaintiffs' Original Complaint (Document 1)……………………………………….……1

Scheduling Order, Oct. 25, 2011 (Document 41)……………………………………....7, 8

Supplemental Declaration of Deborah Wood ………………………….……………..…1, 5

## INTRODUCTION

Plaintiffs' opposition (hereafter "Pltfs. Opp.", Document 58) to proposed Defendant-Intervenors' ("Movants") motion to intervene (Documents 44 and 45)[1], as of right or permissively pursuant to Federal Rule of Civil Procedure (FRCP) 24 (a) (2) or (b) (1) (B) suffers from three fatal defects: (1) Plaintiffs' misstatement of their own position as alleged in the Amended Complaint (hereafter "AC", Document 57); (2) Plaintiffs' misstatement of the law and facts supporting the intervention motion, particularly the facts as clarified in the accompanying Supplemental Declaration of Deborah D. Wood (the "Wood Supp. Decl.") addressing errors in the Declarations of Dr. Cummings (Document 60) and Sara Naff-Mlo (Document 61) and rebutting Plaintiffs' claims about Defendant-intervenor APSS; and (3) Plaintiffs' complete failure, beyond pure speculation, to show any unwarranted delay or undue prejudice to any party [2] that would be caused by granting Movants' intervention motion that was *timely* filed before Defendants answered the original complaint and Plaintiffs filed their amended complaint[3] and at the earliest practicable moment when it was clear Defendants were not adequately representing Movants' interests and could not be compelled to submit any of the witnesses or other evidence Movants rely upon to defend their distinct cognizable legal interests in upholding the constitutionality of the Act so that it can be fully implemented.

---

[1] As identified in the intervention motion, the Movants consist of three groups: a) The Medical Professionals ("MPs"); b) The Post-Abortive Women; and, c) The Pregnancy Medical Centers ("PMCs"), including Asheville Pregnancy Support Services (APSS). For the various reasons set forth in Movants' motion (Document 44) and supporting declarations and memorandum of law (Document 45), each Movant group possess a direct and substantial interest in the subject matter of the litigation which would be significantly impaired or impeded if they were not allowed to intervene as their interests are not adequately protected by the existing Defendants.

[2] Movants note that Defendants are presumably not prejudiced since they have not objected to Movants intervention.

[3] On November 8, 2011, pursuant to the Court's October 25 Scheduling Order (Document 41), Movants timely filed their Answer (Document 46) to the Plaintiffs' original Complaint (Document 1). Movants' Answer to Plaintiffs' Amended Complaint (Document 57) is being filed contemporaneously with this Reply Brief.

## ARGUMENT

In addition to the reasons and evidence set forth in their pending motion, Movants, as of right or permissively, ought to be admitted as party Defendants in this action pursuant to FRCP, Rule 24, for the reasons set forth below.

### I. PLAINTIFFS MISSTATE AND MINIMIZE THEIR OWN CLAIMS

Oddly, the Plaintiffs start off their opposition by misstating their own position when they say that "The complaint challenges *a few provisions of the Act*" (Italics added for emphasis) (Pltfs. Opp. 1). Actually, in their Amended Complaint, Plaintiffs have asked this Court to "issue a declaratory judgment that NORTH CAROLINA WOMAN'S RIGHT TO KNOW ACT (N.C. Sess. L. 2011-405, H.B. 854, enacted July 28, 2011, hereafter the "Act") is unconstitutional and unenforceable *as a whole* and/or in part". (Italics added for emphasis) (AC, Request For Relief, ¶ 1). Thus, it appears that it is Plaintiffs, not Movants, "who have a "fundamental misunderstanding of …the Plaintiffs' claims." (Pltfs. Opp.1)

To set the record straight, Plaintiffs' Amended Complaint concedes that the "Act adds three requirements in North Carolina which Plaintiffs challenge in this lawsuit" (AC ¶2) each of which Movants seek to defend as a matter of law *and fact*: (1) what Plaintiffs call the 'Informed Consent to Abortion' requirement in Section 90-21.82 that requires "a physician or qualified professional…by telephone or in person" to provide "certain state-mandated information about abortion at least 24 hours in advance of the procedure" (AC ¶2); (2) what Plaintiffs call the display of 'Real-Time View Requirement' found in Section 90-21.85 that, contrary to the legal interests held by the Movants and facts submitted by Movants, Plaintiffs claim "profoundly intrudes on the practice of medicine, forces providers to deliver ideological speech, forces patients to allow their bodies to be treated as a source of mandated speech, treats women as less than fully competent adults, [and] fails to further any legitimate state interests patients…"(AC

¶3); and (3) the 'Assurance of informed consent' requirement in Section 90-21.90 (b) that "a physician or qualified professional shall read" to a "woman unable to read" the written information "required to be provided under G.S. 90-21.82 to a woman considering abortion." (AC ¶4) (the Act at § 90-21.90).

