# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GRETCHEN S. STUART, M.D., et al.,    )
        )
    Plaintiffs,    )
        )
v.    )      Case No. 1:11-cv-00804
        )
RALPH LOOMIS, M.D., et al.,    )
        )
    Defendants.    )

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# INDEX

TABLE OF AUTHORITIES ........................................................ iii

NATURE OF THE CASE ........................................................... 1

STATEMENT OF FACTS .......................................................... 1

QUESTIONS PRESENTED ......................................................... 3

ARGUMENT ....................................................................... 3

I.      THE STATE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
        ON EACH OF PLAINTIFFS' CONSTITUTIONAL CLAIMS. ................. 3

        A.      No Provision of the Act Renders it Void for Vagueness ..................... 3

                1.      The Court Should Abstain From Invalidating the Act on
                        Vagueness Grounds. ................................................ 5

                2.      The Statute is Not Unconstitutionally Vague – Particularly
                        In Light of the Act's Scienter Requirement ........................ 6

                3.      The Statute is Clear in the Vast Majority of Its Intended
                        Applications ......................................................... 7

                4.      The Court Should Adopt Defendants' Construction Or
                        Another Saving Construction ...................................... 9

                5.      Even If the Court Were To Find a Provision Vague and
                        Find No Saving Construction, the Court Should Strike Only
                        the Particular Provision ........................................... 10

        B.      Plaintiffs Cannot Establish a First Amendment "Compelled Speech"
                Violation Based on Section 90-21.85 ................................. 10

                1.      The Compelled Disclosures in the Act Are Subject to
                        Rational-Basis Review, Not Strict Scrutiny ...................... 11

                        a)      Casey Requires Courts To Apply Rational
                                Basis Review to All Compelled Speech
                                Challenges to Laws That Regulate "The
                                Practice of Medicine. ................................. 12

b)  Persuasive Federal Appellate Court Opinions Have Followed *Casey* in Declining to Apply Strict Scrutiny and Rejecting First Amendment Challenges to Informed Consent Abortion Statutes. ...........................................................17

c)  The Act Passes Rational Basis Review...........................................18

2.  If This Court Applies Strict Scrutiny, the Act's Speech-Related Provisions Are Narrowly Tailored To Advance Compelling State Interests .......................................................19

a)  Several Compelling State Interests Are Advanced by the Act.....................................................19

b)  The Act Is Narrowly Tailored To Advance These Compelling State Interests...................................20

c)  At the Very Least, the Court Should Sever the Act's Applications to Post-Viability Abortions, and Reject any Compelled Speech Challenges to Those Applications ....................................21

C.  The Act Does Not Violate Substantive Due Process ............................................21

1.  Plaintiffs Lack Standing and a Cause of Action That Would Allow Them to Assert the Constitutional Rights of Women Seeking Abortions....................................................................22

2.  Plaintiff Cannot Establish a Violation of Substantive Due Process .........................................................................24

II.  IF THE COURT DENIES DEFENDANTS' MOTION, IT SHOULD MODIFY THE PRELIMINARY INJUNCTION TO ALLOW MOST OF SECTION 90-21.85 TO GO INTO EFFECT. ........................................................25

CONCLUSION.....................................................................................................26

CERTIFICATE OF SERVICE ...............................................................................27

Case 1:11-cv-00804-CCE-LPA   Document 118   Filed 10/03/12   Page 3 of 33

# TABLE OF AUTHORITIES

## CASES

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ......................................... 6

*Bellotti v. Baird*, 428 U.S. 132 (1976) .......................................................................... 5, 10

*Buckley v. Valeo*, 424 U.S. 1 (1976) ............................................................................. 9, 10

*Colautti v. Franklin*, 439 U.S. 379 (1979) ........................................................................ 5

*Doe v. Bolton*, 410 U.S. 179 (1973) .............................................................................. 10

*Elk Grove Unified Sch. Dist v. Newdow*, 542 U.S. 1 (2004) ............................................ 23

*F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307 (1993) .......................................... 15

*Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205 (4th Cir. 2002) ...................... 23

*Frisby v. Schultz*, 487 U.S. 474 (1988) ........................................................................... 10

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ............................................................... *passim*

*Grutter v. Bollinger*, 539 U.S. 306 (2003) ....................................................................... 20

*H. L. v. Matheson*, 450 U.S. 398 (1981) ......................................................................... 11

*Heller v. Doe*, 509 U.S. 312 (1993) ................................................................................. 24

*Hill v. Colorado*, 530 U.S. 703 (2000) .......................................................................... 7, 8

*Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35 (1966) .................................... 6

*Kolender v. Lawson*, 461 U.S. 352 (1983) ........................................................................ 9

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ................................................................... 22, 23

*Ohio v. Akron Ctr. for Reproductive Health (Akron II)*, 497 U.S. 502 (1990) .................. 9

*Planned Parenthood Minn., N.D., S.D. v. Rounds*,
    530 F.3d 724 (8th Cir. 2008) .................................................................. 11, 14, 18

Case 1:11-cv-00804-CCE-LPA   Document 118   Filed 10/03/12   Page 4 of 33

*Planned Parenthood Minn., N.D., S.D. v. Rounds,*
    686 F.3d 889 (8th Cir. 2012) ................................................................. 18

*Planned Parenthood of SE Pa. v. Casey*, 505 U.S. 833 (1992) ................................*passim*

*Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165 (4th Cir. 2009) ....................... 8

*Riley v. Nat'l Fed'n of the Blind of NC, Inc.*, 487 U.S. 781 (1988) ................................... 12

*Roe v. Wade*, 410 U.S. 113 (1973) ............................................................... 21, 23

*Singleton v. Wulff*, 428 U.S. 106 (1976) ............................................................ 23

*Stenberg v. Carhart*, 530 U.S. 914 (2000) ............................................................ 5

*Tex. Med. Providers Performing Abortion Servs. v. Lakey,*
    667 F.3d 570 (5th Cir. 2012) ....................................................... 16, 17, 18

