# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GRETCHEN S. STUART, M.D., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | |
| RALPH C. LOOMIS, M.D., et al., | ) | Case No. 1:11-cv-00804 |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

In their opposition brief, Defendants resort to misrepresenting the "Display of Real-Time View Requirement" (the "Requirement") in their effort to save it. Defendants argue that the Requirement is not coercive and instead merely compels physicians to make an "offer" to their patients, which the patients can reject. But this incredible argument ignores both what the Requirement actually commands and conflates the rights of physicians with the rights of their patients. As Defendants admit, the "Act requires [physicians] to 'broadcast' or 'transmit' [images and sounds] to the patient, but it does not require the patient to 'receive' these 'broadcasts' or 'transmissions.'" Defs.' Opp. Br. at 4. Thus, Defendants concede that the Requirement leaves physicians no choice. And, it is precisely the State's compulsion that the physician speak even over the patient's active objection and the physician's own medical judgment that makes the Requirement ideological and a violation of the *physician*'s First Amendment rights. The fact that the physician must continue to "broadcast" or "transmit" the images and sounds even though the patient is actively refusing to see or hear, including by putting on "earphones" and using "blinders," *id*. at 4, is also what makes the Requirement irrational and a violation of the *patient*'s substantive due process rights. These two wrongs do not make a right.

Rather than addressing the core of Plaintiffs' claims, Defendants maintain that traditional First Amendment law is inapplicable to review of statutes regulating abortion. As this Court has previously held, however, the Supreme Court has never recognized an abortion exception to the First Amendment. *See Stuart v. Huff,* 834 F. Supp. 2d 424, 430 (M.D.N.C. 2011). Consequently, because the Requirement imposes content- and

1

speaker-based restrictions and compels speech that is ideological, it is subject to strict scrutiny review, which it fails. Pls.' Br. at 8-14. Defendants cannot escape this outcome by relying on the Supreme Court's decision in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), because the statute there did not compel physicians to use their own voice to communicate an anti-abortion message by forcing images and sounds on their patients in the middle of a medical procedure.

## ARGUMENT

### I. Defendants Misrepresent Both the Obligations Imposed by the Requirement and the Undisputed Facts in this Case.

Defendants claim that the Requirement only mandates physicians to "offer information" to their patients and that, without it, physicians would be unwilling to display and describe ultrasound images and sounds. This argument distorts both the Requirement and the undisputed facts in this case, and Defendants' repeated refrain that the Requirement is just an "offer" law does not make it so. An offer may be either accepted or refused – a refusal of an "offer" of "information" not only prevents the "information" from being received, but also from being provided. Not so the Requirement. For at least four reasons, the Court should reject Defendants' efforts to misconstrue the statute and the factual record.

First, by its express terms, the Requirement obligates physicians to use their own voice and expressive conduct to subject their patients to a barrage of images and words, even if the patient strains to avoid these images and sounds and even if the physician believes that continuing would harm the patient. Absent a medical emergency, the

Requirement compels physicians to "[d]isplay the images so that the pregnant woman may view them" and "provide a simultaneous explanation of what the display is depicting." N.C. GEN. STAT. §§ 90-21.85(a)(2), (3) (2011). Even Defendants' expert testified that there is "a meaningful difference" between a statute obligating a physician to "offer[] a woman the ability to view [an] ultrasound and hear [a] simultaneous explanation" and one that requires the physician to place "the screen in her view" and "describ[e] the ultrasound even over her objection." Dep. of Dr. Watson A. Bowes ("Bowes Dep.") 91-92, Aug 10, 2012 (attached as Ex. A to Reply Decl. of Julie Rikelman).[1]

