# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GRETCHEN S. STUART, M.D., )
et al., )
           )
       Plaintiffs, )
           )
v.         ) Civil Action
           ) Case No. 1:11-CV-00804
RALPH LOOMIS, M.D., et al., )
           ) **ORIGINAL**
       Defendants. )

DEPOSITION OF WATSON ALLEN BOWES, JR., M.D.

FRIDAY, AUGUST 10, 2012

Conference Room

American Civil Liberties Union of North Carolina

727 West Hargett Street, Suite 105

Raleigh, North Carolina

9:30 a.m.

Volume 1 of 1

Pages 1 through 188

## Kay McGovern & Associates
Suite 117, 314 West Millbrook Road • Raleigh, NC 27609-4380
(919) 870-1600 • FAX 870-1603 • (800) 255-7886

1  A  Yes.
2  Q  Do you think it's ethical from a medical stand-
3  point for a physician to act over the objection of a
4  competent patient?
5  A  I'm not quite sure what you mean by that.
6  Q  Do you think a physician should do something over
7  the objection--to the patient over the objection of a
8  competent patient?
9     Ms. Brennan:  Objection to form.
10 Q  In your opinion?  Actually, let me withdraw that.
11 A  Yeah.
12 Q  Do you think it's ethical for a patient to do
13 something to a patient over their objection?
14 A  Do you mean a doctor to do something to a patient?
15 Q  Yes.
16    Ms. Brennan:  Objection to form.
17 A  Well, I think it would depend upon the circum-
18 stances and the objection the patient was having.  In general
19 I agree with that, but I think there are exceptions that
20 might be--that would have to be considered.
21 Q  So generally speaking a physician should not act
22 over the objection of a competent patient?
23 A  In general.
24 Q  It would be unethical to do so?
25 A  Again, you'd have to define the specific

KAY McGOVERN & ASSOCIATES
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380
(919) 870-1600
FAX 870-1603
(800) 255-7886

Case 1:11-cv-00804-CCE-LPA   Document 133-1   Filed 12/20/12   Page 3 of 7

1  they were squeamish about seeing whatever was going to be on
2  the video, would you have tried other methods of explaining
3  the procedure and the risks and benefits and alternatives
4  other than showing the video?
5      A   Yes.
6      Q   Do you support--would you support a law--or do you
7  believe that--let me withdraw that question.  Do you believe
8  that a law--or do you believe that a physician should have
9  the discretion to be able to choose in what way they obtain
10 their informed consent from their patients?
11     A   In what way they obtain it?  Yes, provided they
12 are giving all the information that the patient needs.
13     Q   When you were practicing, Dr. Bowes, did you
14 perform ultrasounds on your patients?
15     A   Yes.
16     Q   Did you perform those ultrasounds yourself?
17     A   I did in the earlier days.  I didn't more
18 recently.
19     Q   What were the--when was the earlier days?
20     A   When I was at the University of Colorado.
21     Q   You did them yourself?
22     A   Yes.
23     Q   And then at the University of North Carolina you
24 did not?
25     A   I did in the early part of it.  Then we--we more

KAY McGOVERN & ASSOCIATES
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

(919) 870-1600
FAX 870-1603
(800) 255-7886

Case 1:11-cv-00804-CCE-LPA   Document 133-1   Filed 12/20/12   Page 4 of 7

1  patient an ultrasound image, a real-time ultrasound image,
2  of--of the fetus. I--that's what I did. I didn't know
3  anything about where the screen was going to be. I don't
4  think it said anything about the screen.
5     Q   And so when you testified in front of the North
6  Carolina legislature, those things were--those requirements
7  were important to you in order---
8     A   (interposing) Yeah.
9     Q   ---for your support, in order so that you could
10 support this law?
11    A   Well, I agree with them.
12    Q   Do you think there's a meaningful difference
13 between the requirement that a physician offer a woman the
14 opportunity to view the ultrasound and hear the explanation
15 and the requirement that the physician, even over the woman's
16 objection, provide the simultaneous explanation of what the
17 ultrasound display is depicting?
18    A   Just restate that again.
19    Q   Do you think there's a meaningful difference
20 between offering a woman the ability to view the ultrasound
21 and hear the simultaneous explanation versus placing the
22 screen in her view even over her objection and describing the
23 ultrasound even over her objection?
24    A   Yeah, there's a difference.
25    Q   And what is that difference?

KAY McGOVERN & ASSOCIATES
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

(919) 870-1600
FAX 870-1603
(800) 255-7886

Case 1:11-cv-00804-CCE-LPA   Document 133-1   Filed 12/20/12   Page 5 of 7

1  A   Well, one says the physician or the health care
2  professional must do this. The other says they would just
3  offer it.
4  Q   Do you think there's a legitimate medical purpose
5  for requiring the real--what we're going to call the real-
6  time display and the simultaneous explanation even if the
7  patient chooses to close her eyes and as you said put
8  earmuffs on or fingers over her--plug her ears with her
9  fingers?
10 A   I believe there is a medical implication. Is that
11 the word you used?
12 Q   Do you think there's a legitimate medical purpose?
13 A   Purpose, yes.
14 Q   What is that?
15 A   Having the patient fully aware of what the
16 implications of this procedure are in terms of fetal life.
17 Q   But if the woman is choosing to put earmuffs on
18 and close her eyes, is she--is she obtaining that informa-
19 tion?
20 A   No. If she doesn't hear it and can't see it, she
21 can't know. You're absolutely right.
22 Q   So then wouldn't the purpose be equally served by
23 offering her the opportunity to see it and to hear the simul-
24 taneous explanation?
25     Ms. Brennan:   Objection to form.

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

(919) 870-1600
FAX 870-1603
(800) 255-7886

Case 1:11-cv-00804-CCE-LPA   Document 133-1   Filed 12/20/12   Page 6 of 7

STATE OF NORTH CAROLINA

COUNTY OF WAKE

### C E R T I F I C A T E

I, Kay K. Rohde, Notary Public-Reporter, do hereby certify that **Watson Allen Bowes, Jr., M.D.** was duly sworn or affirmed by me prior to the taking of the foregoing deposition, that said deposition was taken by me and transcribed under my direction, that the foregoing pages 7 through 186 constitute a true and correct transcript of the testimony of the witness, and that the witness reserved the right to review his testimony.

I do further certify that I am not counsel for or in the employment of either of the parties to this action, nor am I interested in the results of this action.

I do further certify that the stipulations contained herein were entered into by counsel in my presence.

In witness whereof, I have hereunto set my hand, this 6th day of September, 2012.

*Kay K. Rohde*
Kay K. Rohde, CVR-CM
Notary No. 19971050205

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

(919) 870-1600
FAX 870-1603
(800) 255-7886