# Exhibit B

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                MIDDLE DISTRICT OF NORTH CAROLINA

 3
     GRETCHEN S. STUART, M.D.,et al.,)
 4                                   )        Case No. 1:11CV804
         Plaintiffs,                 )
 5   vs.                             )
                                     )        Greensboro, NC
 6   JANICE E. HUFF, M.D., et al., , )
                                     )        October 17, 2011
 7       Defendants.                 )
     _____)        10:01 a.m.
 8

 9          TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING

10            BEFORE THE HONORABLE CATHERINE C. EAGLES

11                   UNITED STATES DISTRICT JUDGE

12
     APPEARANCES:
13
     For Plaintiffs:      KATHERINE LEWIS PARKER
14                        American Civil Liberties Union of
                          North Carolina
15                        PO 28004
                          Raleigh, NC 27611-8004
16
                          BEBE J. ANDERSON
17                        The Center for Reproductive Rights
                          120 WALL ST., 14TH FLOOR
18                        NEW YORK, NY 10005

19                        HELENE T. KRASNOFF
                          Planned Parenthood Federation of America
20                        1110 Vermont Ave., NW, Ste. 300
                          Washington, DC 20005
21
     For Defendants:      ISHAM FAISON HICKS
22                        STEPHANIE A. BRENNAN
                          N.C. Department of Justice
23                        POB 629
                          Raleigh, NC  27602-0629
24
     Court Reporter:      Joseph B. Armstrong, RMR, FCRR
25                        324 W. Market, Room 101
                          Greensboro, NC 27401
```

```
 1  have a screen in front of him, I presume, a monitor in which
 2  he'll be seeing the ultrasound image.  The patient, I
 3  presume, will be laying on a table or sitting on a chair.
 4  The physician could easily position a monitor at a 90-degree
 5  angle to the right or left of the patient's head with the
 6  patient facing this way so that the patient would have to
 7  turn 90 degrees this way or that in order to see the
 8  monitor.
 9              Furthermore, Your Honor, the arrangement, as I
10  understand it, could be done in such a way that -- I don't
11  know whether anybody else in this courtroom is old enough to
12  remember this, but I'm certainly old enough to remember
13  attending a lot of depositions and going to a lot of trials
14  where the court reporter wore a mask.  It's a dictation
15  mask, and the court reporter speaks into the dictation mask
16  in a normal tone of voice, and yet no one in the courtroom
17  or the deposition can hear what he or she is saying.  The
18  deposition mask is connected electronically to some
19  recording device.
20              I presume that what would happen here, or at least
21  one option that could happen here, is that the dictation
22  mask into which the physician speaks as he or she is looking
23  at the sonogram monitoring screen would be connected to
24  earphones that the woman would wear that would have an
25  on/off switch so that the woman would be in complete control
```

of whether the information came to her or not.

So the State rejects the Plaintiffs' underlying argument that this is information that's irresistible, that is going to bombard the woman in a way that she can't avoid it, she can't avoid hearing it, she can't avoid seeing. That's, in our view, simply not so. The woman does have every opportunity to simply decide do I want to receive this or do I not?

Have I answered the Court's question?

THE COURT: So you're saying to comply with this statute, the health care provider would need to buy this special equipment?

MR. HICKS: I'm saying that is one way that a health care provider could clearly comply with this statute by simply acquiring the equipment that court reporters I know used to routinely use and probably still do so that --

THE COURT: Okay.

MR. HICKS: I didn't mean to cut you off.

THE COURT: No, no, I was saying okay, yeah.

MR. HICKS: Your Honor, I'd also like to hand up for the Court a copy of 10A NCAC 14E.0305. I have additional copies. I think Ms. Anderson is already aware of it. But just for the record and as an ease -- to be easy on the Court, this is a copy of the administrative regulation that goes back to 1976, I believe.

```
 1                        * * * *
 2                      C E R T I F I C A T E
 3
 4      I, JOSEPH B. ARMSTRONG, RMR, FCRR, United States
 5  District Court Reporter for the Middle District of North
 6  Carolina, DO HEREBY CERTIFY:
 7       That the foregoing is a true and correct transcript of
 8  the proceedings had in the within-entitled action; that I
 9  reported the same in stenotype to the best of my ability;
10  and thereafter reduced same to typewriting through the use
11  of Computer-Aided Transcription.
12
13
14                              _____
15  Date:    10/31/11           Joseph B. Armstrong, RMR, FCRR
                                United States Court Reporter
16                              324 W. Market Street
                                Greensboro, NC  27401
17
```