**PUBLISHED**

# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

GRETCHEN S. STUART, MD, on
behalf of herself and her patients
seeking abortions; JAMES R.
DINGFELDER, MD, on behalf of
himself and his patients seeking
abortions; DAVID A. GRIMES, MD,
on behalf of himself and his
patients seeking abortions; AMY
BRYANT, MD, on behalf of herself
and her patients seeking abortions;
SERINA FLOYD, MD, on behalf of
herself and her patients seeking
abortions; DECKER & WATSON,
INC., d/b/a Piedmont Carolina
Medical Clinic; PLANNED
PARENTHOOD OF CENTRAL NORTH
CAROLINA; A WOMAN'S CHOICE OF
RALEIGH, INC.; PLANNED
PARENTHOOD HEALTH SYSTEMS,
INC.; TAKEY CRIST, M.D., on behalf
of himself and his patients seeking
abortions; TAKEY CRIST, M.D.,
P.A., d/b/a Crist Clinic for
Women,

           *Plaintiffs-Appellees,*

      v.

No. 12-1052

JANICE E. HUFF, MD, in her
official capacity as President of
the North Carolina Medical Board
and her employees, agents and
successors; ROY COOPER, in his
official capacity as Attorney
General of North Carolina and his
employees, agents and successors;
LANIER M. CANSLER, in his official
capacity as Secretary of the North
Carolina Department of Health
and Human Services and his
employees, agents and successors;
JIM WOODALL, in his official
capacity as District Attorney
("DA") for Prosecutorial District
("PD") 15B and his employees,
agents and successors; TRACEY E.
CLINE, in her official capacity as
DA for PD 14 and her employees,
agents and successors; DOUG
HENDERSON, in his official capacity
as DA for PD 18 and his
employees, agents and successors;

BILLY WEST, in his official
capacity as DA for PD 12 and his
employees, agents and successors;
C. COLON WILLOUGHBY, JR., in his
official capacity as DA for PD 10
and his employees, agents and
successors; BENJAMIN R. DAVID, in
his official capacity as DA for PD
5 and his employees, agents and
successors; JIM O'NEILL, in his
official capacity as DA for PD 21
and his employees, agents and
successors; ERNIE LEE, in his
official capacity as DA for PD 4
and his employees, agents and
successors,

                              *Defendants,*

            and

JOHN M. THORP, JR., MD; GREGORY
J. BRANNON, MD; MARTIN J.
MCCAFFREY, MD; CHIMERE
COLLINS; DALLENE HALLENBECK;
TRACIE JOHNSON; LANITA WILKS;
ASHEVILLE PREGNANCY SUPPORT
SERVICES; PREGNANCY RESOURCE
CENTER OF CHARLOTTE,

                              *Appellants.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Catherine C. Eagles, District Judge.
(1:11-cv-00804-CCE-LPA)

4                         STUART v. HUFF

Argued: December 4, 2012

Decided: January 24, 2013

Before TRAXLER, Chief Judge, and WILKINSON and
DUNCAN, Circuit Judges.

---

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Chief Judge Traxler and Judge Duncan
joined.

---

### COUNSEL

**ARGUED:** Samuel Brown Casey, III, JUBILEE
CAMPAIGN-LAW OF LIFE PROJECT, Washington, D.C.,
for Appellants. Anton Metlitsky, O'MELVENY & MYERS,
LLP, New York, New York, for Appellees. **ON BRIEF:** Ste-
ven H. Aden, ALLIANCE DEFENDING FREEDOM, Wash-
ington, D.C.; W. Eric Medlin, ROBERTSON, MEDLIN &
BLOSS, PLLC, Greensboro, North Carolina, for Appellants.
Katherine Lewis Parker, AMERICAN CIVIL LIBERTIES
UNION OF NORTH CAROLINA LEGAL FOUNDATION,
Raleigh, North Carolina; Andrew D. Beck, AMERICAN
CIVIL LIBERTIES UNION FOUNDATION, New York,
New York; Walter Dellinger, Laura Conn, O'MELVENY &
MYERS, LLP, Washington, D.C.; Bebe J. Anderson, CEN-
TER FOR REPRODUCTIVE RIGHTS, New York, New
York; Helene T. Krasnoff, PLANNED PARENTHOOD FED.
OF AMERICA, Washington, D.C., for Appellees.

