IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GRETCHEN S. STUART, M.D., *et al.*, | ) | CIVIL ACTION NO. |
| | ) | 1:11-CV-804 |
| Plaintiffs, | ) | |
| | ) | |
| – against – | ) | SUPPLEMENTAL BRIEF OF THE |
| | ) | STATE OF NORTH CAROLINA |
| JANICE E. HUFF, M.D., *et al.*, | ) | FILED PURSUANT TO THE |
| | ) | COURT'S JULY 9, 2013 ORDER |
| Defendants. | ) | |

## Introduction

The State of North Carolina believes that the controlling legal principle in this case is set forth in the plurality's opinion in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), where the Court concluded that states may constitutionally require a physician to say specific things to a patient and provide the patient with specific information in order to ensure that the patient's consent to a medical procedure is fully and actually informed – and to protect the patient's health. *Id.* at 881. The *Casey* Court noted that a state may constitutionally enact such an informed consent law as part of its power to regulate medical practice and practitioners. *Id.* at 884. The *Casey* Court reached this conclusion after expressly recognizing that the First Amendment rights of the physician-plaintiffs were implicated, but, in the Court's view, "only as part of the practice of medicine, subject to reasonable licensing and regulation by the state." *Id.*

As demonstrated below, the State believes that the holdings in *Moore-King v. County of Chesterfield*, 708 F.3d 560 (4th Cir. 2013); *Centro Tepeyac v. Montgomery County*, 2013 U.S. App. LEXIS 13606 (4th Cir. decided July 3, 2013) (*en banc*); and *Greater Baltimore Center for*

*Pregnancy Concerns, Inc. v. Mayor of Baltimore,* 2013 U.S. App. LEXIS 13607 (4th Cir. decided July 3, 2013) (*en banc*), are all consistent with this controlling legal principle.

### The Fourth Circuit's Decision in *Moore-King*

The Fourth Circuit's decision in *Moore-King v. County of Chesterfield*, 708 F.3d 560 (4th Cir. 2013), arose out of a significantly different fact pattern from *Casey* and the instant case. Unlike the physician-plaintiffs in *Casey* and this case, the plaintiff in *Moore-King* was engaged in the business of providing fortune telling and spiritual/religious counseling services to the public. *Id*. at 562, 564. Also unlike the plaintiffs in *Casey* and this case, the plaintiff in *Moore-King* did not complain that the regulation at issue compelled her speech.[1] Nevertheless, the court's holding in *Moore-King* is entirely consistent with the *Casey* Court's conclusion that a state may constitutionally require a member of the medical profession to say specific things to a patient and provide the patient with specific information as part of the state's power to regulate medical practice and practitioners.

In reviewing the trial court's grant of summary judgment to the defendant, *id*. at 565, the *Moore-King* court concluded that the plaintiff's speech – offering predictions about the future – was entitled to "some degree of protection."[2] *Id*. at 567. The court declined to apply a strict scrutiny standard to the regulation, despite the plaintiff's assertion (and the facts supporting her argument) that the ordinance regulated her speech on the basis of content and viewpoint; and the court eschewed the standard applicable to commercial speech, even though the plaintiff was paid for making her predictions, because, according to the court, commercial speech typically

---

[1] Rather, the *Moore-King* plaintiff appears to have complained that the regulation at issue limited her speech. *See id.* at 565.
[2] Significantly, the court analogized the plaintiff's predictions of the future to the speech of physicians when they offer medical diagnoses, as well as the statements of lawyers and journalists predicting the future. *Id*. at 566-67.

–2–

involves speech that does no more than propose a commercial transaction and the plaintiff's predictions about the future did more than that. *Id*. at 567-68. In addition, the court declined to apply the time, place and manner framework to the speech at issue because it could find no cases[3] applying that test to "the regulation of a profession." *Id.* at 568.

In a passage that equally describes the essence of the dispute in *Casey* and the instant case, the *Moore-King* court observed that the dispute there involved a conflict between the power of government to license and regulate those who pursue a profession or vocation and the right to free speech. *Id*. at 568. It observed that the Supreme Court has recognized the regulation of "occupational speech" under the "professional speech doctrine" since its decision in *Thomas v. Collins*, 323 U.S. 516 (1945), and, by doing so, has recognized that the state has a duty to protect the public from those who seek to obtain its money. When a person seeks to obtain money from the public through the practice of a calling, "the state may have an interest in shielding the public against the untrustworthy, the incompetent or the irresponsible, …." 708 F.3d at 568.

