# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GRETCHEN S. STUART, M.D., et al.,   )
                                    )
       Plaintiffs,                 )
                                    )
v.                                  )    CIVIL ACTION
                                    )
RALPH LOOMIS, M.D., et al.,         )    Case No. 1:11-cv-00804
                                    )
       Defendants.                )
                                    )
                                    )

## PARTIES' JOINT SUBMISSION PURSUANT TO THE COURT'S AUGUST 19, 2013 ORDER

# JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiffs include North Carolina obstetrician-gynecologists who practice in private clinics as well as major hospitals, including the University of North Carolina. *See, e.g.,* Declaration of Gretchen S. Stuart, M.D., M.P.H. & T.M., In Support of Plaintiffs' Motion for Summary Judgment at ¶ 5 (Sept. 27, 2012) (the "Stuart Decl."), Dkt. No. 107; Declaration of James R. Dingfelder, M.D. at ¶ 2 (Sept. 28, 2012) (the "Dingfelder Decl."), Dkt. No. 111.

2. Plaintiffs perform abortions, among other medical procedures. *See, e.g.*, Stuart Decl. at ¶ 4, Dkt. No. 107; Dingfelder Decl. at ¶ 2, Dkt. No. 111.

3. The vast majority of abortions in North Carolina occur during the first trimester of pregnancy. *Id.* at ¶ 6, Dkt. No. 111.

4. As is true nation-wide, more than 60% of North Carolina women obtaining abortions already have at least one child. *See* www.schs.state.nc.us/schs/data/pregnancies/2010/abortion characteristics.pdf. *See also* Stuart Decl. at ¶ 19, Dkt. No. 107.

5. Under current North Carolina law, which existed prior to the enactment of the Woman's Right to Know Act (the "Act") and which still exists, all abortion providers must perform an ultrasound before providing an abortion. *See* 10A N.C. Admin. Code 14E.0305(d).

6. In the absence of the Act, Plaintiffs would not display and describe ultrasound images to a patient seeking an abortion unless the patient requested it. *See* Stuart Decl. at ¶¶ 14, 22, Dkt. No. 107; Dingfelder Decl. at ¶¶ 9, 15, Dkt. No. 111.

7. During the ultrasound procedure, the woman either (i) exposes the lower portion of her abdomen, or (ii) is naked from the waist down, covered only by a drape. *See* Stuart Decl. at ¶ 13, Dkt. No. 107.

8. If the patient states that she does not want to see the ultrasound images, hear the fetal heartbeat or hear the description and explanation concerning the ultrasound images, she (the pregnant woman) may avert her eyes from the ultrasound screen. Furthermore, the abortion provider may provide the patient with eye blinders and earphones so that, as a practical matter, she may avoid seeing and hearing the ultrasound images, the fetal heartbeat and/or the description and explanation concerning the ultrasound images. *See* Deposition of Watson Allen Bowes at 87:1-3 (Aug. 10, 2012) (the "Bowes Dep."), Dkt. No. 113-1.

# PLAINTIFFS' STATEMENT OF FACTS THAT DEFENDANTS BELIEVE ARE DISPUTED AND/OR IMMATERIAL

1. Abortion is a very safe medical procedure. *See* Dingfelder Decl. at ¶ 4, Dkt. No. 111.

    DEFENDANTS' RESPONSE: The defendants view this matter as undisputed and material, but object to the manner in which the plaintiffs have worded it. As currently worded, this statement is so unqualified that the defendants believe it to be inaccurate. The defendants propose instead the following wording, which they agree is undisputed and material: "Depending upon the conditions under which it is performed, the training, experience, knowledge and skill of the practitioner performing it, the facilities where it is performed and the degree to which the pregnant woman's prior consent to it is fully informed, among possibly other factors, abortion is a very safe medical procedure for the pregnant patient." The defendants would also not object to "Abortion can be a very safe medical procedure for the pregnant patient" or "Abortion is usually a very safe medical procedure for the pregnant patient."

2. Women seek abortions for a variety of reasons, including family circumstances and the health of the woman or fetus. *See, e.g.*, Stuart Decl. at ¶ 8, Dkt. No. 107; Dingfelder Decl. at ¶ 5, Dkt. No. 111.

