# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GRETCHEN S. STUART, M.D., et al.,     )
                                                )
           Plaintiffs,           )
                                                )
v.                                   )     CIVIL ACTION
                                                )
CHERYL WALKER-MCGILL, M.D., et al.,   )     Case No. 1:11-cv-00804
                                                )
           Defendants.         )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES UNDER 42 U.S.C. § 1988

## TABLE OF CONTENTS

Page

BACKGROUND ......................................................................................................... 1

ARGUMENT.............................................................................................................. 3

    I.    PLAINTIFFS ARE ENTITLED TO RECOVER REASONABLE
        ATTORNEYS' FEES BECAUSE THEY PREVAILED IN THIS
        LITIGATION. ................................................................................................ 3

    II.    PLAINTIFFS' $1,032,367.50 LODESTAR FIGURE IS REASONABLE. ......... 4

    III.    THE COURT SHOULD AWARD PLAINTIFFS THE ENTIRE
        LODESTAR FIGURE BECAUSE THEIR CONSTITUTIONAL
        CHALLENGE WAS SUCCESSFUL................................................................. 13

    IV.    THE COURT SHOULD AWARD PLAINTIFFS THEIR LITIGATION
        EXPENSES...................................................................................................... 15

CONCLUSION........................................................................................................... 16

Case 1:11-cv-00804-CCE-LPA   Document 178   Filed 09/14/15   Page 2 of 26

# TABLE OF AUTHORITIES

Page(s)

## CASES

Aventis CropScience, NV v. Pioneer Hi-Bred Intern., Inc.,
2010 WL 2306677 (M.D.N.C. Jun. 8, 2010) ........................................ 9, 11, 13

Blum v. Stenson,
465 U.S. 886 (1984) ................................................................................ 8

Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.,
532 U.S. 598 (2001) ................................................................................ 3

Buffington v. Baltimore Cnty.,
913 F.2d 113 (4th Cir.1990) .................................................................. 14

Certain v. Potter,
330 F. Supp. 2d 576 (M.D.N.C. 2004) ............................................. 14, 15

Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts,
222 F. Supp. 2d 733 (D. Md. 2002) ....................................................... 8

Daly v. Hill,
790 F.2d 1071 (4th Cir. 1986) ........................................................ 15, 16

Evans v. Hous. Auth. of City of Raleigh,
N.C., 2007 WL 5273736 (E.D.N.C. Nov. 28, 2007) ............................. 14

Gen. Motors LLC v. Bill Kelley, Inc.,
2013 WL 5504445 (N.D.W. Va. Oct. 1, 2013) ..................................... 10

Hensley v. Eckferhart,
461 U.S. 424 (1983) ..................................................................... 3, 14, 15

Johnson v. Ga. Highway Express, Inc.,
488 F.2d 714 (5th Cir. 1974) ................................................................ 12

Jones v. Southpeak Interactive Corp. of Delaware,
777 F.3d 658 (4th Cir. 2015) ...................................................... 4, 14, 15

Lucas v. Guyton,
901 F. Supp. 1047 (D. S.C. 1995) ........................................................ 10

Missouri v. Jenkins,
491 U.S. 274 (1989) ............................................................................... 9

Nat'l Wildlife Fed'n v. Hanson,
859 F.2d 313 (4th Cir. 1988) .................................................................. 4

Case 1:11-cv-00804-CCE-LPA   Document 178   Filed 09/14/15   Page 3 of 26

*Perdue v. City University of New York,*
  13 F.Supp.2d 326 (E.D.N.Y.1998) ................................................................. 15

*Randle v. H&P Capital, Inc.,*
  2010 WL 2944907 (E.D. Va. July 21, 2010 ...................................................... 12

*Ricks v. Barnes,*
  2007 U.S. Dist. LEXIS 22410 (Mar. 28, 2007) .................................................. 9

*Rivers v. Ledford,*
  666 F. Supp. 2d 603 (E.D.N.C. 2009) ............................................................. 11

*Rodriguez ex rel. Kelly v. McLoughlin,*
  84 F. Supp. 2d 417 (S.D.N.Y. 1999) ............................................................... 13

*Rum Creek Coal Sales, Inc. v. Caperton,*
  31 F.3d 169 (4th Cir. 1994) ................................................................... passim

*Smith v. District of Columbia,*
  466 F. Supp. 2d 151 (D.D.C. 2006) ................................................................. 9

*Spell v. McDaniel,*
  852 F.2d 762 (4th Cir. 1988) ........................................................................ 16

*Spencer v. Cent. Servs., LLC,*
  2012 WL 142978 (D. Md. Jan. 13, 2012) ........................................................ 12

*Stuart v. Camnitz,*
  774 F.3d 238 (2014) .................................................................................... 2

*Stuart v. Huff,*
  2011 WL 6740400 (M.D.N.C. Dec. 22, 2011) ................................................... 2

*Stuart v. Huff,*
  706 F.3d 345 (4th Cir. 2013) ........................................................................ 2

*Stuart v. Huff,*
  834 F. Supp. 2d 424 (M.D.N.C. 2011) .......................................................... 2, 4

*Stuart v. Loomis,*
  992 F. Supp. 2d 585 (M.D.N.C. 2014) ..................................................... passim

*Texas Medical Providers Performing Abortion Services v. Lakey,*
  667 F.3d 570 (5th Cir. 2012) .................................................................... 7, 12

Case 1:11-cv-00804-CCE-LPA   Document 178   Filed 09/14/15   Page 4 of 26

*Walker-McGill v. Stuart,*
  135 S. Ct. 2838 (2015) ................................................................................ 3, 4, 14

*Wolfe v. Green,*
  2010 WL 3809857 (S.D. W. Va. Sept. 24, 2010) ........................................ 16

*Xiao-Yue Gu v. Hughes STX Corp.,*
  127 F. Supp. 2d 751 (D. Md. 2001) ...................................................... 11, 12

**STATUTES**

42 U.S.C. § 1988(b) ...................................................................................... 1, 3

N.C. Gen. Stat. §§ 90-21.80 - 90-21.92 ........................................................ 1

Plaintiffs hereby respectfully petition this Court under 42 U.S.C. § 1988(b) for an award of $1,032,367.50 in attorneys' fees and $16,266.47 in expenses relating to their successful challenge to certain provisions of North Carolina's Woman's Right to Know Act (the "Act"), codified at N.C. Gen. Stat. §§ 90-21.80 through 90-21.92.

