IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GRETCHEN S. STUART, M.D., et al )
)
    Plaintiffs )
)
v. ) 1:11-cv-804
)
CHERYL WALKER-MCGILL, M.D., et al )
)
    Defendants )

## DECLARATION OF CHRISTOPHER A. BROOK

I, Christopher A. Brook, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is Christopher A. Brook. I make this declaration in support of Plaintiffs' *Motion for Attorneys' Fees*.

2. I have been licensed to practice law since 2005. I was licensed and have been continuously practicing in North Carolina since 2005 and have been admitted to practice before the United States District Courts in all three districts in North Carolina, the United States Court of Appeals for the Fourth Circuit, and the United States Supreme Court.

3. I received my J.D. from the University of North Carolina School of Law in 2005, where I was Managing Editor on the *North Carolina Journal of International Law and Commercial Regulation* and was inducted into the James E. and Carolyn B. Davis Society.

4. After law school, I worked for more than three years as a civil litigation associate for Cranfill Sumner & Hartzog, LLP, in Raleigh, North Carolina. I then served as a staff attorney at the Southern Coalition for Social Justice in Durham, North Carolina for three and a half years

before joining the ACLU of North Carolina as Legal Director in May 2012. *See,* Christoher A. Brook Resume, attached hereto as Exhibit 1.

## Hours Expended in Litigation

5. I serve as attorney for Plaintiffs Gretchen S. Stuart, M.D., James R. Dingfelder, M.D., David A. Grimes, M.D, Amy Bryant, M.D., Serina Floyd, M.D., Decker and Watson, Inc., d/b/a Piedmont Carolina Medical Clinic, Planned Parenthood of Central North Carolina, A Woman's Choice of Raleigh, Inc., Planned Parenthood Health Systems, Inc., Takey Crist, M.D, and Takey Crist, M.D., P.A., d/b/a Crist Clinic for Women and have worked on this case since May, 2012.

6. Attached to this Declaration as Exhibit 2 is a document that reflects the time claimed by Plaintiffs for my work in connection with the litigation of this case. Exhibit 2 is a document created from time records I kept in this case, adjusted to reflect careful billing judgment. All time expended was reasonably related to the advancement of Plaintiffs' interest in this litigation.

7. I endeavored in good faith to exclude from the "fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v Eckerhart,* 461 U.S. 424, 434 (1983). The records reflect a conservative account of the actual number of hours I expended in the litigation to date: 98.1 hours. I characterize this number as conservative because, in recording my time as is my usual practice, I discounted the hours actually expended, taking into account the nature of the work, whether it was duplicative, whether the hours worked were excessive in any way, and whether the task would ordinarily be billed to a client. I made these billing judgments based on my knowledge and understanding of the legal profession and billing matters obtained over my years as an associate in private practice, as well as my experience in my current position.

8. These hours include discovery proceedings, summary judgment and appellate litigation, and discussions with opposing counsel.

9. I delegated tasks on occasion to the ACLU-NC's paralegal, Emily-Mary Brown. These tasks included updating and reviewing motions and briefs as well as communications with the Court in regards to our filing obligations. Delegating these tasks to her reduced the overall cost of the litigation as she bills her time at a lower hourly rate than I and, otherwise, these tasks would have fallen to me. Ms. Brown's time associated with this case is attached hereto as Exhibit 3.

10. I have also coordinated with co-counsel to ensure that all those submitting hours have excluded excessive, redundant and other unnecessary time.

## Nature of Case

11. This case, like many cases brought under Title 42 U.S.C. § 1983, has posed unique and difficult challenges. The prosecution of this cases served strong public policies by protecting First Amendment rights from government violation. However, the case would have been undesirable for many attorneys because of the fees and expenses necessarily fronted in this litigation.

12. The facts of the case might be viewed as undesirable by many attorneys. Though the key legal dispute centers on the First Amendment, the current controversy also touches on the exceptionally divisive abortion debate, and the named defendants are government officials. Many attorneys would have been loath to take on such a controversial matter, particularly without a fee.

13. As a direct result of the time required to successfully prosecute this case, I lost the

opportunity to take other work on behalf of other potential clients in North Carolina in other constitutional matters.

14. For all of these reasons, most attorneys in the Middle District of North Carolina would not have accepted employment in this case.

15. Often during the course of this litigation the ACLU-NC had only one attorney licensed and practicing in North Carolina. The ACLU-NC never had more than two attorneys licensed and practicing in North Carolina during the course of this litigation. This individual or these two attorneys were responsible for all civil liberty-related legal matters implicating the mission of the ACLU-NC in our office. None of these attorneys had particular expertise in abortion-related provisions impacting physicians' First Amendment rights. Given our office's limited resources and experience as well as the complexity and duration of this litigation, the ACLU-NC could not have handled this litigation by itself.

16. I am not aware of attorneys in the North Carolina market that have the same or similar level of expertise in reproductive-rights-related constitutional challenges as Plaintiffs' attorneys at the Center for Reproductive Rights, Planned Parenthood Federation of America, and the ACLU's Reproductive Freedom Project.

## Hourly Rates

17. In my opinion, the prevailing market rate in the Middle District of North Carolina for an attorney of my skill, experience and reputation to perform the work I performed in this case is equal to or in excess of the $250/hr. requested.

18. In my opinion, the prevailing market rate in the Middle District of North Carolina for an attorney of Katherine Lewis Parker's skill, experience, and reputation to perform the work performed in this case is equal to or in excess of the $250/hr. requested.

19. In my opinion, the prevailing market rate in the Middle District of North Carolina for a paralegal of Emily-Mary Brown's skill, experience, and reputation to perform the work performed in this case is equal to or in excess of the $125/hr. requested.

20. In further support of these opinions, included as Exhibit 4 to this Declaration is a copy of the "Laffey Matrix" – an official statement of market-supported reasonable attorney fee rates.

21. The hourly rates requested by Plaintiffs' Motion for Katherine Lewis Parker, Emily-Mary Brown, and myself are all significantly lower than the reasonable hourly rates listed on the Laffey Matrix.

I declare under penalty of perjury that the foregoing is true and correct.

Christopher A. Brook

Executed this 10th day of September, 2015.