IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GRETCHEN S. STUART, M.D., et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION |
| CHERYL WALKER-MCGILL, M.D., et al., | ) ) ) | Case No. 1:11-cv-00804 |
| Defendants. | ) | |

**DECLARATION OF ANTON METLITSKY, ESQ.,
IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND
EXPENSES UNDER 42 U.S.C. § 1988**

ANTON METLITSKY, under 28 U.S.C. § 1746 and penalty of perjury, declares as follows:

1. I am an attorney, duly admitted and in good standing to practice in the State of New York and Washington, D.C. I am a counsel at O'Melveny & Myers LLP ("O'Melveny"), counsel for plaintiffs Gretchen S. Stuart, M.D., David A. Grimes, M.D., Amy Bryant, M.D., Decker & Watson, Inc., d/b/a Piedmont Carolina Medical Clinic, and A Woman's Choice of Raleigh, Inc. (together, the "Clients"). I respectfully submit this declaration in support of Plaintiffs' fee petition under 42 U.S.C. § 1988(b).

2. I have been involved in this litigation since October 2011, and have personal knowledge of the matters below from my work on the case and my review of the files in O'Melveny's possession. This declaration is made upon personal knowledge or information provided to me by colleagues that I believe to be true.

**The O'Melveny Engagement**

3. O'Melveny is an international law firm with approximately 700 attorneys and

fifteen offices worldwide, including New York and Washington, D.C. O'Melveny's litigators have extensive experience litigating large, complex litigations from the pleadings stage to trial in a variety of forums, including federal and state courts around the country. O'Melveny has an appellate practice group within its litigation department that is comprised of attorneys who have collectively argued several dozen cases in the United States Supreme Court and have written merits and certiorari-stage briefs in hundreds more.

4. It was evident in the early stages of this litigation that Plaintiffs' challenge to the North Carolina statute at issue in this litigation, the Woman's Right to Know Act (the "Act"), would raise complex and novel constitutional-law issues concerning (among other things) the First Amendment and the level of scrutiny that should be applied by courts evaluating the Act. And because the state of Texas had around the same time enacted a similar statute, the Clients believed there was a high likelihood that their constitutional challenge would be litigated in the United States Court of Appeals for the Fourth Circuit and possibly in the United States Supreme Court. It was therefore essential for the Clients to engage counsel with experience handling complex summary-judgment records at the district-court level, and merits and certiorari-stage briefs in United States Courts of Appeals and the United States Supreme Court, including in cases involving novel constitutional questions. As described in more detail below, the O'Melveny timekeepers assigned to this litigation have experience handling complex constitutional-law cases at all levels of the federal system, and routinely litigate summary-judgment stage cases in district courts around the country. Moreover, as a large international law firm, O'Melveny has extensive resources and a deep bench of skilled attorneys that enable the firm to litigate complex constitutional issues on a pro bono basis.

5. The Clients engaged the O'Melveny timekeepers in October 2011.

6. O'Melveny undertook the engagement a pro bono basis, with the understanding that if the Clients did not prevail, O'Melveny would receive no reimbursement for its time or expenses.

