IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GRETCHEN S. STUART, M.D., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | |
| CHERYL WALKER-MCGILL, M.D., et al., ) | Case No. 1:11-cv-00804 |
| ) | |
| Defendants. ) | |

## DECLARATION OF JULIE RIKELMAN, ESQ., IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

JULIE RIKELMAN, ESQ., under 28 U.S.C. § 1746 and penalty of perjury, declares as follows:

1. I submit this declaration in support of Plaintiffs' motion, under 42 U.S.C. § 1988, for attorney's fees and litigation expenses in this matter.

2. I am counsel for the following Plaintiffs in this case: Gretchen Stuart, M.D.; David A. Grimes, M.D.; Amy Bryant, M.D.; A Woman's Choice of Raleigh; and, A Woman's Choice of Greensboro (formerly Decker & Watson, Inc., doing business as Piedmont Carolina Medical Clinic).

3. I have acted as lead counsel on this case since the spring of 2012, including arguing Plaintiffs' Motion for Summary Judgment before this Court and arguing on behalf of Plaintiffs before the U.S. Court of Appeals for the Fourth Circuit, as well as researching, developing and drafting many of Plaintiffs' arguments in support of their First Amendment claim. My work in developing the First Amendment claim included substantial research on how the doctrines of compelled speech and professional speech were developing in other circuits and factual contexts.

1

I also took responsibility for working with four of the experts who submitted declarations in support of Plaintiffs in this case.

4. I currently serve as Litigation Director in the U.S. Legal Program at the Center for Reproductive Rights ("the Center"), a global public interest organization with headquarters in New York. The U.S. Legal Program at the Center specializes in litigating reproductive rights cases, many of which have asserted novel and difficult constitutional claims, in state and federal courts throughout the United States. Center attorneys have participated in every major reproductive rights case decided by the U.S. Supreme Court since 1992 and have presented oral argument in several of those cases.

5. I graduated magna cum laude and Phi Beta Kappa from Harvard College in 1993 and cum laude from Harvard Law School in 1997. I have been admitted to the bar of the State of New York since 1999, and I remain a member in good standing. I am also admitted to the bar of the State of Alaska (inactive status) and numerous federal courts, including the U.S. Supreme Court, the U.S. Court of Appeals for the Fourth Circuit, and the U.S. District Courts for the Southern District of New York and the Eastern District of New York.

6. Immediately following graduation from law school, I served as a law clerk for two years: first for the Hon. Dana Fabe, Chief Justice of the Alaska Supreme Court, and second for the Hon. Morton I. Greenberg of the U.S. Court of Appeals for the Third Circuit.

7. In the 16 years since completing my clerkships, my practice has focused exclusively on complex civil litigation. I have litigated in private practice, and have acted as cooperating counsel for the Center during that time, and as Vice President, Litigation at NBC Universal, Inc., where a substantial portion of my cases included First Amendment issues. Additionally, I have worked for the Center for a total of over six years, first as a Blackmun Fellow, then as a Senior

2

Staff Attorney, and, since 2012, as the Litigation Director.

8. In my role as Litigation Director, I am responsible for the overall success of the Center's litigation program in the United States and oversee the approximately 16-20 cases on the Center's docket at any given time. I supervise the Center's litigation attorneys, assist in developing the legal theories and factual bases for our cases, and review every substantive brief filed by the Center in state and federal courts nationwide.

9. Additionally, I personally have conducted federal and state court litigation relating to reproductive rights in more than a dozen cases (including this case), often serving as lead or co-lead counsel; many of these cases have reached the U.S. Courts of Appeals and the U.S. Supreme Court. Representative cases include: *Ferguson v. City of Charleston*, 532 U.S. 67 (2001); *Jackson Women's Health Organization v. Currier*, 760 F.3d 448 (5th Cir. 2014), *petition for cert. filed*, No. 14-997 (Feb. 19, 2015); *Planned Parenthood Arizona, Inc. v. Humble*, 753 F.3d 905 (9th Cir.), *cert. denied*, 135 S. Ct. 870 (2014); *Texas Medical Providers Performing Abortion Services v. Lakey*, 667 F.3d 570 (5th Cir. 2012); *Causeway Medical Suite v. Foster*, No. 99-CV-02119 (E.D. La. Oct. 31, 2000); *Northland Family Planning Clinic, Inc. v. Granholm*, 2002 WL 32595283, No. 01-CV-70549 (E.D. Mich. Feb. 26, 2002); and, *North Florida Women's Health & Counseling Services, Inc. v. Florida*, 866 So.2d 612 (Fla. 2003). The *Jackson Women's Health* case, on which I am lead counsel, is currently pending before the U.S. Supreme Court on a petition for certiorari.

