IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GRETCHEN S. STUART, M.D., et al., | ) | CIVIL ACTION |
| Plaintiffs, | ) | |
| | ) | Case No. 1:11-cv-00804 |
| v. | ) | |
| | ) | |
| CHERYL WALKER-MCGILL, M.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES UNDER 42 U.S.C. § 1988

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---:|
| ARGUMENT | | 1 |
| I. | THE HOURLY RATES UNDERLYING PLAINTIFFS' LODESTAR FIGURE ARE REASONABLE. | 2 |
| II. | THE COUNSEL ENTITIES EXERCISED GOOD BILLING JUDGMENT IN PROSECUTING THEIR CONSTITUTIONAL CHALLENGE. | 3 |
| III. | THERE IS SUFFICIENT EVIDENCE TO SUPPORT PLAINTIFFS' FEE PETITION. | 7 |
| CONCLUSION | | 9 |

# TABLE OF AUTHORITIES

Page

**CASES**

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
   133 S. Ct. 2321 (2013) .................................................................................................. 5

*Alexander S. v. Boyd*,
   929 F. Supp. 925 (D.S.C. 1995) ..................................................................................... 9

*Aventis CropScience, NV v. Pioneer Hi-Bred Intern., Inc.*,
   No. 1:00CV463, 2010 WL 2306677 (M.D.N.C. Jun. 8, 2010) ....................................... 8

*Blanchard v. Bergeron*,
   489 U.S. 87 (1989) ......................................................................................................... 2

*Blum v. Stenson*,
   465 U.S. 886 (1984) ....................................................................................................... 2

*Centro Tepeyac v. Montgomery Cty. Dep't of Health & Human Servs.*,
   722 F.3d 184 (4th Cir. 2013) .......................................................................................... 5

*Copar Pumice Co., Inc. v. Morris*,
   No. CIV 07-0079 JB/ACT, 2012 WL 2383667 (D.N.M. Jun. 13, 2012) ....................... 7

*Greater Balt. Ctr. for Pregnancy Concerns, Inc., v. Mayor of Balt.*,
   721 F.3d 264 (4th Cir. 2013) .......................................................................................... 5

*King v. Governor of N.J.*,
   767 F.3d 216 (3d Cir. 2014) ........................................................................................... 5

*McGee v. Cole*,
   No. 3:13-24068, 2015 WL 4366161 (S.D. W.Va. Jul. 16, 2015) ................................... 2

*Moore-King v. Cty. of Chesterfield*,
   708 F.3d 560 (4th Cir. 2013) .......................................................................................... 5

*Nat'l Ass'n of Mfrs. v. NLRB*,
   717 F.3d 947 (D.C. Cir. 2013) ....................................................................................... 5

*Pickup v. Brown*,
   728 F.3d 1042 (9th Cir. 2013) ........................................................................................ 5

*Pickup v. Brown*,
   740 F.3d 1208 (9th Cir. 2014) ........................................................................................ 5

*Planned Parenthood Minn., N.D., S.D. v. Rounds*,
   686 F.3d 889 (8th Cir. 2012) (en banc) ......................................................................... 5

# TABLE OF AUTHORITIES
## (continued)

Page

*Pollard v. E.I. du Pont de Nemours & Co.*,
    532 U.S. 843 (2001) ............................................................................................... 2

*R.J. Reynolds Tobacco Co. v. FDA*,
    696 F.3d 1205 (D.C. Cir. 2012) ............................................................................. 5

*Randle v. H&P Capital, Inc.*,
    No. 3:09cv608, 2010 WL 2944907 (E.D. Va. July 21, 2010) ............................ 6, 7

*Rum Creek Coal Sales, Inc. v. Caperton*,
    31 F.3d 169 (4th Cir. 1994) ................................................................................... 9

*Rypinski v. Chevrolet Motor Div. of Gen. Motors Corp.*,
    No. 95-2256, 1996 WL 432475 (E.D. Pa. Jul. 22, 1996) ...................................... 8

