IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GRETCHEN S. STUART, M.D., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | Case No. 1:11-cv-00804 |
| MICHAUX R. KILPATRICK, M.D., PhD., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF PLANNED PARENTHOOD SOUTH ATLANTIC'S BRIEF IN SUPPORT OF ITS MOTION TO MODIFY THE PERMANENT INJUNCTION PURSUANT TO RULE 60(b)

### INTRODUCTION

Plaintiff Planned Parenthood South Atlantic ("PPSAT")[1] moves this Court for a modification, pursuant to Federal Rule of Civil Procedure 60(b), of the Court's Permanent Injunction and Judgment, ECF No. 164 ("Perm. Inj. Order"). Plaintiff respectfully requests that the Court modify the order to encompass provisions of newly passed North Carolina Session Law 2023-14 ("S.B. 20" or "the Act"). These provisions concern whether a qualified professional (and not just a physician) can provide certain statutorily required information. The provisions are, in relevant part, identical or nearly identical to the informed consent provisions in the 2011 law that this Court construed in its permanent injunction, ECF No. 164 at 2, and accompanying summary judgment opinion and order,

---

[1] PPSAT is the successor-in-interest of Plaintiff Planned Parenthood Health Systems, Inc., and Plaintiff Planned Parenthood of Central North Carolina. PPSAT was formed by the merger of the two Planned Parenthood Plaintiffs in 2015.

ECF No. 163 at 41. Without modification, Plaintiff faces the risk that Defendants or their successors could interpret (and enforce) statutory language that is virtually identical to the language that this Court already definitively construed in a manner that would conflict with the Court's 2014 injunction. Unless the order specifies that it encompasses the newly enacted law's virtually identical language, the parties will be denied the full relief that this Court ordered in 2014—a plainly inequitable result.

## FACTUAL & PROCEDURAL HISTORY

**The 2011 Law, Plaintiffs' Challenge, and this Court's Permanent Injunction**

In 2011, Plaintiff PPSAT, along with other reproductive health care providers, challenged North Carolina Session Law 2011-405 (codified at N.C. Gen. Stat. §§ 90-21.80 to 90-21.92) ("the 2011 Law"), attached as Exhibit 1, which imposed various abortion restrictions and requirements. Among those requirements were new informed consent processes for abortion patients, including the requirement that each patient be provided with a lengthy list of information in advance of the abortion procedure. *See* N.C. Gen. Stat. § 90-21.82(1). That information included, for instance, the name of the physician expected to perform the abortion and information about the hospital where the physician had admitting privileges, if any. *Id.* § 90-21.82(1)(a), (g). The 2011 Law contained inconsistencies regarding who was required to provide this information. In some subsections, the statute indicated that this requirement could be satisfied by "a physician *or* qualified professional." *Id.* § 90-21.82(1) (emphasis added). In others, however, the statute indicated that this information needed to be conveyed "during a consultation in which the physician is able to ask questions of the patient and the patient is able to ask

2

questions of the physician," *id.*, seemingly implying that *only* a physician could provide this information. Plaintiffs claimed that these internal contradictions rendered the statute impermissibly vague and made it impossible for Plaintiffs to know how to comply.

Additionally, the 2011 Law required the abortion provider to perform an ultrasound on each patient and to display and describe the resulting image to the patient, without exception—even if the patient did not wish to hear the description and covered her eyes and ears to avoid doing so and even if doing so would place the patient's mental health at risk. *Stuart v. Loomis*, 992 F. Supp. 2d 585, 601–02 (M.D.N.C. 2014), *aff'd sub nom. Stuart v. Camnitz*, 774 F.3d 238 (4th Cir. 2014). Plaintiffs argued that this provision violated the First Amendment rights of abortion providers, who were compelled to communicate the State's message irrespective of whether their patients were listening.