To intervene as of right under FRCP 24 (a)(2), citing the Fourth Circuit's *Patterson*, *JLS Inc*. and *Teague* cases, Plaintiffs and Movants appear to agree on the rule of law that, *inter alia*, Movants must have a "cognizable" and "significantly protectable" interest in the subject matter of the underlying action; such that the denial of the motion to intervene would impair or impede the Movant's ability to protect its interest. (Pltfs. Opp. 4-5).[4] As the District Court for the Western District of North Carolina has said, "where the intervenor stands to 'gain or lose by the direct legal operation of the district court's judgment,' the intervenor's interest in the subject matter of the litigation is significantly protectable." *Rutherford Cnty v. Bond Safeguard Ins. Co*. No.1:2009-cv-00292, 2009 U.S. Dist. LEXIS 127842 (W.D.N.C., Dec. 3, 2009) quoting *Teague v. Bakker*, 931 F.2nd. 259, 261 (4th Cir 1991).

Properly understood, the "subject matter of this litigation" is the three requirements of the Act that Plaintiffs allege are unconstitutional on various grounds. Each of the three informed consent "requirements" being challenged by Plaintiffs in this action is a requirement that may be fulfilled, not just by the abortion provider, but by *any* "physician or qualified professional" (or "qualified technician" in the case of §90-21-85), including the moving Medical Professionals and Pregnancy Medical Centers. Moreover, the Medical Professional and Post-Abortive Women Movants are within the classes of persons expressly granted "civil remedies" under Section 90-21.88(b) of the Act against "any person who has willfully violated" the Act. Should Plaintiffs be

---

[4] Movants generally cite *Houston Gen. Ins. Co. v. Moore*, 193, F3d. 838, 839 (4th Cir 1999) for the same proposition.

successful in getting this Court to permanently enjoin any of these three requirements, Movants stand to lose "by the direct operation of the district court's judgment" their "cognizable" legal rights *presently granted to them by the Act*. *Teague*, supra, at 261

In sum, far from seeking to protect a mere "generalized" or "speculative future interest" in the Act's enforcement, as asserted by Plaintiffs (Pltfs. Opp.¶ 1, 5-6), Movants seek to protect very specific *present* rights granted to them by the Act to either fulfill the Act's informed consent requirements and/or enforce compliance with these requirements through the civil remedies of the Act, the fulfillment and enforcement of which Plaintiffs seek to enjoin.

## II. PLAINTIFFS IGNORE OR MISSTATE THE LAW AND FACTS SUPPORTING INTERVENTION

Relying upon *dicta* in a footnote in the Fourth Circuit's *Sierra Club v. South Carolina* case citing *Keith v Dailey*, 764 F.2d 1265, 1269 (7th Cir 1985) Plaintiffs assert the misplaced argument that "anti-abortion groups" should not be allowed to intervene "merely as a lobbyist or because of a speculative future interest" (Pltfs. Opp. 6). Although the individual Movants may have "anti-abortion" opinions because they believe that abortion providers in North Carolina do not provide the fully informed consent required by the Act, only the PMCs may be classified as "groups," and, unlike the "anti-abortion groups" in *Keith v. Dailey*, none of the Movants are seeking intervention here because they are "lobbyists" or because they have some "speculative future interest" in the "protection of the unborn and in adopting children who survive abortions." *Id. Movants are seeking intervention because they have the present legally protectable interests provided to them in the Act* that are the "subject matter" of this litigation, as described in Part I, above.