*U.S. Civil Serv. Comm'n v. Nat'l Assn of Letter Carriers AFL-CIO,*
    413 U.S. 548 (1973) ................................................................................ 6

*United States v. Vuitch*, 402 U.S. 62 (1971) ......................................................... 9

*United States v. Williams*, 553 U.S. 285 (2008) ..................................................... 7

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982) ......................................................................... 6, 7, 8, 9

*Warth v. Seldin*, 422 U.S. 490 (1975) .............................................................. 22

*Whalen v. Roe*, 429 U.S. 589 (1977) ............................................................... 11

*Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483 (1955) ............................... 24

*Wooley v. Maynard*, 430 U.S. 705 (1977) ........................................................ 12

## STATUTES AND RULES

28 U.S.C. § 2201(a) .................................................................................... 24

42 U.S.C. §1983 ........................................................................................ 24

Case 1:11-cv-00804-CCE-LPA   Document 118   Filed 10/03/12   Page 5 of 33

N.C.G.S §§ 90-21.80 *et seq* ................................................................................. 1, 2, 4, 7, 10

Fed. R. Civ. P. 56 ........................................................................................................ 3

**OTHER AUTHORITIES**

Paul Stam, *Woman's Right to Know Act: A Legislative History*, 28:1 Issues in Law &
 Medicine 3 (2012) ................................................................................................. 2

## NATURE OF THE CASE

This case involves a challenge to the Women's Right to Know Act, N.C.G.S §§ 90-21.80 *et seq.* (the "Act."). Plaintiffs – doctors who perform abortions in their practices and clinics that employ doctors who perform abortions – complain that certain provisions of the Act violate their constitutional rights and the constitutional rights of women seeking abortions. Defendants maintain that Plaintiffs lack standing to advance their patients' rights in this litigation and seek summary judgment on each of Plaintiffs' claims.

## STATEMENT OF FACTS

On July 28, 2011, North Carolina Session Law 405 (House Bill 854), "An Act to Require a Twenty-four-hour Waiting Period and the Informed Consent of a Pregnant Woman Before an Abortion May Be Performed," became law. The Act amended Chapter 90 of the North Carolina General Statutes to add an article entitled, "Woman's Right to Know Act." N.C.G.S §§ 90-21.80 through 90-21.92 (2011).

To assure that a woman has given voluntary and informed consent to an abortion, the Act provides that, at least twenty-four hours prior to the abortion, a physician or qualified professional must inform the woman, by telephone or in person, of several facts regarding the abortion and must tell the woman that she will be given an opportunity, prior to the abortion, to view a sonogram display of her unborn child in real-time and listen to the fetus's heart tone. N.C.G.S. § 90-21.82(1)(e).

The Act also states that, at least four hours before the abortion, a physician or a qualified technician working with the physician must perform an obstetric sonogram of

the unborn child and display real-time images so that the pregnant woman may view them.  N.C.G.S. § 90-21.85(a)(1)-(3).  While conducting the sonogram, the individual must provide an explanation of the display, including the location and number of fetuses or embryos, the dimensions of each embryo or fetus and the presence of external members and internal organs, if present and viewable.  N.C.G.S. § 90-21.85(a)(2) and (4). The individual must also offer the woman the opportunity to hear the fetal heart tone. N.C.G.S. § 90-21.85(a)(2).  The statute specifically provides that the woman is not required to look at the images or listen to the description.  N.C.G.S. § 90-21.85(b).[1]

The Act contains various other provisions, including:

- an exception for medical emergencies (N.C.G.S. §§ 90-21.82 and 90-21.85);
- an explicit prohibition on criminal penalties for violations  (N.C.G.S. § 90-21.85(a));
- an authorization of civil liability for damages only for performing an abortion in knowing or reckless violation of the statute or attempting to perform an abortion in willful violation of the statute (N.C.G.S. § 90-21.88(a));
- an injunction only for willful violations of the statute   (N.C.G.S. § 90-21.88(b)); and
- an authorization for providers subjected to frivolous actions or actions brought in bad faith to recover costs, including attorney's fees (N.C.G.S. § 90-21.88(b)).[2]

Plaintiffs challenge two portions of the Act:   (1) the "Informed consent to abortion" requirement (Section 90-21.82); and (2) the "Display of real-time view" requirement (Section 90-21.85).

---

[1]  There is nothing in the statute that would prevent the woman from wearing earphones (or the physician from providing them) to avoid listening during the sonogram procedure.

[2]  *See further* Paul Stam, *Woman's Right to Know Act:   A Legislative History*, 28:1 ISSUES IN LAW & MEDICINE 3 (2012).

2

<u>**QUESTIONS PRESENTED**</u>

I.      Whether the "Woman's Right to Know Act," N.C.G.S. §§ 90-21.80 *et seq*., is Unconstitutionally Vague on Its Face Despite the Fact That Each Provision of the Act Has a Reasonable and Valid Construction and Nothing in the Act is So Vague as to Require Invalidation of the Act in its Entirety.

II.     Whether the "Woman's Right to Know Act," N.C.G.S. §§ 90-21.80 *et seq.*, Which Requires Plaintiff Physicians Who Perform Abortions to Provide Truthful, Non-Misleading Information Relevant to a Patient's Decision to Abort Her Unborn Child In Order to Secure Informed Consent for the Abortion, Violates the Plaintiff Physicians' Constitutional Rights Under the Standards of Review Described in *Planned Parenthood of Southeast Pennsylvania v. Casey*.

<u>**ARGUMENT**</u>

Defendants are entitled to summary judgment in this case because there are no genuine disputes as to any material issues of fact and the Defendants are entitled to judgment as a matter of law for each of Plaintiff's claims. *See* Fed. R. Civ. P. 56.

**I.    THE STATE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON EACH OF PLAINTIFFS' CONSTITUTIONAL CLAIMS.**

Each of Plaintiff's challenges to the Act fails.