Second, the mandate on the physician to speak and act out the state's anti-abortion message is iron-clad; there is no choice for the physician. Compliance with the Requirement hinges upon the physician completing the compulsory state-mandated script and performance. *See Stuart*, 834 F. Supp. 2d at n.7 ("The statute does not allow providers any discretion, requiring compliance regardless of a patient's medical or individual situation."). At oral argument, Defendants' counsel stated that a physician can fulfill her responsibilities to describe the ultrasound by speaking into a "dictation mask" that prevents her patient from hearing her. Transcript of Oct. 17, 2011 Oral Argument at 36-37 (attached as Ex. B to Reply Decl. of Julie Rikelman); *see also* Defs.' Opp. Br. at 4

---

[1] The fact that the physician must provide the description and viewing regardless of the patient's wishes and must continue speaking and displaying even over the patient's active objection distinguishes the Requirement from offer laws passed in other jurisdictions. *See, e.g.*, Miss. Code Ann. § 41-41-34(1)(b) (2012); N.D. Cent. Code § 14.02.1-04(4) (2012); Va. Code Ann. § 18.2-76(C) (2012). Indeed, the Act contains an offer to display the ultrasound image and hear any heartbeat in Section 90-21.82(e). Plaintiffs have not challenged this part of the Act.

(suggesting that physician could comply by "equipping his or her examination rooms with earphones and blinders that can be used by patients who elect not to hear the fetal heart beat and the physician's description of the ultrasound image and/or who elect not to see the ultrasound image.").[2] But the physician is still compelled to speak: he or she *must* display the images, describe them, impose a four-hour wait afterwards, and require the patient to certify whether she "availed" herself of the ultrasound display and description to avoid penalties. § 90-21.85(a)(5).

Third, Defendants misrepresent both a patient's ability to reject or ignore the images and sounds that her physician must impose on her and the uniquely intrusive manner in which the Act would compel physicians to force these images and sounds on a patient.[3] By arguing that the Requirement "does not require patients to listen to, watch or otherwise avail themselves of the offered information," Defendants invite the Court to ignore the context of these physician-patient interactions. Defs.' Opp. Br. at 4-5. It is undisputed that in order for an ultrasound to be completed, a woman must be partially undressed and a physician must either insert a probe into her vagina or place it on her abdomen as she lies on an examination table. *See* Stuart Decl. in Supp. of Pls.' Mot. for

---

[2] This is also the reason why the Requirement fails even rational basis review; no government purpose is served by this compulsory performance. Pls.' Br. at 22-25. *See also Stuart*, 834 F. Supp. 2d at n.7 ("The uncontradicted evidence establishes that there is no medical purpose for requiring the speaking or showing of this material to an unwilling listener."). Defendants' briefing entirely fails to address this argument.

[3] Defendants concede that in order for the Requirement to be considered an "offer," the patient must be permitted not to watch or listen to the images, sounds, and description that her physician is compelled to provide. Defs.' Opp. Br. at 3-5.

4

Summ. J. ¶¶ 10-11; Floyd Decl. in Supp. of Pls.' Mot. for Summ. J. ¶ 10; Dingfelder Decl. in Supp. of Pls.' Mot. for Summ. J. ¶¶ 10-11. The Requirement forces a partially undressed woman lying supine to take extreme measures to avoid witnessing her physician's performance of what the Requirement compels. It strains credulity to argue that women in this compromised position can make a voluntary choice.[4]

Finally, in total disregard of the undisputed evidence in the record, Defendants assert that Plaintiffs would not allow their patients to view and discuss their ultrasounds before an abortion but for the Requirement. Defs.' Opp. Br. at 14-16. This assertion is simply false. Plaintiffs have testified that, even before the Requirement, it was and continues to be their practice to: (1) offer patients an opportunity to view their ultrasound; and, (2) answer any questions their patients have about the ultrasound images. *See* Stuart Decl. in Supp. of Pls.' Mot. for Summ. J. ¶ 14; Floyd Decl. in Supp. of Pls.' Mot. for Summ. J. ¶ 11; Dingfelder Decl. in Supp. of Pls.' Mot. for Summ. J. ¶ 15. Defendants have not presented a shred of evidence to the contrary. For all these reasons, Defendants' attempt to rewrite the Requirement as a necessary but innocuous "offer" law must fail.