---

## OPINION

WILKINSON, Circuit Judge:

In late 2011, plaintiffs challenged the constitutionality of the North Carolina "Woman's Right to Know Act," ("the Act"), a statute that requires certain informed consent procedures prior to the performance of an abortion, N.C. Gen. Stat. §§ 90-21.80 to -21.92. Although the North Carolina Attorney General actively sought to defend the statute, appellants—a group of pro-life medical professionals, women who have previously undergone abortions, and pregnancy counseling centers—filed a motion to intervene as defendants in the suit. The district court denied their motion. Because the court did not abuse its discretion in doing so, we affirm.

I.

The North Carolina General Assembly enacted the Woman's Right to Know Act in July 2011. The Act requires that a "physician who is to perform [an] abortion, or [a] qualified technician" must provide the pregnant woman with a real-time ultrasound display of the fetus and a "simultaneous explanation of what the display is depicting." N.C. Gen. Stat. § 90-21.85(a). In addition to these real-time display and explanation requirements, the Act contains certain other informed consent provisions and authorizes civil remedies against persons who violate the law. *Id.* §§ 90-21.82, -21.88, -21.90.

Plaintiffs are a group of physicians and medical centers that provide abortion services. On September 29, 2011, they filed a complaint in the United States District Court for the Middle District of North Carolina seeking a declaration that the Act violates the First and Fourteenth Amendment rights of physicians and their patients, along with an injunction preventing enforcement of the Act. Plaintiffs also filed a motion for a temporary restraining order and preliminary injunction. The

merits of plaintiffs' claims are not at issue in this appeal, but the procedural history of the lawsuit is relevant to our evaluation of the district court's denial of appellants' motion to intervene.

On October 12, the defendants in the underlying suit—a number of state officials represented by the North Carolina Attorney General—filed their opposition to the motion for a preliminary injunction. The district court held a hearing on the motion five days later, which lasted nearly three hours. During that hearing, the Attorney General (through a special deputy) pressed numerous arguments for upholding the Act under *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), which upheld an abortion informed consent statute against a similar challenge. In particular, the Attorney General argued that the Act should be upheld because *Casey* recognizes the state's "profound interest in potential life"; its "permissible purpose" of informing women considering an abortion of the procedure's "potential consequences" for their "future psychological and emotional health"; and its ability to require the communication of "truthful and non-misleading" information to patients. The Attorney General did not introduce factual evidence in support of the Act, choosing instead to rely on the above legal arguments from *Casey*.

The district court ruled on the motion on October 25, issuing a preliminary injunction against the Act's real-time display and explanation requirements, but denying the motion with respect to the remainder of the Act. *Stuart v. Huff*, 834 F. Supp. 2d 424, 437 (M.D.N.C. 2011). Those unaffected portions of the Act went into effect the next day. Deciding to litigate the case to final judgment rather than appeal the preliminary injunction, the Attorney General filed an answer and moved to dismiss the complaint two weeks later.

Appellants in this matter are a group of pro-life doctors, former abortion patients, and pregnancy counseling centers.

On November 8, they filed a motion to intervene as defendants in the case, the subject of this appeal. Appellants sought to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a), and, alternatively, as a permissive matter pursuant to Rule 24(b).

The district court denied the motion on both grounds. With regard to intervention as of right, the court focused on the requirement under Rule 24(a)(2) that "the proposed intervenors must demonstrate that their interests are not being adequately represented by the existing [d]efendants." J.A. 605. The court noted two presumptions that cut against the appellants on this point. First, the court explained that "'[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented,'" which can only be rebutted by a showing of "'adversity of interest, collusion, or nonfeasance.'" *Id.* at 606 (quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)). The presumption applied in this case, the court held, because the appellants and the existing defendants share "precisely the same goal: to uphold the Act as constitutionally permissible." *Id.*

The court also explained that because the existing defendant in this case is a government agency, a "very strong showing of inadequacy" is needed to warrant intervention. J.A. 606. This is so, the court reasoned, because "acting in a type of representative capacity is a basic governmental function, and the business of the government could hardly be conducted if, in matters of litigation, individual citizens could usually or always intervene and assert individual points of view." *Id.*

After identifying the applicable legal standard, the district court considered the appellants' chief contention: that their interests were not being adequately represented because the Attorney General did not introduce evidence in opposition to the preliminary injunction motion. The court rejected this argument, pointing out that the Attorney General had filed a

"thorough and substantial brief" and had "argued zealously in opposition to the motion for injunctive relief." J.A. 607. The court explained, moreover, that while the "proposed intervenors may have disagreed with the [d]efendants' tactical decisions," such a disagreement does not amount to the necessary showing of adversity of interest, collusion, or nonfeasance that would "rebut the presumption of adequacy." *Id.* The court accordingly denied the motion for intervention as of right.