The *Moore-King* court held that the relevant inquiry to determine whether to apply the professional speech doctrine is whether, as in the instant case, the speaker is providing personalized advice in a private setting to a paying client or instead is engaged in public discourse. The professional speech doctrine applies to the former, not the latter. *Id*. at 569.

Under the professional speech doctrine, the government can license and regulate those who would provide services to their clients (or patients) for compensation without running afoul of the First Amendment. As the court said, "the power of government to regulate the professions is not lost whenever the practice of a profession entails speech." *Id*. The regulatory scheme

---

[3] Other than cases dealing with exotic dancing, which the court said were unhelpful precedents. *Id*. at 568.

must be "generally applicable" to all members of the profession or occupation, *id*. at 569-70, but it may vary from one profession to another. *Id*. at 570.

The holding in *Moore-King* is entirely consistent with *Casey*'s rule that states may constitutionally regulate a physician's speech by requiring the physician to say specific things to a patient and providing the patient with specific information in order to ensure that the patient's consent to a medical procedure is fully and actually informed and to protect the patient's health – all as part of the state's power to regulate medical practice and practitioners. Though the *Casey* plurality did not expressly invoke the words "professional speech doctrine," that is apparently how the Court evaluated the regulation of speech in that case, because it reached its ultimate determination after having expressly recognized that the First Amendment rights of the physician-plaintiffs in that case were implicated, but "only as part of the practice of medicine, subject to reasonable licensing and regulation by the state." 505 U.S. at 884.

Thus, while its facts are not identical to those of the instant case, the holding in *Moore-King* provides further support for the State's position in this case – and particularly for the State's argument that the strict scrutiny test does not apply to the Act. The Act is a regulation of professional speech covered by the professional speech doctrine – and sanctioned by *Casey*. The Act's regulation and its mandate go directly to increasing the likelihood that any patient's consent to an abortion procedure is, in fact, informed. It also goes directly to protecting abortion patients from the psychological injuries described by the Supreme Court in *Casey*, 505 U.S. at 883, and *Gonzalez v. Carhart*, 550 U.S. 124, 159 (2007). To the extent that the First Amendment rights of the physician-plaintiffs in this case are implicated, it is only as part of the practice of medicine, which is subject to reasonable licensing and regulation by the state.

–4–

### The Fourth Circuit's Decision in *Centro Tepeyac*

The Fourth Circuit's decision in *Centro Tepeyac v. Montgomery County*, 2013 U.S. App. LEXIS 13606 (4th Cir. decided July 3, 2013) (*en banc*), likewise arose out of a significantly different fact pattern from *Casey* and the instant case. Unlike *Casey* and the instant case, the plaintiff in *Centro Tepeyac* was not a group of physicians, but a "limited service pregnancy resource center," defined as an organization that has a primary purpose of providing pregnancy-related services, does not have a licensed medical professional on staff and provides information about pregnancy-related services for a fee or as a free service. 2013 U.S. App. LEXIS 13606 at *3.

The regulation at issue required all such centers to post a sign on their premises stating that: (i) the County Health Officer encourages women who are or may become pregnant to consult with a licensed health care provider; and (ii) the center does not have a licensed medical professional on staff. *Id*. The regulation was based on the County's finding that such disclaimers protect the health of the County's residents because clients of such pregnancy centers may be misled into believing that a center is providing medical services when it is not, which might lead a client not to seek medical attention, thereby causing adverse health consequences to the patient and/or her baby. *Id.* at *4.

Like the regulation in the instant case, the regulation in *Centro Tepeyac* did not carry any criminal law consequences. *Id.* at *4-*5. Also like the regulation at issue in the instant case, the message that the regulation in *Centro Tepeyac* compelled "state[d] the truth." *Id*. at *15.

The center in *Centro Tepeyac* filed a complaint against the county alleging violations of 42 U.S.C. §1983, claiming that the regulation was unconstitutional on its face and as applied to the center under, *inter alia*, the First Amendment. 2013 U.S. App. LEXIS 13606 at *5. The

complaint alleged that the center did not charge women for its services, which include pregnancy testing, referral services and confidential discussion of pregnancy options. It added that the center did not refer clients for abortions or birth control services and alleged that the regulation was aimed at pro-life pregnancy resource centers and purported to force the plaintiff to suggest that it is not qualified to discuss pregnancy options or to provide help to pregnant women. The complaint sought preliminary and permanent injunctive relief, plus money damages and litigation costs. 2013 U.S. App. LEXIS 13606 at *6-*7.