    DEFENDANTS' RESPONSE: The defendants view this matter as undisputed and material, but object to the manner in which the plaintiffs have worded it. The defendants object to the words "including family circumstances and the health of

the woman or fetus" on the ground that this clause does not purport to be a comprehensive listing of the reasons why women may seek abortions, but rather is a selective and therefore not "value-neutral" statement of those reasons. The defendants believe that other reasons why women may seek abortions include the fact that some women feel pressured to seek abortions by their parents, husbands, boyfriends, etc. The defendants do not believe that the inclusion of a comprehensive listing of the reasons why women seek abortions is necessary or appropriate and propose instead the following value neutral wording, which they agree renders this matter undisputed and material: "Women seek abortions for a variety of reasons."

3. Plaintiffs currently obtain a patient's informed consent to an abortion by discussing, among other things, (i) the nature of the procedure, (ii) the procedure's risks and benefits, and (iii) alternatives available to the patient, along with their respective risks and benefits. *See, e.g.*, Stuart Decl. at ¶¶ 10, 19, Dkt. No. 107; Dingfelder Decl. at ¶ 7, Dkt. No. 111.

> DEFENDANTS' RESPONSE: The defendants believe that this matter is undisputed but not material. The plaintiffs are not exemplary or representative of all abortion providers in this State and their own practices do not necessarily represent the practices of others. Furthermore, what constitutes legally adequate informed-consent-to-abortion practices in this State is not a matter that is determined by the plaintiff-physicians or by private practitioners as a whole, but rather is a matter that can only be defined and prescribed by the legislative branch

4

of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements.

4. Plaintiffs also currently counsel each patient to ensure that she is certain about her decision to have an abortion. *See, e.g.*, Dingfelder Decl. at ¶ 8, Dkt. No. 111; Stuart Decl. at ¶ 11, Dkt. No. 107.

> DEFENDANTS' RESPONSE: The defendants believe that this matter is undisputed but not material. The plaintiffs are not exemplary or representative of all abortion providers in this State and their own practices do not necessarily represent the practices of others. Furthermore, what constitutes legally adequate informed-consent-to-abortion practices in this State is not a matter that is determined by the plaintiff-physicians or by private practitioners as a whole, but rather is a matter that can only be defined and prescribed by the legislative branch of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements.

5. Plaintiffs already perform ultrasounds for abortion patients for diagnostic purposes to (i) confirm the pregnancy, (ii) determine the location of the embryo or fetus, and (iii) establish the gestational age of the embryo or fetus. *See, e.g.*, Stuart Decl. at ¶ 13, Dkt. No. 107; Dingfelder Decl. at ¶ 9, Dkt. No. 111.

> DEFENDANTS' RESPONSE: The defendants believe that this matter is undisputed but not material. The plaintiffs are not exemplary or representative of all abortion providers in this State and their own practices do not necessarily represent the practices of others. Furthermore, what constitutes legally adequate

5

informed-consent-to-abortion practices in this State is not a matter that is determined by the plaintiff-physicians or by private practitioners as a whole, but rather is a matter that can only be defined and prescribed by the legislative branch of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements. Finally, the ultrasound procedure that the plaintiffs state they perform is simply that which is mandated by pre-Act law in any case. *See* 10A N.C. Admin. Code 14E.0305(d).

6. Even before the Woman's Right to Know Act (the "Act"), it was and continues to be Plaintiffs' practice to (i) offer patients an opportunity to view the ultrasound, and (ii) answer any questions that their patients may have about the ultrasound images. *See, e.g.*, Stuart Decl. at ¶ 14, Dkt. No. 107; Dingfelder Decl. at ¶¶ 12, 15, Dkt. No. 111.

> DEFENDANTS' RESPONSE: The defendants believe that this matter is undisputed but not material. The plaintiffs are not exemplary or representative of all abortion providers in this State and their own practices do not necessarily represent the practices of others. Furthermore, what constitutes legally adequate informed-consent-to-abortion practices in this State is not a matter that is determined by the plaintiff-physicians or by private practitioners as a whole, but rather is a matter that can only be defined and prescribed by the legislative branch of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements.

7. To comply with the Display of Real-Time View Requirement, the physician or qualified technician must perform an ultrasound on the woman, which requires that she

lie on an examination table while, depending on the stage of pregnancy, the physician or qualified technician (i) inserts an ultrasound probe into her vagina, or (ii) places an ultrasound probe on her abdomen. *See, e.g.*, Stuart Decl. ¶ 13, Dkt. No. 107; Dingfelder Decl. at ¶¶ 10-11, Dkt. No. 111.