## BACKGROUND[1]

**Litigation History**

In 2011, the North Carolina Legislature enacted the Woman's Right to Know Act (the "Act"), codified at N.C. Gen. Stat. §§ 90-21.80 through 90-21.92. The Act imposed new requirements on healthcare providers who provide abortion services including (among other things) mandating that abortion providers perform an ultrasound at least four hours before an abortion, and simultaneously (i) display the ultrasound images so that the patient can view them; and (ii) describe the images to the patient, including the dimensions of the embryo or fetus and the presence of external members and internal organs, if present and viewable (the "Display of Real-Time View Requirement"). *See Stuart v. Loomis*, 992 F. Supp. 2d 585, 587 (M.D.N.C. 2014). The Plaintiffs, North Carolina physicians and healthcare providers, brought this litigation in 2011 on behalf of themselves and their patients against various North Carolina government officials , challenging the Act's constitutionality. The litigation unfolded in four primary phases:

- *Complaint and Preliminary injunction.* On September 29, 2011, the same day that

---

[1]     Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted. This brief refers to the (i) Declaration of Julie Rikelman, Esq. In Support of Plaintiffs' Motion for Attorneys' Fees as the "Rikelman Declaration" or "Rikelman Decl."; (ii) Declaration of Diana O. Salgado, Esq. In Support of Plaintiffs' Motion for Attorneys' Fees as the "Salgado Declaration" or "Salgado Decl."; (iii) Declaration of Andrew Beck, Esq., In Support of Plaintiffs' Motion for Attorneys' Fees as the "Beck Declaration" or "Beck Decl."; (iv) Declaration of Christopher A. Brook as the "Brook Declaration" or "Brook Decl."; (v) Declaration of Anton Metlitsky, Esq., In Support of Plaintiffs' Motion for Attorneys' Fees And Expenses Under 42 U.S.C. § 1988(b) as the "Metlitsky Declaration" or "Metlitsky Decl."; (vi) Declaration of Jonathan D. Sasser as the "Sasser Declaration" or "Sasser Decl."; (vii) Declaration of Mark Sigmon as the "Sigmon Declaration" or "Sigmon Decl."; (viii) Declaration of Katherine Lewis Parker as the "Parker Declaration" or "Parker Decl."; and (ix) Declaration of Kimberly A. Parker, Esq., In Support of Plaintiffs' Motion for Attorneys' Fees and Expenses Under 42 U.S.C. § 1988(b) as the "Wilmer Parker Declaration" or "Wilmer Parker Decl."

Case 1:11-cv-00804-CCE-LPA   Document 178   Filed 09/14/15   Page 6 of 26

Plaintiffs filed a complaint against Defendants (*see* Dkt. No. 1),[2] Plaintiffs moved for a preliminary injunction barring enforcement of the Display of Real-Time View Requirement based on their First Amendment and vagueness arguments. *See* Dkt. No. 8. A hearing on Plaintiffs' preliminary-injunction motion was conducted before the court on October 17, 2011 (*see* Dkt. No. 38), and on October 25, 2011, the Court preliminarily enjoined the Defendants from enforcing the Display of Real-Time View Requirement. *See Stuart v. Huff*, 834 F. Supp. 2d 424 (M.D.N.C. 2011). On December 5, 2011, after Plaintiffs filed a motion for clarification (*see* Dkt. No. 42), the Court held a second hearing relating to the preliminary injunction.

- *Intervention.* Several individuals and pregnancy-counseling centers sought to intervene as defendants in the litigation, and the Court denied their motion. *See Stuart v. Huff*, 2011 WL 6740400 (M.D.N.C. Dec. 22, 2011). The proposed intervenors appealed and the Fourth Circuit affirmed in January 2013. *See Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013).[3]

- *Discovery and Summary judgment.* The discovery period involved both fact and expert discovery, including service of approximately seven expert reports.[4] Plaintiffs moved on October 3, 2012 for summary judgment on their First Amendment, substantive-due-process, and vagueness claims. *See* Dkt. No. 105. Defendants moved for summary judgment the same day (*see* Dkt. No. 117), and the Court granted in part Plaintiffs' subsequent motion to strike certain testimony on which Defendants relied (*see* Dkt. No. 162). On July 9, 2013, the Court requested that the parties file supplemental briefing concerning recent decisions by other courts, and a joint statement of undisputed facts. *See* Dkt. No. 142. On January 17, 2014, after the parties filed supplemental submissions and the Court heard oral argument (*see, e.g.*, Dkt. Nos. 147-48, 159), the Court granted Plaintiffs' motion in part by (i) adopting Plaintiffs' proposed savings constructions of the Act to eliminate its alleged vagueness; (ii) ruling that the Display of Real-Time View Requirement violated Plaintiffs' First Amendment rights; and (iii) deeming Plaintiffs' substantive-due-process challenge moot in view of the Court's First Amendment ruling. *See Stuart*, 992 F. Supp. 2d 585. In granting Plaintiffs' summary-judgment motion in part, the Court ordered a permanent injunction barring enforcement of the Display of Real-Time View Requirement. *See id.* Defendants appealed, and the Fourth Circuit affirmed in December 2014. *See Stuart v. Camnitz*, 774 F.3d 238 (2014).

- *Petition for Writ of Certiorari.* In March 2015, Defendants petitioned the United States Supreme Court for a Writ of Certiorari.[5] Plaintiffs opposed Defendants' certiorari petition in May 2015,[6] and the United States Supreme Court denied Defendants' petition

---

[2]      Plaintiffs subsequently amended their complaint. *See* Dkt. Nos. 102-103 (Plaintiffs' Third Amended Complaint).

[3]      Plaintiffs do not seek fees or expenses associated with opposing the intervention motion, either in this Court or on appeal.

[4]      *See* Rikelman Decl. ¶ 3.

[5]      Petition for Writ of Certiorari, *Walker-McGill v. Stuart*, 135 S. Ct. 2838 (2015).