**The O'Melveny Timekeepers**

7. Walter Dellinger, an O'Melveny partner based in the firm's Washington, D.C. office, is the supervising attorney for this engagement. Mr. Dellinger received his Bachelor of Arts from the University of North Carolina in 1963, and juris doctor from Yale University in 1966. Mr. Dellinger is admitted in good standing to practice in Washington, D.C., the United States Supreme Court, and the United States Courts of Appeal for the First, Third, Fourth, Fifth, Sixth, Ninth, Tenth, Eleventh, and D.C. Circuits. From 1968 to 1969, Mr. Dellinger was a law clerk for the Honorable Hugo L. Black of the United States Supreme Court. In 1993, Mr. Dellinger was named a White House advisor to the President on constitutional issues. He then served as Assistant Attorney General and head of the Office of Legal Counsel until 1996, when he became the acting Solicitor General of the United States. During the 1996-1997 term, Mr. Dellinger argued nine cases before the United States Supreme Court, including *Turner Broadcasting System v. FCC*, 520 U.S. 180 (1994), which involved a major First Amendment challenge to a federal statute. Since 1998, Mr. Dellinger has been in private practice at O'Melveny, where he is a member of the appellate practice group. As an O'Melveny partner, he has argued approximately thirteen cases before the Supreme Court, and authored approximately 196 merits and certiorari-stage briefs filed in the United States Supreme Court, dozens of which involved complex federal constitutional issues. Mr. Dellinger has published extensively on constitutional issues for scholarly journals including the Harvard Law Review and Yale Law Journal, and he is the Douglas B. Maggs Emeritus Professor of Law at Duke University. In

2013, Mr. Dellinger was named one of the 100 Most Influential Lawyers in America by the National Law Journal and recognized with American Lawyer's Lifetime Achievement award.

8. I served as the lead O'Melveny attorney on this matter, and am currently based in O'Melveny's New York office. I earned a Bachelor of Arts degree and a Bachelor of Science from the University of Pennsylvania in 1999, and graduated summa cum laude. I obtained my juris doctor from Harvard University in 2005, and graduated magna cum laude. After law school, I served as a law clerk for the Honorable Merrick Garland of the District of Columbia Circuit Court and the Honorable John G. Roberts of the United States Supreme Court. I joined O'Melveny's appellate practice group in 2008, and have co-authored dozens of merits and certiorari-stage briefs filed in the United States Supreme Court and various United States Courts of Appeals. I have also presented oral argument in the United States Courts of Appeals for the Second, Fourth, Six, and District of Columbia Circuits, and the United States District Court for the Southern District of New York. Many of the cases on which I have worked involve complex constitutional-law issues, including questions relating to the First Amendment. For example, I co-authored the merits briefs in (i) *Verizon v. FCC*, 740 F.3d 623 (D.C.C. 2014), which involved a First Amendment challenge to a Federal Communications Commission order; and (ii) *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 132 S. Ct. 694 (2012), which presented the question of whether the Establishment and Free Exercise Clauses of the First Amendment bar antidiscrimination lawsuits brought against a religious-group employer by a member of the religious group. I am admitted in good standing to practice in Washington, D.C. and New York, the United States Supreme Court, and the United States Courts of Appeal for the Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Eleventh, D.C., and Federal Circuits.

9. Although I am currently based in O'Melveny's New York office, I worked out of

-4-

O'Melveny's Washington, D.C. office from 2008 to 2011, and continue to routinely work with O'Melveny's Washington, D.C.-based attorneys and other attorneys in the Washington, D.C. legal market. I am therefore familiar with the skills and experience of attorneys in the Washington, D.C. legal market, and rates charged by attorneys in the Washington, D.C. legal market.

10. At all times during my work on this litigation, I had one O'Melveny associate or counsel principally assisting me in litigating this matter. Laura Conn, a Washington, D.C.-based O'Melveny associate, worked on this litigation from 2011 to 2012. Ms. Conn received a Bachelor of Arts degree in 2003 from Duke University, and a juris doctor from the University of Pennsylvania Law School in 2008. Ms. Conn served as a law clerk for the Honorable Curtis Joyner of the United States District Court for the Eastern District of Pennsylvania before joining O'Melveny in December 2009. During her approximately three years at O'Melveny, Ms. Conn worked on a variety of summary-judgment and appellate briefs involving an array of federal constitutional-law issues. Ms. Conn left O'Melveny in 2012.

11. Leah Godesky, a New York-based counsel in O'Melveny's litigation department, has worked on this matter from 2012 to present. Ms. Godesky earned a Bachelor of Arts from Colgate University in 2004, and graduated magna cum laude. She received a juris doctor from Columbia University in 2009, and graduated with honors. Ms. Godesky is admitted in good standing to practice in New York and Connecticut, the Southern District of New York, and the United States Courts of Appeal for the First and Fourth Circuits. Over the last six years, Ms. Godesky has served as the lead O'Melveny associate on several complex federal-court litigation matters, including cases that were litigated through the summary-judgment phase.