10. In particular, I have experience challenging mandatory ultrasound laws similar to the law challenged in this case. At the time this litigation began, the Center was the only organization that had previously litigated challenges to similar mandatory ultrasound laws in the United States: the Center had filed a litigation in Texas, *Texas Medical Providers Performing Abortion Services*, 667 F.3d at 585 (upholding Texas's mandatory ultrasound law), and in

3

Oklahoma, *Nova Health Systems v. Pruitt*, 292 P.3d 28 (Okla. 2012) (mem.) (declaring unconstitutional Oklahoma's mandatory ultrasound law). I acted as lead counsel on the Texas litigation beginning in August 2011 until its conclusion, including arguing the case before the U.S. Court of Appeals for the Fifth Circuit. I also supervised the Oklahoma ultrasound case after the State of Oklahoma filed a petition for certiorari to the U.S. Supreme Court in that case.

11. Given the Center's experience and expertise in reproductive rights litigation in general and in challenging mandatory ultrasound laws in particular, I believe it was reasonable for our clients to choose the Center to represent them in this case. Two of the clients we represented in this matter were longstanding Center clients and were familiar with the quality of our legal work.

12. Attached to this declaration as Exhibit 1 is a table detailing the hours I have worked on this case since March 2012. The entries in Exhibit 1 show the date legal services were performed, the type of work done, and the amount of time expended. These entries reflect my contemporaneous time records. The total amount of time for which I am seeking compensation is **447.2** hours, reflecting work conducted over three years and at three different levels of the federal courts, including fact and expert discovery that involved 7 expert reports.

13. I believe that the total time for which I seek to be compensated on this case reflects the efficiency I was able to bring to the work given my previous involvement in litigating against mandatory ultrasound laws.

14. The Center also seeks fees for the work of one other senior Center attorney and two junior attorneys.

15. Bebe Anderson, a 1981 graduate of Columbia Law School who is currently Vice President, U.S. Legal Program at the Center, acted as lead counsel on this case from the time it

4

was filed until late March 2012, when I took over the matter. Ms. Anderson has over 13 years' experience litigating reproductive rights cases for the Center and has personally litigated over 20 such cases in federal and state courts around the country, often acting as lead counsel. Representative cases include: *Greenville Women's Clinic v. Bryant*, 222 F.3d 157 (4th Cir. 2000); *Richmond Medical Center for Women v. Gilmore*, 224 F.3d 337 (4th Cir. 2000); *Texas Medical Providers Performing Abortion Services v. Lakey*, 806 F. Supp. 2d 942 (W.D. Tex. 2011), *rev'd*, 667 F.3d 570 (5th Cir. 2012); *Northland Family Planning Clinic, Inc. v. Olszewski*, No. 03-CV-71054 (E.D. Mich. Apr. 30, 2003); *A Choice for Women v. Butterworth*, 54 F. Supp. 2d 1148 (S.D. Fla. 1998); *State v. Presidential Women's Center*, 937 So.2d 114 (Fla. 2006); and *Simat Corp. v. Arizona Health Care Cost Containment System*, 56 P.3d 28 (Ariz. 2002). She also has decades of experience litigating complex civil cases on a variety of issues in federal and state courts.

16. As detailed in Ms. Anderson's time records attached as Exhibit 2, Ms. Anderson prepared the case for filing, argued Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction before this Court, as well as the Motion for Clarification, and researched, developed, and drafted many of Plaintiffs' arguments in support of those motions, as well as spent significant time identifying and working with expert witnesses. We are seeking compensation for **431.6** hours billed by Ms. Anderson.

17. Jennifer Sokoler, a 2010 graduate of Columbia Law School, worked on this case from September 2012 to June 2014. Ms. Sokoler came to the Center after completing two federal court clerkships: one for the U.S. District Court for the Southern District of New York and one for the U.S. Court of Appeals for the Second Circuit. As detailed in the time records attached as Exhibit 3, Ms. Sokoler assisted with, *inter alia*, substantial research on recent First Amendment decisions, preparation for the summary judgment hearing before this Court, and Plaintiffs'

appellate brief. We are seeking compensation for **91.4** hours billed by Ms. Sokoler.