*Saleh v. Moore*,
    95 F. Supp. 2d 555 (E.D. Va. 2000) ...................................................................... 7

*Saleh v. Upadhyay*,
    11 F. App'x 241 (4th Cir. 2001) ............................................................................ 7

*Stuart v. Loomis*,
    992 F. Supp. 2d 585 (M.D.N.C. 2014) .................................................................. 4

*Tex. Medical Providers Performing Abortion Servs. v. Lakey*,
    No. A-11-CA-486-SS, 2012 WL 373132 (W.D. Tex. Feb. 6, 2012) ..................... 5

*Tex. Medical Providers Performing Abortion Services. v. Lakey*,
    667 F.3d 570 (5th Cir. 2012) ............................................................................. 4, 5

*U.S. v. Alvarez*,
    132 S. Ct. 2537 (2012) ........................................................................................... 5

*Verduzco v. Ford Motor Co.*,
    No. 1:13-cv-01437-LJO-BAM, 2015 WL 4131384 (E.D. Cal. Jul. 9, 2015) ........ 8

*Walker-McGill v. Stuart*,
    135 S. Ct. 2838 (2015) ........................................................................................... 3

*Wise v. Kelly*,
    620 F. Supp. 2d 435 (S.D.N.Y. 2008) .................................................................... 3

*Wollschlaeger v. Farmer*,
    880 F. Supp. 2d 1251 (S.D. Fla. 2012) .................................................................. 6

# TABLE OF AUTHORITIES
## (continued)

Page

*Wollschlaeger v. Governor of Fla.*,
    760 F.3d 1195 (11th Cir. 2014) ............................................................................................... 5

**STATUTES**

42 U.S.C. § 1988(b) ........................................................................................................................ 1

**RULES**

Fed. R. Civ. P. 56 ........................................................................................................................... 8

Plaintiffs respectfully submit the below reply in support of their petition under 42 U.S.C. § 1988(b) for an award of attorneys' fees and expenses in connection with their successful challenge to certain provisions of the Act.

**ARGUMENT[1]**

The State does not dispute that Plaintiffs are entitled to recover attorneys' fees (*see* Opening Br., at 3-4), and concedes that there is no need to reduce Plaintiffs' attorneys'-fee award based on the litigation's degree of success; indeed, as described in Plaintiffs' opening brief, their constitutional challenge to the Display of Real-Time View Requirement was a complete victory (*see id*. at 13-14). Nor does the State contest the $16,266.47 in expenses that Plaintiffs incurred prosecuting this litigation. Rather, despite the fact that the Counsel Entities submitted a fee petition based on detailed—and heavily discounted—time records covering nearly four years of legal work spanning three federal-court levels, the State contends that the Court should reduce Plaintiffs' fee award because it is, according to the State, based on (i) unreasonable hourly rates (*see*, *e.g.*, Opp. Br., at 4, 13); (ii) an unduly high number of attorney work hours (*see*, *e.g.*, *id.* at p. 5); and (iii) insufficient evidence (*see*, *e.g.*, *id.* at 2, 7). As described below, however, each of those arguments is meritless, and Plaintiffs' $1,029,587.50 fee petition should be awarded in full.[2]

---

[1] Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted. This brief adopts the terms defined in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses Under 42 U.S.C. § 1988(b) (the "Opening Br.") and refers to (i) Defendants as the "State"; and (ii) the Response of the Defendants In Opposition to the Plaintiffs' Fee Petition as the "Opp. Br."

[2] Although Plaintiffs' opening brief sought $1,032,367.50 in attorneys' fees (*see* Opening Br., at 4), Plaintiffs have reduced the lodestar figure by $2,780 to reflect the elimination of fees associated with (i) Ms. Salgado's work on clerical tasks and unrelated projects ($280); (ii) time spent at the ACLUNC on intervention-related work ($625); (iii) ACLUNC paralegal oral-argument attendance on October 17, 2011 and August 23, 2013 ($1,250); and (iv) an approximately three-month block-billing entry by an ACLUNC paralegal ($625). The fees associated with these four categories of work were included inadvertently in the fee petition, and Plaintiffs respectfully withdraw them.