This Court permanently enjoined several sections of the 2011 Law. *See* Perm. Inj. Order at 1. First, it enjoined the forced ultrasound provision on First Amendment grounds. *See Loomis*, 992 F. Supp. 2d at 609–10. In response to Plaintiffs' vagueness challenge, Defendants had proffered certain proposed constructions of vague terms to which Plaintiffs agreed, as did this Court. *Id.* at 611. The Court then ordered that the statute be construed as follows: "a physician or qualified professional may provide the information in section 90-21.82(1), but a physician must be available to ask and answer questions within the statutory timeframe upon request of the patient or the qualified professional." *See id.* at 611 (internal quotation marks and citation omitted). This construction was incorporated into

3

the Court's permanent injunction order. *See* Perm. Inj. Order at 2.[2]

### The General Assembly's Recently Enacted Senate Bill 20

The North Carolina General Assembly recently enacted a host of new abortion restrictions, including several that alter the informed consent requirements for abortions performed in the state. *See* 2023 North Carolina Laws S.L. 2023-14, available at https://www.ncleg.gov/Sessions/2023/Bills/Senate/PDF/S20v5.pdf.[3] The effective date of many of these restrictions, including those at issue in this motion, is July 1, 2023.

Relevant to the instant motion, the Act divides the informed consent requirements for surgical abortion and medication abortion into separate sections. The preexisting informed consent requirements, including the provision in the 2011 Law construed by this Court, remain in the same section (i.e., § 90-21.82(1)) but are now applicable to surgical

---

[2] Plaintiffs also identified additional vague terms in the statute. Defendants similarly proposed saving constructions, which Plaintiffs agreed to and which the Court incorporated into its permanent injunction order. *See* Perm. Inj. Order at 2. Those constructions are unaffected by S.B. 20 and are therefore not addressed in this motion.

[3] In addition to the provisions discussed *infra*, the Act also inserts a new subsection into N.C. Gen. Stat. § 90-21.85, the section containing the forced ultrasound requirement that this Court permanently enjoined after determining that it violated the First Amendment. *See* Perm. Inj. Order at 1. The new subsection provides that "[a] pregnant woman has the right to view a real-time view image of the unborn child under this section and shall not be denied a real-time view of the unborn child due to a clinic policy or rule." S.B. 20 § 1.2 (to be codified at N.C. Gen. Stat. § 90-21.85(a1)). While S.B. 20 reproduces the text of the other, permanently enjoined portions of § 90-21.85, those portions are neither underlined or struck through. Thus, as a matter of North Carolina law, the insertion of subsection (a1) is "the only change[] made" to that section, and the "setting out of" the other enjoined subsections "is for illustration only." *See* N.C. Gen. Stat. § 120-20.1(a), (b1). Therefore, it is not necessary for the Court to amend its permanent injunction order with respect to the forced ultrasound requirement because that requirement is unchanged by S.B. 20 and this Court's permanent injunction of § 90-21.85 remains in effect.

abortion only. *See* S.B. 20 § 1.2 (to be codified at N.C. Gen. Stat. § 90-21.82). The Act creates new informed consent requirements for medication abortion but copies much of that language from preexisting law,[4] including reproducing word-for-word the provisions that this Court construed as permitting a qualified professional to provide the informed consent information. *See* S.B. 20 § 1.2 (to be codified at N.C. Gen. Stat. § 90-21.83A).

Specifically, the exact phrase that this Court construed in the 2011 Law ("during a consultation in which the physician is able to ask questions of the patient and the patient is able to ask questions of the physician," N.C. Gen Stat. Ann. § 90-21.82(1)) now appears in S.B. 20's new informed consent section applicable to medication abortion. *See* S.B. 20 § 1.2 (to be codified at N.C. Gen. Stat. § 90-21.83A(b)(2)) (requiring information to be provided "during a consultation in which the physician is able to ask questions of the patient and the patient is able to ask questions of the physician"); *see also* Perm. Inj. Order at 2 (construing that language in the 2011 Law to mean that the "information required by [the statute] may be provided by a physician or qualified professional, but a physician must be available to ask and answer questions within the statutory timeframe upon request of the patient or the qualified professional).