The Plaintiffs also fail in their attempt to impeach the PMC's statements when they state that "the CPCs supply false-or, at best, misleading-statements about possible referrals from

Page | 4-Reply Memorandum of Law
Supporting Intervention Motion

Case 1:11-cv-00804-CCE-LPA Document 63 Filed 12/18/11 Page 8 of 15

Femcare and Planned Parenthood Health Systems." (Pltfs. Opp. 8). As further explained and proven in her supplemental declaration accompanying this reply memorandum, Deborah Wood's testimony is not only truthful and not misleading *but is actually supported* by Dr. Cummings testimony confirming Femcare's relationship with APSS and her discussions with Ms. Wood regarding APSS' ability to provide the required certification. (Cummings Decl.¶ 4). Indeed, Ms. Wood agrees with Dr. Cummings that "Femcare has and does refer clients to APSS for free ultrasound testing and for counseling when such women are conflicted about whether to have an abortion." (Wood Supp. Decl.¶ 7 *citing* Cummings Decl.¶¶6 and 7). Further, Ms. Wood's "examination of APSS' business records indicates clients considering abortion who have told APSS that they were referred by Femcare for counseling or ultrasound purposes." (Wood Supp. Decl.¶7)

In addition to providing further explanation of APSS' relationship with Femcare confirming her prior testimony, Ms. Wood also explains that 70 APSS clients have expressly indicated a referral from Planned Parenthood. (Wood Supp. Decl.¶6) To further prove this point, Ms. Wood has also provided a Compilation of Client Referrals from Planned Parenthood to APSS during the period September 11, 2008 through October 12, 2011. (Wood Supp. Decl., Exhibit A.) Thus, it would appear that it is Plaintiffs, not Movants, who are supplying "false—or at best, misleading statements … about possible referrals from Femcare and Planned Parenthood Health Systems ("PPHS")."

Although the Plaintiffs actually acknowledge the Movants' arguments concerning protection of the civil remedies afforded by the Act, they attempt to trivialize them by opining that the Medical Professional Movants would "have to see a future patient who had previously received an abortion while the Act was in force and learn that the person who performed that patient's abortion willfully violated the Act" (Pltfs. Opp.10). Plaintiffs' unsupported belief that
Page | 5-Reply Memorandum of Law
Supporting Intervention Motion

the Medical Professional Movants could never achieve this high level of care and, therefore, their interest "is purely hypothetical and speculative" (Pltfs. Opp 10), is belied by the uncontradicted testimony to the contrary contained in the Drs. Thorp, McCaffrey and Brannon Declarations (Documents 45-1. 45-2, and 45-3).

The Plaintiffs' opinion that "it is utterly implausible to believe that these *particular* women would seek to terminate a pregnancy if they become pregnant in the future" (emphasis in original) (Pltfs. Opp. 11) should be judged on its own merits. It is not necessary that these women be able to use the civil remedies to sue over harms caused by their past abortions. Plaintiffs cannot successfully accuse Movants' interests of being speculative while Plaintiffs, without any factual basis, deem themselves worthy to speculate as to the fact that these Post-Abortive Women Intervenors will never again be in a position where they may avail themselves of the protections and civil remedies provided to them in the Act. As women residing in North Carolina, the Post-Abortive Women Intervenors are among the primary individuals who are intended to gain from this Act. These women will benefit from both the improved informed consent required in the Act as well as the civil remedies created for themselves, their children, or siblings. *See* §90-21-88(b) Plaintiffs reveal their disregard for these direct interests by focusing on a straw man while ignoring the fact that the Post-Abortive Women Intervenors are women of North Carolina and the very individuals the Act was created to protect.

### III. CONTRARY TO PLAINTIFFS' UNSUPPORTED CONTENTION, THIS MOTION IS TIMELY AND WILL NOT UNDULY PREJUDICE THE INTERESTS OF THE OTHER PARTIES OR DELAY THE ADJUDICATION OF THIS CASE.

To intervene as of right, Movants must also show their intervention motion is timely. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). "In determining timeliness, '[a] reviewing court should look at how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene.' (quoting

*Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir.1989) (citations omitted). However, '[t]he most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case. If prejudice is found, the motion will be denied as untimely.' (*citing* 7C Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE: Civil § 1916, at 541-49 (3d ed.2007) (citations omitted)). A district court has wide discretion in determining what is timely. *Gould*, 883 F.2d at 286." *U.S. v. Exxonmobil Corp.*, 264 F.R.D. 242, 248 (N.D.W.Va. 2010).

Whatever delay there has been in this case has been caused by Plaintiffs whose interest is to prevent the implementation of this Act as long as possible. The Plaintiffs caused delay when they (a) filed a motion for clarification that actually requested the Court to reconsider its Preliminary Injunction ruling; (b) filed a motion to modify the Preliminary Injunction that again asked the Court to reconsider its ruling; and, (c) filed an amended complaint adding factual allegations and causes of action requiring the Defendants (and Movants) to file yet another answer.