**A. No Provision of the Act Renders it Void for Vagueness.**

Plaintiffs "First Claim" is that Sections 90-21.82, 90-21.85, and 90-21.90 of the Act violate their rights under the Due Process Clause of the Fourteenth Amendment because these provisions fail to give them fair notice of the Act's requirements and encourage arbitrary and discriminatory enforcement. (3rd Am. Compl. ¶¶ 84-85) This Court correctly rejected several of Plaintiffs' vagueness contentions in its preliminary-injunction order. (Doc. 66, 12/19/11 Memorandum and Order ("Order"), at 12-17)

3

Plaintiffs' first remaining vagueness challenge concerns who qualifies as an "Advanced Practice Nurse Practitioner in Obstetrics." Plaintiffs contend that section 90-21.85(a) is unconstitutionally vague because it fails to set forth clearly who may perform the required ultrasound. (Doc. 9 at 14–15) Under section 90-21.85(a)(1), the ultrasound must be performed by "the physician who is to perform the abortion, or qualified technician working in conjunction with the physician." N.C.G.S. § 90-21.85(a). The Act defines a "qualified technician," in turn, as "[a] registered diagnostic medical sonographer who is certified in obstetrics and gynecology . . . or a nurse midwife or advanced practice nurse practitioner in obstetrics with certification in obstetrical ultrasonography." N.C.G.S. § 90-21.81(9). Plaintiffs maintain that there is no licensing for an "advanced practice nurse practitioner" in North Carolina and no commonly understood meaning of a "nurse practitioner in obstetrics." (Doc. 9 at 14)[3]

Plaintiff's second remaining vagueness challenge concerns Section 90-21.85(a)'s provision that, "If the woman has had an obstetric display of a real-time image of the unborn child within 72 hours before the abortion is to be performed, the certification of the physician or qualified technician who performed the procedure in compliance with this subsection shall be included in the patient's records and the requirements under this subsection shall be deemed to have been met." Plaintiffs claim that this provision renders it unclear how long before the abortion the ultrasound can occur and when a

---

[3] The Act also authorizes "qualified technicians" to perform certain requirements in provisions other than section 90-21.85(a) as an alternative to the physician performing them. *See, e.g.,* N.C.G.S. §§ 90-21.82(1)(e), 90-21.82(4).

4

certification is required.  (Doc. 9 at 17)

Each of these vagueness challenges lacks merit as a matter of law under controlling Supreme Court precedent.

### 1.  The Court Should Abstain From Invalidating the Act on Vagueness Grounds.

*Bellotti v. Baird,* 428 U.S. 132 (1976), requires federal courts to abstain whenever an ambiguous state abortion law is susceptible of a constitutional interpretation that could be imposed by state agencies or courts.  *See id.* at 146-47. Because each of the challenged provisions in the Act is susceptible of a saving construction from the state courts or state agencies that would eliminate any alleged vagueness, and because the State's lawyers have asked for abstention in this case, *Bellotti* compels this Court to abstain from resolving the vagueness challenges until the state agencies or courts have had an opportunity to resolve them.[4]

The challenged nurse practitioner provision is susceptible to interpretations that will eliminate the alleged vagueness – *e.g.,* that a nurse practitioner who is certified in obstetrical ultrasonography is an "Advance Practice Nurse Practitioner in Obstetrics" who may perform ultrasounds under the Act.

The 72-hour provision also reasonably can be construed to avoid any concern. That provision simply prescribes an alternative means of compliance with the Act's

---

[4] Plaintiffs may cite abortion cases in which the Supreme Court has failed to abstain under *Bellotti*.  However, in those cases the State's lawyers failed to ask for abstention, *see, e.g., Colautti v. Franklin,* 439 U.S. 379, 401 n.26 (1979), or the Court concluded that the law was not "fairly susceptible" of a narrowing construction, *see, e.g., Stenberg v. Carhart,* 530 U.S. 914, 945 (2000).

5

certification requirement. If a physician (or qualified technician) other than the one who will perform the abortion performs an ultrasound on the woman within 72 hours before the abortion and that person provides the required certification, then the requirements of Section 90-21.85(a) have been met. Nothing in the 72-hour provision sets a time frame for when the physician performing the abortion may perform the ultrasound or exempts any abortions from the certification requirement.

Abstention is particularly appropriate here because Plaintiffs have not availed themselves of the state law mechanisms available to alleviate the alleged ambiguities. This includes seeking clarification from administrative agencies and bringing as-applied challenges in the state courts pursuant to the North Carolina Declaratory Judgment Act. *Joseph E. Seagram & Sons, Inc. v. Hostetter,* 384 U.S. 35 (1966) (rejecting vagueness challenge due to the availability of administrative clarification);[5] *Arizonans for Official English v. Arizona,* 520 U.S. 43, 75 (1997) ("[N]ormally this Court ought not to consider the Constitutionality of a state statute in the absence of a controlling interpretation of its meaning and effect by the state courts."). In short, plaintiffs' vagueness concerns should not be addressed in this facial challenge.

### 2. The Statute is Not Unconstitutionally Vague – Particularly In Light of the Act's Scienter Requirement.

Even apart from *Bellotti's* abstention requirement, the Act is not unconstitutionally vague. The statute would be unconstitutionally vague only if: (1)

---

[5] *See also U.S. Civil Serv. Comm'n v. Nat'l Assn of Letter Carriers AFL-CIO,* 413 U.S. 548, 580 (1973); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 504 (1982).

it fails to "provide[ ] doctors of ordinary intelligence a reasonable opportunity to know what is prohibited"; or (2) encourages arbitrary and capricious enforcement. *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007). The provisions at issue do neither.

As the Court noted in its Order, the Act imposes no criminal liability. Therefore, the Act is not subject to the more exacting standards for clarity applicable to criminal statutes. *Hoffman,* 455 U.S. at 498-99. Even for civil liability, the Act limits liability to those cases where the violation is knowing, reckless, or willful. N.C.G.S. § 90-21.88. This scienter requirement alleviates any concerns Plaintiffs may have that they will suffer any harm for relying upon the targeted language in the Act. *Gonzales*, 550 U.S. at 149.