## II. The Requirement Violates Well-Established First Amendment Principles, Which Control Here.

Rather than grappling with Plaintiffs' analysis of how well-established First Amendment doctrine applies to the Requirement, Defendants ignore it. Instead,

---

[4] For the State to mandate that physicians force sounds and images on a woman *in the midst of an ultrasound procedure*, and then to seek to distance itself from the realities of what compelling speech during an ultrasound entails by saying that the intrusive context is simply a function of the nature of the ultrasound procedure and accepted medical practice, Defs.' Opp. Br. at 3, is indefensible.

Defendants claim that traditional First Amendment law is irrelevant because the compelled speech cases on which Plaintiffs rely did not arise in the abortion context. Defs.' Opp. Br. at 7-8 & n.1. This argument, however, presupposes that there is an abortion exception to the First Amendment, a claim that this Court already has rejected. *See Stuart*, 834 F. Supp. 2d at 430 (holding that Supreme Court in *Casey* did not decide "by implication" that "long established First Amendment law was irrelevant when speech about abortion is at issue.").[5] The cases cited by Plaintiffs, which address First Amendment challenges to statutes regulating speech, including the speech of professionals, are squarely on point here. *See, e.g.*, *Legal Servs. Corp. v. Velasquez*, 531 U.S. 533, 536-37 (2001) (suit by a nonprofit legal services organization challenging a funding law that restricted types of arguments that legal services lawyer may make in seeking relief on behalf of indigent clients); *Conant v. Walters*, 309 F.3d 629, 632 (9th Cir. 2002), *cert. denied*, 540 U.S. 946 (2003) (suit over law that prohibited physicians from recommending the use of marijuana for medical purposes).

As part of their attempts to evade traditional First Amendment doctrine, Defendants never rebut Plaintiffs' arguments that the Requirement compels ideological speech by physicians. The closest Defendants come is their repeated slogan that the Requirement only regulates the "informed consent" process. *See* Defs.' Opp. Br. at 9-12. But as Plaintiffs have explained, the Requirement is performative, not informative, which

---

[5] Defendants try to discount the import of the Court's prior holding by emphasizing that it was reached at the preliminary injunction stage. Defs.' Opp. Br. at 7. However, Defendants have failed to offer any basis to undermine this holding, which was based on the Court's careful analysis of First Amendment doctrine.

6

is a key aspect of what makes it ideological. According to Defendants, a physician will be found in compliance with the Requirement even if he or she displayed the ultrasound behind a screen and described it while the patient had earphones on and therefore received *no information whatsoever*. Moreover, Defendants' expert acknowledged that the Requirement is actually in tension with informed consent standards, which generally grant physicians discretion to choose how they obtain consent, Bowes Dep. 73, and prohibit them from acting over the objections of competent patients, Bowes Dep. 62.

Finally, it is clear that Defendants' defense of the Requirement rests entirely on their claim that it is identical to the statute at issue in *Casey*. In addition to Plaintiffs' previous briefing explaining why this claim is meritless, the chart below demonstrates that Defendants are wrong. The chart compares the key obligations of both statutes on the patient and her physician. Plaintiffs seek to enjoin permanently only the highlighted obligations, none of which has analogs in the statute considered in *Casey*:

|  | **N.C. Women's Right to Know Act** | **Statute in *Casey*[6]** |
|---|---|---|
| **Physician** | Must orally inform woman of medical risks associated with abortion, the probable gestational age of the fetus, and the "medical risks associated with carrying the child to term." N.C. GEN. STAT. §§ 90-21.82(1)(b)-(d). | Same. 18 PA. CONST. STAT. §§ 3205(a)(1)(i) -(iii), (2)(ii)-(iii) (2012).*<br><br>*Waived if physician reasonably believes that "furnishing the information would have resulted in a severely adverse effect on the physical or mental health of the patient." *Id.* at § 3205(c) ("Med. J. Exception"). |

---

[6] This chart does not reflect all obligations imposed by the North Carolina and Pennsylvania statutes. The text of the statute at issue in *Casey* can be found at 505 U.S. at 902-04.