The district court then addressed the appellants' request for permissive intervention. Citing Federal Rule of Civil Procedure 24(b)(3), which requires courts to "consider whether the intervention will unduly delay" the litigation, the court denied permissive intervention on the ground that adding the intervenors would "complicate the discovery process and consume additional resources of the court and the parties." J.A. 608.

The would-be intervenors now appeal the district court's decision.

## II.

The Federal Rules of Civil Procedure provide two avenues for intervention relevant to this appeal. Under Rule 24(a)(2), a district court must permit intervention as a matter of right if the movant can demonstrate "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991). If intervention of right is not warranted, a court may still allow an applicant to intervene permissively under Rule 24(b), although in that case the court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

It is well settled that district court rulings on both types of intervention motions are to be reviewed for abuse of discre-

tion. *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991). Deferential appellate review is proper here for many reasons, the first of which is that Rule 24's requirements are based on dynamics that develop in the trial court and that the court is accordingly in the best position to evaluate. Indeed, appellate deference is customarily appropriate where trial judges are tasked with exercising judgment based on their "'on the scene' presence." Martha S. Davis, *Standards of Review: Judicial Review of Discretionary Decisionmaking*, 2 J. App. Prac. & Process 47, 49 (2000). Thus, in the intervention context, it is the trial judge who is best able to determine whether, for example, a proposed intervenor's interests are being adequately represented by an existing party pursuant to Rule 24(a)(2). Indeed, the trial court's superior vantage point was evident in this very case when the judge noted the Attorney General's "detailed, thorough, and substantial brief" and "zealous" oral argument in opposition to the preliminary injunction. J.A. 607.

Appellate review is necessarily limited in this setting for another reason: "Questions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006); *see also, e.g.*, *Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 194 (4th Cir. 1982) (noting that "many details of trial management" are "necessarily committed to broad trial court discretion"). It is incontrovertible that motions to intervene can have profound implications for district courts' trial management functions. Additional parties can complicate routine scheduling orders, prolong and increase the burdens of discovery and motion practice, thwart settlement, and delay trial. This is particularly so where, as here, the proposed intervenors are themselves differently situated entities. The district court thus rightly expressed its concern that "[a]dding three groups of intervenors would necessarily complicate the discovery process and consume additional resources of the court and the parties." J.A. 608.

   With these boundaries of our reviewing role in mind, we examine the appellants' arguments for intervention.

## III.

   The district court denied the appellants' motion to intervene as of right based on its finding that the Attorney General was adequately representing their interests. The court's conclusion rested on two presumptions. First, the court reasoned that where a proposed intervenor's ultimate objective is the same as that of an existing party, the party's representation is presumptively adequate, rebuttable only by a showing of adverse interests, collusion, or nonfeasance. Second, the court explained that where the party who shares the intervenor's objective is a government agency, the intervenor has the burden of making a strong showing of inadequacy.

   Appellants contend that the court's ruling was an abuse of discretion in two regards. To begin, although they concede that the court was correct to apply the first presumption, they dispute the second. That is, appellants claim that the district court was wrong to demand a strong showing of inadequacy due to the fact that the Attorney General is a government official. According to appellants, our precedents dictate that the burden of demonstrating inadequate representation ought only to be a minimal one. Appellants then argue that they satisfied this minimal burden by demonstrating adversity of interest with and, alternatively, nonfeasance by the Attorney General. We consider these arguments in turn.

## A.

   We begin with appellants' contention that, regardless of the fact that the existing defendants are represented by a government agency, the burden of "showing inadequacy of representation" ought to be "minimal," in contrast to the "very strong showing" required by the district court.

We disagree. Although our circuit has yet to address the question of whether a more exacting showing of inadequacy should be required where the proposed intervenor shares the same objective as a government party, every circuit to rule on the matter has held in the affirmative. *See, e.g.*, *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003); *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 111 (1st Cir. 1999); *Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982). We find this position persuasive for several reasons.