The district court heard the center's motion for a preliminary injunction without the benefit of any discovery having been taken. Hence, unlike the instant case, the record in *Centro Tepeyac* was completely undeveloped when the district court decided the preliminary injunction motion. The district court preliminarily enjoined the regulation's requirement that the center post a sign stating that the County Health Officer encourages women who are or may become pregnant to consult with a licensed health care provider, but declined to enjoin the regulation's requirement that the center post a sign stating that the center does not have a licensed medical professional on staff. *Id.* at *7.

Because the plaintiff alleged that it provided its services free of charge and no discovery had been taken, the district court stated that it had to assume that the plaintiff's speech was not commercial speech and that the professional speech doctrine did not apply. *Id*. at *12.[4] The district court then applied a strict scrutiny test to the regulation on the ground that it was a content-based regulation compelling speech. *Id.* at *11-*12. Nevertheless, the district court held that the County was likely to succeed on the merits regarding the constitutionality of the

---

[4] The Fourth Circuit's decision cites *Moore-King* for the proposition that "[u]nder the professional speech doctrine, the government can license and regulate those who would provide services to their clients for compensation without running afoul of the First Amendment." 2013 U.S. App. LEXIS 13606 at *11-*12.

Case 1:11-cv-00804-CCE-LPA   Document 144   Filed 07/22/13   Page 6 of 12

requirement that the center post a sign stating that the center did not have a licensed medical professional on staff because:

> It may be that the government has a compelling interest in ensuring that its citizenry are able to obtain needed medical care, and that the interest in ensuring patients obtain appropriate medical care might fall within the ambit of the state's broader interest in preserving public health (relying on *Varandani v. Bowen*, 824 F.2d 307, 311 (4th Cir. 1987) (recognizing, in the due process context, 'the government's compelling interest in assuring safe health care for the public')).

2013 U.S. App. LEXIS 13606 at *13.

The district court also found that "the record is at least colorable at this stage to suggest that [the regulation's first requirement] is narrowly tailored to meet the [County's stated] interest" and therefore concluded that the constitutionality of this portion of the regulation was likely to be upheld after a trial on the merits. *Id*. at *15.

The parties cross-appealed and the Fourth Circuit heard the interlocutory appeals *en banc*. Given the procedural posture of the case below, the Fourth Circuit simply evaluated the district court's decision on an abuse of discretion standard and, as to factual findings, on a clearly erroneous standard. *Id*. at *8-*10. The *en banc* majority held that "[i]n these circumstances, we cannot say that the district court in any way abused its discretion … [or] made [any] clearly erroneous findings of material fact." Id. at *20.

The State believes that the *Centro Tepeyac* decision is relevant and important to the instant case because: (i) like the *Moore-King* decision, it demonstrates the viability of the Professional Speech Doctrine and its applicability to cases like the instant case, where the plaintiffs sell their services to their pregnant patients; and (ii) the *Centro Tepeyac* decision recognizes the potential that the state may have a compelling interest, sufficient to overcome the strict scrutiny test, in protecting a pregnant woman's health by requiring persons who offer her

counseling and other pregnancy-related services to provide her with truthful, non-misleading information about her pregnancy which is designed to protect her health.

### The Fourth Circuit's Decision in *Greater Baltimore Center for Pregnancy Concerns*

Like its decision in *Centro Tepeyac,* the Fourth Circuit's decision in *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor of Baltimore,* 2013 U.S. App. LEXIS 13607 (4th Cir. decided July 3, 2013) (*en banc*), involved a limited service pregnancy resource center, defined in this instance as any person who, for a fee or as a free service, provides information about pregnancy-related services but does not provide or refer for abortions or birth control services. *Id*. at *6-*7. The regulation at issue required that all such centers provide their clients and potential clients with a disclaimer that they do not provide or make referrals for abortions or birth-control services. *Id*. at *7-*8. There was language in the regulation suggesting that it might be enforceable by criminal prosecution. *Id*. at *9.

The plaintiffs sued the City under 42 U.S.C. §1983, claiming that they held sincere religious beliefs that cause them to oppose abortion and that the City's regulation violated their First Amendment rights by compelling them to engage in speech with which they conscientiously disagree. *Id*. at *10-*11.