> DEFENDANTS' RESPONSE: The defendants believe that this matter is disputed and not material. First, whatever the plaintiffs' own practices may be regarding the use of vaginal ultrasounds, nothing in the Act mandates that a physician perform a vaginal ultrasound. Thus, this statement is not factual. Second, this statement is a statement by the plaintiffs of their understanding or conclusion as to what the Act means and mandates. Interpreting the Act is for the Court, not the plaintiffs, and an interpretation of the Act is not a "fact," but rather a conclusion of law.

8. All physicians in North Carolina have an ethical obligation to (i) exercise their medical judgment and discretion, and (ii) practice medicine based on the specific needs of an individual patient. *See, e.g.*, Declaration of Carol Getker Shores, M.D., PH.D., F.A.C.S. at ¶ 22 (Sept. 10, 2012) (the "Shores Decl."), Dkt. No. 112; Declaration of Amy Weil, M.D., In Support of Plaintiffs' Motion for Summary Judgment at ¶ 14 (Sept. 24, 2012) (the "Weil Decl."), Dkt. No. 109; Stuart Decl. at ¶ 48, Dkt. No. 107.

> DEFENDANTS' RESPONSE: The defendants believe that this matter is undisputed but not material. That which constitutes legally adequate and proper medical practice in this State is not a matter that is determined by the plaintiff-physicians or by private practitioners as a whole, but rather is a matter that can

only be defined and prescribed by the legislative branch of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements.

9. A physician should have the discretion to be able to choose in what way he or she obtains informed consent from a patient. *See* Bowes Dep. at 73:8-12, Dkt. No. 133-1.

<u>DEFENDANTS' RESPONSE</u>: The defendants object to this matter on the grounds that: (i) it is an incomplete and thus inaccurate representation of what Dr. Bowes stated in his deposition; and (ii) it is not material. First, Dr. Bowes actually stated that he believed that "a physician should have the discretion to be able to choose in what way he or she obtains a patient's informed consent, <u>provided that the physician is giving the patient all the information that the patient needs</u>." Bowes Dep. at 73:8-12, Document No. 133-1. (Emphasis supplied) Second, that which constitutes legally adequate informed-consent-to-abortion practices in this State is not a matter that is determined by Dr. Bowes, the plaintiff-physicians or by private practitioners as a whole, but rather is a matter that can only be defined and prescribed by the legislative branch of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements.

10. Also, a physician should be able to exercise his or her medical judgment so that he or she "can provide individualized medicine based on a patient's particular needs and circumstances." *See* Bowes Dep. at 161:7-15, Dkt. No. 113-1.

<u>DEFENDANTS' RESPONSE</u>: The defendants do not dispute that Dr. Bowes said this in his deposition, but believe that this matter is not material. That which

8
Case 1:11-cv-00804-CCE-LPA   Document 158   Filed 08/22/13   Page 9 of 18

constitutes legally adequate and proper medical practice in this State and that which constitutes legally adequate informed-consent-to-abortion practices in this State are not matters that are determined by Dr. Bowes, the plaintiff-physicians or by private practitioners as a whole, but rather are matters that can only be defined and prescribed by the legislative branch of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements.

11. In general, a physician should not act over the objection of a competent patient. *See* Bowes Dep. at 62:21-23, Dkt. No. 113-1; Bowes Exp. Report at 1, Dkt. No. 117-1.

    DEFENDANTS' RESPONSE:  The defendants do not dispute that Dr. Bowes said this in his deposition, but believe that this matter is not material.  That which constitutes legally adequate and proper medical practice in this State and that which constitutes legally adequate informed-consent-to-abortion practices in this State are not matters that are determined by Dr. Bowes, the plaintiff-physicians or by private practitioners as a whole, but rather are matters that can only be defined and prescribed by the legislative branch of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements.

12. Healthcare practitioners also have an ethical obligation to avoid harming their patients. *See* Declaration of Anne Drapkin Lyerly, M.D., M.A., In Support of Plaintiffs' Motion for Summary Judgment at ¶ 26 (Sept. 30, 2012) (the "Lyerly Decl."), Dkt. No. 108; Shores Decl. at ¶ 18, Dkt. No. 112; Weil Decl. at ¶ 20, Dkt. No. 109.

DEFENDANTS' RESPONSE: The defendants do not dispute that the plaintiffs' witnesses said this in their affidavits, but the defendants believe that this matter is not material. That which constitutes legally adequate and proper medical practice in this State and that which constitutes legally adequate informed-consent-to-abortion practices in this State are not matters that are determined by the plaintiff-physicians or by private practitioners as a whole, but rather are matters that can only be defined and prescribed by the legislative branch of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements.