[6]      Brief in Opposition to Petition for Writ of Certiorari, *Walker-McGill v. Stuart*, 135 S. Ct. 2838 (2015).

in June 2015. *See Walker-McGill v. Stuart*, 135 S. Ct. 2838 (2015).

**Plaintiffs' Counsel and Their Fees and Expenses**

The factual history relating to Plaintiffs' engagement of counsel at the Center for Reproductive Rights (the "Center"), Planned Parenthood Federation of America ("PPFA"), the American Civil Liberties Union Federation ("ACLU"), the American Civil Liberties Union of North Carolina Legal Foundation ("ACLUNC"), and O'Melveny & Myers LLP ("O'Melveny") (together, the "Counsel Entities") is described in the accompanying Rikelman, Salgado, Beck, Brook, and Metlitsky Declarations, respectively.

## ARGUMENT

### I. PLAINTIFFS ARE ENTITLED TO RECOVER REASONABLE ATTORNEYS' FEES BECAUSE THEY PREVAILED IN THIS LITIGATION.

Under the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee." *See also Hensley v. Eckferhart*, 461 U.S. 424, 429 (1983) (observing that under § 1988(b), a prevailing plaintiff should ordinarily recover an attorney's fee). A prevailing party is one who obtains "some relief" on the merits of its case. *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 598 (2001) ("A 'prevailing party' is one who has been awarded some relief by a court. Both judgments on the merits and court-ordered consent decrees create a material alteration of the parties' legal relationship and thus permit an award").

Plaintiffs are indisputably the "prevailing party." 42 U.S.C. § 1988(b). This Court granted Plaintiffs judgment as a matter of law that the Display of Real-Time View Requirement violated their First Amendment rights, and ordered both preliminary and permanent injunctive relief. *See Stuart*, 834 F. Supp. 2d 424; *Stuart*, 992 F. Supp. 2d 585. The Fourth Circuit

affirmed the Court's judgment, *see Stuart*, 774 F.3d 238, and in June 2015, the United States Supreme Court denied Defendants' petition for a writ of certiorari. *See Walker-McGill*, 135 S. Ct. 2838. The Defendants are enjoined permanently from enforcing the Display of Real-Time View Requirement. Plaintiffs are thus a prevailing party entitled to fees and expenses under § 1988. *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (deeming plaintiff that obtained judgment declaring two statutes unconstitutional a "prevailing party" under 42 U.S.C. § 1988(b)).

## II.    PLAINTIFFS' $1,032,367.50 LODESTAR FIGURE IS REASONABLE.

The first step in determining an appropriate attorneys'-fee award is calculating the "lodestar figure," i.e., the number of hours reasonably expended multiplied by a reasonable hourly rate. *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 675-76 (4th Cir. 2015). As described below, Plaintiffs are entitled to the entire $1,032,367.50 lodestar figure[7] that they seek because it is based on reasonable hourly rates (*see infra* pp. 5-11) and an appropriate number of attorney and paralegal work hours (*see infra* pp. 11-14).

### A.    The Hourly Rates On Which Plaintiffs' Lodestar Figure Is Based Are Reasonable.

#### 1.    *Extra-Community Rates Should Be Considered In Determining Whether Plaintiffs' Proposed Hourly Rates Are Reasonable.*

It is well established that although "[t]he community in which the court sits is the . . . starting point for selecting the proper rate" at which a prevailing party may seek attorneys' fees, *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988), there are circumstances in which other communities' rates may be considered. *See Rum Creek*, 31 F.3d at 175. If a prevailing party engaged extra-community counsel, the rates charged in the communities in

---

[7]    *See* Rikelman Decl. ¶ 25; Salgado Decl. ¶ 18; Beck Decl. ¶ 12; Brook Decl. ¶ 7; Parker Decl. ¶ 7. Metlitsky Decl. ¶ 27.

Case 1:11-cv-00804-CCE-LPA   Document 178   Filed 09/14/15   Page 9 of 26

which the prevailing party's counsel resides are properly considered if the (i) "complexity and specialized nature of a case . . . mean[s] that no attorney[] with the required skills[] is available locally," *id.* at 179; and (ii) "party choosing the attorney . . . acted reasonably in making the choice." *Id.*

Both criteria are satisfied here, and consideration of the prevailing market rates in Washington, D.C. and New York City—the two communities in which Plaintiffs' non-local counsel reside[8]—is thus warranted. *First*, there was no counsel in the local North Carolina market that had the skills, experience, and resources necessary to successfully represent Plaintiffs on a pro bono basis on his or her own. In challenging the Display of Real-Time View Requirement, Plaintiffs relied on and utilized local counsel at the ACLUNC, whose fees are included in this request.[9] The ACLUNC, however, did not have the in-house resources necessary to litigate independently this case from the trial-court phase (including filing pleadings, conducting discovery, and litigating summary judgment) through the appeals process, including potential litigation in the United States Supreme Court.[10] *See Nat'l Wildlife Fed'n*, 859 F.2d at 318 (deeming reasonable prevailing plaintiff's out-of-state counsel engagement where plaintiff produced evidence that its local counsel was unable to litigate case). Nor did the ACLUNC have expertise in litigating constitutional challenges to reproductive-rights-related statutes involving the First Amendment.[11] No other local practitioners have reproductive-rights-related legal expertise comparable to that of the Center, PPFA, and ACLU attorneys that Plaintiffs ultimately engaged.[12] And Plaintiffs' constitutional challenge would have been viewed

---

[8]     *See* Rikelman Decl. ¶ 4; Salgado Decl. ¶ 12; Beck Decl. ¶ 3; Brook Decl. ¶ 2; Metlitsky Decl. ¶ 8.

[9]     *See* Brook Decl. ¶ 4.

[10]    *See* Sasser Decl. ¶ 18; Sigmon Decl. ¶ 18.

[11]    *See* Sasser Decl. ¶ 18; Sigmon Decl. ¶ 18.

[12]    *See* Brook Decl. ¶ 16.