**O'Melveny Hourly Rates For Paying Clients**

12. Between 2011 and present, O'Melveny's paying clients have paid between $365 and $580 per hour for New York City-based attorneys with less than five years of experience.

13. Between 2011 and present, O'Melveny's paying clients have paid between $610 and $780 per hour for New York City-based attorneys with five to eight years of experience.

14. Between 2011 and present, O'Melveny's paying clients have paid between $740 and $1,150 per hour for New York City-based attorneys with at least nine years of experience.

15. Between 2011 and present, O'Melveny's paying clients have paid between $670 and $1,225 per hour for Washington, D.C.-based attorneys with at least nine years of experience.

**Hourly Rates Sought In This Fee Petition**

16. Between 2011 and present, O'Melveny's paying clients have paid between $990 and $1,225 per hour for Mr. Dellinger's time. We are seeking $550 per hour for Mr. Dellinger's time on this case. In my opinion, the 2011 to present prevailing market rate in Washington, D.C. for an attorney with comparable skill, experience, and reputation to perform the work that Mr. Dellinger performed in this litigation is equal to or greater than $550 per hour.

17. Between 2011 and present, O'Melveny's paying clients have paid between $645 and $785 per hour for my time. We are seeking $400 per hour for my time on this case. In my opinion, the 2011 to present prevailing market rate in New York City for an attorney of comparable skill, experience, and reputation to perform the work that I performed in this litigation is equal to or greater than $400 per hour.

18. Between 2011 and 2012, O'Melveny's paying clients paid between $495 and $575 per hour for Ms. Conn's time. We are seeking $250 per hour for Ms. Conn's time on this case. In my opinion, the 2011 to 2012 prevailing market rate in Washington, D.C. for an

-6-

attorney of comparable skill, experience, and reputation to perform the work that Ms. Conn performed in this litigation is equal to or greater than $250 per hour.

19. Between 2012 and present, O'Melveny's paying clients have paid between $555 and $750 per hour for Ms. Godesky's time. We are seeking $250 per hour for Ms. Godesky's time on this case. In my opinion, the 2012 to present prevailing market rate in New York City for an attorney of comparable skill, experience, and reputation to perform the work that Ms. Godesky performed in this litigation is equal to or greater than $250 per hour.

**Hours Worked by O'Melveny Attorneys**

20. Even though O'Melveny is representing the Clients pro bono, all timekeepers were instructed to record their time and expenses in the manner in which O'Melveny customarily records time and expenses for paying clients.

21. Attached as Exhibit 1 is a document created from contemporaneous time records that the O'Melveny attorneys kept in working on this case between October 2011 and May 2014. The entries in Exhibit 1 reflect the date each legal service was performed, the type of work done, and the amount of time expended.

22. Attached as Exhibit 2 is a document created from contemporaneous time records that the O'Melveny attorneys kept in working on this case between June 2014 and present. The entries in Exhibit 2 reflect the date each legal service was performed, the type of work done, and the amount of time expended.

23. From 2011 to present, Mr. Dellinger consulted with the Plaintiffs' attorney team on every significant strategic decision, and provided advice and oversight on (among other things) O'Melveny's work opposing Defendant's appeal of the district court's summary-judgment ruling and Petition for Writ of Certiorari. Mr. Dellinger's time records do not reflect

accurately his work on this litigation because it was Mr. Dellinger's general practice to work on the litigation without billing for his time. Exhibit 1 therefore substantially understates the amount of time that he spent working on this case.