18. Hillary Schneller, a 2012 graduate of Columbia Law School, worked on this case beginning in October 2014. As detailed in the time records attached as Exhibit 4, Ms. Schneller provided legal research assistance in preparation for my argument before the U.S. Court of Appeals for the Fourth Circuit, as well as legal research and editing support for Plaintiffs' opposition to Defendants' petition for *certiorari*. We are seeking compensation for **26.75** hours billed by Ms. Schneller.

19. In preparing the overall fee request for the Center, I have exercised reasonable billing judgment and have omitted or reduced certain time entries to ensure that the fee request does not include hours that are duplicative, excessive or unnecessary. For example, Ms. Anderson has requested compensation for only 10 hours on the case after I took over as lead counsel at the end of March 2012, even though she continued to consult regularly on strategic decisions and to review the major filings in the case. Additionally, the Center is requesting compensation for the work of only one senior attorney and one junior attorney on the case at any given time during the over four years that the Center has devoted to this litigation.

20. Further, I have excluded from the time requested by the Center any work on the attorney's fees application itself, all paralegal work, time spent on defending against the motion for intervention, both at the district court and on appeal, time spent by other junior attorneys who worked on discrete projects, and the time of senior attorneys who had worked on previous ultrasound litigation and who assisted with identifying experts and advised on strategy as the case progressed. In exercising such billing judgment, I have excluded well over 250 hours (approximately 20% of the total) of attorney time, as well as dozens of hours of paralegal time.

21. I respectfully request that the Court award an hourly rate of **$550** for the legal work

6

conducted by me and Bebe Anderson, except for time spent traveling and not working, for which the Center requests a rate of $275 per hour for our time. Further, I respectfully request that the Court award an hourly rate of **$250** for the legal work conducted by Hillary Schneller and Jennifer Sokoler. Each of these rates reflects a substantial reduction from the hourly rates that would be charged for attorneys with similar qualifications and years of experience by major law firms in the New York City market, as reflected in the declarations from Anton Metlitsky and Kimberly Parker.

22. The Center regularly investigates a variety of matters for potential litigation in the United States. Because we have a small legal staff, however, our capacity to undertake litigation is limited. Accordingly, time spent on this case necessarily diminished our ability to work on other cases.

23. Further, the Center undertook this case on a *pro bono* basis, with no assumption of any financial liability for costs or attorney's fees by our clients. The Center undertook representation subject to the risk that, if we did not prevail, we would receive no reimbursement for our time or expenses. The Center will receive payment for our time and expenses only to the extent paid by Defendants.

24. For all of the reasons explained above, I believe that the total number of hours and the hourly rate requested by Center attorneys is reasonable.

25. Therefore, I respectfully request that the sum of **$503,940** be considered the lodestar figure for the attorney's fees award for work conducted by Center attorneys. The amount was calculated by multiplying the time spent by me and Ms. Anderson by the hourly rate of $550 (except for time spent traveling and not working, which was multiplied by the hourly rate of $275), and the time spent by Ms. Sokoler and Ms. Schneller by the hourly rate of $250. This reflects $242,385 for time spent on this case by me; $232,017.50 for time spent on this case by Ms.

7

Anderson; $22,850 for time spent on this case by Ms. Sokoler; and, $6,687.50 for time spent on this case by Ms. Schneller.

26. I further request an award of **$5,144.80** for costs incurred by the Center in this case, as reflected in Exhibit 5. The costs include $4,208.97 for travel, meals, and lodging, which covers five trips: four trips to North Carolina related to the filing of this case and argument before this Court, and one trip to Virginia for argument before the U.S. Court of Appeals for the Fourth Circuit; $608.17 for telecommunications; $48.60 for court fees; and $279.06 for document copying and shipping. The costs set forth in Exhibit 5 are correct and were necessarily and actually incurred in furtherance of the litigation of this case. Additionally, the Center has requested costs for only one Center attorney to attend each of the court hearings in this case and has excluded costs for legal research, and therefore has not sought reimbursement for all of the costs it actually incurred.

I declare under penalty of perjury that the foregoing is true and correct.

*Julie Rikelman*
Julie Rikelman, Esq.

Executed: September 11, 2015
New York, New York

8

Case 1:11-cv-00804-CCE-LPA   Document 178-17   Filed 09/14/15   Page 8 of 8