**I.     THE HOURLY RATES UNDERLYING PLAINTIFFS' LODESTAR FIGURE ARE REASONABLE.**

Plaintiffs showed in their opening brief that extra-community hourly rates should be considered in determining the appropriate fee award because (i) there was no North Carolina counsel that could have successfully represented Plaintiffs on a pro bono basis on his or her own; and, (ii) Plaintiffs acted reasonably in selecting attorneys from the Center, PPFA, the ACLU, and O'Melveny as counsel. *See* Opening Br., at 4-10. The State's opposition-brief argument that North Carolina rates should nonetheless be awarded (*see* Opp. Br., at 15) completely ignores the decades-old Fourth Circuit authority cited in Plaintiffs' opening brief (*see* Opening Br., at 4-5), and offers no relevant contrary case law.[3]

The State's last-ditch claim that it should not be required to reimburse attorneys' fees to public-interest and non-profit attorneys at private-market rates (*see* Opp. Br., at 13) is equally baseless. The United States Supreme Court held more than three decades ago that "reasonable fees under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether [the] plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also McGee v. Cole*, No. 3:13-24068, 2015 WL 4366161, at *3 (S.D. W.Va. Jul. 16, 2015) (same). Indeed, as the Supreme Court explained five years later, "[t]hat a nonprofit legal services organization may contractually have agreed not to charge *any* fee of a civil rights plaintiff does not preclude the award of a reasonable fee to a prevailing party . . . calculated in the usual way." *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (emphasis in original). Thus, it is wholly irrelevant to this fee petition that some of Plaintiffs' attorneys are employed by non-profit organizations, and the hourly rates that Plaintiffs

---

[3]     *See Blum*, 465 U.S. at 888 (cited in Opp. Br., at 15) (not addressing involvement of extra-community counsel); *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001) (cited in Opp. Br., at 16) (same).

seek should be awarded in full.[4]

## II. THE COUNSEL ENTITIES EXERCISED GOOD BILLING JUDGMENT IN PROSECUTING THEIR CONSTITUTIONAL CHALLENGE.

None of the State's three challenges to the number of hours that Plaintiffs spent prosecuting this case warrants a reduction of Plaintiffs' lodestar figure.

*First*, the State's after-the-fact contention that the hours expended on the litigation were unreasonable because the issues underlying Plaintiffs' constitutional challenge were "relatively simple and straightforward" (*see* Opp. Br., at 2) is not credible and refuted by the State's own position during the litigation. In seeking Supreme Court review of the Fourth Circuit's decision upholding Plaintiffs' constitutional challenge, the State pressed that decision's significance and wide-ranging ramifications: in the State's own words, "the case squarely present[ed] issues of national importance."[5] In contending that Supreme Court review was appropriate, the State stressed that "[t]he First Amendment issues presented here have consequences that go well beyond abortion-disclosure statutes."[6] The State's certiorari petition similarly acknowledged the complexity of the constitutional-law questions implicated in Plaintiffs' action: federal courts of appeals around the country, the State explained, are having "difficulty . . . in determining the proper standard of review for statutes impacting professional speech."[7]

Indeed, this case involved a challenge to an unusual and new type of abortion restriction: a coercive-ultrasound law. These types of restrictions did not exist until a few years ago, and

---

[4] Plaintiffs properly seek $400 an hour for Mr. Beck's work on this matter. Contrary to the State's plainly erroneous contention (*see* Opp. Br., at 15), Mr. Beck had four years of experience when he began working on this litigation. He graduated from law school in 2007, and completed two federal-court clerkships before joining the ACLU. *See* Beck Decl. ¶¶ 4-5. Courts routinely credit clerkships in assessing an attorney's experience. *See, e.g.*, *Wise v. Kelly*, 620 F. Supp. 2d 435, 444 (S.D.N.Y. 2008).