---

[4] The informed consent provisions for surgical and medication abortion under S.B. 20 are largely the same, *compare* S.B. 20 § 1.2 (to be codified at N.C. Gen. Stat. § 90-21.82) *with* S.B. 20 § 1.2 (to be codified at N.C. Gen. Stat. § 90-21.83A), and the differences between the two seem designed to reflect the differences between the two abortion methods. Because the language that this Court construed in its permanent injunction order is the same in both informed consent provisions, any difference between the two sections is irrelevant for purposes of this motion, which merely asks the Court to clarify that its construction of specific statutory language applies with equal force in each place that language occurs.

Another section created by S.B. 20 also repeats requirements drawn from the preexisting version of the statute and thus sows the same uncertainty that this Court previously resolved. Specifically, the newly created § 90-21.83C states that the physician, and not another qualified professional, must provide the patient with the same information required by the 2011 Law 72 hours before the abortion—despite separate language, contained in the 2011 Law and also reproduced in S.B. 20, indicating that qualified professionals can provide the information. *Compare* S.B. 20 § 1.2 (to be codified at N.C. Gen. Stat. § 90-21.83C) (at least 72 hours prior to the abortion "the physician" must provide, *inter alia*, the name of the physician providing the abortion and information regarding the physician's hospital admitting privileges) *with* N.C. Gen. Stat. § 90-21.82(1)(a), (g) (requiring that the patient be provided with the physician's name and information regarding the physician's hospital admitting privileges).

## QUESTION PRESENTED

Has Plaintiff, in light of the legislature's recent enactment of S.B. 20, established a significant change in circumstances warranting revision of this Court's permanent injunction order pursuant to Rule 60(b)?

## LEGAL STANDARD

Rule 60(b) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" on various enumerated grounds. Fed. R. Civ. P. 60(b). A party seeking modification under Rule 60(b) first "must generally satisfy three threshold conditions: (1) timeliness of the motion, (2) existence of a meritorious claim or defense, and (3) absence of unfair prejudice to the

6

opposing party." *N.C. All. for Transp. Reform, Inc. v. U.S. Dep't of Transp.*, 713 F. Supp. 2d 491, 503 (M.D.N.C. 2010) (citing *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987)). "Once the movant has made such a showing, [the movant] must proceed to satisfy one or more of the rule's six grounds for relief from judgment." *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984). Of those six grounds, modification is warranted here under both Rule 60(b)(5) and 60(b)(6).

Rule 60(b)(5) permits modification when "applying [the judgment] prospectively is no longer equitable." To succeed on a 60(b)(5) motion, the movant "bears the burden of establishing that a significant change in circumstances warrants revision . . . If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstances." *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 827 (4th Cir. 2005) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992)). Rule 60(b)(6), on the other hand, "is a catchall" provision, *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993), which may be invoked in "'extraordinary circumstances' when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5)." *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011). Rule 60(b)(6) grants a district court broad "authority to accomplish justice and leaves such determinations to its discretion." *Harman v. Pauley*, 678 F.2d 479, 480 (4th Cir. 1982).

"The decision to grant Rule 60(b) relief from a final order is committed to the sound discretion of the district court," *Transportation, Inc. v. Mayflower Servs., Inc.*, 769 F.2d 952, 954 (4th Cir. 1985), "but once a party carries this burden, a court abuses its discretion

7

'when it refuses to modify an injunction . . . in light of such changes,'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)).

## ARGUMENT

### I. PLAINTIFF SATISFIES THE THREE THRESHOLD REQUIREMENTS FOR MODIFICATION UNDER RULE 60(b).

Plaintiff satisfies the threshold requirements for modification under Rule 60(b), namely (1) timeliness; (2) meritoriousness; and (3) lack of prejudice to the other party. First, the motion is unquestionably timely. The necessity of the motion only became evident once the North Carolina legislature overrode Governor Cooper's veto of S.B. 20 on May 16. Plaintiff promptly filed this motion in advance of the legislation's July 1 effective date. "[M]otions under Rule 60(b) must be made within a *reasonable* time." *Park Corp.*, 812 F.2d at 896 (emphasis added). A motion made *prior to* the realization of the condition that will make enforcement of the unmodified injunction inequitable is reasonable. *See id.*