Nor should the Plaintiffs be heard to argue (Pltfs. Opp. 16) they are somehow prejudiced by the threat of an additional preliminary injunction hearing since it is not the November 8 intervention motion but the Court's October 25 Scheduling Order (Document 41) stating that "any party may file a motion to vacate or modify the Preliminary Injunction at any time" that establishes this right. Movants' interest is not "to confuse and complicate this case" (Pltfs. Opp. 17), but to expedite the *final* adjudication of this case with this Court's order that the Plaintiffs' claims fail.

Contrary to Plaintiffs' unsupported argument (Pltfs. Opp.18-19), there has been no "tardiness" in moving to intervene even using the four factor-test in *U.S v Ritchie Special Credit*

*Invs* 620 F.3d 824 (8th Cir. 2010), a plainly distinguishable case relied upon by Plaintiffs.[5] Unlike the situation in *Richie Special Credit,* where the intervenor let more than 6 months pass without objection to any of the *facts* upon which the preliminary injunction was based, Movants gathered their evidence and prepared their declarations as soon as practicable and took only 13 days from issuance of the preliminary injunction, based in large part upon Court's invitation in its October 25 Scheduling Order, described above, to provide the evidence in support of their intervention motion that Defendants had not provided in opposition to the preliminary injunction motion. Likewise, Movants, unlike the *Richie Special Credit* case, satisfy the other three factors because Movants filed their intervention even *before* the Defendants answered the original complaint, the Plaintiffs filed their amended complaint; or, any discovery had been served; or, dispositive motions filed. Therefore, intervention presents no risk of any prejudice to Plaintiffs except the formidable opposition by the most concerned parties which, Movants submit, Plaintiffs claims warrant in this Court.

### IV. THE INTERESTS OF THE MOVANTS ARE NOT ALIGNED WITH THOSE OF THE DEFENDANTS AND THE DEFENDANTS CANNOT AND ARE NOT ADEQUATELY PROTECTING THE MOVANTS' INTERESTS.

"As a general matter, 'liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process.' " *U.S. v. Exxonmobil Corp.* 264 F.R.D. 242, 245 (N.D.W. Va. 2010) (quoting *Feller v. Brock,* 802 F.2d 722, 729 (4th Cir.1986)) "It is generally recognized that, where intervention is sought as a matter of right, courts should be reluctant to dismiss a request for intervention as untimely inasmuch as the proposed intervenor may be seriously harmed if

---

[5] The four-factor test in *U.S. v. Ritchie Special Credit*, relevant to a determination of timeliness: "(1) how far the litigation had progressed at the time of the motion for intervention, [ (2) ] the prospective intervenor's prior knowledge of the pending action, [ (3) ] the reason for the delay in seeking intervention, and [ (4) ] the likelihood of prejudice to the parties in the action." 620 F. 3d 824, 832 (8th Cir 2010)

Page | 8-Reply Memorandum of Law
Supporting Intervention Motion

intervention is denied. *Local 1829 v. Island Creek Coal Co.*, 157 F.R.D. 380, 382 (N.D.W.Va.1994) (citing 7C Wright, Miller & Kane, Federal Practice and Procedure § 1916, at 424 (1986)).

Plaintiffs incorrectly contend that Defendants adequately represent Movants' interests. (Pltfs. Opp.11) As was stated in the Motion to Intervene, "At the October 17, 2011 hearing, the State apparently argued that it had three compelling state interests: protecting the psychological health of the patient, preventing coercive abortions, and expressing its preference for the life of the unborn."(Memo. Op. & Order (Document 39) at 4). While the Movants certainly share these interests with the Defendants, the Movants have additional direct and substantial interests such as insuring through the Act's "certification" provisions that a pregnant woman understands the potential risks and harms to the child so that she can make the decision for the child, as well as preserving the Act's standards that may be enforced by the "civil remedies" granted in § 90-21.88.

Plaintiffs ignore the Movants' specific arguments explaining their interests in the case when they opined that "their assertions boil down to nothing more than a generalized interest in the Act being upheld" (Pltfs. Opp.6). *None of the Defendants* can avail themselves of the civil remedies created in 90-21.88 (a), while the Medical Professional Movants and Post-Abortive Women Movants can. Defendants are simply state officials sued in their *official capacity* and are not beneficiaries of the Act like the Movants are.