Moreover, with respect to the nurse practitioner and 72 hour issues, Plaintiffs have a clear path to compliance with the statute – namely, the abortion-performing physicians can perform the ultrasound, or have their registered diagnostic medical sonographer do so, between 72 and 4 hours before the abortion. Plaintiffs are merely complaining that the Act does not clearly explain all the compliance options available to them. For that reason as well, the statute is not unconstitutionally vague.

### 3. The Statute is Clear in the Vast Majority of Its Intended Applications.

*Hill v. Colorado,* 530 U.S. 703, 733 (2000), and numerous other cases foreclose vagueness challenges that assert only that statutory provisions are ambiguous at the margins. Lawmakers cannot possibly anticipate and resolve every conceivable circumstance that might arise when crafting legislation; the English language is incapable of such precision. *See Hill,* 530 U.S. at 733; *United States v.*

7

*Williams,* 553 U.S. 285, 304 (2008). Ambiguity at the margins is inevitable but does not violate the Constitution. Indeed, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill*, 530 U.S. at 733 (quotation omitted); *see also Planned Parenthood of SE Pa. v. Casey,* 505 U.S. 833, 895 (1992) (facial challenges improper unless they implicate a "large fraction of the cases in which [the statute] is relevant"); *Hoffman Estates,* 455 U.S. at 495 (disapproving a pre-enforcement, constitutional vagueness challenge that a statute was "unclear in *some* of its applications"); *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 169 (4th Cir. 2009) (en banc) (rejecting facial challenge that "d[id] not present a sufficiently frequent circumstance to render the [statute] wholly unconstitutional for all circumstances").[6]

Plaintiffs' pre-enforcement vagueness attacks against the Act involve "speculation about possible vagueness in hypothetical situations not before the Court" – and the provisions of the Act are clear "in the vast majority of [their] intended applications." *Hill*, 530 U.S. at 733 (quotation omitted). Most of the time there will be no concern about whether the person conducting the ultrasound is appropriate under the statute (*e.g.,* where that person is the physician who will

---

[6] So long as a statute has a core of clear applications, any unclear applications at the margins can be resolved with administrative regulations, prosecutorial practices, the rule of lenity, post-enforcement as-applied challenges, or pre-enforcement declaratory-judgment actions.

Case 1:11-cv-00804-CCE-LPA   Document 118   Filed 10/03/12   Page 14 of 33

perform the abortion or the physician's sonographer); or whether a separate ultrasound would suffice to meet the statute's requirements (*e.g.,* where the woman has not had an ultrasound before she seeks an abortion). In sum, because most applications do not raise any ambiguities, Plaintiffs' vagueness arguments should be rejected in this facial challenge.

## 4. The Court Should Adopt Defendants' Construction Or Another Saving Construction.

"[S]tatutes should be construed *whenever possible* so as to uphold their constitutionality." *United States v. Vuitch,* 402 U.S. 62, 70 (1971) (emphasis added); *see also Ohio v. Akron Ctr. for Reproductive Health (Akron II)*, 497 U.S. 502, 514 (1990); *Gonzales*, 550 U.S. at 153. The duty of federal courts to impose saving constructions on state statutes is universal, and it applies with full force in void-for-vagueness challenges, *see Vuitch,* 402 U.S. at 70, *Buckley v. Valeo,* 424 U.S. 1, 44 (1976) (per curiam), and abortion litigation, *see Akron II,* 497 U.S. at 514. Indeed, "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Gonzales,* 550 U.S. at 153-54 (citation and quotation omitted).

Furthermore, the Supreme Court has repeatedly held that, when evaluating facial vagueness challenges, "a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Hoffman Estates,* 455 U.S. at 494 n.5; *see also Kolender v. Lawson,* 461 U.S. 352, 355 (1983). Federal courts must defer to the interpretations of state officials charged with enforcing a state statute – even when those officials announce their interpretations in

9

litigation. *See, e.g., Frisby v. Schultz,* 487 U.S. 474, 483 (1988); *Doe v. Bolton,* 410 U.S. 179, 183 n.5 (1973); *Bellotti,* 428 U.S. at 143.

Defendants have offered reasonable interpretations of these statutory provisions. (*See* I.A.1, above)  If the Court were to reject these, it should adopt any other available interpretations that would render the Act constitutional.

> **5. Even If the Court Were To Find a Provision Vague and Find No Saving Construction, the Court Should Strike Only the Particular Provision.**

Finally, the statute contains a severability clause.  N.C.G.S. § 90-21.92.  Thus, even if this Court were to determine that the challenged provisions are unconstitutionally vague, the provisions should be stricken and the rest of the statute should be found valid pursuant to the severability clause.  *See Buckley,* 424 U.S. at 108-109.  Here, if the Court were to find the nurse practitioner provision vague and not subject to any saving construction, it should strike "advance practice nurse practitioner in obstetrics" from Section 90-21.81(9).  If the Court were to find the 72-hour provision vague and not subject to any saving construction, it should strike the final sentence of Section 90-21.85(a), which begins "If the woman has had an obstetric display . . . ."

## B. Plaintiffs Cannot Establish a First Amendment "Compelled Speech" Violation Based on Section 90-21.85.

Plaintiffs' "Second Claim" is that Section 90-21.85 of the Act violates their rights under the First Amendment by forcing them to deliver unwanted, government-mandated speech that they assert falls outside of accepted and ethical standards and practices for medical informed consent.  (3rd Am. Compl. ¶¶ 86-87)  This Court's preliminary-

Case 1:11-cv-00804-CCE-LPA   Document 118   Filed 10/03/12   Page 16 of 33

injunction order held that Plaintiffs were likely to succeed on this issue. The Court rejected the State's argument that *Casey* dooms Plaintiffs' compelled speech claims and concluded that strict scrutiny applies to the speech-compelling provisions of the Act. (Order at 4-11) The State respectfully asks the Court to reconsider this conclusion.