7

|  | Must notify patient of "right to review the printed materials" prepared by the State that "describe the unborn child and list agencies that offer alternatives to the abortion." If the woman chooses, these materials will be provided to her free of charge. N.C. GEN. STAT. §§ 90-21.82(2)(e), .83. | Same. 18 PA. CONST. STAT. § 3205(a)(2)(i).*<br><br>* Subject to Med. J. Exception |
|---|---|---|
|  | Must perform an "obstetric real-time view of the unborn child" and "display the images so that the pregnant woman may view them." N.C. GEN. STAT. § 90-21.85(a)(1), (3). | None. |
|  | Must give a simultaneous explanation of the ultrasound display, including "the presence, location, and dimensions of the unborn child within the uterus," and a "medical description of the images, which shall include the dimensions of the embryo or fetus and the presence of external members and internal organs, if present and viewable." *Id.* § 90-21.85(a)(2), (4). | None. |
|  | Must provide the woman "the opportunity to hear the fetal heart tone." *Id.* § 90-21.85(a)(2). | None. |
|  | Must require the woman to wait at least four hours after the display and description, and to certify whether or not she "availed herself of the opportunity to view the image," before performing an abortion. *Id.* § 90-21.85(a), (a)(5). | None. |
| **Patient** | Must listen to: (1) warnings concerning medical risks associated with abortion and childbirth; (2) the gestational age of the fetus; (3) availability of documents providing information on alternatives to abortion. N.C. GEN. STAT. §§ 90-21.82(1)(b)-(d). | Same. 18 PA. CONST. STAT. §§ 3205(a)(1)(i)-(iii), (2)(ii)-(iii).*<br><br>* Subject to Med. J. Exception |
|  | Can choose whether to access and consider State published information regarding alternatives to abortion. N.C. GEN. STAT. §§ 90-21.82(2)(e). | Same. 18 PA. CONST. STAT. § 3205(a)(2)(i).*<br><br>* Subject to Med. J. Exception |

8

| | Unless patient closes her eyes and covers her ears while she is undergoing an ultrasound on an examination table, she must view the ultrasound images and listen to a detailed description of those images and then wait at least four hours before obtaining the procedure. N.C. GEN. STAT. §§ 90-21.85(a)-(b). | None. |
|---|---|---|

The chart also highlights the constitutionally-dispositive differences between the North Carolina and Pennsylvania statutes. First, under the Pennsylvania law, the state did not compel the physician to speak or offer *any* information that he or she believed could have a "severely adverse effect" on the patient's physical or mental health. By contrast, the Requirement does not grant a physician any discretion whatsoever and requires the physician to speak the state's message, even if the physician believes in good faith that doing so will psychologically harm the patient. Second, although the Pennsylvania law required physicians to notify patients of the availability of ideological material published by the State describing the embryo or fetus,[7] none of that law's provisions conscripted physicians to use their own voice and expressive conduct to communicate the State's ideological message on potential life. As this Court has observed, "[w]hat the state can say itself is very different from what the state can compel individuals to say." *Stuart*, 834 F. Supp. 2d at n.6 (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828, 833 (1995)). Third and finally, nothing in *Casey* required the physician to communicate the state's anti-abortion message while the patient was lying vulnerable and

---

[7] Contrary to Defendants' argument, the law in *Casey* did not even require physicians to provide the pamphlet unless the patient requested it.

9

exposed in the midst of a medical procedure, and even if the patient was closing her eyes and covering her ears. For all of these reasons, the *Casey* plurality could describe the statute at issue there as the "reasonable . . . regulation" of the "practice of medicine." 505 U.S. at 884. By contrast, the speech compelled by the Requirement serves only to punish the physician and the patient and therefore goes far beyond the ordinary regulation of medical practice.