To start, it is among the most elementary functions of a government to serve in a representative capacity on behalf of its people. In matters of public law litigation that may affect great numbers of citizens, it is the government's basic duty to represent the public interest. And the need for government to exercise its representative function is perhaps at its apex where, as here, a duly enacted statute faces a constitutional challenge. In such cases, the government is simply the most natural party to shoulder the responsibility of defending the fruits of the democratic process. As the Supreme Court stated in the related standing context in *Diamond v. Charles*, "[b]ecause the State alone is entitled to create a legal code, only the State has the kind of direct stake" needed to defend "the standards embodied in that code" against a constitutional attack. 476 U.S. 54, 65 (1986) (internal quotation marks omitted).

Moreover, when a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government. It is after all the government that, through the democratic process, gains familiarity with the matters of public concern that lead to the statute's passage in the first place. Thus in this case, while defending the Act in district court, the Attorney General vigorously pressed the state's important interests in "protecting the woman's future psychological health," "promoting the potential life of the unborn child," and ensuring that each woman has the "opportunity to fully appre-

ciate the consequences [of an abortion] to herself and to her
unborn child."

Finally, to permit private persons and entities to intervene
in the government's defense of a statute upon only a nominal
showing would greatly complicate the government's job.
Faced with the prospect of a deluge of potential intervenors,
the government could be compelled to modify its litigation
strategy to suit the self-interested motivations of those who
seek party status, or else suffer the consequences of a geomet-
rically protracted, costly, and complicated litigation. In short,
"the business of the government could hardly be conducted if,
in matters of litigation, individual citizens could usually or
always intervene and assert individual points of view." 6
*Moore's Federal Practice* § 24.03[4][a][iv][A] (3d ed. 2011).

Appellants respond that the requirement of a "very strong
showing" of inadequacy by a government party is inconsistent
with Supreme Court precedent and the law of this circuit.
Specifically, they point to the Supreme Court's decision in
*Trbovich v. United Mine Workers*, which held that Rule 24(a)
is "satisfied if the applicant shows that representation of his
interest may be inadequate; and the burden of making that
showing should be treated as *minimal*." 404 U.S. 528, 538
n.10 (1972) (emphasis added) (internal quotation marks omit-
ted); *see also United Guar. Residential Ins. Co. of Iowa v.
Phila. Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987).

Appellants' argument misses the mark. For in *Trbovich* and
*United Guaranty* the proposed intervenors did not even share
the same ultimate objective as an existing party. Thus, in
*Trbovich*, the Supreme Court expressly noted that the Secre-
tary of Labor was compelled by statute to "serve two distinct
interests," such that the Secretary's ultimate objective was not
the same as that of the proposed intervenor to begin with. 404
U.S. at 538. Likewise, in *United Guaranty*, we observed that
the existing defendant's objectives were apparently "at cross
purposes" with the proposed intervenor. 819 F.2d at 476.

Contrary to the appellants' claim, then, *Trbovich* and *United Guaranty* stand for the conventional proposition that where the existing party and proposed intervenor seek divergent objectives, there is less reason to presume that the party (government agency or otherwise) will adequately represent the intervenor. In such circumstances, it is perfectly sensible to require a more modest showing of inadequacy before granting intervention of right since an existing party is not likely to adequately represent the interests of another with whom it is at cross purposes in the first instance.

That is not so here, however, where appellants concede that they share the same ultimate objective as the existing defendants and where those defendants are represented by a government agency. Both the government agency and the would-be intervenors want the statute to be constitutionally sustained. In this context, for the reasons described above, we join our fellow courts of appeals in holding that the putative intervenor must mount a strong showing of inadequacy. To hold otherwise would place a severe and unnecessary burden on government agencies as they seek to fulfill their basic duty of representing the people in matters of public litigation.

B.

Appellants next argue that they have sufficiently demonstrated adversity of interest with and, alternatively, nonfeasance by the Attorney General, thereby rebutting the presumption of adequacy that arises because they share the same objective. The district court rejected both arguments, and we hold that it did not abuse its discretion in doing so. For rather than making the necessary strong showing, appellants have demonstrated merely that they disagree with the Attorney General's reasonable litigation tactics.

1.