Before the City had answered the complaint, before the City's time for answering the complaint had expired and before any discovery could be propounded or answered, the plaintiffs filed a motion for summary judgment. *Id*. at *11-*12. The plaintiffs argued that strict scrutiny applied to the regulation and that the regulation was unconstitutional on its face. *Id*. at *12. The plaintiffs supported their motion with an affidavit and other evidence outside the pleadings. *Id*. at *12-*13.

–8–

The City timely filed a Rule 12(b)(6) motion, as well as a motion challenging the standing of one of the plaintiffs. *Id*. at *13. In its motion papers, the City characterized its ordinance as a consumer protection regulation, referring to evidence in the ordinance's legislative record showing that limited-service pregnancy centers often engage in deceptive advertising to attract women seeking abortion and comprehensive birth-control services, and then use delay tactics to impede the women from accessing those services. The City argued that limited-service pregnancy centers thereby pose a threat to public health, in that the risks and costs of abortion increase as a woman advances through her pregnancy, and that delays in access to the birth control of a woman's choice can leave the woman vulnerable to unintended pregnancy and sexually transmitted diseases. Id. at *13-*14.

The City opposed the plaintiffs' summary judgment motion with briefs and documentary evidence, but it also moved the district court to refrain from hearing and deciding the summary judgment motion at that time and instead to permit the City to take specified discovery. Id. at *14-*22.

Despite the City's request to take discovery in aid of the summary judgment dispute, the district court entered summary judgment for the plaintiffs and permanently enjoined the regulation. *Id*. at *25. On appeal, the Fourth Circuit's *en banc* majority held that:

> We refrain today from evaluating the ultimate merits of the Center's claims, however, focusing instead on the preliminary errors made by the district court as it rushed to summary judgment. Those errors include the court's denial to the City of essential discovery, its refusal to view in the City's favor what evidence there is, and its verboten factual findings, many premised on nothing more than its own supposition. In these circumstances, it is fitting to simply vacate and remand for properly conducted proceedings.

*Id*. at *33.

–9–

Case 1:11-cv-00804-CCE-LPA   Document 144   Filed 07/22/13   Page 9 of 12

The balance of the Fourth Circuit's opinion suggests that, depending on the facts found in discovery, the regulation at issue might be deemed to be aimed at misleading commercial speech, such that the ordinance would be subject only to rational basis review, *id*. at *42, or it might be deemed to be aimed at non-misleading commercial speech, such that it would be subject to intermediate scrutiny review (but not strict scrutiny review). *Id*. at 43 n. 8. The court's opinion also suggests that, depending on the facts found in discovery, the pregnancy center's advertising might be found to propose a commercial transaction every time it offers to provide "commercially valuable goods and services, such as pregnancy testing, sonograms or options counseling to a consumer," depending on the pregnancy center's "economic interests," apart from its ideological motivations. *Id*. at *44-*48. According to the court, such facts might justify the application of one of the two commercial speech standards to the City's regulation.

In short, the court's majority opinion demonstrated a ready willingness to view expansively the issue whether particular speech is commercial and therefore whether a law regulating it is subject to something substantially less than strict scrutiny.

### Other Cases Decided Since Briefing Closed Which Might Be Relevant

The State believes that the holding in *Accountant's Society of Virginia v. Bowman*, 860 F.2d 602 (4th Cir. 1988) (citing and relying on *Lowe v. S.E.C.*, 472 U.S. 181 (1985) (White, J., concurring), may also be relevant to this Court's determination of this case. The State's research also uncovered *Edwards v. Beck*, 2013 U.S. Dist. LEXIS 75277 (D. Ark. decided May 23, 2013); however, the State does not believe this case to be relevant to the Court's determination of the instant case.

Respectfully submitted this 22nd day of July 2013.

–10–

    */S/ I. Faison Hicks*
    I. Faison Hicks
North Carolina State Bar No. 10672
*Attorney for the State of North Carolina*

Special Deputy Attorney General
North Carolina Department of Justice
114 West Edenton Street
Office number 349
Raleigh, North Carolina 27603
Post Office Box 629
Raleigh, North Carolina 27602-0629
Telephone number: 919/716-6629
Facsimile number: 919/716-6763
Email address: fhicks@ncdoj.gov

## CERTIFICATE OF SERVICE

This is to certify that, on the 22nd day of July 2013, I caused a copy of the foregoing to be electronically filed with the Office of the Clerk of the United States District Court for the Middle District of North Carolina using the CM/ECF filing system, which will automatically provide notice and service of the foregoing to all counsel of record herein.

                                                                                     */S/ I. Faison Hicks*
                                                                                           I. Faison Hicks