13. Plaintiffs must comply with the Display of Real-Time View Requirement even if they believe that (i) acting over the patient's objection will harm the patient or violate medical ethics, or (ii) doing so is contrary to the physician's medical judgment. Dingfelder Decl. at ¶ 14, Dkt. No. 111; Stuart Decl. at ¶¶ 24, 42, Dkt. No. 107; Shores Decl. at ¶ 12, Dkt. No. 112; Weil Decl. at ¶ 16, Dkt. No. 109.

DEFENDANTS' RESPONSE: The defendants do not dispute that the plaintiffs' witnesses said this in their affidavits and the defendants do not dispute that the plaintiffs, like all physicians in this State and all citizens generally, must comply with the law, but the defendants believe that this matter is not material. That which constitutes legally adequate and proper medical practice in this State and that which constitutes legally adequate informed-consent-to-abortion practices in this State are not matters that are determined by the plaintiff-physicians or by private practitioners as a whole, but rather are matters that can only be defined and

10

prescribed by the legislative branch of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements. Put another way, if the plaintiff-physicians are to practice medicine in this State, the defendants believe that they must do so in accordance with the laws duly enacted by the General Assembly and upheld by the courts following constitutional scrutiny.

14. There is "a meaningful difference" between, on the one hand, a physician "offering a woman the ability to view [an] ultrasound and hear [a] simultaneous explanation" and, on the other hand, a physician "placing [a] screen in her view even over her objection and describing the ultrasound even over her objection" because "one says the physician . . . must do this. The other says they would just offer it." Bowes Dep. at 91:19-92:3, Dkt. No. 133-1.

> DEFENDANTS' RESPONSE: The defendants do not dispute that Dr. Bowes said this in his deposition, but the defendants believe that this matter is not material. That which constitutes legally adequate and proper medical practice in this State and that which constitutes legally adequate informed-consent-to-abortion practices in this State are not matters that are determined by Dr. Bowes, the plaintiff-physicians or private practitioners as a whole, but rather are matters that can only be defined and prescribed by the legislative branch of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements.

11

15. It is the medical judgment of Plaintiff physicians that forcing them to display and describe ultrasound images to their patients seeking abortions, even if the patient does not want to see the images or hear the description, will expose those patients to distress and potential psychological harm. *See, e.g.*, Stuart Decl. at ¶ 28, Dkt. No. 107; Dingfelder Decl. at ¶ 20, Dkt. No. 111; *see also* Declaration of Nada Logan Stotland, M.D., MPH, In Support of Plaintiffs' Motion for Summary Judgment at ¶¶ 16-20 (Sept. 21, 2012) (the "Stotland Decl."), Dkt. No. 115.

> DEFENDANTS' RESPONSE: The defendants do not dispute that the plaintiffs' witnesses said this in their affidavits, but the defendants believe that this matter is not material. That which constitutes legally adequate and proper medical practice in this State and that which constitutes legally adequate informed-consent-to-abortion practices in this State are not matters that are determined by the plaintiff-physicians or by private practitioners as a whole, but rather are matters that can only be defined and prescribed by the legislative branch of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements. Put another way, if the plaintiff-physicians are to practice medicine in this State, the defendants believe that they must do so in accordance with the laws duly enacted by the General Assembly and upheld by the courts following constitutional scrutiny.

16. It is the medical judgment of Plaintiff physicians that the Display of Real-Time View Requirement will be especially harmful for patients who are seeking abortions because of fetal anomalies, maternal health indications, or in cases of rape or incest. *See,*

*e.g.*, Dingfelder Decl. at ¶ 22, Dkt. No. 111; Stuart Decl. at ¶¶ 28, 29, Dkt. No. 107. *See also* Declaration of Carolyn Jones, In Support of Plaintiffs' Motion for Summary Judgment at ¶ 5 (Oct. 1, 2012), Dkt. No. 114; Stotland Decl. at ¶ 18, Dkt. No. 115.

> DEFENDANTS' RESPONSE: The defendants do not dispute that the plaintiffs' witnesses said this in their affidavits, but the defendants believe that this matter is not material. That which constitutes legally adequate and proper medical practice in this State and that which constitutes legally adequate informed-consent-to-abortion practices in this State are not matters that are determined by the plaintiff-physicians or by private practitioners as a whole, but rather are matters that can only be defined and prescribed by the legislative branch of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements. Put another way, if the plaintiff-physicians are to practice medicine in this State, the defendants believe that they must do so in accordance with the laws duly enacted by the General Assembly and upheld by the courts following constitutional scrutiny.