-5-

as an undesirable or politically sensitive representation because of the medical procedure at issue (abortion—a highly politicized issue) and named defendants (North Carolina government officials).[13] *See Rum Creek*, 31 F.3d at 179 (deeming "persuasive" prevailing plaintiff's argument that extra-community counsel was necessary because "taking on the governor and the police . . . could be a politically sensitive activity for a local West Virginia firm").

*Second*, the Plaintiffs acted reasonably in selecting their extra-community counsel. Critically, the Center, PPFA, ACLU, and O'Melveny agreed to represent Plaintiffs pro bono, i.e., subject to the risk that if Plaintiffs did not prevail, the Counsel Entities would receive no reimbursement for their time or expenses.[14] *See Nat'l Wildlife Fed'n*, 859 F.2d at 318 (considering out-of-state counsel's "willingness to forgo compensation temporarily and perhaps permanently" in deeming extra-community engagement reasonable). And Plaintiffs' attorneys at the Center, PPFA, and ACLU are well versed in abortion practice and jurisprudence, and among the only practitioners in the country who routinely litigate constitutional challenges to statutes that infringe on women's reproductive rights.[15] For example:

- When this litigation began in 2011, the Center was the only organization in the country that had litigated challenges to mandatory ultrasound laws like the Act, and Ms. Rikelman, the Center's U.S. Legal Program Litigation Director, served as lead counsel in one such litigation beginning in 2011.[16]

- Helene Krasnoff is the Senior Director of PPFA's Public Policy Litigation & Law Department.[17] She has been a PPFA attorney for more than fifteen years, and has substantial experience litigating constitutional challenges to reproductive-rights-related statutes, including cases in which Ms. Krasnoff served as lead counsel.[18]

---

[13]     *See* Brook Decl. ¶ 12; *see also* Sasser Decl. ¶ 8; Sigmon Decl. ¶ 9.

[14]     *See* Rikelman Decl. ¶ 23; Beck Decl. ¶ 11; Metlitsky Decl. ¶ 6.

[15]     *See, e.g.,* Rikelman Decl. ¶ 4; Salgado Decl. ¶ 4; Beck Decl. ¶ 7; Brook Decl. ¶ 16.

[16]     *See* Rikelman Decl. ¶ 10.

[17]     *See* Salgado Decl. ¶ 1.

[18]     *See id.* Decl. ¶ 9.

-6-

- Andrew Beck has been a Staff Attorney with the ACLU's Reproductive Freedom Project since 2010, and his work has focused exclusively on reproductive-rights litigation.[19] In particular, Mr. Beck has experience with First Amendment challenges restricting access to reproductive healthcare.[20]

Plaintiffs also have a longstanding relationship with their out-of-state counsel at the Center, PPFA, and ACLU.[21] Indeed, Plaintiffs and the entities that employ them routinely request representation by the Center, PPFA, and ACLU in view of (among other things) the 2 organizations' strong commitment to ensuring abortion access and unparalleled expertise in challenging statutes that infringe on reproductive and other constitutional rights.[22] *See Rum Creek*, 31 F.3d at 179 (endorsing plaintiff's decision to engage out-of-state counsel where attorneys were plaintiff's "regular counsel").

It was similarly reasonable for Plaintiffs to engage O'Melveny to work with the Center, PPFA, and ACLU attorney teams. It was evident from the outset that Plaintiffs' challenge to the Act would raise complex constitutional-law issues concerning (among other things) the First Amendment and the appropriate level of scrutiny applied in the Court's analysis of the statute.[23] And because the state of Texas had enacted around the same time a similar mandatory-ultrasound statute,[24] there was a high likelihood that Plaintiffs' challenge would be litigated in the Fourth Circuit and potentially the United States Supreme Court.[25] O'Melveny has a renowned appellate practice group within its litigation department that is comprised of attorneys who have collectively argued several dozen cases in the United States Supreme Court and have

---

[19]   *See* Beck Decl. ¶ 6.

[20]   *See id.* ¶ 6.

[21]   *See* Rikelman Decl. ¶ 11; Salgado Decl. ¶ 13; Beck Decl. ¶ 7.

[22]   *See* Rikelman Decl. ¶ 11; Salgado Decl. ¶ 13; Beck Decl. ¶ 7.

[23]   *See* Metlitsky Decl. ¶ 4.

[24]   *See Texas Medical Providers Performing Abortion Services v. Lakey*, 667 F.3d 570 (5th Cir. 2012).

[25]   *See* Metlitsky Decl. ¶ 4.

written merits and certiorari-stage briefs in hundreds more.[26]  For example, Walter Dellinger, the supervising attorney for this engagement, is the former acting Solicitor General of the United States, and has argued over 20 cases before the United States Supreme Court, including a case involving a First Amendment challenge to a federal statue.[27]  And Anton Metlitsky, the lead O'Melveny attorney who worked on this matter, served as a law clerk for Chief Justice John G. Roberts, and has co-authored dozens of merits and certiorari-stage briefs filed in the United States Supreme Court and various United States Courts of Appeals.[28]

    2.    *Plaintiffs' Proposed Hourly Rates Are Lower Than or Consistent With The Relevant Prevailing Market Rates.*

The determination of a reasonable hourly rate "is fact-intensive and is best guided by what attorneys earn from paying clients for similar services in similar circumstances," including "the rate actually charged by the petitioning attorneys." *Rum Creek*, 31 F.3d at 175.  When "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," the requested rates are "normally deemed to be reasonable." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  The reasonable-rate rule is no different for paralegals, i.e., the reasonableness of a proposed rate is examined by comparison to rates charged by similarly skilled paralegals. *See, e.g., Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733, 752 (D. Md. 2002) (deeming proposed paralegal rates "customary and reasonable" based on evidence that they are comparable to rates charged by similar paralegals in the community).

The $250 and $125 hourly rates that Plaintiffs seek for their local ACLUNC counsel and paralegal, respectively, are lower than or consistent with prevailing North Carolina market rates

---

[26]    *See* Metlitsky Decl. ¶ 3.

[27]    *See id.* ¶ 7.

[28]    *See id.* ¶ 8.