24. From 2011 to present, I have been involved in all significant strategic decisions in this litigation. I also had a lead role in drafting Plaintiffs' (i) supplemental brief in support of their summary-judgment motion; (ii) opposition to Defendant's appeal of this Court's summary-judgment ruling; and (iii) opposition to Defendant's Petition for Writ of Certiorari.

25. Between 2011 and 2012, Ms. Conn was primarily involved in (i) developing the district-court expert-discovery record and (ii) preliminary injunction and summary-judgment briefing on behalf of the Plaintiffs. Ms. Conn also provided general, ongoing support to me and the Plaintiffs' attorney team, including by (among other things) conducting complex legal research relating to First Amendment legal principles.

26. Between 2012 and present, Ms. Godesky was primarily involved in researching and drafting (i) Plaintiffs' supplemental brief in support of their summary-judgment motion; and (ii) the Statement of Undisputed Facts that Plaintiffs' submitted at the Court's request at the summary-judgment stage of this case. Ms. Godesky also provided general, ongoing support to me and the Plaintiffs' attorney team, including by (among other things) conducting complex legal research relating to First Amendment legal principles and the informed-consent doctrine.

27. The below chart reflects the total O'Melveny timekeeper hours for which Plaintiff seeks to recover fees. Based on the hourly rates described above, Plaintiffs' fee petition for O'Melveny timekeepers totals **$212,110**.

| O'Melveny Timekeeper | Hours |
|---|---|
| Walter Dellinger | 61.2 |

| O'Melveny Timekeeper | Hours |
|---|---|
| Anton Metlitsky | 262.5 |
| Laura Conn | 152.5 |
| Leah Godesky | 141.3 |

28. The O'Melveny fees that Plaintiffs seek to recover are conservative because I have excluded all time (i) spent opposing the intervention motion; (ii) incurred by O'Melveny summer associates, legal interns, paralegals, and project assistants; (iii) underrepresents the time Mr. Dellinger spent on this matter; and (iv) that appeared to be duplicative, excessive, or administrative. In exercising such billing judgment, I have excluded from this fee petition hundreds of hours of attorney, summer-associate, and paralegal time. And although Ms. Godesky had three years of experience when she began working on this case in 2012, and now has six years of experience, the Clients are seeking to recover fees for all her work on this litigation according to the fee band proposed for attorneys with less than four years of experience ($250).

**O'Melveny's Expenses**

29. Between 2011 and present, O'Melveny incurred various costs and expenses in prosecuting this case. O'Melveny's costs and expenses total **$6,919.60**, and primarily include (i) legal-research costs; and (ii) in-house and external printing costs.

30. Attached as Exhibit 3 is a true and accurate copy of a spreadsheet reflecting the litigation-related expenses incurred by O'Melveny from October 2011 to present. The spreadsheet was created from contemporaneous billing records, and the entries reflect the date each expense was incurred, the associated timekeeper, cost, and description of the expense. All

expenses reflected in Exhibit 3 were necessarily and actually incurred in furtherance of the litigation.

31. O'Melveny typically charges its paying clients for the categories of litigation expenses listed in Paragraph 29.

32. The O'Melveny expenses that Plaintiffs seek to recover are conservative because I have excluded all expenses (i) associated with opposing the intervention motion; (ii) relating to the O'Melveny timekeepers' local travel and meals; (iii) relating to legal research and printing by O'Melveny summer associates and paralegals; and (iv) expenses incurred by O'Melveny timekeepers whose fees Plaintiffs do not seek to recover.[1] In exercising such billing judgment, I have excluded from this fee petition thousands of dollars of costs and expenses incurred by O'Melveny over the last four years.

**Miscellaneous**

33. Attached as Exhibit 4 is a true and accurate copy of the Updated Laffey Matrix, which was downloaded on or around September 6, 2015 from http://www.laffeymatrix.com/see.html.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 14, 2015
New York, New York

_____
Anton Metlitsky

---

[1] Exhibit 3 reflects printing costs incurred by Deirdre Buckley, Ms. Godesky's administrative assistant from 2012 to present.