[5] Petition for Writ of Certiorari at *11, *Walker-McGill v. Stuart*, 135 S. Ct. 2838 (2015) (No. 14-1172), 2015 WL 1346454, at *11.

[6] *Id.* at *13.

[7] *Id.* at *14; *see also id.* at *8-*11 (discussing holdings by Fourth, Fifth, and Eight Circuits).

-3-

this litigation was only the second federal challenge to a coercive-ultrasound statute. And as described in Plaintiffs' opening brief, the litigation involved complex and novel First Amendment issues, including the appropriate standard of review for compelled-speech laws, and whether the standard of review should be affected by the fact that the compelled speech is (among other things) professional. *See* Opening Br., at 11-12. The litigation record further illustrates the case's complexity; the parties filed many hundreds of pages of legal briefing over nearly four years, supported by approximately 15 declarations, including 12 expert declarations.[8] Plaintiffs themselves filed 15 substantive briefs, including briefs at the Fourth Circuit and before the United States Supreme Court.[9] And this Court's analysis of the legal questions presented in the parties' summary-judgment motions totaled more than forty pages. *See Stuart v. Loomis*, 992 F. Supp. 2d 585 (M.D.N.C. 2014).

*Second*, the State's contention that Plaintiffs failed to build on institutional knowledge gained in litigating a similar constitutional challenge in Texas, *Texas Medical Providers Performing Abortion Services. v. Lakey*, 667 F.3d 570 (5th Cir. 2012) (*see* Opp. Br., at 2), is meritless. As an initial matter, the position adopted by the Fifth Circuit in *Lakey rejected* the position Plaintiffs pressed in this Court and in the Fourth Circuit. That made this litigation *more* difficult, not less. The State's argument makes no sense on its face.

The State's argument is in any event baseless on its own terms. For one thing, *Lakey* and the instant case were litigated simultaneously—the Texas and North Carolina coercive-ultrasound laws were both passed in 2011, *see Lakey*, 667 F.3d at 573, and the complaint in *Lakey* was filed only three months before this constitutional challenge. *See id*. (noting that case was filed in June 2011). And, the litigations—which involved no overlapping parties and

---

[8] *See, e.g.*, Dkt. Nos. 10, 109, 112.

[9] *See, e.g.*, *id.* at Nos. 9, 106.

statutes with different texts—differ in several significant respects. *See id.* at 578. For example, the *Lakey* court permitted *no* discovery, and ordered the parties to cross-move for summary judgment within sixty-two days of the court's preliminary-injunction ruling. *See Tex. Medical Providers Performing Abortion Servs. v. Lakey*, No. 1:11-cv-00486-SS (W.D. Tex. Sept. 6, 2011). *Lakey* ended in 2012, only eight months after it began, after an unfavorable Fifth Circuit decision. *See* 667 F.3d at 584 (rejecting plaintiffs' First Amendment claim and retaining jurisdiction over subsequent appeals); *see also Lakey*, No. A-11-CA-486-SS, 2012 WL 373132, at *5-6 (W.D. Tex. Feb. 6, 2012) (granting summary judgment to Texas on First Amendment claim). And the two cases were, of course, governed by the precedent of different federal circuits. It was therefore the Counsel Entities' obligation to their clients and the Court to do the legal and factual research—in a complex area of the law—necessary to support Plaintiffs' challenge to *this* statute, while of course building on prior and simultaneous work that was done in *Lakey*.