Second, Plaintiff's claim has merit. In enacting S.B. 20, the legislature has reenacted identical or near-identical statutory text that this Court has already construed.[5] Section 90-21.82 of the 2011 Law contained inconsistent descriptions of who must provide statutorily mandated information, simultaneously permitting a physician *or qualified professional* to do so while also seeming to presume that only *the physician* may do so. This vague language, which this Court clarified in interpreting the 2011 Law, has nevertheless been

---

[5] Attached as Exhibit 2 are relevant excerpts from N.C. Gen. Stat. § 90-21.82 and S.B. 20 comparing the 2011 law with S.B. 20's repetition of the same language.

8

replicated in S.B. 20. *Compare* N.C. Gen. Stat. § 90-21.85(1) ("At least 72 hours prior to the abortion, a physician or qualified professional" must provide required information, and required information "shall be provided during a consultation in which the physician is able to ask questions of the patient and the patient is able to ask questions of the physician") *with* S.B. 20 § 1.2 (to be codified at N.C. Gen. Stat. § 90-21.83A(b)(1), (2)) ("At least 72 hours prior to the medical abortion, a qualified physician or qualified professional" must provide required information, and required information "shall be provided during a consultation in which the physician is able to ask questions of the patient and the patient is able to ask questions of the physician").

Additionally, the Act creates a new section that repeats certain informed consent requirements from § 90-21.82 but again replicates an internally inconsistent physician-only requirement. *See* S.B. 20 § 1.2 (to be codified at N.C. Gen. Stat. § 90-21.83C) (At least 72 hours prior to the abortion "the physician" must provide the woman with, *inter alia*, the name of the physician and information regarding the physician's hospital admitting privileges, if any). Plaintiff is concerned that Defendants may enforce these new sections in a manner that is at odds with this Court's binding construction. Plaintiff thus asks this Court to exercise its authority "to prevent evasion and ensure effectuation of the order it entered," *Salazar by Salazar v. D.C.*, 896 F.3d 489, 498 (D.C. Cir. 2018), a meritorious basis for a Rule 60(b) motion.

Third, Defendants are not prejudiced by Plaintiff's motion. In light of Plaintiff's meritorious claims, the "prejudice factor is of lesser importance." *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 265 (4th Cir. 1993). In any event, as this Court noted, it

9

was "Defendants [who] urge[d] the Court to adopt savings constructions to eliminate any alleged vagueness." *Loomis*, 992 F. Supp. 2d at 611. Defendants are not prejudiced by continuing to be bound by a statutory construction that *they* pressed the Court to adopt. Nor could Defendants be prejudiced here, where Plaintiff merely seeks to "fully vindicate[] the rights accorded by the underlying judgment," *Mayflower Servs., Inc.*, 769 F.2d at 954.

## II. A SIGNIFICANT CHANGE IN CIRCUMSTANCES HAS RENDERED PROSPECTIVE APPLICATION OF THE UNMODIFIED PERMANENT INJUNCTION INEQUITABLE.

Because Plaintiff satisfies the threshold requirements, it must then demonstrate that it is entitled to modification under Rule 60(b)(5), which requires showing that applying the injunction prospectively is no longer equitable. "A party seeking modification of a [permanent injunction]" on this ground "may meet its . . . burden by showing . . . a significant change . . . in factual conditions" that has rendered prospective application inequitable. *Rufo*, 502 U.S. at 384. When faced with the risk that its injunction will be vitiated, a court retains the authority and duty to "prevent evasion and ensure effectuation of the order it entered." *Salazar*, 896 F.3d at 498; *see also Thompson*, 404 F.3d at 825 ("It has long been recognized that courts are vested with the inherent power to modify injunctions they have issued."). Only by modifying the injunction to foreclose any such evasion here can the Court "ensure that any injunctive relief granted fully vindicates the rights accorded by the underlying judgment," preserve the relief granted by this Court, and guarantee that prospective application of the order remains equitable. *See Mayflower Servs.*, 769 F.2d at 954; Fed. R. Civ. P. 60(b)(5).