Plaintiffs gratuitous assertion that Movants are better suited as witnesses or filers of amicus briefs has no bearing on this motion (Pltfs Opp. 19). *First,* Defendants have no obligation to call Movants as witnesses or agree to let them participate as a "friend of the court." *Second*, Movants do not seek to join this case simply to add testimony. Each Movant has direct legally protectable interests in the full implementation of the Act.

## CONCLUSION

Based the arguments set forth above, and based on the law and compelling facts contained in the Movants' motion, legal memoranda and supporting declarations, the Movants respectfully request that this Court to allow them either as of right or permissively to intervene as Defendants in this matter. Such intervention will not unduly delay or prejudice the adjudication of the original parties rights but will permit Movants to adjudicate the common questions of law or fact supporting the constitutionality of the Act and thereby protect Movants' legally cognizable interests that will be impaired if the Plaintiffs' request for relief is granted.

Dated: December 18, 2011

Respectfully submitted,

/s/ W. Eric Medlin
W. Eric Medlin
(N.C. State Bar No. 29687)
ROBERTSON, MEDLIN & BLOSS, PLCC
127 North Green Street, *3rd Floor*
Greensboro, NC 27401
336-378-9881
Fax: 336-378-9886
eric.medlin@robertsonmedlin.com

Samuel B. Casey*
Cal. Bar. No, 76022
JUBILEE CAMPAIGN-
LAW OF LIFE PROJECT
801 G. Street, N.W., *Suite 521*
Washington, D.C. 20001202-586-5652
Fax: 703-349-7323
sbcasey@lawoflifeproject.org

Steven H. Aden*
D.C. Bar No. 993261
ALLIANCE DEFENSE FUND
801 G. Street, N.W., *Suite 509*
Washington, D.C. 20001
202-393-8690
Fax: 202-347-3622
saden@telladf.org

*Attorneys for Proposed Defendant-Intervenors*

*Notice of Special Appearance filed.

# CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of December, 2011, I caused a true and correct copy of the foregoing:

**PROPOSED DEFENDANT-INTERVENORS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR INTERVENTION**

along with the accompanying "SUPPLEMENTAL DECLARATION OF DEBORAH D. WOOD OF ASHEVILLE PREGNANCY SUPPORT SERVICES (APSS)" to be electronically served on the following appearing counsel for Defendants and Plaintiffs by means of the Court's CM/ECF system

COUNSEL FOR DEFENDANTS:
Thomas J. Ziko (State Bar No. 8577)
Senior Deputy Attorney General
I. Faison Hicks (State Bar No. 10672)
Stephanie Brennan (State Bar No. 35955)
Special Deputies Attorney General
N.C. Department of Justice
114 W. Edenton Street, Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6900
Fax: (919) 716-6763
Email: tziko@ncdoj.gov
Email: fhicks@ncdoj.gov
Email: sbrennan@ncdoj.gov

COUNSEL FOR PLAINTIFFS:
Katherine Lewis Parker
ACLU OF NORTH CAROLINA
POB 28004
Raleigh, NC 27611-8004
919-834-3466
Fax: 866-511-1344
Email: kparker@acluofnc.org

Bebe J. Anderson
THE CENTER FOR REPRODUCTIVE RIGHTS
120 Wall St., 14th Floor
New York, NY 10005
917-637-3687
Fax: 917-637-3666
Email: banderson@reprorights.org

Andrew D. Beck
AMERICAN CIVIL LIBERTIES UNION
125 Broad St., 18th Floor
New York, NY 10004-2400
212-284-7318
Fax: 212-549-2650
Email: abeck@aclu.org

Helene T. Krasnoff
PLANNED PARENTHOOD FEDERATION OF AMERICA
1110 Vermont Ave., NW, Ste. 300
Washington, Dc 20005
202-973-4800
Fax: 202-296-3480
Email: helene.krasnoff@ppfa.org

Dated: December 18, 2011


/s/ W. Eric Medlin
W. Eric Medlin (State Bar No. 29687)
ROBERTSON, MEDLIN & BLOSS, PLCC
127 North Green Street, 3rd Floor
Greensboro, NC 27401
336-378-9881
Fax: 336-378-9886
Email: eric.medlin@robertsonmedlin.com

One of Counsel for
Proposed Defendant-Intervenors

Page |1 – Service Certificate- Reply Memo & Supp. Wood Decl. Supporting Intervention Motion

Case 1:11-cv-00804-CCE-LPA   Document 63   Filed 12/18/11   Page 15 of 15