### 1. The Compelled Disclosures in the Act Are Subject to Rational-Basis Review, Not Strict Scrutiny.

Governments compel speech as part of their authority to regulate professions. Public officials must recite an oath of office. Doctors must report gunshot wounds and suspected child abuse to the authorities. And schoolteachers must teach the curriculum required by state education officials. None of this violates the Constitution, and none of this has been subjected to strict scrutiny under the Speech Clause. *See, e.g., Whalen v. Roe,* 429 U.S. 589, 598 (1977) (applying rationality review to a statute requiring pharmacists to file reports with state authorities when they fill prescriptions of certain drugs).

Similarly, government regulation of abortion compels speech from abortion-performing physicians. In some states, doctors who perform abortions must notify minors' parents, *H. L.* v. *Matheson,* 450 U.S. 398 (1981); respond specifically to patients' questions, *Planned Parenthood Minn., N.D., S.D. v. Rounds,* 530 F.3d 724, 735 (8th Cir. 2008) (en banc); or report every abortion performed to state officials, *Casey,* 505 U.S. at 900 (joint opinion). And informed consent laws require abortion providers to furnish information to women seeking abortions. *See Casey*, 505 U.S. at 881. All of these laws compel speech from doctors who perform abortions. But they

11

do not violate the Constitution and do not trigger strict scrutiny.

*Casey* establishes that *Whalen*'s rational-basis test applies whenever laws compel abortion-performing doctors to transmit truthful, non-misleading information to their patients. Thus, pursuant to Supreme Court precedent, the State has the power to compel the speech at issue as part of its regulation of the medical profession.

    a) ***Casey* Requires Courts To Apply Rational Basis Review to All Compelled Speech Challenges to Laws That Regulate "The Practice of Medicine."**

The petitioners in *Casey* challenged a Pennsylvania informed consent law that imposed numerous compelled speech obligations on abortion-performing physicians. That statute required doctors to inform the woman of the nature of the procedure, the health risks of abortion, the "probable gestational age of the unborn child," and the availability of materials describing the fetus. The petitioners attacked Pennsylvania's informed consent statute as a violation of both the First Amendment and the "right of privacy." *See* Brief of Petitioners, 1992 WL 551419, at *50, *Casey,* 505 U.S. 833. On the First Amendment, the petitioners cited *Wooley v. Maynard*, 430 U.S. 705 (1977)*,* accused the informed consent law of "forc[ing] the physician to communicate the state's ideology," and insisted that strict scrutiny must apply. Brief at *53-54. The petitioners also cited *Riley v. Nat'l Fed'n of the Blind of NC, Inc.*, 487 U.S. 781 (1988), and argued that compelled speech doctrine "is not confined to speech with an ideological viewpoint." Brief at *54 n.85.

12

The *Casey* joint opinion first rejected petitioners' "right of privacy" claims, holding that due process allows states to compel disclosures of "truthful, nonmisleading information" that are relevant to the abortion procedure.  505 U.S. at 882.  Then the opinion disposed of the compelled speech claim in three sentences:

> All that is left of petitioners' argument is an asserted First Amendment right of a physician not to provide information about the risks of abortion, and childbirth, in a manner mandated by the State. To be sure, the physician's First Amendment rights not to speak are implicated, *see Wooley v. Maynard,* 430 U.S. 705 . . . (1977), *but only as part of the practice of medicine, subject to reasonable licensing and regulation by the State, cf. Whalen v. Roe,* 429 U.S. 589, 603 . . . (1977).  We see no constitutional infirmity in the requirement that the physician provide the information mandated by the State here.

*Id.* at 884 (emphasis added).[7]  This passage acknowledges that the Pennsylvania statute compels speech from abortion-providing physicians.  Yet it rejects the request in the petitioners' brief to apply "strict scrutiny," holding instead that states may impose "reasonable" regulations on physicians' speech.   This directly-on-point holding compels the Court to apply rational-basis review to Plaintiffs' compelled speech claims.[8]

In its preliminary injunction order, the Court indicated that the informed consent provisions at stake here are more far-reaching than those in *Casey*.  (Order at

---

[7]   The Court noted that the analysis was "without substantial detail." (Order at 7)  While the Supreme Court's discussion was brief, its holding was clear.

[8]   Four other Justices similarly upheld the compelled disclosures in Pennsylvania's abortion law as "rationally related to the State's interest in assuring that a woman's consent to an abortion be a fully informed decision."  *See Casey,* 505 U.S. at 967 (Rehnquist, CJ., dissenting).

13

7 n.6)  But the fact that the Act mandates disclosures that extend beyond the Pennsylvania law cannot change the standard of review. *Casey* squarely and succinctly holds that *all* challenges to laws that regulate "the practice of medicine" are subject only to "rational basis" review.  *Cf. Rounds,* 530 F.3d at 735 (holding that *Casey* requires courts to reject a compelled speech challenge to South Dakota's informed consent law, even though that law swept more broadly than the Pennsylvania statute).

The Court also stated in its Order that the disclosures at issue were not "medically necessary."  (Order at 6 n.4)  But the Supreme Court has not held that the "medical necessity" of speech determines the applicable standard of review. Moreover, the Court's suggestion that the speech at issue is not relevant as part of the informed consent process cannot be squared with either *Casey* or *Gonzales*.  As noted above, some of the information required by the Pennsylvania statute was similarly focused on the fetus, but that did not affect the standard of review.  *See Casey*, 505 U.S. at 881.  The *Casey* court specifically explained that "informed choice need not be defined in such narrow terms that all considerations of the effect on the fetus are made irrelevant" and noted that providing such information helped ensure that the woman would "apprehend the full consequences of her decision."  *Casey*, 505 U.S. at 883.  Indeed, the *Casey* court said it *could not be doubted* that "most women considering an abortion would deem the impact on the fetus relevant, if not dispositive, to the decision."  *Id*. at 882.  The State is well within its power to regulate the medical profession when it determines that certain information is

14

necessary as part of the informed consent process, and the State's decision cannot be disturbed unless it fails *Casey*'s test.