Defendants' response boils down to this: Because the State has chosen to call the Requirement an informed consent law, strict scrutiny does not apply. But "state labels cannot be dispositive of [the] degree of First Amendment protection." *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795-96 (1988) (internal citation omitted). As Plaintiffs' briefing makes clear, the Requirement is antithetical to principles of informed consent and instead compels ideological speech by physicians. *See Stuart*, 834 F. Supp. 2d at 431-32. It therefore violates the First Amendment.

## CONCLUSION

For all of the foregoing reasons and those set forth in Plaintiffs' prior briefing, the Court should grant Plaintiffs' motion for summary judgment and strike the Requirement.

10

Dated: December 20, 2012

Respectfully submitted,

| | |
|---|---|
| */s/ Christopher Brook* | */s/ Julie Rikelman* |
| Christopher Brook, NC Bar #33838 | Julie Rikelman |
| American Civil Liberties Union | Center for Reproductive Rights |
| of North Carolina Legal Foundation | 120 Wall Street, 14th Floor |
| P.O. Box 28004 | New York, NY 10005 |
| Raleigh, NC 27611 | (917) 637-3670 |
| (919) 834-3466 | (917) 637-3666 Fax |
| (866) 511-1344 Fax | jrikelman@reprorights.org |
| cbrook@acluofnc.org | |

COUNSEL FOR ALL PLAINTIFFS

| | |
|---|---|
| Helene T. Krasnoff | Walter Dellinger |
| Planned Parenthood Fed. Of America | O'Melveny & Myers LLP |
| 1110 Vermont Avenue NW, Suite 300 | 1625 Eye Street NW |
| Washington, DC 20005 | Washington, DC 20006 |
| (202) 973-4800 | (202) 383-5300 |
| helene.krasnoff@ppfa.org | (202) 383-5414 Fax |
| | wdellinger@omm.com |
| Diana O. Salgado | |
| Planned Parenthood Fed. of America | Anton Metlitsky |
| 434 W. 33rd Street | O'Melveny & Myers LLP |
| New York, NY 10001 | Times Square Tower |
| (212) 541-7800 | 7 Times Square |
| (212) 247-6811 Fax | New York, NY 10036 |
| diana.salgado@ppfa.org | (212) 326-2000 |
| | (212) 326-2061 Fax |
| COUNSEL FOR PLANNED | ametlitsky@omm.com |
| PARENTHOOD OF CENTRAL NORTH | |
| CAROLINA & PLANNED | COUNSEL FOR GRETCHEN S. |
| PARENTHOOD HEALTH SYSTEMS, | STUART, M.D., DAVID A. GRIMES, |
| INC. | M.D., AMY BRYANT, M.D., DECKER |
| | & WATSON d/b/a PIEDMONT |
| Andrew D. Beck | CAROLINA MEDICAL CLINIC, & A |
| American Civil Liberties Union | WOMAN'S CHOICE OF RALEIGH, |
| Foundation | INC. |
| 125 Broad Street | |
| New York, NY 10004 | |

(212) 284-7318
(212) 549-2651 Fax
abeck@aclu.org

COUNSEL FOR JAMES R.
DINGFELDER, M.D., SERINA FLOYD,
M.D., TAKEY CRIST, M.D., & TAKEY
CRIST M.D., P.A. d/b/a CRIST CLINIC
FOR WOMEN

12

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of December, 2012, I electronically filed the foregoing **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing.

*/s/ Christopher Brook*
Christopher Brook, NC Bar #33838
American Civil Liberties Union
of North Carolina Legal Foundation
P.O. Box 28004
Raleigh, NC 27611
(919) 834-3466
(866) 511-1344 Fax
cbrook@acluofnc.org

COUNSEL FOR ALL PLAINTIFFS