First as to adversity of interest. Appellants begin by pointing to their desire to ensure that "a pregnant woman under-

stands the potential risk and harms to the child so that she can make the decision for the child." Appellants' Br. 21. Appellants assert that, as women who have experienced the effects of the procedure first-hand and doctors and medical centers who provide care to pregnant women, their interests are "separate and distinct from the State's." *Id.* Far from showing adversity with the Attorney General, however, this argument actually underscores how the appellants and Attorney General are motivated by the same underlying concerns. Indeed, the Attorney General pressed this exact argument during the preliminary injunction hearing, noting that the state possessed an "interest in ensuring that the woman not undergo an abortion without at least having an opportunity to fully appreciate the consequences . . . to her unborn child."

Appellants next point to their interest in preserving the civil remedies provision of the statute, N.C. Gen. Stat. § 90-21.88. But that interest also fails to establish adversity with the Attorney General. For one, the civil remedies provision creates a right of action for injunctive relief not just for certain of the proposed intervenors, but also for the Attorney General himself. *See id.* § 90-21.88(b). The Attorney General's interest in upholding the civil remedies provision is therefore in common with the proposed intervenors' interest, not adverse to it. Moreover, the alignment between the Attorney General and the intervenors on this point is borne out by the fact that the district court has already upheld the civil remedies provision in its entirety. The Attorney General's actions, in other words, speak for themselves: he has successfully defended the very civil remedies provision that appellants also seek to uphold, belying any suggestion of adversity.

At bottom, appellants' argument is that as the "class of beneficiaries protected by the Act," their interests in defending the Act are "stronger" and more "specific" than the state's general interest. But stronger, more specific interests do not adverse interests make—and they surely cannot be enough to establish inadequacy of representation since would-be interve-

nors will nearly always have intense desires that are more particular than the state's (or else why seek party status at all). Allowing such interests to rebut the presumption of adequacy would simply open the door to a complicating host of intervening parties with hardly a corresponding benefit.

In the absence of any identifiable adverse interests, appellants assert that the district court should have inferred adversity because, in defending the Act, the Attorney General made certain strategic decisions with which appellants disagree. In particular, appellants contend that the Attorney General relied on legal arguments at the preliminary injunction stage and chose to litigate the case to final judgment, whereas they would have presented factual evidence and immediately appealed the preliminary injunction. Appellants suggest that these "divergent approaches to the conduct of the litigation" warrant a finding of adversity because, in their view, the governing test from *United Guaranty* is whether the existing party and the intervenor's interests "may 'always dictate precisely the same approach to the conduct of the litigation.'" 819 F.2d at 475 (quoting *Trbovich*, 404 U.S. at 539).

But again, *United Guaranty* and *Trbovich* are inapposite because unlike in those cases, the appellants here concede that they share the same objective as the existing government defendants: upholding the constitutionality of the Act. In this context, the relevant and settled rule is that disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy. *See, e.g.*, *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009) ("Mere differences in litigation strategy are not enough to justify intervention as a matter of right.") (internal quotation marks omitted); *Saldano v. Roach*, 363 F.3d 545, 555 (5th Cir. 2004) ("Simply because the [intervenor] would have made a different [litigation] decision does not mean that the Attorney General is inadequately representing the State's interest."); *Chiglo v. City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997) ("[T]he proposed intervenor cannot rebut the pre-

sumption of representation by merely disagreeing with the lit-
igation strategy . . . of the party representing him."); *see also*
7C Charles Alan Wright et al., *Federal Practice and Proce-
dure* § 1909 (3d ed. 2007) ("A mere difference of opinion
concerning the tactics with which the litigation should be han-
dled does not make inadequate the representation of those
whose interests are identical with that of an existing party.").

Nor could it be any other way. There will often be differ-
ences of opinion among lawyers over the best way to
approach a case. It is not unusual for those who agree in prin-
ciple to dispute the particulars. To have such unremarkable
divergences of view sow the seeds for intervention as of right
risks generating endless squabbles at every juncture over how
best to proceed. There is much to be said, frankly, for simpli-
fying rather than complicating the litigation process. We thus
hold that the district court did not err in concluding that the
appellants failed to establish adversity of interest with the
Attorney General.

2.

Appellants next attempt to rebut the presumption of ade-
quacy by repackaging their disagreements with the Attorney
General's litigation decisions as "evidence of nonfeasance."
According to appellants, the district court abused its discre-
tion when it rejected this argument, concluding instead that
the Attorney General's choice to rely on legal arguments
under *Planned Parenthood of Southeastern Pennsylvania v.
Casey*, 505 U.S. 833 (1992), was a reasonable "tactical deci-
sion," J.A. 607.