17. It does not improve the quality of informed consent to require physicians to comply with the Display of Real-Time View Requirement and display and describe ultrasound images to patients who do not want to see the images or hear the description. *See, e.g.*, Bowes Dep. at 140:5-13, Dkt. No. 113-1; Stuart Decl. at ¶ 23, Dkt. No. 107.

> DEFENDANTS' RESPONSE: The defendants do not dispute that Dr. Bowes said this in his deposition, but the defendants believe that this matter is not material. That which constitutes legally adequate and proper medical practice in this State

and that which constitutes legally adequate informed-consent-to-abortion practices in this State are not matters that are determined by Dr. Bowes, the plaintiff-physicians or private practitioners as a whole, but rather are matters that can only be defined and prescribed by the legislative branch of the State Government, subject to review by the courts for compliance with constitutional and other applicable requirements.

**DEFENDANTS' STATEMENT OF FACTS THAT PLAINTIFFS BELIEVE ARE DISPUTED AND/OR IMMATERIAL**

1. The plaintiffs generally charge their patients some monetary amount in consideration for performing abortions and for their other abortion-related services. *See, e.g.*, http://www.eastowneobgyn.com.

> PLAINTIFFS' RESPONSE: This is an undisputed, but immaterial, fact.

2. The plaintiffs, or at least some of them, advertise their abortion-related services to the public. *See, e.g.*, http://www.eastowneobgyn.com.

> PLAINTIFFS' RESPONSE: Undisputed that http://www.eastowneobgyn.com is one Plaintiff's website; statement is immaterial.

Dated: August 22, 2013

Respectfully submitted,

**COUNSEL FOR ALL PLAINTIFFS**

| | |
|---|---|
| */s/ Christopher Brook* | */s/ Julie Rikelman* |
| Christopher Brook, NC Bar #33838 | Julie Rikelman |
| American Civil Liberties Union | Center for Reproductive Rights |
| of North Carolina Legal Foundation | 120 Wall Street, 14th Floor |
| P.O. Box 28004 | New York, NY 10005 |
| Raleigh, NC 27611 | (917) 637-3670 |
| (919) 834-3466 | (917) 637-3666 Fax |
| (866) 511-1344 Fax | jrikelman@reprorights.org |
| cbrook@acluofnc.org | |

Helene T. Krasnoff
Planned Parenthood Fed. Of America
1110 Vermont Avenue NW, Suite 300
Washington, DC 20005
(202) 973-4800
helene.krasnoff@ppfa.org

Diana O. Salgado
Planned Parenthood Fed. of America
434 W. 33rd Street
New York, NY 10001
(212) 541-7800
(212) 247-6811 Fax
dianasalgado@ppfa.org

COUNSEL FOR PLANNED PARENTHOOD OF CENTRAL NORTH CAROLINA & PLANNED PARENTHOOD HEALTH SYSTEMS, INC.

Walter Dellinger
O'Melveny & Myers LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 Fax
wdellinger@omm.com

Anton Metlitsky
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000
(212) 326-2061 Fax
ametlitsky@omm.com

COUNSEL FOR GRETCHEN S. STUART, M.D., DAVID A. GRIMES, M.D., AMY BRYANT, M.D., DECKER & WATSON d/b/a PIEDMONT CAROLINA MEDICAL CLINIC, & A WOMAN'S CHOICE OF RALEIGH, INC.

Andrew D. Beck
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
(212) 284-7318
(212) 549-2651 Fax
abeck@aclu.org

COUNSEL FOR JAMES R. DINGFELDER,
M.D., SERINA FLOYD, M.D., TAKEY
CRIST, M.D., & TAKEY CRIST M.D., P.A.
d/b/a CRIST CLINIC FOR WOMEN


**COUNSEL FOR ALL DEFENDANTS**

*/s/ I. Faison Hicks*
I. Faison Hicks
Special Deputy Attorney General
North Carolina State Bar No. 10672
North Carolina Department of Justice
114 West Edenton Street
Post Office Box 629
Raleigh, North Carolina 27602-0629
Telephone: (919) 716-6629
Fax: (919) 716-6763
E-mail: fhicks@ncdoj.gov