Case 1:11-cv-00804-CCE-LPA   Document 178   Filed 09/14/15   Page 13 of 26

for attorneys and paralegals with comparable skill, experience, and reputation.[29]

The hourly rates that Plaintiffs seek for their extra-community counsel—i.e., $550 for attorneys with more than a decade of experience when the litigation began; $400 for attorneys with at least five years of experience; and $250 for attorneys with less than five years of experience (together, the "Proposed Attorney Fee Bands")[30]—are substantially lower than the hourly rates actually charged by the petitioning timekeepers and prevailing market rates in Washington, D.C. and New York City.[31] Indeed, the Proposed Attorney Fee Bands are in many instances *hundreds of dollars* lower than the rates (i) the O'Melveny attorney timekeepers have collected from paying clients in the past; (ii) charged in the Washington, D.C. and New York City market for attorneys with comparable skill, experience, and reputations; and (iii) reflected in the Adjusted Laffey Matrix, a grid commonly used in litigation to determine prevailing Washington, D.C. market rates.[32] For example, while Plaintiffs seek an hourly rate of $550 for Walter Dellinger's time on this litigation, (i) O'Melveny charged paying clients between 2011 and present $990 to $1,225 per hour for Mr. Dellinger's time[33]; and (ii) under the Adjusted Laffey Matrix, Mr. Dellinger is eligible to seek up to $796 per hour.[34] And although Plaintiffs seek an hourly rate of $400 for PPFA's Diana Salgado's work on this matter (Ms. Salgado had

---

[29]     *See* Sasser Decl. ¶¶ 15-17; Sigmon Decl. ¶¶ 15-17. The Supreme Court has recognized that paralegal and law clerk fees are recoverable in civil-rights litigation because their use may reduce overall litigation costs. *See Missouri v. Jenkins*, 491 U.S. 274, 288-89 (1989).

[30]     Where counsel's billing entries reflect time spent traveling and not simultaneously working, Plaintiffs have reduced the three fee bands by 50%, to $275, $200, and $125, respectively. *See Aventis CropScience, NV v. Pioneer Hi-Bred Intern., Inc.*, 2010 WL 2306677 (M.D.N.C. Jun. 8, 2010) ("The Court finds that a reasonable rate for travel time is half the normal hourly billing rate").

[31]     *See* Wilmer Parker Decl. ¶ 14; Metlitsky Decl. ¶¶ 12–15.

[32]     *See, e.g., Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006) ("[A] plaintiff may establish previous market rates by relying on such evidence as an updated version of the Laffey Matrix"); *Ricks v. Barnes*, 2007 U.S. Dist. LEXIS 22410, n.3 (Mar. 28, 2007) (noting that the Adjusted Laffey matrix is "approved for federal court litigation in the District of Columbia"). *See also* Metlitsky Decl. ¶¶ 16–19.

[33]     Metlitsky Decl. ¶ 16.

[34]     *Id.* Exhibit 4.

six years of experience when she began working on this matter in 2011, and now has nine), (i)

from 2011 to present, Washington, D.C. and New York City-area law firms have charged

between $610 and $855 for attorneys with similar skills, experience, and reputation;[35] and (ii)

under the Adjusted Laffey Matrix, Ms. Salgado is eligible to seek an hourly rate of $406 to $586

for work performed between 2011 and present.[36] *See Gen. Motors LLC v. Bill Kelley, Inc.*, 2013

WL 5504445, at *7 (N.D.W. Va. Oct. 1, 2013) (finding no reason to question reasonableness of

rates that were "actual rates billed by Jones Day"); *Rum Creek*, 31 F.3d at178-79 (evidence that

rates charged "were [attorneys'] normal Richmond hourly rates . . . and that the persons

involving in charging and paying those rates believed them to be reasonable . . . is sufficient to

establish the 'prevailing market rate'").

The reasonableness of Plaintiffs' requested rates is further supported by two other factors

routinely considered by courts in this Circuit in evaluating fee petitions.

- *Plaintiffs' counsel are skilled, experienced, and well-regarded in their fields.* As described above (*see supra* pp. 7-8), the attorney timekeepers are some of the most experienced attorneys in the country in the areas of reproductive-rights litigation, constitutional law, appellate practice, and complex federal-court litigation. *See Gen. Motors LLC*,2013 WL 5504445, at *8 (awarding above-market rates to "reflect the breadth of experience these attorneys possess . . . as well as the long-term relationship [plaintiffs] had with [the law firm]").

- *The litigation precluded some of the Counsel Entities from taking on other work.* Four of the five Counsel Entities are non-profit organizations with limited resources, and all lost the opportunity to accept other engagements because of the time and resources needed to prosecute successfully this case.[37] *See Lucas v. Guyton*, 901 F. supp. 1047, 1057 (D. S.C. 1995) (considering that "hours spent on this case precluded [plaintiff's attorney] from working on other current files and entertaining additional case work"); *see also Rum Creek*, 31 F.3d at 175 (listing "preclusion of employment by the attorney due to acceptance of the case" as a relevant factor in assessing reasonableness).

---

[35] Wilmer Parker Decl. ¶ 10; Metlitsky Decl. ¶ 13.

[36] Metlitsky Decl. Exhibit 4.

[37] *See, e.g.*, Rikelman Decl. ¶ 22; Salgado Decl. ¶ 14; Brook Decl. ¶ 13.

Case 1:11-cv-00804-CCE-LPA   Document 178   Filed 09/14/15   Page 15 of 26

**B. The Number of Hours Underlying Plaintiffs' Proposed Lodestar Figure Are Reasonable and Reflect Good Billing Judgment.**

In determining the number of attorney hours that should be included in the lodestar figure, courts assess "reasonableness and good billing judgment." *Rivers v. Ledford*, 666 F. Supp. 2d 603, 606 (E.D.N.C. 2009). In evaluating whether hours were reasonably expended, courts in this Circuit generally consider the (i) "time and labor required"; (ii) "novelty and difficulty of the questions"; (iii) the level of skill required to perform the legal service properly; and (iv) "the amount involved and the results obtained." *Aventis*, 2010 WL 2306677 (listing factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) that are most relevant to reasonableness inquiry); *see also Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 764 (D. Md. 2001) (explaining that *Johnson* factors "should be considered" in determining the lodestar figure).

The number of hours worked by the Counsel Entities on this litigation is reasonable.