That is precisely what the Counsel Entities did, as the time records submitted in support of Plaintiffs' fee petition demonstrate. The State fails to cite a single piece of evidence supporting its unfounded contention that the Plaintiffs "start[ed] from scratch" (*see* Opp. Br., at 3) and somehow failed to utilize work done in the prior case. And indeed, many of the key Supreme Court and appellate decisions that the Counsel Entities analyzed and incorporated into their legal arguments at various stages of the case were not decided until after the *Lakey* litigation ended.[10]

---

[10] *See*, *e.g.*, *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 133 S. Ct. 2321 (2013); *U.S. v. Alvarez*, 132 S. Ct. 2537 (2012); *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014); *King v. Governor of N.J.*, 767 F.3d 216 (3d Cir. 2014); *Wollschlaeger v. Governor of Fla.*, 760 F.3d 1195 (11th Cir. 2014); *Greater Balt. Ctr. for Pregnancy Concerns, Inc., v. Mayor of Balt.*, 721 F.3d 264 (4th Cir. 2013); *Moore-King v. Cty. of Chesterfield*, 708 F.3d 560 (4th Cir. 2013); *Centro Tepeyac v. Montgomery Cty. Dep't of Health & Human Servs.*, 722 F.3d 184 (4th Cir. 2013); *Pickup v. Brown*, 728 F.3d 1042 (9th Cir. 2013); *Nat'l Ass'n of Mfrs. v. NLRB*, 717 F.3d 947 (D.C. Cir. 2013); *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 686 F.3d 889 (8th Cir. 2012) (en banc); *R.J. Reynolds*

*Finally*, the State has failed to show that the number of attorneys and amount of work for which Plaintiffs seek to recover fees is unreasonable (*see, e.g.,* Opp. Br., at 4). As described in Plaintiffs' opening brief (*see* Opening Br., at 13), the Counsel Entities excluded many hours of work totaling *tens of thousands* of dollars in fees, including, for example, *all* work related to preparing their request for attorneys' fees and costs, *all* Center, PPFA, and O'Melveny paralegal time, and the time of multiple senior and junior attorneys. *See* Opening Br., at 13. The lodestar figure on which this fee petition is based is therefore conservative. Moreover, it was reasonable to engage counsel at different organizations (and local counsel at the ACLUNC), given that *ten* different individuals and entities served as plaintiffs in this litigation. And although some Plaintiffs were represented by more than one attorney, "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Randle v. H&P Capital, Inc.*, No. 3:09cv608, 2010 WL 2944907, at *6 (E.D. Va. July 21, 2010). Here, Plaintiffs' decision to engage the attorneys from the Center, PPFA, the ACLU, and O'Melveny was reasonable.

- *The Counsel Entities did not duplicate work across or within their respective organizations.* The Counsel Entities worked diligently to share work across organizations, while ensuring that their different clients' interests were protected. For example, during discovery, different attorneys worked with different experts.[11] Similarly, the Counsel Entities handled motion practice by dividing up lead responsibility for each brief and supporting documents. O'Melveny therefore handled nearly all drafting work associated with Plaintiffs' summary-judgment stage supplemental statement of undisputed facts and the opposition to the State's certiorari petition.[12]

- *The Counsel Entities utilized efficient staffing models.* While the State complains about O'Melveny's decision to staff four attorneys on this litigation over the last four years (*see*

---

*Tobacco Co. v. FDA*, 696 F.3d 1205 (D.C. Cir. 2012); *Wollschlaeger v. Farmer*, 880 F. Supp. 2d 1251 (S.D. Fla. 2012).

[11]    *See* Rikelman Decl. ¶ 3; Beck Decl., Ex. 1, at 2-3.

[12]    *See* Metlitsky Decl. ¶ 24.

Opp. Br., at 4), the undisputed evidence—ignored by the State—is that (i) O'Melveny is not seeking fees associated with most of the time that Mr. Dellinger spent working on the matter;[13] and (ii) Mr. Metlitsky had only one associate principally assisting him on the case at any given time,[14] consistent with the Fourth Circuit's instruction that more senior attorneys should delegate responsibility when appropriate because it "result[s] in fees that [are] considerably less than could have been expected absent the delegation." *Saleh v. Moore*, 95 F. Supp. 2d 555, 582 (E.D. Va. 2000) *aff'd sub nom. Saleh v. Upadhyay*, 11 F. App'x 241 (4th Cir. 2001); *see also Copar Pumice Co., Inc. v. Morris*, No. CIV 07-0079 JB/ACT, 2012 WL 2383667, at \*22 (D.N.M. Jun. 13, 2012) (deeming staffing model that utilized both senior and junior attorneys "an efficient way to work" in analyzing a fee petition).