10

Here, modification of the injunction would preserve the relief granted by the Court in the face of significant changes in factual circumstances prompted by the passage of the Act. As discussed above, when the Court issued its binding construction of § 90-21.82, that section governed the informed consent requirements applicable to abortion generally; that is, it applied to *both* surgical *and* medication abortion procedures. With the enactment of S.B. 20, however, § 90-21.82 now exclusively governs surgical abortion procedures. Section 90-21.83A applies only to medication abortions and reproduces the same vague language from § 90-21.82 that necessitated this Court's construction. Relatedly, § 90-21.83C, which applies to "any medical or surgical abortion," repeats informed consent requirements contained in § 90-21.82 but appears to allow only a physician to fulfill those requirements, perpetuating the very inconsistency the permanent injunction had cured. It is therefore essential that the permanent injunction order be modified to reflect that the construction of § 90-21.82 also applies to § 90-21.83A and § 90-21.83C, thereby preserving the breadth of relief afforded by the injunction.

If the Court does not modify its order, the full scope of relief this Court provided would be severely curtailed. This Court's order—adopting a construction urged *by Defendants*—leaves no doubt that *either* a physician *or* qualified professional is authorized to provide the statutorily required information in any abortion performed in North Carolina, irrespective of whether the abortion is performed surgically or with medication. *See* Perm. Inj. Order at 2 (construing § 90-21.82); N.C. Gen. Stat. § 90-21.82 (establishing informed consent requirements for *any* "abortion . . . performed upon a woman in this State"). That order was necessary to resolve internal inconsistencies within the 2011 statute.

In enacting S.B. 20, the legislature has repurposed the statutory language that this Court already construed, apparently without regard for the Court's binding construction. As a result, the inconsistencies that had previously been put to rest have been revived, contradicting the substance of the permanent injunction order and eviscerating the relief contained therein. Thus, modification is necessary to prevent confusion and ensure continuing compliance with the statute as construed by this Court.

In addition to undermining the Court's permanent injunction order, enforcement of § 90-21.83A and § 90-21.83C, if not guided by the Court's previous construction of the same language, would also undermine the agreement between the parties that gave rise to that very construction. This, too, would render prospective application of the permanent injunction inequitable, as it would allow Defendants to abandon the construction that they led Plaintiffs to agree to and that they proffered to this Court in order to avoid vagueness. *Cf. Thompson*, 404 F.3d at 833 ("[A] district court modifying a consent decree should strive to 'preserve the essence of the parties' bargain.'") (*quoting Pigford v. Veneman*, 292 F.3d 918, 927 (D.C. Cir. 2002)).

As explained *supra*, Defendants pressed for an interpretation of the vague statutory language in § 90-21.82 to simply "require that a physician or qualified professional provide the listed information and, if a qualified professional provides the information, that a physician be available to ask and answer questions within the statutory timeframe upon request of the patient or the qualified professional." *Stuart v. Huff*, 834 F. Supp. 2d 424, 435 (M.D.N.C. 2011); *see also id.* ("Defendants further contend that this provision does not require that the physician must always personally meet with the patient during this

12

advance consultation, and agree that the physician can be available personally, electronically, or telephonically."). Plaintiffs agreed with this reading. The Court found Defendants' proposed construction reasonable, *id.*, and announced that the "Court's reading of the challenged provisions is the same as the parties'," *Loomis*, 992 F. Supp. 2d at 611. This reading was made binding in the Court's permanent injunction order. *See* Perm. Inj. Order at 2.

Now, however, § 90-21.83A replicates the same vague language from § 90-21.82—but *without* a saving construction from this Court. And Section 90-21.83C likewise appears to contradict the permanent injunction order by imposing a physician-only requirement on the provision of information that the Court expressly held could be provided by a non-physician qualified provider. Leaving the injunction as-is would enable Defendants or their successors to flout this Court's order, permitting them to take advantage of the vagueness in § 90-21.83A and the redundancy in § 90-21.83C to mandate that the information required by these sections be provided by physicians only. This would accomplish the very scenario that Plaintiffs sued to prevent and that this Court—by adopting the statutory construction urged by Defendants with Plaintiffs' agreement—explicitly enjoined.