Even if the Court were correct that the State can only regulate information related to the *woman's* health, the State reasonably could have determined that providing the information required by the Act protects a woman's psychological/mental health. No evidence is required on this point, as state legislatures can rely upon any information available to them. As the Supreme Court held in *F.C.C. v. Beach Communications, Inc*., 508 U.S. 307 (1993)**:**

> On rational-basis review, a classification in a statute . . . comes to us bearing a strong presumption of validity . . . and those attacking the rationality of the legislative classification have the burden [ ] to negative every conceivable basis which might support it[.] Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature . . . *[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data*. . . . Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.

*Id.* at 314-15 (emphasis added; citations and quotations omitted). Moreover, the Supreme Court has found the concept self-evident. *Casey*, 505 U.S. at 882 (information about the fetus "furthers the legitimate purpose of reducing the risk that a woman may elect an abortion, only to discover later, with devastating psychological consequences, that her decision was not fully informed."); *see also Gonzales*, 550 U.S. at 159, 157–59 ("Whether to have an abortion requires a difficult

15

and painful moral decision. While we find no reliable data to measure the phenomenon, it seems unexceptionable to conclude some women come to regret their choice . . . .").

The Court's Order also expressed concern that the speech at issue may be ideological, triggering strict scrutiny. (Order at 6 n.4) To the extent that the Court suggests that Defendants conceded this at oral argument by suggesting that one purpose of the Act was to present compelling information to persuade women to choose not to have an abortion, Defendants take issue with such an implication. Neither the motivation behind the Act, nor its effect, renders the speech itself "ideological." *See Gonzales,* 550 U.S. at 160; *see also Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570 (5th Cir. 2012). Indeed, *Casey* and *Gonzales* foreclose this possibility. *See Lakey*, 667 F.3d at 576 (*Casey* and *Gonzales* make clear that "laws [like the one at issue] . . . do not fall under the rubric of compelling 'ideological' speech that triggers First Amendment strict scrutiny"). The Act requires the taking and displaying of a sonogram and a description by the doctor of the exam results. Plaintiffs cannot and do not dispute that these medically accurate descriptions are inherently truthful and non-misleading.

In short, *Casey* controls the result in this case. In upholding Pennsylvania's informed consent law, *Casey* establishes a wider principle that applies rational-basis review to all compelled speech provisions that regulate "the practice of medicine."

Plaintiffs cannot avoid the law simply by raising irrelevant, factual distinctions.[9]

   **b) Persuasive Federal Appellate Court Opinions Have Followed *Casey* in Declining to Apply Strict Scrutiny and Rejecting First Amendment Challenges to Informed Consent Abortion Statutes.**

The Court of Appeals for the Fifth Circuit recently confronted nearly identical contentions in ruling on First Amendment challenges to a Texas ultrasound statute. *See Lakey,* 667 F.3d at 574. The *Lakey* court held that *Casey*'s holding precluded the application of strict scrutiny:

> The plurality response to the compelled speech claim is clearly not a strict scrutiny analysis. It inquires into neither compelling interests nor narrow tailoring. The three sentences with which the Court disposed of the First Amendment claims are, if anything, the antithesis of strict scrutiny. Indeed, the plurality references *Whalen v. Roe,* in which the Court had upheld a regulation of medical practice against a right to privacy challenge. 429 U.S. 589, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977). The only reasonable reading of *Casey*'s passage is that physicians' rights not to speak are, when "part of the practice of medicine, subject to reasonable licensing and regulation by the State[.]" This applies to information that is "truthful," "nonmisleading," and "relevant . . . to the decision" to undergo an abortion. *Casey*, 505 U.S. at 882, 112 S. Ct. at 2823.

*Id.* at 575.

Following *Casey* and *Gonzales,* the *Lakey* court reached three conclusions: (1) informed consent laws that do not impose an undue burden on the woman's right to have an abortion are permissible if they require truthful, nonmisleading, and relevant disclosures; (2) such laws are part of the state's reasonable regulation of medical practice and do not fall under the rubric of compelling "ideological" speech that triggers First

_____

[9]  The State also wishes to preserve for appeal its contention, which the Court rejected in its Order, that the speech at issue is commercial speech. (*See* Order at 8)

Amendment strict scrutiny; and (3) "relevant" informed consent may entail not only the physical and psychological risks to the expectant mother facing this "difficult moral decision," but also the state's legitimate interests in "protecting the potential life within her." *Id.* at 576. Applying these principles, the court vacated the district court's preliminary injunction and allowed the Texas ultrasound statute to take effect.

The Court of Appeals for the Eighth Circuit sitting *en banc* has construed *Casey* and *Gonzales* in the same way. In *Rounds*, 530 F.3d at 735, that Court upheld an informed consent provision pursuant to *Casey*:

> [W]hile the State cannot compel an individual simply to speak the State's ideological message, it can use its regulatory authority to require a physician to provide truthful, non-misleading information relevant to a patient's decision to have an abortion, even if that information might also encourage the patient to choose childbirth over abortion.

*Id.* at 734-35. *See also Planned Parenthood Minn. v. Rounds,* 686 F.3d 889, 893 (8th Cir. 2012) (en banc).

### c) The Act Passes Rational Basis Review.

As discussed above, the Act requires physicians to provide "truthful and nonmisleading information" to patients, and that information is relevant to the patients' decision. That is all that is required. The Act furthers numerous legitimate state interests, including "the legitimate end of ensur[ing] that a woman apprehend the full consequences of her decision," *Casey*, 505 U.S. at 882; the State's interest in promoting life, *Gonzales*, 550 U.S. at 145; and the State's interest in promoting women's psychological health, *Casey*, 505 U.S. at 882. It also furthers all of the legitimate state

interests discussed in subsection (2)(a) below.  Thus, it passes muster under *Casey*.