Again we find the appellants' position unavailing. The
Attorney General's decision to concentrate his argument on
*Casey* was hardly nonfeasance given that *Casey* upheld a
Pennsylvania informed consent law that bears many similari-
ties to the statute at bar. *See* 505 U.S. at 881-87. Both statutes,
for example, require abortion providers to make certain infor-

mation available to pregnant women at least twenty-four hours before the procedure, such as the probable gestational age of the unborn child, the medical risks associated with the procedure, and the medical risks of carrying the child to term. *Compare* N.C. Gen. Stat. § 90-21.82, *with* 18 Pa. Cons. Stat. § 3205. The reasonableness of the Attorney General's choice is particularly manifest given that it was largely successful: the district court upheld every provision of the Act except for its real-time display and explanation requirements. Moreover, the Fifth Circuit recently upheld a nearly identical real-time fetal display and explanation statute against a motion for a preliminary injunction using reasoning under *Casey* that closely tracks the arguments made by the Attorney General in this case. *See Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574-80 (5th Cir. 2012).

Nor was it nonfeasance for the Attorney General to choose to litigate the merits of the Act through to final judgment rather than appeal the preliminary injunction. It was eminently reasonable for the Attorney General to believe that the interests of North Carolina's citizens would best be served by an expeditious final ruling on the constitutionality of the Act, as opposed to prolonged intermediate litigation over the preliminary injunction. Federal case law is in accord. *See, e.g.*, *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 781 (8th Cir. 2004) (finding representation by government defendant to be adequate even though it declined to appeal an adverse district court order); *Saldano*, 363 F.3d at 554 (holding that the Texas Attorney General's decision not to appeal an adverse decision did not make him "an inadequate representative of the State's interest"); *see also* Wright et al., *supra*, at § 1909 ("[A] decision not to take an appeal is ordinarily within the discretion of the representative.").

In sum, appellants have done little more than identify reasonable litigation decisions made by the Attorney General with which they disagree. Such differences of opinion cannot be sufficient to warrant intervention as of right, for, as already

discussed, the harms that the contrary rule would inflict upon the efficiency of the judicial system and the government's representative function are all-too-obvious. The damage wrought by such a ruling would be especially senseless in a case such as this one, where as the district court found, the existing defendants are "zealously" and "vigorously" defending the Act. J.A. 607. We therefore hold that the district court did not abuse its discretion in rejecting appellants' claim of nonfeasance.

## C.

Appellants next challenge the district court's denial of their request for permissive intervention under Rule 24(b)(1)(B), which provides that a district court "may permit" intervention if the applicant has "a claim or defense that shares with the main action a common question of law or fact." Critically, the rule also states that "[i]n exercising its discretion" to permit intervention, a district court "must consider whether the intervention will unduly delay . . . the adjudication." Fed. R. Civ. P. 24(b)(3).

In this case, the district court noted that "[a]dding three groups of intervenors would necessarily complicate the discovery process and consume additional resources of the court and the parties." J.A. 608. The court further reasoned that permitting intervention would likely "result in undue delay in adjudication of the merits, without a corresponding benefit to existing litigants, the courts, or the process" because "the existing [d]efendants are zealously pursuing the same ultimate objectives" as the appellants. *Id.* The court denied permissive intervention for that reason, and we find no error in its ruling.

## IV.

Our decision today does not leave appellants without recourse. Appellants retain the ability to present their views in support of the Act by seeking leave to file amicus briefs

both in the district court and in this court. *See Francis v. Chamber of Commerce*, 481 F.2d 192, 194-96 (4th Cir. 1973) (affirming district court's decision to deny a motion to intervene and instead permit the would-be intervenor to file an amicus brief); Fed. R. App. P. 29 (describing the procedure for filing amicus briefs in the courts of appeal). Indeed, when asked at oral argument whether amicus participation would be a viable alternative to intervenor status, appellants' counsel noted that he files amicus briefs in cases like this "all the time." While a would-be intervenor may prefer party status to that of friend-of-court, the fact remains that amici often make useful contributions to litigation. The availability of such alternative avenues of expression reinforces our disinclination to drive district courts into multi-cornered lawsuits by indiscriminately granting would-be intervenors party status and all the privileges pertaining thereto.

## V.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*