- *The litigation required significant time and labor by the Counsel Entities.* The Defendants contested Plaintiffs' constitutional challenge at every stage of the case, requiring Plaintiffs to actively prosecute it for nearly four years, including by (among other things) (i) filing four complaints; (ii) obtaining a preliminary injunction; (iii) conducting fact and expert discovery; (iv) researching, drafting, and preparing for argument on a summary-judgment motion (including supplemental briefing requested by the Court); (v) researching, drafting, and preparing for argument on Defendants' cross motion for summary judgment; (vi) researching, drafting, and preparing for argument on Defendants' Fourth Circuit appeal; and (vii) opposing Defendants' Supreme Court petition for a writ of certiorari.[38] And two North Carolina practitioners and one Washington, D.C. attorney—all generally familiar with the case and the unique demands associated with a litigation challenging the constitutionality of a compelled-speech statute—concluded after reviewing the hours expended by the Counsel Entities that the number of hours devoted by counsel to those tasks were reasonable.[39] *See Rum Creek*, 31 F.3d at 180 (finding hours reasonable where litigation was "vigorously contested by the State of West Virginia at every step, and . . . [plaintiff] was required to appeal twice to [the Fourth Circuit], each time succeeding in its effort").

---

[38] *See, e.g.,* Rikelman Decl. ¶¶ 12, 16; Salgado Decl. ¶ 11; Beck Decl. ¶ 8; Metlitsky Decl. ¶ 27.

[39] Wilmer Parker Decl. ¶ 13; Sasser Decl. ¶ 11; Sigmon Decl. ¶ 13.

Case 1:11-cv-00804-CCE-LPA   Document 178   Filed 09/14/15   Page 16 of 26

- *The litigation presented complex constitutional-law questions involving the First and Fourteenth Amendments.* To build a persuasive record, and properly brief and argue the merits of Plaintiffs' constitutional challenge, the Counsel Entities conducted extensive research and analysis of an array of First Amendment doctrines and principles, including, for example, the respective levels of scrutiny required for government-compelled speech, commercial speech, and professional speech.[40] The Counsel Entities similarly delved into the complexities of the informed-consent doctrine and its implications in this and similar cases.[41] And because a constitutional challenge to a similar mandatory-ultrasound statute in Texas was litigated around the same time this case unfolded,[42] it was necessary for the Counsel Entities to track and analyze the Texas litigation. *See Randle v. H&P Capital, Inc.*, 2010 WL 2944907, at *9 (E.D. Va. July 21, 2010) ("The complexity of the issues involved in this case support this Court's finding that counsel expended a reasonable number of hours on this matter."); *see also Xiao-Yue Gu*, 127 F. Supp. 2d at 766 (finding hours reasonable given the "factual complexity of the case and extensive discovery involved in pressing" claim).

- *Successfully prosecuting the litigation required a high level of skill and expertise.* As described above (*see supra* pp. 7-8), Plaintiffs selected the Counsel Entities to represent them because of the Counsel Entities' unparalleled expertise in the fields of reproductive-rights and constitutional law. Indeed, a successful and efficient prosecution demanded the involvement of attorneys who are intimately familiar with the legal issues surrounding abortion, and have with experience in litigation in district courts around the country, courts of appeals, and the United States Supreme Court. For example, when the litigation entered the writ-of-certiorari-petition stage, the attorney timekeepers at O'Melveny were well-positioned to draft efficiently an effective opposition brief; indeed, Mr. Metlitsky, who was a principal drafter of that brief, has extensive experience with certiorari-stage briefs.[43]

- *Plaintiffs obtained a complete victory with a far-reaching impact.* Although there was no monetary sum at issue, this litigation involved what Defendants described as "an issue of great national significance,"[44] i.e., a state's ability to enact statutory requirements that compel physicians to provide the state's message on abortion. And as described in more detail below (*see infra* pp. 14-16), the Plaintiffs obtained a complete victory and total relief from the Display of Real-Time View Requirement. *See Spencer v. Cent. Servs., LLC*, 2012 WL 142978, at *3 (D. Md. Jan. 13, 2012) (finding hours "particularly" reasonable where "all three plaintiffs recovered on their claims").

Moreover, all Counsel Entities exercised good billing judgment in determining their

---

[40]  *See, e.g.*, Rikelman Decl. ¶ 3; Salgado Decl. ¶ 5; Beck Decl. ¶ 6; Metlitsky Decl. ¶¶ 25, 26.

[41]  *See, e.g.*, Rikelman Decl. ¶¶ 16-18; Metlitsky Decl. ¶ 26.

[42]  *See Lakey*, 667 F.3d 570 (5th Cir. 2012).

[43]  Metlitsky Decl. ¶ 8.

[44]  Petition for Writ of Certiorari at 7, *Walker-McGill v. Stuart*, 135 S. Ct. 2838 (2015).

-12-

proposed lodestar figure. The attorney-hours figures submitted by the Counsel Entities are based on time records that specify the date, number of hours expended, and nature of legal task.[45] *See Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999); *see also Aventis*, 2010 WL 2306677, at *7 (accepting "block" billing entries that identified "specific tasks"). The Counsel Entities excluded from their respective petitions entries that appeared to be duplicative, excessive, or administrative.[46] And in many instances, the Counsel Entities opted not to seek a fee award for certain categories of work—totaling thousands of dollars in fees— that would otherwise be compensable.[47] For example:

- The Center excluded from its fee request (among other things) all paralegal work and the time of senior attorneys who had worked on previous mandatory-ultrasound litigation and advised on case strategy.[48]

- PPFA is not seeking fees associated with hours incurred by (i) Roger Evans, the former Senior Director of the Public Policy Litigation & Law Department and current Senior Counsel to PPFA; or (ii) PPFA's paralegals.[49]

- The ACLUNY excluded from its fee request time incurred by senior ACLU attorneys, including the ACLU's Legal Director, reviewing draft pleadings and participating in litigation-strategy discussions.[50]

- O'Melveny excluded all time incurred by its summer associates, legal interns, paralegals, and project assistants.[51]

## III. THE COURT SHOULD AWARD PLAINTIFFS THE ENTIRE LODESTAR FIGURE BECAUSE THEIR CONSTITUTIONAL CHALLENGE WAS SUCCESSFUL.