- *It was reasonable for all the Counsel Entities to work on all stages of the litigation.* Although Plaintiffs engaged O'Melveny because of the firm's expertise in merits and certiorari-stage briefs in the United States Courts of Appeals and the United States Supreme Court,[15] it was—contrary to the State's unsupported contention (*see* Opp. Br., at 4)—reasonable for O'Melveny attorneys to work on the litigation from beginning to end. O'Melveny's primary responsibilities over the course of the litigation related to legal research and motion practice, and the legal arguments that Plaintiffs asserted in this Court had important implications for any future appeals. *See Randle*, 2010 WL 2944907, at \*6 (explaining that although attorney's "involvement in [a litigation] was intended initially for purposes of pursuing a class action, and the matter never became a class action, that does not render [the plaintiff's] decision to associate with [the attorney] unreasonable").

## III. THERE IS SUFFICIENT EVIDENCE TO SUPPORT PLAINTIFFS' FEE PETITION.

Neither of the State's two challenges to the evidence on which Plaintiffs' fee petition is based warrants a fee-award reduction. *First*, the State's unsupported contention that hearsay evidence in the attorney declarations submitted by Plaintiffs warrants a fee reduction (*see, e.g.,* Opp. Br., at 2, 15) is meritless. The attorney declarations detail the legal work performed by the attorneys and their colleagues at the same firm or non-profit organization. Thus, the information in Ms. Salgado's declaration, for example, is based on her review of her own time records and that of her colleague, Helene Krasnoff, with whom she worked closely over the course of the case and with whom she consulted to confirm that PPFA's time records are accurate and reflect

---

[13] *See id.* ¶ 23.

[14] *See id.* ¶ 10.

[15] *See id.* ¶ 4.

good billing judgment.  This approach is appropriate because—unlike in the summary-judgment context, *see* Fed. R. Civ. P. 56 (requiring "personal knowledge" affidavits at summary-judgment stage), there is no requirement that fee petitions be based solely on personal-knowledge evidence.  *See, e.g., Rypinski v. Chevrolet Motor Div. of Gen. Motors Corp.*, No. 95-2256, 1996 WL 432475, at *2 (E.D. Pa. Jul. 22, 1996) (considering fee petition based on affidavit reflecting attorney's "knowledge, information and belief"); *Verduzco v. Ford Motor Co.*, No. 1:13-cv-01437-LJO-BAM, 2015 WL 4131384, at *2 (E.D. Cal. Jul. 9, 2015) (awarding fees based on "information and belief" attorney affidavit).

*Second*, contrary to the State's contention that some of the Counsel Entities' billing records are deficient (*see, e.g.*, Opp. Br., at 7), the information that Plaintiffs submitted supports a full recovery.  As described in Plaintiffs' opening brief (*see* Opening Br., at 13), the use of "block" or "bundled" billing entries, i.e., entries that list multiple tasks, does not preclude an attorneys'-fee award for the block-billed or bundled work.  In *Aventis CropScience, NV v. Pioneer Hi-Bred Intern., Inc.*, for example, another court in this district rejected the contention that it could not award fees based on "block" billing entries.  No. 1:00CV463, 2010 WL 2306677, at *7 (M.D.N.C. Jun. 8, 2010).  That is because, upon review, the court did "not find that the[] entries reflect[ed] the expenditure of unreasonable amounts of time, considering the specific tasks contained in each entry."  *Id.*  So too here.  As described in Plaintiffs' opening brief, the Counsel Entities' billing records specify each task for which Plaintiffs seek fees (*see* Opening Br., at 13), and the number of hours spent on each project is reasonable in view of the litigation's complexity and duration (*see id.* at 11-12).