Finally, while Plaintiff believes that its request for modification satisfies Rule 60(b)(5), the Court could just as easily find that foregoing circumstances—where a federal court's permanent injunction is at risk because of a state legislature's careless, internally contradictory enactment—are exceptional and that modification is therefore "appropriate to accomplish justice" on the alternate ground of Rule 60(b)(6). *See Dowell*, 993 F.2d at 48 (quoting *Klapprott v. United States*, 335 U.S. 601, 615 (1949)).

13

### III. THE PROPOSED MODIFICATION IS SUITABLY TAILORED TO THE CHANGED CIRCUMSTANCES.

The foregoing demonstrates that there has been a significant change in circumstances that warrant modification of the permanent injunction and that, without modification, the prospective application of the order would be inequitable. Thus, the Court need only "determine whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 391. Because Plaintiff seeks only to ensure the continued vitality of the Court's order and to preserve the relief the Court has already granted, the proposed modification here is suitably tailored.

In making this determination, "the focus should be on whether the proposed modification is tailored to resolve the problems created by the change in circumstances." *Id.* The proposed modification does precisely that. The modification is minimal, as Plaintiff asks only that the portion of the Court's order construing the statute be amended as follows:

> The information required by N.C. Gen. Stat. § 90-21.82**, § 90-21.83A, and § 90-21.83C** may be provided by a physician or qualified professional, but a physician must be available to ask and answer questions within the statutory timeframe upon request of the patient or the qualified professional.

This minor revision to the order ensures that the Court's construction of the statute continues to have full legal effect. With this modification, it will be clear that—as contemplated in the permanent injunction order—a physician *or* qualified professional may provide the requisite information. In short, the proposed modification "do[es] no more" than "resolve the problems created by the change in circumstance." *Rufo*, 502 U.S. at 391; *see also Thompson*, 404 F.3d at 833 (explaining that injunctions "always" require the issuing court's "continuing willingness to apply its powers and processes on behalf of the

14

party who obtained that equitable relief") (*quoting Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647 (1961)).

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's motion to modify the permanent injunction order to encompass the identical and nearly identical provisions in Senate Bill 20.

Dated: June 13, 2023

Respectfully submitted,

*s/ Kristi Graunke*

Kristi Graunke
NC Bar # 51216
Jaclyn Maffetore
NC Bar # 50849
American Civil Liberties Union
of North Carolina Legal Foundation
P.O. Box 28004
Raleigh, NC 27611
Tel.: (919) 834-3466
kgraunke@acluofnc.org
jmaffetore@acluofnc.org

Helene T. Krasnoff*
Planned Parenthood Fed. of America
1110 Vermont Avenue NW, Suite 300
Washington, DC 20005
Tel.: (202) 973-4800
helene.krasnoff@ppfa.org

COUNSEL FOR PLANNED
PARENTHOOD SOUTH ATLANTIC

*By special appearance

15

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing brief is 4,005 words in length and therefore complies with requirements set out in Local Rule 7.3(d)(1).

*s/ Kristi Graunke*
Kristi Graunke
NC Bar # 51216
American Civil Liberties Union
of North Carolina Legal Foundation
P.O. Box 28004
Raleigh, NC 27611
Tel.: (919) 834-3466
kgraunke@acluofnc.org

# CERTIFICATE OF SERVICE

I hereby certify that, on June 13, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel for all Defendants:

**Thomas J. Ziko**
tziko@ncdoj.gov
Senior Deputy Attorney General
**I. Faison Hicks**
fhicks@ncdoj.gov
Special Deputy Attorney General
**Stephanie A. Brennan**
sbrennan@ncdoj.gov
Assistant Attorney General

North Carolina Department of Justice
114 Edenton Street
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-6400

*s/ Kristi Graunke*
Kristi Graunke
NC Bar # 51216
American Civil Liberties Union
of North Carolina Legal Foundation
P.O. Box 28004
Raleigh, NC 27611
Tel.: (919) 834-3466
kgraunke@acluofnc.org