**2. If This Court Applies Strict Scrutiny, the Act's Speech-Related Provisions Are Narrowly Tailored To Advance Compelling State Interests.**

If this Court continues to apply strict scrutiny, it should nevertheless reject Plaintiffs' constitutional claims because those provisions are narrowly tailored to advance at least three compelling state interests.

**a) Several Compelling State Interests Are Advanced by the Act.**

First, the State has a compelling interest in ensuring that abortion-seeking women are fully informed of their fetus's development before they make an irreversible decision to abort that fetus.  Both *Casey* and *Gonzales* emphasize the irreparable harms that befall women who abort with less-than-complete information and later regret their decisions.  *Casey,* 505 U.S. at 882; *Gonzales,* 550 U.S. at 159.

Second, the State has a compelling interest, per *Gonzales,* in persuading pregnant women to opt for childbirth over abortion.  Although the Supreme Court forbids States to *coerce* pregnant women into choosing childbirth over abortion, the Court allows the State to reduce abortions by *encouraging* pregnant women to choose alternatives to abortion.  550 U.S. at 160.

Third, the State has a compelling interest in ensuring that women are not coerced into having abortions.  It was reasonable for the General Assembly to assume that some women who come to obtain abortions have been pressured into doing so.  (*See* Doc. 45-1 at ¶¶ 29-30; Doc. 45-2 at ¶ 19; Doc 45-6 at ¶¶ 3-9 & 18-20)  Women who have the

19

opportunity to see and hear about fetal development have time to ponder the decision and a chance to discuss it with their physician. (*Id.*; *see also* Bowes Aff. ¶ 2 and Bowes Aff. Ex. 1 at ¶¶ 2 & 3) The Act also provides information that may give these women the determination or confidence they need to decide not to have an abortion.

### b) The Act Is Narrowly Tailored To Advance These Compelling State Interests.

The Court's Order reflected its view that the Act is not narrowly tailored to serve some of these interests. (Order at 11) To be "narrowly tailored," the Act must have a close fit with the interests the State seeks to advance. *See, e.g., Grutter v. Bollinger*, 539 U.S. 306, 333 (2003). In this case, the Act is narrowly tailored to advance the objectives described above. The Act is neither under-inclusive nor over-inclusive in that the information it requires the physician to provide is relevant to all abortions. (*See generally* Doc. 45-1 at ¶¶ 19-30) Moreover, the information required by the Act, including real-time visual and auditory information about a woman's own pregnancy and the fetus within her, is the best and most relevant information to her individual decision. If she elects to avail herself of the information, it is likely that the effect, at least in some cases, will be to encourage her to engage in a moment of reflection about her decision whether to terminate her pregnancy – and the gravity of that decision. If she has been pressured or coerced into seeking an abortion, the Act will provide her with the opportunity to seek help and learn of alternatives. If she concludes, after careful consideration, that terminating her pregnancy is what is best for her, the information made available to her will do no more than help fully inform her decision.

20

The Court suggested that there were alternatives to the Act, such as making information at issue available in written form or offering to provide the information but respecting the patient's rejection of it. (Order at 11) These alternatives, however, are less likely to ensure that the specific information the General Assembly has deemed necessary for informed consent reaches abortion-seeking women. General written materials necessarily are not as narrowly tailored to effectively obtaining a woman's informed consent as her viewing a real-time image of and hearing about her own fetus. Furthermore, if the State is permitted to require written information, there is no reason that the State cannot require that information to be presented in a more powerful and compelling way. Offering the information but not providing it if the woman declines means that the information would not get conveyed to those women who would choose to actually look and hear as the ultrasound occurs. Thus, these alternatives would not be equally as effective in furthering the State's interests.

        **c) At the Very Least, the Court Should Sever the Act's Applications to Post-Viability Abortions, and Reject any Compelled Speech Challenges to Those Applications.**

As the Court recognized in its Order (*id.* at 11), the State's interest in protecting fetal life is "compelling" after viability. *See Roe v. Wade,* 410 U.S. 113, 163 (1973); *see also Gonzales,* 550 U.S. at 145; *Casey,* 505 U.S. at 860. Thus, the Act satisfies the requirements of strict scrutiny whenever it applies to post-viability abortions.

**C. The Act Does Not Violate Substantive Due Process.**

Plaintiffs' "Third Claim" is that Section 90-21.85 violates their rights and their

patients' rights to substantive due process by requiring compliance with requirements that are not rationally related to any legitimate governmental interest. (3rd Am. Compl. ¶¶ 88-89) As an initial matter, restrictions on third-party litigation preclude Plaintiffs from asserting the constitutional rights of women seeking abortions. Moreover, Plaintiffs cannot establish a substantive due process violation.

> ### 1. Plaintiffs Lack Standing and a Cause of Action That Would Allow Them to Assert the Constitutional Rights of Women Seeking Abortions.

The Supreme Court requires that a litigant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (citation omitted). Litigants may assert the rights of third parties only when: (1) there is some "hindrance" to the third party's ability to protect his or her own interests; and (2) the litigant has "a close relation to" the third party. *See Kowalski,* 543 U.S. at 136. Plaintiffs fail both prongs of *Kowalski*, and Plaintiffs also have not cited a cause of action that would allow them to bring third-party claims.

The litigant's complaint must clearly demonstrate that the criteria for third-party standing are met. *See Warth v. Seldin,* 422 U.S. 490, 518 (1975). Plaintiffs' complaint does not even purport to allege a "hindrance" to abortion-seeking women asserting their own rights or that Plaintiffs have the required "close relation" with such women. *See Kowalski,* 543 U.S. at 130; *Warth,* 422 U.S. at 518. These pleading deficiencies alone warrant the dismissal of Plaintiffs' third-party claim.