After determining the initial lodestar figure, courts in this Circuit (i) "subtract fees for

---

[45]     *See* Rikelman Decl. ¶ 1–4; Salgado Decl. ¶ 2; Beck Decl. ¶ 8; Brook Decl. ¶ 7; Metlitsky Decl. ¶ 22.

[46]     *See* Rikelman Decl. ¶ 19; Salgado Decl. ¶ 11; Beck Decl. ¶ 10; Brook Decl. ¶ 7; Metlitsky Decl. ¶ 28.

[47]     *See* Rikelman Decl. ¶ 19; Salgado Decl. ¶ 11; Beck Decl. ¶ 10; Brook Decl. ¶ 7; Metlitsky Decl. ¶ 28.

[48]     *See* Rikelman Decl. ¶ 20.

[49]     *See* Salgado Decl. ¶ 11.

[50]     *See* Beck Decl. ¶ 10.

[51]     *See* Metlitsky Decl. ¶ 28.

hours spent on unsuccessful claims unrelated to the successful ones"; and (ii) "award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiffs." *Jones*, 777 F.3d at 675-76. In determining the plaintiffs' "degree of success," there is no "precise rule or formula." *Id.* And the Supreme Court has instructed that when

> a plaintiff has obtained excellent results, . . . . the fee award should not be reduced simply because the plaintiff has failed to prevail on every claim raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain ground is not a sufficient reason for reducing a fee.

*Hensley*, 461 U.S. at 435. That is because "where the plaintiff's claims involve a common core of facts based on related legal theories, the attorney's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Certain v. Potter*, 330 F. Supp. 2d 576, 584 (M.D.N.C. 2004); *see also Buffington v. Baltimore Cnty.,* 913 F.2d 113, 128 (4th Cir.1990) (where all claims are "inextricably intermingled," the court should assess significance of overall relief obtained in relation to the hours expended).

Here, the Court should award the entire lodestar amount because Plaintiffs "obtained excellent results." *Hensley*, 461 U.S. at 435; *see also Evans v. Hous. Auth. of City of Raleigh, N.C.*, 2007 WL 5273736, at \*5 (E.D.N.C. Nov. 28, 2007) (when a plaintiff "obtain[s] complete relief, her attorney should receive "a fully compensatory fee, and in cases of exceptional success, even an enhancement"). Indeed, the Plaintiffs obtained a "complete victory," *Evans*, 2007 WL 5273736, at \*5, on the merits: this Court ordered a permanent injunction barring enforcement of the Display of Real-Time View Requirement (*see Stuart*, 992 F. Supp. 2d 585), and the Fourth Circuit affirmed (*see Stuart*, 774 F.3d 238). Their victory changed substantially abortion-care practices in North Carolina; physicians who provide abortion services will not be compelled to speak, in his or her own voice, the state's ideological message in favor of carrying a pregnancy

Case 1:11-cv-00804-CCE-LPA   Document 178   Filed 09/14/15   Page 19 of 26

to term. *See Stuart*, 992 F. Supp. 2d at 588 ("The Supreme Court has never held that a state has the power to compel a health care provider to speak, in his or her own voice, the state's ideological message in favor of carrying a pregnancy to term, and this Court declines to do so today"). Neither the Plaintiffs' decision to seek summary judgment on only three of their six constitutional claims (*see* Dkt. No. 117), nor the Court's summary-judgment denial of their due-process claim as moot (*see Stuart*, 992 F. Supp. 2d at 611) warrants a downward adjustment to the lodestar figure. The constitutional claims asserted in the operative complaint involve a "common core of facts" relating to the application of the Display and Speech Provision "based on related legal theories" (i.e., constitutional violations arising from North Carolina's attempt to compel physicians speech), and it would be difficult—if not impossible—to segregate discovery-related efforts expended on each particular cause of action. *Potter*, 330 F. Supp. 2d at 584. And, as the Supreme Court instructed in *Hensley*, the Court's determination that it need not reach Plaintiffs' substantive due-process claim in light of its First Amendment holding "is not a sufficient reason for reducing the fee." 461 U.S. at 435; *see also Jones*, 777 F.3d at 676-77 (no abuse of discretion in declining to reduce lodestar where plaintiff obtained only approximately one-third of damages sought because claim was "substantially and materially successful"); *Perdue v. City University of New York,* 13 F.Supp.2d 326, 346 (E.D.N.Y.1998) (refusing to reduce award even though plaintiff did not prevail on certain claims and did not receive the amount of damages requested).

## IV.    THE COURT SHOULD AWARD PLAINTIFFS THEIR LITIGATION EXPENSES.

"The great weight of authority in this circuit and others clearly establishes that a prevailing plaintiff is entitled to compensation for reasonable litigation expenses under § 1988," *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986) (instructing district court to award

-15-

"compensation for expenses reasonably incurred by the attorneys in preparing the case"), if the expenses "are normally charged to a fee-paying client[] in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (per curiam).

The $16,226.47 in expenses sought by Plaintiffs[52] are reasonable and are comprised primarily of three cost categories: (i) legal-research costs, *see Wolfe v. Green*, 2010 WL 3809857, at *14 (S.D. W. Va. Sept. 24, 2010) (citing cases); (ii) in-house and external-vendor printing fees, *see Daly*, 790 F.2d at 1082-1083 (explaining that "secretarial costs [and] copying" are recoverable); and (iii) necessary travel costs, *see id.* (explaining that costs associated with "necessary travel" are recoverable). All three categories of expenses are typically charged to fee-paying clients in the Washington, D.C. and New York City legal markets.[53] And none of the Counsel Entities seek a complete reimbursement of all expenses incurred in the course of prosecuting this litigation, i.e., they have excluded from this fee petition thousands of dollars of expenses incurred by the respective organizations and law firm.[54] The Court should therefore award Plaintiffs' expenses in full. *See Gen. Motors LLC*, 2013 WL 5504445, at *9 (awarding reasonable costs and expenses).