Nor does the State's contention that certain billing entries are insufficiently detailed (*see* Opp. Br., at 7, 15) warrant a fee-award reduction.  The entries about which the State complains–

–e.g., "Correspond with B. Anderson" and "Call with J. Rikelman" (*see* Opp. Br., at 7)—contain more detail than billing entries routinely accepted by courts in this Circuit. *See*, *e.g.*, *Alexander S. v. Boyd*, 929 F. Supp. 925, 939 (D.S.C. 1995) (deeming entries such as "trial preparation" and "various telephone calls and conferences" "specific enough to allow for appropriate judicial review"); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994) (awarding fees for entries such as "research or letter to client" because billing deficiencies "do not detract from the difficulty and complexity of this case or the hours necessary to prosecute it").

## CONCLUSION

Plaintiffs' motion for attorneys' fees and expenses should be granted in its entirety, and they should be awarded **$1,045,813.97** including:

a. $1,029,587.50 in attorneys' fees, comprised of (i) $503,940 (Center); (ii) $135,075 (PPFA); (iii) $109,600 (ACLU); (iv) $68,862.50 (ACLUNC); and (v) $212,110 (O'Melveny); and

b. $16,226.47 in expenses, comprised of (i) $5,144.80 (Center); (ii) $2,245.09 (PPFA); (iii) $1,916.98 (ACLU); and (iv) $6,919.60 (O'Melveny).

Dated: October 22, 2015

Respectfully submitted,

| | |
|---|---|
| */s/* Christopher Brook | */s/* Julie Rikelman |
| Christopher Brook, NC Bar #33838 | Julie Rikelman |
| American Civil Liberties Union | Center for Reproductive Rights |
| of North Carolina Legal Foundation | 199 Water Street, 22nd Floor |
| P.O. Box 28004 | New York, NY 10038 |
| Raleigh, NC 27611 | (917) 637-3670 |
| (919) 834-3466 | (917) 637-3666 Fax |
| (866) 511-1344 Fax | jrikelman@reprorights.org |
| cbrook@acluofnc.org | |
| | Walter Dellinger |
| **COUNSEL FOR ALL PLAINTIFFS** | O'Melveny & Myers LLP |

Helene T. Krasnoff
Planned Parenthood Fed. Of America
1110 Vermont Avenue NW, Suite 300
Washington, DC 20005
(202) 973-4800
helene.krasnoff@ppfa.org

Diana O. Salgado
Planned Parenthood Fed. of America
434 W. 33rd Street
New York, NY 10001
(212) 541-7800
(212) 247-6811 Fax
dianasalgado@ppfa.org

COUNSEL FOR PLANNED PARENTHOOD
OF CENTRAL NORTH CAROLINA &
PLANNED PARENTHOOD HEALTH
SYSTEMS, INC.

Andrew D. Beck
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
(212) 284-7318
(212) 549-2651 Fax
abeck@aclu.org

COUNSEL FOR JAMES R. DINGFELDER,
M.D., SERINA FLOYD, M.D., TAKEY
CRIST, M.D., & TAKEY CRIST M.D., P.A.
d/b/a CRIST CLINIC FOR WOMEN

1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 Fax
wdellinger@omm.com

Anton Metlitsky
Leah Godesky
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000
(212) 326-2061 Fax
ametlitsky@omm.com
lgodesky@omm.com

COUNSEL FOR GRETCHEN S. STUART,
M.D., DAVID A. GRIMES, M.D., AMY
BRYANT, M.D., DECKER & WATSON d/b/a
PIEDMONT CAROLINA MEDICAL
CLINIC, & A WOMAN'S CHOICE OF
RALEIGH, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 22, 2015 the foregoing **Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Attorneys' Fees Under 42 U.S.C. § 1988** was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/* Christopher Brook
Christopher Brook, NC Bar #33838
American Civil Liberties Union
of North Carolina Legal Foundation
P.O. Box 28004
Raleigh, NC 27611
(919) 834-3466
(866) 511-1344 Fax
cbrook@acluofnc.org