In any case, Plaintiffs cannot meet either prong. *Any* pregnant woman who

22

wants an abortion in North Carolina can sue the officials charged with enforcing this law, and there are abortion-seeking women in North Carolina who could provide a suitable plaintiff.   In *Roe v. Wade*, the courts allowed Roe to proceed pseudonymously to protect her privacy, and the Supreme Court held that the end of the woman's pregnancy would not moot her case.  *See Roe v. Wade,* 410 U.S. at 124-25.  *Roe v. Wade* thus empowers any abortion-seeking woman to challenge any statute regulating abortion without compromising her privacy and without encountering any mootness barriers.  Countless numbers of post-Roe abortion cases have been brought by abortion-seeking women – a fact that precludes a finding of a "hindrance."  *Kowalski,* 543 U.S. at 132.[10]

Plaintiffs also cannot demonstrate a "close relation" with abortion-seeking women because they are challenging a law that creates statutory rights for these women to assert against them in their capacity as abortion providers.  A litigant cannot satisfy the "close relation" test if the interests of the litigant and the third-party rights-holder are even "potentially in conflict."  *Elk Grove Unified Sch. Dist v. Newdow,* 542 U.S. 1, 15 (2004).  The Supreme Court has recognized interest of providers and patients of abortion services conflict over the need to disclose truthful information about the abortion procedure.  In

---

[10]  The plurality opinion in *Singleton v. Wulff,* 428 U.S. 106, 117 (1976), which allowed third-party standing in the abortion context, is not law.  *See Singleton,* 428 U.S. at 121-22 (Stevens, J., concurring in part).  It also is not persuasive because it contradicts *Roe v. Wade*'s mootness holding.  *Roe v. Wade,* 410 U.S. at 124-25.  Moreover, this case is indistinguishable from *Freilich v. Upper Chesapeake Health, Inc*., 313 F.3d 205, 215 (4th Cir. 2002), in which a post-*Singleton* Fourth Circuit Court of Appeals held that a doctor lacked standing to assert the rights of her indigent dialysis patients in an ADA case.

*Gonzales,* the Court observed that, "[i]n a decision so fraught with emotional consequence some doctors may prefer not to disclose precise details of the means that will be used, confining themselves to the required statement of risks the procedure entails." 550 U.S. at 159. Yet the Court emphasized that not only the State but also abortion-seeking women have "an interest in ensuring so grave a choice is well informed." *Id.* Under the circumstances, abortion providers cannot demonstrate they have the "close relation" necessary to assert the constitutional rights of these women.

Even if Plaintiffs could meet the requirements for third-party standing, they lack a cause of action that would allow them to proceed with a third-party claim. Neither Section 1983 nor the Declaratory Judgment Act provides such a cause of action. *See* 42 U.S.C. § 1983; 28 U.S.C. § 2201(a).

### 2. Plaintiff Cannot Establish a Violation of Substantive Due Process.

Regardless of whose rights are being advanced, Plaintiffs' claim fails. To survive the rational basis standard, "the law need not be in every respect logically consistent with its aims . . . . It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487-88 (1955). Furthermore, "[a] statute is presumed constitutional and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (citations and quotations omitted).

Here, Plaintiffs claim that the State has no rational basis for requiring them to

24

display a real-time view of the fetus and provide an accurate medical description of the images, at least for women who do not want to watch or listen. (Doc. 9 at 17-18) Plaintiffs assert that the State's only interest is "shaming." (*Id.*) Plaintiff's argument amounts to nothing more than a policy dispute with the General Assembly.

The State has a legitimate interest "from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child." *Casey*, 505 U.S. at 846. The legislature could rationally conclude that the Act furthers these interests and others, even if the women profess not to want the information. Some women may think they do not want to see or hear about the sonogram image but change their minds while the sonogram is being conducted; for such women, the information would not be conveyed if the Act did not require it. Thus, the Act advances legitimate state interests.

## II. IF THE COURT DENIES DEFENDANTS' MOTION, IT SHOULD MODIFY THE PRELIMINARY INJUNCTION.

The Court's preliminary injunction enjoins Section 90-21.85 in its entirety. Plaintiffs' First Amendment challenge, however, only implicates two provisions: (1) the first sentence of subsection (a)(2), which requires "a simultaneous explanation of what the display is depicting, which shall include the presence, location, and dimensions of the unborn child within the uterus and the number of unborn children depicted"; and (2) subsection (a)(4), which requires "a medical description of the images, which shall include the dimensions of the embryo or fetus and the presence of external members and internal organs, if present and viewable." Thus, if the Court declines to grant summary judgment to Defendants, the State respectfully requests that the Court modify its

25

injunction to allow all other provisions of Section 90-21.85 to go into effect.

## CONCLUSION

For the foregoing reasons, the State of North Carolina respectfully requests that the Court enter summary judgment in favor of Defendants on all of Plaintiffs' claims.

Respectfully submitted, this the 3rd day of October, 2012.

ROY COOPER
Attorney General

/s/ *Thomas J. Ziko*
Thomas J. Ziko
Senior Deputy Attorney General
State Bar No. 8577
E-mail:  tziko@ncdoj.gov

/s/ *I. Faison Hicks*
I. Faison Hicks
Special Deputy Attorney General
State Bar No. 10672
E-mail:  fhicks@ncdoj.gov

/s/ *Stephanie A. Brennan*
Stephanie A. Brennan
Assistant Attorney General
State Bar No. 35955
E-mail:  sbrennan@ncdoj.gov

N.C. Department of Justice
114 W. Edenton Street
Post Office Box 629
Raleigh, North Carolina 27602
Telephone:  (919) 716-6900
Fax:  (919) 716-6963
*Attorneys for Defendants*

26

**CERTIFICATE OF SERVICE**

This is to certify that, on the 3rd day of October 2012, the foregoing **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Office of the Clerk of Court of the United States District Court for the Middle District of North Carolina using the CM/ECF system, which will automatically send notification of such filing to all registered CM/ECF participants.

<u>/s/ *Stephanie A. Brennan*</u>
Stephanie A. Brennan
Assistant Attorney General