## CONCLUSION

Plaintiffs' motion for attorneys' fees and expenses and costs should be granted in its entirety, and they should be awarded $1,048,593.97 including:

a. $1,032,367.50 in attorneys' fees, comprised of (i) $503,940 (Center); (ii) $135,355 (PPFA); (iii) $109,600 (ACLU); (iv) $71,362.50 (ACLUNC); and (v) $212,110 (O'Melveny); and

b. $16,226.47 in expenses, comprised of (i) $5,144.80 (Center); (ii) $2,245.09 (PPFA); (iii) $1,916.98 (ACLU); and (iv) $6,919.60 (O'Melveny).

---

[52]  *See* Rikelman Decl. ¶ 26; Salgado Decl. ¶ 19; Beck Decl. ¶ 13; Metlitsky Decl. ¶ 29.

[53]  *See* Metlitsky Decl. ¶ 31.

[54]  *See* Rikelman Decl. ¶ 26; Salgado Decl. ¶ 19; Beck Decl. ¶ 13; Metlitsky Decl. ¶ 32.

Dated: September 14, 2015

Respectfully submitted,

/s/ Christopher Brook
Christopher Brook, NC Bar #33838
American Civil Liberties Union
of North Carolina Legal Foundation
P.O. Box 28004
Raleigh, NC 27611
(919) 834-3466
(866) 511-1344 Fax
cbrook@acluofnc.org

**COUNSEL FOR ALL PLAINTIFFS**

Helene T. Krasnoff
Planned Parenthood Fed. Of America
1110 Vermont Avenue NW, Suite 300
Washington, DC 20005
(202) 973-4800
helene.krasnoff@ppfa.org

Diana O. Salgado
Planned Parenthood Fed. of America
434 W. 33rd Street
New York, NY 10001
(212) 541-7800
(212) 247-6811 Fax
dianasalgado@ppfa.org

COUNSEL FOR PLANNED PARENTHOOD
OF CENTRAL NORTH CAROLINA &
PLANNED PARENTHOOD HEALTH
SYSTEMS, INC.

/s/ Julie Rikelman
Julie Rikelman
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3670
(917) 637-3666 Fax
jrikelman@reprorights.org

Walter Dellinger
O'Melveny & Myers LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 Fax
wdellinger@omm.com

Anton Metlitsky
Leah Godesky
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000
(212) 326-2061 Fax
ametlitsky@omm.com
lgodesky@omm.com

COUNSEL FOR GRETCHEN S. STUART,
M.D., DAVID A. GRIMES, M.D., AMY
BRYANT, M.D., DECKER & WATSON d/b/a
PIEDMONT CAROLINA MEDICAL
CLINIC, & A WOMAN'S CHOICE OF
RALEIGH, INC.

-17-

Andrew D. Beck
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
(212) 284-7318
(212) 549-2651 Fax
abeck@aclu.org

COUNSEL FOR JAMES R. DINGFELDER,
M.D., SERINA FLOYD, M.D., TAKEY
CRIST, M.D., & TAKEY CRIST M.D., P.A.
d/b/a CRIST CLINIC FOR WOMEN

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 14, 2015 the foregoing **Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses Under 42 U.S.C. § 1988** was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Christopher Brook
NC Bar #33838
American Civil Liberties Union
Of NC Legal Foundation
PO Box 28004
Raleigh, NC 27611
cbrook@acluofnc.org

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GRETCHEN S. STUART, M.D., et al.,      )
                                                  )
        Plaintiffs,            )
                                                    )
v.                              )      CIVIL ACTION
                                                  )
CHERYL WALKER-MCGILL, M.D., et al.,   )      Case No. 1:11-cv-00804
                                                  )
        Defendants.        )

## LOCAL RULE 54.2 STATEMENT OF CONSULTATION

Plaintiffs respectfully submit this Statement of Consultation under Middle District of North Carolina Local Rule 54.2. On the following dates, Christopher Brook (counsel for Plaintiffs) and Faison Hicks (counsel for Defendants) met and conferred by telephone and electronic mail in an attempt to reach agreement on the fees and costs that should be awarded to Plaintiffs under 42. U.S.C. §1988: July 7, 9, 16, 22, 27, and 28, 2015; August 24-25, 27-28, and 31, 2015; and September 4 and 8, 2015. The parties have been unable to reach an agreement on Plaintiffs' fees and expenses.

Dated: September 14, 2015


Respectfully submitted,


/s/ Christopher Brook
Christopher Brook, NC Bar #33838
American Civil Liberties Union
of North Carolina Legal Foundation
P.O. Box 28004
Raleigh, NC 27611
(919) 834-3466
(866) 511-1344 Fax
cbrook@acluofnc.org

/s/ Julie Rikelman
Julie Rikelman
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10005
(917) 637-3670
(917) 637-3666 Fax
jrikelman@reprorights.org

**COUNSEL FOR ALL PLAINTIFFS**

Helene T. Krasnoff
Planned Parenthood Fed. Of America
1110 Vermont Avenue NW, Suite 300
Washington, DC 20005
(202) 973-4800
helene.krasnoff@ppfa.org

Diana O. Salgado
Planned Parenthood Fed. of America
434 W. 33rd Street
New York, NY 10001
(212) 541-7800
(212) 247-6811 Fax
dianasalgado@ppfa.org

COUNSEL FOR PLANNED PARENTHOOD
OF CENTRAL NORTH CAROLINA &
PLANNED PARENTHOOD HEALTH
SYSTEMS, INC.


Andrew D. Beck
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
(212) 284-7318
(212) 549-2651 Fax
abeck@aclu.org

COUNSEL FOR JAMES R. DINGFELDER,
M.D., SERINA FLOYD, M.D., TAKEY
CRIST, M.D., & TAKEY CRIST M.D., P.A.
d/b/a CRIST CLINIC FOR WOMEN

Walter Dellinger
O'Melveny & Myers LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 Fax
wdellinger@omm.com

Anton Metlitsky
Leah Godesky
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000
(212) 326-2061 Fax
ametlitsky@omm.com
lgodesky@omm.com

COUNSEL FOR GRETCHEN S. STUART,
M.D., DAVID A. GRIMES, M.D., AMY
BRYANT, M.D., DECKER & WATSON d/b/a
PIEDMONT CAROLINA MEDICAL
CLINIC, & A WOMAN'S CHOICE OF
RALEIGH, INC.